**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. AND JOHN F. CORVELLO; )
LINDA M.AND ROBERT M. FERREIRA; )
GARY P. ROSE; VICTOR ROSE III; LORRAINE )
AND FRANK J. AGUIAR, JR.; CATHLEEN )
AND MICHAEL A.ALVARNAS; MARY LOU )
AND CARLOS AMARAL; FATIMA AMARAL; )
LIRIA AMARAL; BAY VIEW HOLY GHOST )
CITIZENS CLUB; DEBRA BEAUSOLEIL; )
ELLEN G. AND JOHN CABRAL; SUSAN )
CORREIA; MARIA I. AND PEDRO M. )
AMARAL; HENRY M. BEIROLA, JR.; )
STEPHEN BIGOS; NANCY ANN AND )
ROBERT BORDEN; JANE AND RICHARD A. )
BORGES; MARKBOUCHARD; SARA )
CABRAL; WILLIAM G. CAMARA; JUNYA )
AND JOHN CAMBRA; JANICE M.AND )
BARRY C. CARROLL; KAREN A. AND )
CLAYWELL M. CHAFTON,III; KATHLEEN )
AND JOHN CHRISTO; CAROLYN COLLINS; )
NORMENIA AND JOSE P. CORDEIRO; )
SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; )
ISABEL M. AND FRANCIS R.CORREIA; )
COLLEEN FERNANDES AND MANUEL )
CHRISTO; DORIS AND DENNIS DUARTE; )
JOHN F. DUARTE; ESTATE OF CHRISTINA )
FARIAS; LINDAAND BARRY HAIR; MARY )
AND LARRY A. HELD; PAMELA A. AND )
EDWARD J. KLUS; RAYMOND AND )
JUDITH LEPAGE; VICTORIA AND )
MICHAEL MACOMBER; HILDA R., )
MYRON J.AND RICHARD M. MARTIN; JEAN )
AND THOMAS J.MEDEIROS; LINDA )
MELLO-FOURNIER; ELEANOR AND )
MICHAEL MONAST; EVELYN MORRIS; )
ANTONE CUSTODIO;LUCIA AND DIMAS )
PAVAO; MANUEL AND ODELIA PAVAO; )
CYNTHIA A. REAGAN, DEBRA A. )
DEPAOLA, AND THE ESTATE OF GEORGE )
OLIVEIRA; LOIS AND STEPHEN J. SCANLON; )
MICHELLE AND DAVID SILVA; ANGELINA )
SILVIA; LOREE A. AND DANA SILVIA; )

CA 05-221 T

DANA AND JOHN SILVIA; BARBARA A. AND TOBIAS SILVIA, JR.; GEORGIANNA AND ALVIN B. SIMPSON; ALVIN B SIMPSON REVOCABLE TRUST; GEORGIANNA SIMPSON REVOCABLE TRUST; MARSHA AND CLINTON SKARKA; MARY SOUZA, MARY P. FARIA, VIRGINIA BORGES, HILDA MARTIN AND DELORES BOYLE; DANIEL J.TERCEIRO; THERESA FARIAS; MARGARET MEDEIROS; PAUL F. TERCEIRO; BRUCE THOMPSON; CAROLYN AND DENNIS VALOIS; HEATHER AND ANTONIO VIEIRA; BETSEY D. WARREN; LYNNE V., ANDTIMOTHY WATERS; LISA AND ROBERT WILT, JR.;

*Plaintiffs,*

v.

C.A. No. 05-~~1619~~ 221 T

NEW ENGLAND GAS COMPANY, INC.;
*Defendant.*

## **MOTION TO REMAND**

The plaintiffs move this honorable court to REMAND this case to the Superior Court of the State of Rhode Island, County of Providence. Because New England Gas is a Rhode Island company and represents the real and substantial party in interest in this case, the parties are not completely diverse and diversity jurisdiction does not exist.

Dated: June 17, 2005

Respectfully submitted,

John J. McConnell, Jr. (#3016)
Robert J. McConnell (#3888)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, Rhode Island 02940
401-457-7700
401-457-7708 FAX

David Strouss
THORNTON & NAUMES
100 Summer Street
Boston, Massachusetts 02110

Mark W. Roberts
MCROBERTS, ROBERTS & RAINER
Exchange Place
53 State Street
Boston, Massachusetts 02109

**CERTIFICATION**

I hereby certify that a copy of the foregoing document was delivered to all counsel of record on this 17th day of June 2005.

Sandra Lefebvre

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. AND JOHN F. CORVELLO; )
LINDA M.AND ROBERT M. FERREIRA; )
GARY P. ROSE; VICTOR ROSE III; LORRAINE )
AND FRANK J. AGUIAR, JR.; CATHLEEN )
AND MICHAEL A.ALVARNAS; MARY LOU )
AND CARLOS AMARAL; FATIMA AMARAL; )
LIRIA AMARAL; BAY VIEW HOLY GHOST )
CITIZENS CLUB; DEBRA BEAUSOLEIL; )
ELLEN G. AND JOHN CABRAL; SUSAN )
CORREIA; MARIA I. AND PEDRO M. )
AMARAL; HENRY M. BEIROLA, JR.; )
STEPHEN BIGOS; NANCY ANN AND )
ROBERT BORDEN; JANE AND RICHARD A. )
BORGES; MARKBOUCHARD; SARA )
CABRAL; WILLIAM G. CAMARA; JUNYA )
AND JOHN CAMBRA; JANICE M.AND )
BARRY C. CARROLL; KAREN A. AND )
CLAYWELL M. CHAFTON,III; KATHLEEN )
AND JOHN CHRISTO; CAROLYN COLLINS; )
NORMENIA AND JOSE P. CORDEIRO; )
SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; )
ISABEL M. AND FRANCIS R.CORREIA; )
COLLEEN FERNANDES AND MANUEL )
CHRISTO; DORIS AND DENNIS DUARTE; )
JOHN F. DUARTE; ESTATE OF CHRISTINA )
FARIAS; LINDAAND BARRY HAIR; MARY )
AND LARRY A. HELD; PAMELA A. AND )
EDWARD J. KLUS; RAYMOND AND )
JUDITH LEPAGE; VICTORIA AND )
MICHAEL MACOMBER; HILDA R., )
MYRON J.AND RICHARD M. MARTIN; JEAN )
AND THOMAS J.MEDEIROS; LINDA )
MELLO-FOURNIER; ELEANOR AND )
MICHAEL MONAST; EVELYN MORRIS; )
ANTONE CUSTODIO; LUCIA AND DIMAS )
PAVAO; MANUEL AND ODELIA PAVAO; )
CYNTHIA A. REAGAN, DEBRA A. )
DEPAOLA, AND THE ESTATE OF GEORGE )
OLIVEIRA; LOIS AND STEPHEN J. SCANLON; )
MICHELLE AND DAVID SILVA; ANGELINA )
SILVIA; LOREE A. AND DANA SILVIA; )

DANA AND JOHN SILVIA; BARBARA A. AND TOBIAS SILVIA, JR.; GEORGIANNA AND ALVIN B. SIMPSON; ALVIN B SIMPSON REVOCABLE TRUST; GEORGIANNA SIMPSON REVOCABLE TRUST; MARSHA AND CLINTON SKARKA; MARY SOUZA, MARY P. FARIA, VIRGINIA BORGES, HILDA MARTIN AND DELORES BOYLE; DANIEL J.TERCEIRO; THERESA FARIAS; MARGARET MEDEIROS; PAUL F. TERCEIRO; BRUCE THOMPSON; CAROLYN AND DENNIS VALOIS; HEATHER AND ANTONIO VIEIRA; BETSEY D. WARREN; LYNNE V., ANDTIMOTHY WATERS; LISA AND ROBERT WILT, JR.;

*Plaintiffs,*

v.

C.A. No. 05-~~1619~~ 221 T

NEW ENGLAND GAS COMPANY, INC.;

*Defendant.*

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

The plaintiffs respectfully file this Memorandum in Support of their Motion to Remand. They ask the court to remand this matter to the Superior Court of the State of Rhode Island for the reasons stated below.

## FACTS

The initiation of this lawsuit comes after substantial efforts by Tiverton residents to get New England Gas to clean up the contamination created by its predecessor, Fall River Gas Company. Since the discovery of the contamination, the Department of Environmental Management (DEM) has found that the contaminated soil exceeds residential standards and the State Department of Health (DOH) has recommended that residents of the Tiverton Bay Street area remain indoors to avoid soil exposure. Bay Street residents hold Fall River Gas Company, which acquired by New England Gas five years ago, responsible for the contamination of their properties, all of which are located in Tiverton, Rhode Island.

Two years ago, the Town of Tiverton enacted an Emergency Moratorium on building and excavation on the properties within the contaminated area. The moratorium remains in effect today. This contamination has redefined Bay Street residents' definition of normal life. Backyards are full of toxic, bluish-colored soil. Children can no longer play in their backyards. Families can no longer garden. Mowing the lawn requires a mask to avoid inhaling contaminated dust. Normal life has been and remains in a holding pattern as Bay Street residents wait for this contaminated soil to be removed from their yards.

New England Gas was formed in 2000 with the acquisitions of the former Providence Energy Corporation, Valley Resources, Inc. & Subsidiaries and the Fall River Gas Company. New England Gas is headquartered in Rhode Island, serves nearly 300,000 customers in Rhode Island and southeastern Massachusetts and has more than 700 employees. It is a division of Southern Union Company, which is headquartered in Pennsylvania.

Most of the communications regarding the clean-up have taken place between DEM and New England Gas. DEM requested New England Gas to prepare Site Investigation Work Plans

of the affected properties. According to the DEM report entitled "Bay Street Tiverton Study Area," New England Gas has been responsible for conducting testing of the contaminated soil. New England Gas also has released several reports regarding the level of contamination, characterizing it as the result of lead-paint usage, pesticide application and/or incidental spills. The New England Gas website has a section devoted to the Bay Street Project, with a contact list of individuals in Rhode Island knowledgeable about the issue.

New England Gas filed a notice of removal on May 20, 2005 on the grounds that it was improperly sued because of its status as a division of Southern Union Company. The plaintiffs now move this court to REMAND this case because New England Gas represents the real and substantial party in interest responsible for this contamination. New England Gas has a separate corporate identity from Southern Union Company, New England Gas' locus of operations is in Rhode Island, not Pennsylvania, and removal of this case does not comport with the historical purpose of protecting outsiders from being sued in hostile state courts.

## I. THE DEFENDANT BEARS THE BURDEN OF PROOF FOR REMOVING A CASE TO FEDERAL COURT

In a Removal action under 28 U.S.C. § 1441, the defendant bears the burden of establishing federal jurisdiction over a suit initiated in state court. Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 397 (5th Cir. 1998). Thus, federal courts typically remand cases unless the defendant presents a compelling argument for removal: "it is well settled that courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." Roche v. Lincoln Property Company, 373 F.3d 610, 615 (4th Cir. 2004), citing Shamrock Oil Gas Corp., v. Sheets, 313 U.S. 100, 108-09 (1941).

There are two strong reasons for the Court's preference for remand over removal. First, Congress passed the removal statutes with the intention of reducing the federal court diversity caseload. Payphone LLC v. Brooks Fiber Communications of R.I., 126 F.Supp.2d 175, 179 (D. R.I. 2001). Second, the presumption in favor of remand stems from the fact that "[f]ederal courts are courts of limited jurisdiction." Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (11th Cir. 1994). While courts recognize that defendants have the statutory right to remove a case, they also recognize that the "plaintiff is still the master of his own claim." Id. New England Gas has the burden of overcoming these presumptions to be successful in removing this case.

## II. NEW ENGLAND GAS COMPANY IS A CITIZEN OF RHODE ISLAND UNDER THE "LOCUS OF OPERATIONS" TEST

Overcoming those presumptions will be difficult for New England Gas Company. The First Circuit recently applied the "locus of operations" test to a company with extensive assets and presence in a single state as determinative of that company's citizenship for diversity purposes.[1] Diaz-Rodriguez v. Pep Boys Corp., 2005 WL 1316358, (1st Cir. 2005). Under this test, "[w]here a corporation is engaged in a single enterprise, substantially all of whose operations occur in one state, even though policy and administrative decisions are made elsewhere, the state of operations is the corporation's principal place of business." Diaz-Rodriguez v. Pep Boys Corp., 2005 WL 1316358, at *4 (1st Cir. 2005). Thus, in Diaz-Rodriguez, the facts that all of PepBoys PR's retail stores and physical assets were located in Puerto Rico indicated that PepBoys PR's principal place of business was also in Puerto Rico. Id. at *2.

[1] The First Circuit demonstrated its aversion to improper jurisdiction, or jurisdictional "defects," by raising the jurisdictional issue in Diaz-Rodriguez *sua sponte*. Diaz-Rodriguez, 2005 WL 1316358, at *2.

The rationale for applying the "locus of operations" test to PepBoys PR extends to this case.[2] In Diaz-Rodriguez, the court opined that a company's "principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders." Diaz-Rodriguez v. Pep Boys Corp., 2005 WL 1316358, (1st Cir. 2005) quoting Indus Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990). Therefore, a company that conducts the bulk of its activities within a particular state should be viewed as a citizen of that state.

New England Gas represents itself as a local Rhode Island company through its actions, its public statements, and its advertisements. It is headquartered in Rhode Island and has its own corporate leadership team, including a president and CEO, located in Rhode Island. See http://www.negasco.com/contentmgr/showdetails.php/id/669. New England Gas Company serves customers almost exclusively within the state of Rhode Island.[3] See New England Gas Company *Service Area* Map, *at* http://negasco.com/home/area.php. The Rhode Island Public Utilities Commission website recognizes New England Gas as its *only* regulated gas utility. See http://www.ripus.ri.gov/utilityinfo/regulated.html. New England Gas customers send their bills to New England Gas. See http://www.negasco.com/site/sample.php/region/10. These facts demonstrate that New England Gas has a strong and continuing presence in Rhode Island and that it does not need to be shielded from the prejudices a foreign party may face as an outsider in state court. Diaz-Rodriguez, 2005 WL 1316358 at *4.

In short, New England Gas is a Rhode Island entity. The bulk of its operations are conducted within the state's borders. It is not an outsider. As a state-regulated public utility,

---

[2] While Diaz-Rodriguez does not *specifically* address the relationship between and unincorporated division and its parent, the same logic used to determining the relationship between PepBoys PR and its parent company should be similarly used to determine the relationship between New England Gas and its parent company, Southern Union.

[3] Appendix A shows that New England Gas' non-Rhode Island customers live in Massachusetts towns that border Rhode Island. These towns include Fall River and Swansea.

New England Gas is responsible to the state and its customers. Any litigation against New England Gas, in its status as a public state-regulated utility, should be conducted in the state court system. For these reasons, its citizenship "is to be determined under the locus of operations test." Id. Under that test, New England Gas is a citizen of Rhode Island and diversity of citizenship does not exist in this case.

## III. A SUBSIDIARY OR DIVISION THAT HAS HELD ITSELF OUT AS A SEPARATE ENTITY FROM ITS PARENT IS A REAL AND SUBSTANTIAL PARTY IN INTEREST THAT CANNOT CLAIM DIVERSITY

A company that holds itself out as an independent entity is usually not permitted to "pierce its own [corporate] veil in order to create diversity jurisdiction." Payphone, 126 F.Supp.2d at 179. Courts are often reluctant to allow defendants to swap identities to create diversity, especially when the named defendant has represented itself as a separate entity to the public. Id. at 180.

In Payphone, the defendant subsidiary "represented...[to the state's utilities commission] that Rhode Island was the only state in which it would do business" and "held itself out as a local corporation in the business of providing local exchange carrier services." Id. The Payphone court thus ruled that because the defendant subsidiary's "locus of operations" was centered in Rhode Island, its principal place of business was also in Rhode Island. Id. As a result, removal to federal court was not possible. Id. at 183.

The courts' reluctance to allow companies to pierce their own corporate veils applies here, despite the fact that New England Gas represents a division, rather than a subsidiary, of Southern Union. First, it has a separate corporate identity from Southern Union. According to its independent website, it serves customers in *only* Rhode Island and Massachusetts. See

http://www.negasco.com/about/history.php. The New England Gas website describes the company's formation in 2000 with the acquisitions of other Southern New England gas companies and devotes little attention to New England Gas' corporate relationship with Southern Union. See http://www.negasco.com/about/history.php. In its customer newsletter, its customer service and emergency phone numbers include Rhode Island area codes. See *Connections: A Publication of New England Gas Company*, January/February 2005, at p. 1. In these ways, New England Gas has held itself out and continues to hold itself out as an independent corporation to Rhode Islanders. Just as the Payphone court ruled that a subsidiary cannot "pierce its own corporate veil for its own benefit," New England Gas should not be able to shed the separate corporate identity it has represented to the public simply to create diversity. 126 F.Supp.2d at 179.[4]

Moreover, "it is firmly settled that a corporate parent and its subsidiaries may not manipulate federal diversity jurisdiction by litigating cases in the name of the other [entity] where the real party in interest is not diverse."[5] Roche, 373 A.2d at 614. In such situations, the party invoking federal jurisdiction must establish the citizenship of "each [such] real party in interest" by a preponderance of the evidence before a court will grant its removal request. Roche, 373 A.2d at 616.

Rhode Island law requires that every action be prosecuted "in the name of the *real* party in interest." R.I. R. CIV. P. 17(a) (emphasis added). Therefore, "a federal court must disregard

---

[4] In other litigation, New England Gas has not attempted to shed its status as a corporate identity. In Burns v. New England Gas Company, C.A. No. 03-453, New England Gas did not challenge the state court's jurisdiction over the matter. This behavior stands in direct contrast to New England Gas' decision to file a removal notice in this case.

[5] It is important to note that federal courts have been skeptical of plaintiffs who attempt to manipulate jurisdictional rules to defeat diversity: "The citizenship of one who has an interest in the lawsuit but who has not been made a party to the lawsuit by plaintiff cannot be used by plaintiff on a motion to remand to defeat diversity jurisdiction." Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250, 252 (5th Cir. 1973). If a *plaintiff* cannot *defeat* diversity with such nominal parties, the reverse certainly must also be true – a *defendant* should not be able to *create* diversity by inserting a nominal party into a lawsuit.

nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Savings Association v. Lee, 446 U.S. 458 (1980). While the defendants may argue that they are not separate entities, some courts have opened the door to the notion that a division and its parent company are not necessarily a single actor. In determining the identity of the real and substantial party in interest, the Roche court stated that "[f]rom the record, it appears that the real and substantial party in interest is the Virginia subsidiary, be it a partnership, corporation or *otherwise*, rather than the...parent [company]." Roche, 373 F.3d at 620-21 (emphasis added). A division of a parent company that has as significant a presence and the degree of independence from its parent company as New England Gas does in this case represents the type of entity – partnership, corporation or *otherwise* – that the courts could – and should – characterize as a real and substantial party in interest.

## IV. REMOVAL OF THIS CASE WOULD NOT SATISFY THE HISTORICAL UNDERPINNINGS OF THE REMOVAL STATUTE

Removal of this case also would frustrate the historical intent of the removal statute. The intent of 28 U.S.C. §1442, dating back to the early 1800's, was to preserve the distinction between federal and state matters. Thus, determining citizenship in diversity cases should not be based on formalities, but "upon the principle that a primarily local controversy should be tried in the appropriate state forum and that nominal or formal parties...should not be able to use the federal courts." Roche, 373 F.3d at 615. This case involves acts originally committed by Fall River Gas Company's disposal of contaminated waste and pollutants in the neighboring town of Tiverton. It represents a local controversy best litigated in state court.

Furthermore, the removal statute was designed "to protect Federal...officers from prosecution or civil suit in State Court for violations of State law." Ryan v. Dow Chemical Co.,

781 F.Supp. 934, 942 (E.D.N.Y. 1992). Concerns over separation of powers and federalism underlie the early incarnations of §1442 as Congress was trying to keep local matters local and address the concern that "state governments hostile to duly enacted federal laws would be able to frustrate the implementation of those laws by bringing...civil or criminal actions in state court against the federal officials responsible for their implementation." Id. In short, the removal statute was designed to maintain the delineation between state and federal matters as well as protect federal officials from litigation in overzealous state courts.

Removal of this case will force a local matter to be litigated in an inappropriate forum – the federal courts. In addition, this case also does not involve the protection of federal officials from being sued in state courts. Instead, New England Gas is trying to manipulate federal diversity jurisdiction. Roche, 373 F.3d at 614. This matter belongs in state court because it involves the contamination of real property in Rhode Island by a company – New England Gas – headquartered in Rhode Island that conducts most of its operations in Rhode Island. The removal statute was not designed to cover such intrastate matters. Roche, 373 F.3d at 615. Manipulating the removal statute to create diversity where it should not and does not exist does not comport with the historical rationales behind the statute.

## V. REMOVAL OF THIS CASE AT LEAST REQUIRES APPLICATION OF THE *deWALKER* FACTORS

New England Gas represents an independent corporate entity, as its website, Rhode Island customer base and locus of operations in Rhode Island demonstrate. Therefore, this case should be remanded to state court. However, if this court remains uncertain regarding whether to remand this case, the decision to remove it must at least be delayed until the plaintiffs have an opportunity to conduct additional discovery to determine the nature of the business relationship

between New England Gas and Southern Union. The First Circuit has recognized that "...[t]rial courts have broad discretion in determining the timing of pretrial discovery...[and that such] discretion obtains where...the question is whether to permit discovery before deciding jurisdictional issues. Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 38-39 (1st Cir. (Puerto Rico) 2000). This court should exercise that discretion to clarify the jurisdictional issues that have arisen here. To that end, the additional pre-trial discovery will give this court the opportunity to apply the deWalker factors to the relationship between New England Gas and Southern Union. See deWalker v. Pueblo Int., 569 F.2d 1169, 1171 (1st Cir. 1978). This First Circuit test allows a court to determine whether two entities observe separate corporate formalities by applying four factors: whether the two entities (1) were separately incorporated, (2) had separate boards of directors, (3) kept separate accounting and tax records and (4) had separate facilities and operating personnel. Id. The plaintiffs should be allowed to acquire more information from New England Gas and Southern Union regarding how these factors apply to their relationship before making a decision to remove this case.

While conducting that analysis, this court should be aware that the existence of these factors is not a *per se* recognition of separate corporate identities for a parent and subsidiary in the First Circuit. USI v. M.C. Construction illustrates this point. 860 F.2d 1 (1st Cir. 1998). In USI, the First Circuit did not overturn a district court's ruling that a subsidiary was a separate entity from its parent for diversity purposes, even though several of the deWalker factors indicated that the two entities could have been viewed as one entity: the entities shared all officers and directors and the subsidiary did not prepare its own budget, construction requirements or policies and was undercapitalized. Id. at 7. Instead, the court found it was reasonable for the district judge to separate the two entities for diversity purposes because,

among other things, the subsidiary kept its own books, records and minutes. Id. This court should conduct a similar analysis before granting the defendant's removal request.

## VI. CONCLUSION

This court should remand this case. The defendant held itself out as a separate entity from its parent corporation. It should not be able to shed that separate identity to manipulate diversity. In addition, this matter represents the type of local controversy that should be litigated in state, rather than federal, courts. For these reasons, this case should remain in state court.

Dated: June 17, 2005

Respectfully submitted,

[signature]

John J. McConnell, Jr. (#3016)
Robert J. McConnell (#3888)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, Rhode Island 02940
401-457-7700
401-457-7708 FAX

David Strouss
THORNTON & NAUMES
100 Summer Street
Boston, Massachusetts 02110

Mark W. Roberts
MCROBERTS, ROBERTS & RAINER
Exchange Place
53 State Street
Boston, Massachusetts 02109

**CERTIFICATION**

I hereby certify that a copy of the foregoing document was delivered to all counsel of record on this 17th day of June 2005.

Sandra Lefebvre