**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO; LINDA M. AND ROBERT M. FERREIRA; GARY P. ROSE; VICTOR ROSE III; LORRAINE AND FRANK J. AGUIAR, JR.; CATHLEEN AND MICHAEL A. ALVARNAS; MARY LOU AND CARLOS AMARAL; FATIMA AMARAL; LIRIA AMARAL; BAY VIEW HOLY GHOST CITIZENS CLUB; DEBRA BEAUSOLEIL; ELLEN G. AND JOHN CABRAL; SUSAN CORREIA; MARIA I. AND PEDRO M. AMARAL; HENRY M. BEIROLA, JR.; STEPHEN BIGOS; NANCY ANN AND ROBERT BORDEN; JANE AND RICHARD A. BORGES; MARK BOUCHARD; SARA CABRAL; WILLIAM G. CAMARA; JUNYA AND JOHN CAMBRA; JANICE M. AND BARRY C. CARROLL; KAREN A. AND CLAYWELL M. CHAFTON, III; KATHLEEN AND JOHN CRISTO; CAROLYN COLLINS; NORMENIA AND JOSE P. CORDEIRO; SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; ISABEL M. AND FRANCIS R. CORREIA; COLLEEN FERNANDES AND MANUEL CHRISTO; DORIS AND DENNIS DUARTE; JOHN F. DUARTE; ESTATE OF CHRISTINA FARIAS; LINDA AND BARRY HAIR; MARY AND LARRY A. HELD; PAMELA A. AND EDWARD J. KLUS; RAYMOND AND JUDITH LEPAGE; VICTORIA AND MICHAEL MACOMBER; HILDA R., MYRON J. AND RICHARD M. MARTIN; JEAN AND THOMAS J. MEDEIROS; LINDA MELLO-FOURNIER; ELEANOR AND MICHAEL MONAST; EVELYN MORRIS; ANTONE CUSTODIO; LUCIA AND DIMAS PAVAO; MANUEL AND ODELIA PAVAO; CYNTHIA A. REAGAN, DEBRA A. DEPAOLA AND THE ESTATE OF GEORGE OLIVERIA; LOIS AND STEPHEN J. SCANLON; MICHELLE AND DAVID SILVA; ANGELINA SILVIA; LOREE A. AND DANA SILVA; DANA AND JOHN SILVA; BARBARA A. AND TOBIAS SILVA, JR.; GEORGIANNA AND ALVIN B. SIMPSON; ALVIN B. SIMPSON REVOCABLE TRUST; GEORGIANNA | C.A. No. 05-221T<br>(Related Case No. 05-274T) |

SIMPSON REVOCABLE TRUST; MARSHA AND CLINTON SKARKA; MARY SOUZA, MARY P. FARIA, VIRGINIA BORGES, HILDA MARTIN AND DELORES BOYLE; DANIEL J. TERCEIRO; TERESA FARIAS; MARGARET MEDEIROS; PAUL F. TERCEIRO; BRUCE THOMPSON; CAROLYN AND DENNIS VOLOIS; HEATHER AND ANTONIO VIEIRA; BETSEY D. WARREN; LYNNE V. AND TIMOTHY WATERS; LISA AND ROBERT WILT, JR.,
*Plaintiffs,*

v.

NEW ENGLAND GAS COMPANY, INC.,
*Defendant.*

**DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant New England Gas Company (improperly sued as "New England Gas Company, Inc.") ("NEGasCo"), an unincorporated division of Southern Union Company, hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' First Amended Complaint. As set forth in the accompanying Memorandum of Law, the First Amended Complaint fails entirely to state a claim upon which relief can be granted. Therefore, this Court should grant NEGasCo's Motion to Dismiss.

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

By: ______________________

John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
1633 Broadway
New York, New York 10019
(212) 506-1700
-and-

**BISHOP, LONDON, BROPHY & DODDS**
Christina Dodds
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, Teas 78701
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a unincorporated division of*
*Southern Union Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2005, a copy of the foregoing was hand-delivered to:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

and a copy of the foregoing was mailed to the following:

David C. Strouss, Esq.
Brad J. Mitchell, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts, Esq.
McRoberts, Roberts & Rainer
51 State Street
Boston, MA 02109

April M Fontaine

342479_1.DOC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. AND JOHN F. CORVELLO; :
LINDA M. AND ROBERT M. FERREIRA; :
GARY P. ROSE; VICTOR ROSE III; LORRAINE :
AND FRANK J. AGUIAR, JR.; CATHLEEN :
AND MICHAEL A. ALVARNAS; MARY LOU :
AND CARLOS AMARAL; FATIMA AMARAL; :
LIRIA AMARAL; BAY VIEW HOLY GHOST :
CITIZENS CLUB; DEBRA BEAUSOLEIL; :
ELLEN G. AND JOHN CABRAL; SUSAN :
CORREIA; MARIA I. AND PEDRO M. :
AMARAL; HENRY M. BEIROLA, JR.; :
STEPHEN BIGOS; NANCY ANN AND :
ROBERT BORDEN; JANE AND RICHARD A. :
BORGES; MARK BOUCHARD; SARA :
CABRAL; WILLIAM G. CAMARA; JUNYA :
AND JOHN CAMBRA; JANICE M. AND : C.A. No. 05-221T
BARRY C. CARROLL; KAREN A. AND : (Related Case No. 05-274T)
CLAYWELL M. CHAFTON, III; KATHLEEN :
AND JOHN CRISTO; CAROLYN COLLINS; :
NORMENIA AND JOSE P. CORDEIRO; :
SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; :
ISABEL M. AND FRANCIS R. CORREIA; :
COLLEEN FERNANDES AND MANUEL :
CHRISTO; DORIS AND DENNIS DUARTE; :
JOHN F. DUARTE; ESTATE OF CHRISTINA :
FARIAS; LINDA AND BARRY HAIR; MARY :
AND LARRY A. HELD; PAMELA A. AND :
EDWARD J. KLUS; RAYMOND AND :
JUDITH LEPAGE; VICTORIA AND :
MICHAEL MACOMBER; HILDA R., :
MYRON J. AND RICHARD M. MARTIN; JEAN :
AND THOMAS J. MEDEIROS; LINDA :
MELLO-FOURNIER; ELEANOR AND :
MICHAEL MONAST; EVELYN MORRIS; :
ANTONE CUSTODIO; LUCIA AND DIMAS :
PAVAO; MANUEL AND ODELIA PAVAO; :
CYNTHIA A. REAGAN, DEBRA A. :
DEPAOLA AND THE ESTATE OF GEORGE :
OLIVERIA; LOIS AND STEPHEN J. SCANLON; :
MICHELLE AND DAVID SILVA; ANGELINA :
SILVIA; LOREE A. AND DANA SILVA; :
DANA AND JOHN SILVA; BARBARA A. :

AND TOBIAS SILVA, JR.; GEORGIANNA AND ALVIN B. SIMPSON; ALVIN B. SIMPSON REVOCABLE TRUST; GEORGIANNA SIMPSON REVOCABLE TRUST; MARSHA AND CLINTON SKARKA; MARY SOUZA, MARY P. FARIA, VIRGINIA BORGES, HILDA MARTIN AND DELORES BOYLE; DANIEL J. TERCEIRO; TERESA FARIAS; MARGARET MEDEIROS; PAUL F. TERCEIRO; BRUCE THOMPSON; CAROLYN AND DENNIS VOLOIS; HEATHER AND ANTONIO VIEIRA; BETSEY D. WARREN; LYNNE V. AND TIMOTHY WATERS; LISA AND ROBERT WILT, JR.,

*Plaintiffs,*

v.

NEW ENGLAND GAS COMPANY, INC.,

*Defendant.*

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant New England Gas Company (improperly sued as "New England Gas Company, Inc.") (hereafter "NEGasCo"), an unincorporated division of Southern Union Company, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' First Amended Complaint (the "Amended Complaint").

## PRELIMINARY STATEMENT

By this action, Plaintiffs seek to recover money damages and declaratory and injunctive relief as a result of alleged contamination of the soil on their properties within the Town of Tiverton, Rhode Island. Plaintiffs claim that their properties are contaminated by waste allegedly generated by one or more manufactured gas plant ("MGP") facilities owned by Fall

River Gas Company ("FRGC") prior to the acquisition of FRGC and its subsequent consolidation into the NEGasCo.[1] Plaintiffs allege that FRGC failed to properly dispose of the MGP waste it allegedly generated, and that NEGasCo, as FRGC's successor, is responsible for the alleged contamination of Plaintiffs' properties and for any ensuing damages. Specifically, Plaintiffs' Amended Complaint asserts the following causes of action against NEGasCo: (1) negligence; (2) gross negligence; (3) strict liability; (4) private nuisance; (5) public nuisance; (6) infliction of emotional distress; and (7) "unauthorized disposal of hazardous waste," pursuant to section 23-19.1-22 (1956) of the Rhode Island General Laws. (Compl. ¶¶ 27-62). Plaintiffs also seek punitive damages.

Plaintiffs' claims must be dismissed as they fail to state a claim upon which relief can be granted for the following reasons:

(1) **First Cause of Action: Negligence**—As a matter of law, neither NEGasCo, nor FRGC, owed a duty to Plaintiffs upon which to base a claim for negligence.

(2) **Second Cause of Action: Gross Negligence**—Rhode Island does not recognize a claim for "gross negligence" separate and distinct from ordinary negligence.

(3) **Third Cause of Action: Strict Liability**—Rhode Island law does not apply strict liability to the disposal of potentially hazardous materials, even

[1] In 2000, Southern Union Company acquired several gas distribution companies, including Providence Gas, Fall River Gas Works, and Valley Gas Company, and combined them to create New England Gas Company, an unincorporated division of Southern Union Company.

assuming the actor was aware of the allegedly hazardous nature of the waste at the time of disposal.

(4) **Fourth Cause of Action: Private Nuisance**—The alleged nuisance is not based on FRGC's use of its own property as required under Rhode Island law, and it is undisputed that Plaintiffs' properties are not adjacent to, or "neighboring," any present or former FRGC facility. As a matter of law, FRGC's alleged status as a former generator of waste at a location remote from Plaintiffs' properties cannot serve as the basis for a private nuisance claim.

(5) **Fifth Cause of Action: Public Nuisance**—Plaintiffs do not -- and cannot -- allege that they have suffered a harm in the exercise of a right common to the general public as their purported harm arises from an alleged interference with their private property rights.

(6) **Sixth Cause of Action: Intentional Infliction of Emotional Distress**—Plaintiffs fail to plead that FRGC's conduct was "extreme and outrageous," or to plead facts that would support such an allegation. Further, Plaintiffs fail to provide the required notice as to which of the Plaintiffs are asserting the claim.

(7) **Seventh Cause of Action: Unauthorized Disposal of Hazardous Waste**—There is no private right of action under the Rhode Island Hazardous Waste Management Act, Section 23-19.1-22 of the General Laws.

(8) **Punitive Damages**—Plaintiffs fail to provide any facts to support their bald allegation that they are entitled to punitive damages. Therefore, Plaintiffs' demand for punitive damages must be dismissed.

## FACTUAL ALLEGATIONS[2]

Plaintiffs are residents and owners of property in Tiverton, Rhode Island who claim injury as a result of alleged contamination of their soil that they claim was caused by waste products of the manufactured gas process deposited on their land before it was developed for residential use.[3] (Compl. ¶¶ 2, 17). Plaintiffs allege that on March 17, 2003, the Rhode Island Department of Environmental Management ("RIDEM") issued a Letter of Responsibility to NEGasCo in connection with the allegedly contaminated soils discovered in Tiverton (the "Bay Street Study Area"). (Compl. ¶ 18). The Town of Tiverton subsequently instituted an "Emergency Moratorium" prohibiting excavation of any kind on all property located within the Moratorium Area.[4] (Compl. ¶ 23).

Plaintiffs commenced this action in May of 2005 and contend, solely by implication, that FRGC is the source of the alleged contamination and, thus, that NEGasCo is responsible as FRGC's successor in interest. The Amended Complaint seeks "to recover damages for the diminution in the value of their properties, lost use and enjoyment of their properties, and severe emotional distress caused by the [FRGC's] disposal of and/or release of coal gasification waste material." (Compl. ¶ 1).

---

2 Well-pleaded facts are assumed true solely for purposes of this motion.

3 This process, called coal gasification, was utilized by public utilities to manufacture gas until the process was replaced, during the 1950's, with the use of natural gas.

4 Plaintiffs allege that the Moratorium Area is defined as the area "bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road." (Compl. ¶ 23).

Based upon applicable Rhode Island law as applied to the facts in the Amended Complaint, and taken in the light most favorable to Plaintiffs, Plaintiffs' Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## ARGUMENT

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where, as here, the allegations of the complaint demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although in considering this motion, the Court must assume as true the factual allegations in the Complaint, the Court should only credit Plaintiffs' well-pleaded allegations of fact, not unsubstantiated assertions and legal conclusions. See, e.g., Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990); Arroyo-Santiago v. Garcia-Vicario, 1999 U.S. App. LEXIS 17909, *12 (1st Cir. July 28, 1999) ("[the court] need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," and finding complaint inadequate because of reliance on vague and conclusory assertions) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). "Federal Rule of Civil Procedure 8(a)(2), establishing the requirements for an adequate complaint, does not entitle a plaintiff to rest on 'subjective characterizations' or conclusory descriptions of a 'general scenario which could be dominated by unpleaded facts.'" Arroyo-Santiago, 1999 U.S. App. LEXIS at *12 (quoting Correa-Martinez, 903 F.2d at 52-53); see also DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (plaintiff must "allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome," and stating, "[c]onclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition") (citations omitted).

Consequently, a plaintiff must set forth factual allegations with respect to each material element necessary to sustain recovery under some actionable legal theory. The First Circuit has discussed the dividing line between adequate "facts" and inadequate "conclusions." Cooperman v. Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999). "[I]t is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes.") Id. (internal quotation omitted).

As demonstrated below, the allegations in the Amended Complaint are subject to dismissal under these standards, as there is no legal possibility of Plaintiffs obtaining relief based upon those claims.

## I. PLAINTIFFS' FIRST CAUSE OF ACTION FOR NEGLIGENCE MUST BE DISMISSED

Plaintiffs allege that FRGC's negligence caused Plaintiffs to suffer damages. This claim must be dismissed because, as a matter of law, the Amended Complaint fails to establish that FRGC owed any duty to Plaintiffs.

The Rhode Island Supreme Court has stated that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." Gray v. Derderian, 371 F. Supp. 2d 98, 104 (D.R.I. 2005) (quoting Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994)). Whether such a duty exists is a question of law to be determined by the court. Hydro-Mfg., Inc. v. Kayser-Roth Corp., 640 A.2d 950, 955 (R.I. 1994) (citing Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1224 (R.I. 1987)); Barratt v. Burlingham, 492 A.2d 1219, 1222 (R.I. 1985) (same).

No Rhode Island case has ever recognized the existence of a duty owed by a purported waste generator to subsequent purchasers of non-neighboring property upon which waste was

disposed of years before the development of the property.[5] Accordingly, as FRGC owed no duty to Plaintiffs, the negligence claim must be dismissed. See, e.g., Builders Specialties Co. v. Goulet, 639 A.2d 59, 60 (R.I. 1994) (Supreme Court upholding trial court's grant of motion to dismiss negligence claim based on absence of duty to plaintiff).

Accordingly, Plaintiffs' cause of action for negligence must be dismissed.

## II. PLAINTIFFS' SECOND CAUSE OF ACTION FOR GROSS NEGLIGENCE MUST BE DISMISSED

The Second Cause of Action purports to set forth a claim for gross negligence. It is well settled that "Rhode Island does not recognize more than one degree of negligence. . . . The Court must analyze the allegations of negligence, gross negligence and negligence per se as one allegation of negligence." Wilson Auto Enters., Inc. v. Mobil Oil Corp., 778 F. Supp 101, 104 (D.R.I. 1991) (citing Corrigan v. Dun & Bradstreet, Inc., 91 F. Supp. 424, 426 (D.R.I. 1950)); see also National India Rubber Co. v. Kilroe, 173 A. 86, 87 (R.I. 1934) ("The doctrine of degrees of negligence is not recognized in this State." Therefore the allegation "that the negligence of the employer was gross is surplusage and is immaterial").

Thus, Plaintiffs' claim for gross negligence does not set forth a cause of action separate and distinct from the negligence claim asserted by Plaintiffs' First Cause of Action and should be dismissed.

## III. PLAINTIFFS' THIRD CAUSE OF ACTION FOR STRICT LIABILITY MUST BE DISMISSED

Plaintiffs' claim that FRGC is strictly liable for Plaintiffs' alleged damages similarly fails as a matter of Rhode Island law. Plaintiffs base this claim on the assertion that FRGC "engaged

---

[5] See Compl. ¶ 17 ("properties in this residential area of Tiverton were filled with contaminated coal gasification waste from Fall River Gas Company *prior to the construction of the homes* . . .") (emphasis added).

in ultrahazardous and abnormally dangerous activities when it handled, disposed of and/or released hazardous substances in its possession, custody and control, including coal gasification waste material containing Lead, Arsenic, and Cyanide." (Compl. ¶ 43; see also ¶¶ 44-45). However, this claim is fatally defective because, under Rhode Island law, the mere handling and disposal of hazardous waste is not an abnormally dangerous activity and thus states no claim for strict liability.

Under Rhode Island law "[a]bsolute liability attaches only to ultrahazardous or abnormally dangerous *activities* and not to ultrahazardous or abnormally dangerous *materials*." Splendorio v. Bilray Demolition Co., 682 A.2d 461, 465-66 (R.I. 1996) (emphasis added) (citing G.J. Leasing Co. v. Union Elec. Co., 854 F. Supp. 539, 567-69 (S.D. Ill. 1994)). This view is consistent with the Second Restatement of Torts: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the *activity*, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1) (1977) (emphasis added).[6]

Central to the determination of whether an *activity* is abnormally dangerous so as to warrant the application of strict liability -- a question of law for the court, see Splendorio, 682 A.2d at 465 -- is whether the risks associated with the activity can be limited by the exercise of reasonable care. See Toledo v. Van Waters & Rogers, Inc., 92 F. Supp. 2d 44, 56 (D.R.I. 2000) (stating, "courts have focused on whether the risk involved could be reduced through the exercise of reasonable care"). Simply put, if an activity can be made safer through the exercise

6 Indeed, "[i]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." Splendorio, 682 A.2d at 466 (quoting City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 615-17 (7th Cir. 1989).

of reasonable care, the activity is not ultrahazardous as a matter of law. See Splendorio, 682 A.2d at 466 (while acknowledging that "asbestos is understandably an ultrahazardous or abnormally dangerous material," holding that the inspection of buildings for asbestos was not an abnormally dangerous activity because the activities could be carried out safely with the exercise of reasonable care) (emphasis added); Toledo, 92 F. Supp. 2d at 55-57 (under Rhode Island law, the transportation of barrels containing nitric and sulfuric acid was not in and of itself abnormally dangerous so as to warrant strict liability because such activity is routinely performed safely when parties exercise reasonable care).

No Rhode Island Court has ever held that the disposal of hazardous waste is an abnormally dangerous activity warranting the imposition of strict liability. To the contrary, other courts have specifically held, as a matter of law, that such an activity is not abnormally dangerous. For example, in Bernbach v. Timex Corp., the court dismissed, for failure to state a cause of action, strict liability claims based on soil and groundwater contamination resulting from a manufacturing facility's disposal of various hazardous substances, where plaintiffs failed to allege "circumstances and conditions in . . . [defendant's] activities such that, irrespective of due care, the activities involve a risk of probable injury to such a degree that [they] fairly can be said to be intrinsically dangerous." 989 F. Supp. 403, 407 (D. Conn. 1996) (internal quotation omitted); see also Schwartzman, Inc. v. General Elec. Co., 848 F. Supp. 942, 945 (D.N.M. 1993) (granting motion to dismiss strict liability claim based on disposal of petroleum products and other hazardous wastes; despite the fact that such materials "may present a substantial degree of

risk to persons or property when mishandled," the court held that "the risks can be eliminated through the exercise of reasonable care").[7]

The burden of coming forward with facts sufficient to support a theory of strict liability based on abnormally dangerous activities rests with Plaintiffs. See Fletcher, 129 F. Supp. 2d at 1260 (granting motion to dismiss strict liability count); Chaveriat v. Williams Pipe Line Co., 1994 U.S. Dist. LEXIS 15082, *17 (N.D. Ill. Oct. 18, 1994) (same). Plaintiffs do not -- and cannot -- allege that FRGC's handling and disposal of "coal gasification waste containing Lead, Arsenic, and Cyanide" was so intrinsically dangerous that the risks involved could not be mitigated through the exercise of reasonable care. Indeed, RIDEM and the Environmental Protection Agency ("EPA") have procedures for the safe handling and disposal of these wastes.[8]

Accordingly, FRGC did not engage in an ultrahazardous or abnormally dangerous activity, and Plaintiffs' claim premised upon strict liability must be dismissed.

---

7 Courts have routinely dismissed strict liability claims based on activities involving hazardous substances, where the risks associated with the activity could be limited by the exercise of due care. See, e.g., Marmo v. IBP, Inc., 362 F. Supp. 2d 1129, 1134 (D. Neb. 2005) (operation of a wastewater treatment facility generating hydrogen sulfide was not an abnormally dangerous activity because the risk of harm associated with its emission could be controlled with due care); Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001) (dismissing strict liability claim where neither the operation of a petroleum pipeline nor the use of cathodic protection was an abnormally dangerous activity as a matter of law because they are easily regulated activities that can be performed safely); Arlington Forest Assocs. v. Exxon Corp., 774 F. Supp. 387, 390 (E.D. Va. 1991) (storage and removal of gasoline in underground tanks not abnormally dangerous because it could be made safe through the exercise of reasonable care).

8 See RIDEM "Rules and Regulations For Hazardous Waste Management" which contain the rules (and which incorporate EPA's federal regulations) that govern the generation, transportation, treatment, storage and disposal of hazardous waste. See also Schwartzman Inc., 848 F. Supp. at 945 (noting that "the premise of many environmental laws . . . is that proper handling and disposal of these materials minimizes or eliminates the risk of their use").

## IV. PLAINTIFFS' FOURTH CAUSE OF ACTION FOR PRIVATE NUISANCE MUST BE DISMISSED

The Fourth Cause of Action alleges that FRGC created a private nuisance. This claim too fails as a matter of law because FRGC's conduct does not satisfy the most essential element of a private nuisance cause of action -- that use of one's own real property interferes with the property of a "neighbor."

Under Rhode Island law, "a private nuisance 'arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort or the neighbor's use of his real estate.'" Hydro-Mfg., Inc., 640 A.2d at 957 (quoting Weida v. Ferry, 493 A.2d 824, 826 (R.I. 1985)). Thus, a claim for private nuisance is premised on wrongful activity conducted *on a defendant's property*, which adversely affects a *neighbor*.

In this case, Plaintiffs cannot establish the existence of a private nuisance because the wrong alleged here -- the off-site transportation and disposal of waste generated by a manufacturing process -- is not an activity that occurred on FRGC property, or a condition maintained by FRGC. See Saco Steel Co. v. Saco Defense, Inc., 910 F. Supp. 803, 812 (D. Me. 1995) (dismissing private nuisance claim where "[d]efendant's alleged activity on its own land, generating hazardous substances, did not, by itself, cause injury to Plaintiff's neighboring land"); Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984) (rejecting nuisance claim on the basis that the "[p]laintiff seeks to recover from defendant not in its capacity as a property owner, but in its capacity as a manufacturer"). Plaintiffs cannot disguise this incontrovertible fact by alleging that their claims are based on FRGC's "handling, disposal of, and release of hazardous substances emanating from its own property." (Compl. ¶ 48). Even assuming *arguendo* that the waste at issue was initially generated at FRGC's manufactured gas

plant, FRGC's use of its own property is clearly not at issue here because such manufacturing use is not alleged to have damaged Plaintiffs in any way.

Furthermore, Plaintiffs do not -- because they cannot -- allege that any of their properties were, at any time, a "neighbor" of any FRGC facility. In fact, Plaintiffs' properties are located about one mile -- a minimum of 10 city blocks and numerous intervening properties -- away from the nearest former Fall River manufactured gas plant. As such, Plaintiffs fail to establish the very heart of a private nuisance claim: that there exists a close physical proximity between plaintiffs' property and FRGC's property, such that they can be described as "neighboring."[9] See Hydro-Mfg., Inc., 640 A.2d at 957 ("Historically the law of private nuisance has been applied to conflicts between neighboring, contemporaneous land uses"); see also Hennessey v. Pyne, 694 A.2d 691, 695 (R.I. 1997) (owner of a condominium could not claim private nuisance as a result of errant golf balls because, among other things, plaintiff and golf course were not "neighbors in the usual sense of the word"); Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1057-58 (D.N.J. 1993) ("[p]rivate nuisance is confined to situations where one person's property use interferes with another's use of *neighboring* or *adjoining* property") (emphasis added).

Accordingly, Plaintiffs fail to state a cause of action for private nuisance and this Fourth Cause of Action must be dismissed.

---

[9] To be neighboring is to be situated near one another, to have a common boundary or edge, or to be touching. *WordNet ® 2.0, © 2003 Princeton University.*

## V. PLAINTIFFS' FIFTH CAUSE OF ACTION FOR PUBLIC NUISANCE MUST BE DISMISSED

Plaintiffs' claim against NEGasCo for public nuisance must also be dismissed as a matter of law because Plaintiffs have failed to plead an essential element of public nuisance: an interference with a public right.

The Supreme Court of Rhode Island defines a public nuisance as "'an unreasonable interference with a right common to the general public.'" Hydro-Mfg., Inc., 640 A.2d at 957-58 (quoting Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980)); (see Prosser § 88, at 583 (4th ed. 1971) (defining a public nuisance as "an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects")) (internal quotation omitted).

In Iafrate v. Ramsden, the Rhode Island Supreme Court upheld the lower court's grant of a motion to dismiss a public nuisance claim for failure to allege interference with "any interest of plaintiffs *common to the general public*." 96 R.I. 216, 222 (R.I. 1963) (emphasis added). The Court noted that the injury suffered by plaintiffs caused by the collapse of a wall located on city-owned property "affected only persons on the city's premises, not the general public." Id. Similarly, in Hydro-Mfg., Inc., the Court held that the plaintiff could not sustain an action for public nuisance because the damages alleged as a result of contamination to plaintiff's own property "were in [plaintiff's] exercise of its private-property right, not in the exercise of a public right." 640 A.2d at 958. See also Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 691 N.W.2d 658, 670 (Wis. 2005) (defining a public nuisance as "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community").

In the present case, Plaintiffs allege diminution in value and lost use and enjoyment of their properties as a result of the contamination of those properties, not the properties used in common by all residents of Tiverton or any larger political subdivision. As such, they allege a harm only in the exercise of their *private property rights* and not in the exercise of any *public* right. Moreover, the mere fact that a large number of private property parcels have allegedly been affected by contamination does not convert this private injury into a public harm:

> *Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public.* It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

Restatement (Second) Torts, § 821B, Comment g (1979) (emphasis added).[10]

Plaintiffs do not and cannot allege a harm to any public right. Accordingly, their Fifth Cause of Action must be dismissed for failure to state a claim.

## VI. PLAINTIFFS' SIXTH CAUSE OF ACTION FOR INFLICTION OF SEVERE EMOTIONAL DISTRESS MUST BE DISMISSED

Plaintiffs' Sixth Cause of Action, "infliction of severe emotional distress," likewise fails as a matter of law and must be dismissed. The allegations of the Amended Complaint, taken in

[10] The Rhode Island Supreme Court in Hydro-Mfg., Inc. relied on the Restatement (Second) of Torts. 640 A.2d 958.

the light most favorable to Plaintiffs, fail to set forth a cognizable claim for intentional infliction of emotional distress.[11]

To establish a cause of action for intentional infliction of emotional distress under Rhode Island law, Plaintiffs must establish that a defendant, by its (1) extreme and outrageous conduct, (2) intentionally or recklessly inflicted harm on the plaintiff, (3) causing the plaintiff to suffer severe emotional distress. Champlain v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984); Forbes v. Rhode Island Bhd. of Correctional Officers, 923 F. Supp. 315, 329 (D.R.I. 1996).

Here, the Amended Complaint merely recites each element of the claim but provides no factual support whatsoever for Plaintiffs' legal conclusions. First, Plaintiffs make the purely conclusory allegation that FRGC's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." (Compl. ¶ 57). In doing so, Plaintiffs simply appropriate the very words that Rhode Island courts and the Restatement have used to define "extreme and outrageous" conduct. See Hoffman v. Metcalf, 851 A.2d 1083, 1089-90 (R.I. 2004). See also Restatement (Second) Torts § 46 Comment d (1965). Plaintiffs' allegations fail, however, to allege any facts to support a finding that FRGC's conduct crossed the requisite threshold of conduct. The absence of support for such a conclusory allegation is fatal to the claim. See Fudge v. Penthouse Int'l., Ltd., 840 F.2d 1012, 1021 (1st Cir. 1988)

---

[11] Although Plaintiffs do not specify whether they seek recovery for negligent or intentional infliction of emotional distress, the allegations of the Amended Complaint appear to assert a claim for intentional infliction of emotional distress. In any event, Plaintiffs cannot make out a claim for negligent infliction of emotional distress. Rhode Island has recognized a cause of action for negligent infliction of emotional distress "in limited circumstances where the plaintiff is either in the zone of physical danger, or is a bystander to a tragic incident involving someone with whom he or she is closely related, and the plaintiff suffers serious emotional harm accompanied by some physical manifestations of his or her distress as a result of the defendant's negligence." Swerdlick v. Koch, 721 A.2d 849, 864 (R.I. 1998). The facts here fail to support such a claim against FRGC or NEGasCo. Moreover, Rhode Island has explicitly held that a plaintiff must demonstrate extreme and outrageous conduct in order to establish a claim for both negligent and intentional infliction of emotional distress. See Id. at 863. As set forth below, FRGC's alleged conduct does not meet this standard.

(affirming dismissal, for failure to state a cause of action under Rhode Island law, claim for intentional infliction of emotional distress, where "facts do not allege conduct that is sufficiently extreme and outrageous to warrant the imposition of liability"); Jalowy v. Friendly Home, 818 A.2d 698, 708 (R.I. 2003) (affirming lower court's granting of defendant's motion for judgment as a matter of law, concluding that conduct consisting of banishing plaintiff from nursing home where his mother resided and refusing to allow plaintiff to visit "[was] not so extreme and atrocious . . . that a reasonable jury could find them to be 'utterly intolerable in a civilized community'") (quoting Swerdlick, 721 A.2d at 863).

Similarly, Plaintiffs' failure to allege a single fact to substantiate their conclusory statement that FRGC "knew or was reckless in not knowing that its acts and omissions would inflict emotional distress on the Plaintiffs" (Compl. ¶ 58), requires dismissal of this claim. See, e.g., Norton v. Hoyt, 278 F. Supp. 2d 214, 221 (D.R.I. 2003), aff'd, Norton v. McOsker, 407 F.3d 501 (1st Cir. 2005) (rejecting intentional infliction of emotional distress claim where plaintiff failed to show conduct was purposeful and harm was intentionally or recklessly inflicted).

Moreover, Plaintiffs cannot allege that FRGC intentionally or recklessly inflicted harm on Plaintiffs because FRGC's conduct was in no way directed at them since Plaintiffs did not own or occupy their land when the alleged deposit of wastes occurred. See Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (conduct must be "intentionally directed at the plaintiff and lack any reasonable justification"); Dusoe v. Mobil Oil Corp., 167 F. Supp. 2d 155, 166 (D. Mass. 2001) ("[t]he focus of cases 'dealing with intentional infliction of emotional distress has been on the emotional distress of a person *against whom* the extreme and outrageous conduct was directed'") (quoting Nancy P. v. D'Amato, 401 Mass. 516, 520 (Mass. 1988)) (emphasis

added); Hartman v. Banks, 1995 U.S. Dist. LEXIS 12526, *7 (E.D. Pa. Aug. 25, 1995) (According to the Restatement (Second) of Torts § 46, "the conduct at issue must either be directed at the plaintiff or the plaintiff must be present at the time of the conduct").

In addition, Plaintiffs have not alleged a single fact in support of their legal conclusion that "Defendant's acts and omissions have in fact inflicted severe emotional distress on all or some of the Plaintiffs." (Compl. ¶ 59). Nor do Plaintiffs set forth which of them is actually alleging such injury. These shortcomings likewise require dismissal of this claim. See Forest v. Pawtucket Police Dep't., 290 F. Supp. 2d 215, 232 (D.R.I. 2003) (holding no claim of intentional infliction of emotional distress where, among other things, plaintiff's complaint relied on unsupported conclusory assertions of physical ills), aff'd, 377 F.3d 52 (1st Cir. 2004), cert. denied, 125 S.Ct. 1315 (2005); Socha v. Nat'l Ass'n of Letter Carriers, Branch No. 57, 883 F. Supp. 790, 805 (D.R.I. 1994) (mere allegation that plaintiff suffered "severe emotional distress, severe mental anguish and pain and suffering . . . is just the kind of bald assertion that cannot past muster on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)") (internal quotation omitted).

Plaintiffs provide absolutely no facts to support any of the essential elements of a claim for infliction of emotional distress; consequently, the Sixth Cause of Action must be dismissed. See DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard under Rule 12(b)(6)").

## VII. PLAINTIFFS' SEVENTH CAUSE OF ACTION BASED UPON RHODE ISLAND GENERAL LAWS SECTION 23-19.1-22 MUST BE DISMISSED

Plaintiffs' Seventh Cause of Action, based upon Rhode Island's hazardous waste disposal act ("HWMA") pursuant to section 23-19.1-22 (1956) of the Rhode Island General Laws must be dismissed for failure to state a cause of action recognized by Rhode Island law.

It is well settled that this statute does not create a private right of action. See Hotel Assocs., LLC v. HMS Assocs. Ltd. P'ship., 2004 R.I. Super. LEXIS 44, *34 (2004) (refusing to infer a private cause of action in the HWMA). The Rhode Island Supreme Court, in an unpublished order, has opined that the HWMA does not provide for a private right of action. See Stoutenburgh v. Dierauf, No. 90-194-Appeal (R.I. Dec. 13, 1990).

Here, Plaintiffs seek to create a private right of action under this statute where none exists under Rhode Island law. Thus, Plaintiffs' Seventh Cause of Action must be dismissed.

## VIII. PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES MUST BE DISMISSED

Finally, Plaintiffs seek punitive damages for FRGC's alleged improper conduct. (Compl. p. 18, ¶ 1). This demand must be dismissed because Plaintiffs fail to allege any facts to support the imposition of punitive damages.

In order to properly plead a demand for punitive damages, "one must allege that the other party acted 'with the intent to cause harm.' Hence, merely reckless conduct that is not malicious, wanton, or willful is insufficient to support a claim for punitive damages." Hayes v. Don Law Co., 1996 U.S. Dist. LEXIS 22814, *9-10 (D.R.I. June 20, 1996) (quoting Wilson Auto Enters., Inc., 778 F. Supp. at 107); Regan v. Cherry Corp., 706 F. Supp. 145, 153 (D.R.I. 1989).

Here, Plaintiffs have not alleged that FRGC acted with intent to cause harm, with malice or wickedness, or in bad faith. Moreover, the Amended Complaint does not contain a single

factual allegation that supports such a contention. Therefore, Plaintiffs' demand for punitive damages must be dismissed. As the court held in Wilson Auto:

> [Plaintiff] has not alleged facts that would justify punitive damages. In his complaint, [plaintiff] makes the conclusory statement that [defendant] acted 'with wantonness, recklessness, and outrageousness.' He fails, however, to allege malice or an intent to harm others. The Court is not merely pointing out that [plaintiff] neglected to employ particular adverbs: [Plaintiff] has not alleged any facts that would suggest that [defendant] acted with malice -- with an intention to cause harm. By charging [defendant] with wantonness and outrageousness, [plaintiff] alleges gross recklessness, but nothing more.

778 F. Supp. at 107.

Accordingly, Plaintiffs' demand for punitive damages should also be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Dated: August 17, 2005

Respectfully Submitted,
**ADLER POLLOCK & SHEEHAN P.C.**

By: ______________________

John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
1633 Broadway
New York, New York 10019
(212) 506-1700

-and-

**BISHOP, LONDON, BROPHY & DODDS**
Christina Dodds
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, Teas 78701
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a unincorporated division of*
*Southern Union Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2005, a copy of the foregoing was hand-delivered to:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

and a copy of the foregoing was mailed to the following:

David C. Strouss, Esq.
Brad J. Mitchell, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts, Esq.
McRoberts, Roberts & Rainer
51 State Street
Boston, MA 02109

April M Fontana

342479_1.DOC