UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al. | : | |
| vs. | : | C. A. No. 05-221T<br>(Related Case Nos. 05-274T; 05-370T) |
| NEW ENGLAND GAS COMPANY, INC. | : | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

New England Gas Company ("NEGasCo" or "Defendant") submits this reply brief in further support of its motion to dismiss Plaintiffs' First Amended Complaint (the "Amended Complaint").[1] In its moving papers, NEGasCo demonstrated that Plaintiffs' Amended Complaint must be dismissed because it fails to state any cognizable claim. Plaintiffs' opposition does not advance a single argument that compels a different result.

## ARGUMENT

### A. Plaintiffs Fail To Allege Facts To Establish That NEGasCo Owed Any Duty to Plaintiffs

Plaintiffs concede, as they must, that no Rhode Island case has ever held that a purported generator of waste owes a duty of care to a subsequent purchaser of non-neighboring property upon which that waste was allegedly disposed years before the residential development of the property and decades before the occurrence of the alleged injury. Faced with this fatal infirmity of their negligence count, Plaintiffs attempt to conjure up a duty where none otherwise exists by advancing three arguments: (i) that because the alleged harm was foreseeable, a duty must have existed; (ii) that under Rhode

[1] Fall River Gas Company is defined herein as "FRGC."

Island common law an alleged "polluter" owes a duty to anyone damaged by the pollution; (iii) and that Defendant's alleged violation of the Rhode Island waste management statute is evidence of an existing common law duty. (Plaintiffs' Brief ("Pl. Br.") 2-5). Plaintiffs' arguments are without merit.

1. *Plaintiffs' Negligence Claim Would Expand Foreseeability Beyond All Recognized Limits*

Plaintiffs argue that their negligence claim is identical to the negligence claim in Gray v. Derderian, 365 F. Supp. 2d 218 (D.R.I. 2005).[2] Parroting Derderian without any basis in analogous fact, Plaintiffs claim that "Defendant owed a duty of reasonable care to avoid foreseeable risks posed by their hazardous material," (Pl. Br. 3) and that "[i]t was a foreseeable risk that as a result of the Defendant's failure to warn of the hazardous nature of the coal gasification waste it produced and released, there would be an improper use of the material, here as fill in a residential area, resulting in property and other damages." (Id. at 3-4). Yet, Plaintiffs cannot create a duty where none exists. Plaintiffs' argument amounts to little more than an assertion that where an alleged harm is remotely foreseeable, it must therefore give rise to a duty in tort. The law is otherwise.

Rhode Island courts have long held that "[f]oreseeability of injury does not, in and of itself, give rise to a duty" and that "[f]oreseeability must be viewed in conjunction with other factors." See Clift v. Narragansett TV, 1994 R.I. Super. LEXIS 87, * 5 (R.I. Super. Sept. 21, 1994) (citing Ferreira v. Strack, 636 A.2d 682, 688 n. 4 (R.I. 1994)). As the

[2] The facts alleged here are nothing like those alleged in Derderian, where defendant's product was used for the foreseeable purpose for which it had been marketed, and where it was specifically alleged that defendant sold highly flammable soundproofing foam to a nightclub for use as acoustical insulation without warning that it was a severe fire risk. Plaintiffs' resultant injuries, caused when the foam ignited during a pyrotechnics show inside the nightclub, were the direct and proximate result of the alleged failure to warn.

Rhode Island Supreme Court stated in Ferreira, "[i]n no circumstances can foreseeability alone create a duty to act." 636 A.2d at 688 n. 4.

Here, Plaintiffs' negligence count is premised on a foreseeability so remote, and so speculative, that it would extend foreseeability beyond the outermost boundary ever set by a Rhode Island court. FRGC is alleged to have discharged (or to have allowed third, fourth, fifth or sixth parties to have discharged) "contaminated coal gasification waste" -- a by-product of a gas production process in the first half of the twentieth century -- onto private lands owned by others which lands were, at the time of discharge, admittedly "undeveloped" or, at the very least, devoid of Plaintiffs' homes (and of the Plaintiffs themselves). (Plaintiffs' Amended Complaint ("Comp.") ¶¶ 15-18). According to Plaintiffs' strained theory, the legally cognizable harm is not the discharge itself (which, as alleged, could have taken place at any point across a roughly sixty-year window dating back to before the turn of the last century) but, rather, "Defendant's failure to warn of the hazardous nature of the coal gasification waste it produced and released," with the foreseeable result that at some indeterminate time in the distant future "there would be an improper use of the material, here as fill in a residential area, resulting in property and other damages." (Pl. Br. 3-4).

Plaintiffs' theory is factually and legally flawed. First, Plaintiffs concede, as they must, that FRGC's coal gasification waste was allegedly deposited on their land long before the construction of their homes and, with respect to some properties, even before those properties had first been developed for any purpose whatsoever. (Comp. ¶ 17). As a result, the purported "missing" warning could not have been made to these Plaintiffs because they did not own the land, and were not the recipients of the alleged

contaminated waste. Even if the waste haulers (or whoever first put the waste on the properties) had initially been warned not to use the waste as fill on lots with residences when it first left FRGC's control decades ago, FRGC could not have warned these Plaintiffs nor attached a warning to the dirt that is the subject of this case. For this reason alone, Plaintiffs' "failure to warn" negligence theory crumbles under the weight of its own inherent inconsistency.

Second, even assuming that fifty to one hundred years ago, when the waste first left FRGC's control, that FRGC knew (or should have known) that the waste might be deposited on lands that someday (in the indeterminate future) might be developed for residential use, Plaintiffs' allegations nevertheless fail to state a claim because, as a matter of law, FRGC's alleged failure to warn unidentified others decades earlier is too remote in time, person and place to create a duty spanning scores of years from FRGC to Plaintiffs. See Selwyn v. Ward, 879 A.2d 882, 887 (R.I. 2005) ("in order to temper foreseeability . . . an adequate nexus must exist between the foreseeability of [plaintiff's] harm and the actions of the defendant.") (citing Marchetti v. Parsons, 638 A.2d 1047, 1051 (R.I. 1994)); Salk v. Alpine Ski Shop, Inc., 342 A.2d 622, 626 (R.I. 1975) (dismissing failure to warn claim where "plaintiff has completely failed to establish any causal connection between the failure to warn and the injury.").

On these alleged facts, tort liability cannot be expanded beyond traditional bounds to require FRGC to warn an indeterminate number of unknown (and perhaps unborn) future home purchasers when FRGC allegedly disposed of its coal gasification waste fifty or one hundred years ago. See Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987) (when determining the existence of a duty of care, one must consider "the

closeness of connection between the defendant's conduct and the injury suffered."). On Plaintiffs' theory, a farmer in Tiverton in 1776 who burnt coal in his home stove and then disposed of the spent coal in the forest would be liable to all future homeowners who later settled on and developed the forest land. Such a finding would create perpetual liability, expanding duty and foreseeability beyond any recognized limit, and for that reason has long been rejected.

2. *Rhode Island Does Not Recognize A Common Law Duty Running From An Alleged Polluter To A Party Damaged By The Pollution*

Apparently, recognizing they cannot state a cognizable failure to warn claim, Plaintiffs turn to two inapposite cases, Pine v. Shell Oil Co., 1993 U.S. Dist. LEXIS 21043 (D.R.I. Aug. 23, 1993), and Wilson v. Auto Enters., Inc. v. Mobil Oil Corp., 778 F. Supp. 101 (D.R.I. 1991), to support their assertion that "a polluter does owe a duty to a party damaged by the pollution." (Pl. Br. 4). Neither Pine nor Wilson supports the duty urged by Plaintiffs. Pine is distinguishable on two grounds: the identity of the plaintiff, and the nature of the injury. In Pine, Rhode Island's Attorney General and its Director of the Department of Transportation, acting in their capacities as Rhode Island's "environmental advocate" and as *parens patrie* for Rhode Island's citizens, sued a gas station for damage caused when its gas allegedly leaked onto an adjacent property. See id., 1993 U.S. Dist. LEXIS at * 2. Here, unlike a State actor enforcing a generalized duty on behalf of all citizens, Plaintiffs have asserted private claims and must show that FRGC had a duty directly to them, which they cannot do. In addition, unlike in Pine, the theory of liability here is not premised upon a negligent discharge from a leak on Defendant's property that migrated onto *adjacent* property.

Wilson is also factually inapposite; if anything, it strongly supports Defendant's position. The Wilson court held that a former lessee of land does not owe a subsequent purchaser of that land a duty of care, reasoning that "[t]he imposition of such a duty would be unreasonable because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property." Wilson, 778 F. Supp. at 104. As in Wilson, here it is the past owners of the allegedly damaged properties who created or maintained the alleged condition on their properties. Under Rhode Island law, Plaintiffs' predecessor in interest owed no duty of care to any subsequent owners (including Plaintiffs) for allowing the waste to be deposited on their properties in the first place. A fortiori, it necessarily follows that FRGC, which is even more removed in the causal chain than the past owners of the very lots at issue, owed no duty to future purchasers, including Plaintiffs.

### 3. *The Rhode Island Hazardous Waste Management Act Does Not Create An Implied Common Law Duty*

Also without merit is Plaintiffs' contention that FRGC's alleged violation of the Rhode Island Hazardous Waste Management Act ("HWMA")[3] is evidence of Defendant's duty to Plaintiffs.[4] The trial court case upon which Plaintiffs primarily rely, Sanchez v.

[3] R.I. Gen. Laws § 23-19.1-22 (2005).

[4] Preliminarily, R.I. Gen. Laws § 23.19.1-22 does not create a private right of action. (See NEGasCo's Memorandum of Law ("Mem. of Law") 19). Plaintiffs' contention that this well-settled proposition is "an issue of first impression" (Pl. Br. 16-18) is wrong. As set forth in NEGasCo's moving papers, the Rhode Island Supreme Court, in an unpublished order, opined that the HWMA does *not* provide a private right of action. See Stoutenburgh v. Dierauf, No. 90-194-Appeal (R.I. Dec. 13, 1990). Though Stoutenburgh is an unpublished order, it is an irrefutable indication of "the rule the state court would most likely follow under the circumstances." Blinzer v. Marriott International, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). Indeed, even the case that Plaintiffs cite to support their contention that Rhode Island's highest court has not ruled on this issue, Hotel Assocs., LLC v. HMS Assocs. Ltd. P'shp, 2004 RI. Super. LEXIS 44 (R.I. Super. Feb. 20, 2004), held that the HWMA does not provide a private right of action. Thus, Hotel Associates, LLC, although not a decision of Rhode Island's highest court, still provides support for the conclusion that the HWMA does not provide for a private right of action. See Blinzer, 81 F.3d at 1151 (a federal court may "seek guidance in analogous state court decisions" when making "an informed prophecy" of what the state's highest court would do).

Guy, 2004 R.I. Super. LEXIS 201 (R.I. Super. Nov. 23, 2004), held that a "Notice of Violation" can be used as evidence of a defendant's negligence. But here, Plaintiffs do not and cannot allege that FRGC received a "Notice of Violation." Absent such a notice, Sanchez does not support a contention that any alleged violation of the HWMA creates a common law duty of care where none otherwise exists.

For all of the foregoing reasons, and those set forth in NEGasCo's moving papers, Plaintiffs' negligence claim must be dismissed.[5]

B. **Under Rhode Island Law, The Disposal Of Hazardous Waste Is Not An Abnormally Dangerous Activity**

Plaintiffs do not cite to a single Rhode Island case supporting their contention that the alleged disposal of hazardous waste is an abnormally dangerous activity. Instead, they contend that a footnote in a twenty-five year old Rhode Island Supreme Court case "raised the specter" that the storage of hazardous waste could warrant the application of strict liability. (Pl. Br. 7). See Wood v. Picillo, 443 A.2d 1244, 1249 n.7 (R.I. 1982). Significantly, despite the opportunity to extend and apply the doctrine of strict liability for abnormally dangerous activities to the handling and disposal of hazardous waste, the Rhode Island Supreme Court has not done so. See, e.g., Hydro-Mfg., Inc. v. Kayser-Roth Corp., 640 A.2d 950, 958 (R.I. 1994) (declining to apply the rule of strict liability for abnormally dangerous activities to the defendant's handling of TCE).[6] Therefore,

---

[5] Plaintiffs' claim for gross negligence must also be dismissed as Rhode Island does not recognize a cause of action for gross negligence separate and distinct from ordinary negligence. (Mem. of Law 8). Plaintiffs do not refute this well-settled proposition as the two cases upon which they rely are entirely inapposite. In neither Contois v. Town of West Warwick, 865 A.2d 1019 (R.I. 2004), nor in Leite v. City of Providence, 463 F. Supp. 585 (D.R.I. 1978), was the court faced with a situation where, as here, plaintiffs brought simultaneous claims for negligence and gross negligence.

[6] The Court in Hydro-Mfg., Inc. also refused to hold a prior owner of property strictly liable to a subsequent purchaser because plaintiff did not bring the claim "as an injured adjoining landowner or visitor on [defendant's] property." Id. at 958. Surely FRGC, a non-neighboring owner who allegedly polluted the

Plaintiffs' assertion that *other* jurisdictions have held that the disposal of hazardous substances *may* give rise to strict liability is of no consequence.[7] (Pl. Br. 7-8).

Moreover, extending strict liability to the disposal of hazardous materials would be particularly inappropriate here because it is undisputed that both RIDEM and the Environmental Protection Agency ("EPA") have procedures for the safe handling and disposal of these wastes. (See Mem. of Law 11). Indeed, the premise of many environmental laws like RIDEM's Rules and Regulations For Hazardous Waste Management (which incorporate the EPA's federal regulations) governing the disposal of hazardous waste "is that proper handling and disposal of [hazardous] materials minimizes or eliminates the risk of their use." Schwartzman, Inc. v. General Elec. Co., 848 F. Supp. 942, 945 (D.N.M. 1993) (granting motion to dismiss strict liability claim because federal regulations dictate the proper handling of hazardous substances).[8] Indeed, Plaintiffs' Amended Complaint fails to allege facts demonstrating that FRGC's activities could not be performed safely. Accordingly, Plaintiffs' strict liability claim must be dismissed.

---

land long before it was ever developed and purchased by Plaintiffs, likewise does not owe a duty in strict liability to Plaintiffs -- even if such a cause of action were extended to the disposal of hazardous substances.

[7] Contrary to Plaintiffs' assertion, the non-Rhode Island cases they cite do not establish conclusively that the disposal of hazardous waste is an abnormally dangerous activity, but rather that, under the limited circumstances presented, a court *could* find that the activity was abnormally dangerous. See, e.g., Hanlin Group Inc. v. International Minerals & Chemical Corporation, 759 F. Supp. 925, 933 (D. Me. 1990) ("It is therefore *possible that the Maine Law Court would hold* that allegations of negligence are not required in a claim alleging strict liability for chemical contamination resulting from the disposal of hazardous chemicals.") (emphasis added); Daigle v. Shell Oil Co., 972 F.2d 1527, 1545 (10th Cir. 1992) (Shell's generation, storage, treatment and disposal of millions of gallons of liquid hazardous wastes in a ninety-three acre impoundment within one-and-a-quarter miles of a residential neighborhood "*may establish* that Shell engaged in an ultrahazardous activity") (emphasis added).

[8] Further, Plaintiffs' attempt to save their strict liability claim by now arguing that FRGC gave manufactured gas waste "for fill to contractors rather than paying for proper disposal" and by permitting the fill to be used "where there are substantial drinking water resources" (Pl. Br. 10) is improper. Neither factual allegation is contained in the Amended Complaint, nor is either a reasonable inference that can be drawn from the Amended Complaint. See Kachougian v. U.S., 1999 U.S. Dist. LEXIS 18441, * 7 (D.R.I. Sept. 10, 1999) ("In ruling on a Rule 12(b)(6) motion to dismiss, the Court does not look beyond the four corners of the complaint."). In any event, even if these un-pled allegations were taken as true, they create no strict liability claim.

C. **FRGC Is Not Liable To Plaintiffs In Private Nuisance**

A private nuisance action may only be brought by a neighbor of one who has used his property in a manner that materially interferes with a "neighbor's physical comfort or the neighbor's use of his real estate." (Pl. Br. 11). Straining to salvage their private nuisance claim, Plaintiffs argue that an expert witness' testimony in Wood v. Picillo, 443 A.2d 1244, 1247 (R.I. 1982), to the effect that "chemicals present on defendant's property . . . left unchecked, would eventually threaten wildlife and humans well downstream from the dumpsite . . .," supports their claim. (Pl. Br. 11-12). However, the Court in Wood did not even intimate that those located "well downstream from [a] dumpsite" could recover for private nuisance. Id. at 1247.

Even more telling, Plaintiffs do not refute that a private nuisance claim cannot survive a motion to dismiss where, as here, it is not the defendant's use of its own property, but the disposal of waste on property not owned by the defendant that has caused the alleged injuries. (See Mem. of Law 12). Therefore, Plaintiffs' private nuisance claim must be dismissed.

D. **Plaintiffs State No Public Nuisance Claim As They Have Not Suffered An Interference With A Right Common To The General Public**

Plaintiffs have not established that the alleged contamination of their properties has caused an interference with "any interest of [theirs] common to the general public." Iafrate v. Ramsden, 190 A.2d 473, 476 (R.I. 1963). Nor do the cases they cite change this conclusion. In Wood v. Picillo, for example, the harm from the chemical dumpsite maintained by defendant caused or threatened injury not only to neighbors of the dumpsite but also to countless members of the general public, including "wildlife and humans well downstream from the dumpsite." 443 A.2d at 1247. By contrast, the

contamination claimed here is alleged only to have damaged Plaintiffs' private properties. And, in State of New York v. Waterloo Stock Car Raceway, Inc., the public nuisance claim was based on "the cumulative effect of the noise, dust and danger to safety from the operation of the raceway" as it affected "*the community as a whole*." 409 N.Y.S.2d 40, 43, 44 (N.Y. Sup. Ct. 1978) (emphasis added).[9]

Indeed, the Waterloo court's own definition of a public nuisance illustrates why Plaintiffs' claim in this case is untenable: "a public nuisance is an offense to the public of a neighborhood or community in the enjoyment of its common rights, as distinguished from activity which results merely in injury *even to large numbers of persons* in the enjoyment of private rights, not shared by members of the community or neighborhood at large." Id. (emphasis added). Similarly misplaced is Plaintiffs' reliance on Armory Park Neighborhood Ass'n v. Episcopal Community Servs., 712 P.2d 914, 917 (Ariz. 1985), a case that merely suggests that a public nuisance may also "encompass[] any unreasonable interference with a right common to the general public." (Citation omitted). Here, the alleged nuisance is not an unreasonable interference with a common public right but rather an interference with an individual owner's use and enjoyment of his or her private property. Accordingly, Plaintiffs' claim for public nuisance fails as a matter of law.

### E. Plaintiffs' Claim For "Infliction Of Emotional Distress" Is Deficient As A Matter Of Law

Implicitly conceding their Amended Complaint does not support a claim of *intentional* infliction of emotional distress, Plaintiffs now shift ground by contending that

[9] Moreover, Plaintiffs' contention that a "long line of Rhode Island cases" support their public nuisance argument (Pl. Br. 13) is baseless. Neither Payne & Butler v. Providence Gas Co., 77 A. 145 (R.I. 1910) nor Braun v. Iannotti, 189 A. 25 (R.I. 1937), were nuisance cases, and to the extent that they could be so construed, they only address private nuisance.

it sufficiently alleges a claim for *negligent* infliction of emotional distress. (Pl. Br. 15). Even as a negligent infliction claim it remains legally insufficient.

First, as Plaintiffs concede, negligent infliction of emotional distress -- like a claim of intentional infliction of emotional distress -- requires that the plaintiff suffer serious emotional harm accompanied by some physical symptoms of the distress. (Pl. Br. 15). Plaintiffs' Amended Complaint contains no such allegation.[10] Second, Plaintiffs are required -- but fail -- to allege facts sufficient to support their conclusory allegation that the alleged conduct of FRGC was "outrageous," a necessary element of both a negligent and an intentional infliction of emotional distress claim.[11] See Swerdlick v. Koch, 721 A.2d 849, 863 (R.I. 1998).[12] Consequently, Plaintiffs' "emotional distress" claim must be dismissed.

F. **Plaintiffs Have No Claim For Punitive Damages**

Plaintiffs' contention that their allegations of recklessness on the part of FRGC are sufficient to state a claim for punitive damages is contrary to settled law. Regan v. Cherry Corp., 706 F. Supp. 145, 152-53 (D.R.I. 1989) ("reckless conduct alone does not permit the award of punitive damages in Rhode Island."). Indeed, the very cases upon

---

[10] Plaintiffs' negligent infliction claim also fails as a matter of law because the alleged injury is too remote in time and place from the alleged conduct. See Marchetti, 638 A.2d at 1051 ("a temporal and spacial limitation is a necessary and just restraint on foreseeability in order to keep a defendant's liability in proportion to his or her culpability.").

[11] An emotional distress claim can only be based upon conduct that is, at minimum, "so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Norton v. McOsker, 407 F.3d 501, 510 (1st Cir. 2005) (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)). FRGC's conduct as alleged in the Amended Complaint does not come close to satisfying this standard.

[12] Further, even if, as Plaintiffs observe, "property-loss victims . . are entitled to damages for annoyance, mental suffering and anxiety" (Pl. Br. 15), this has no bearing on whether Plaintiffs sufficiently allege a cause of action for either intentional or negligent infliction of emotional distress. Indeed, Hawkins v. Scituate Oil Co., 723 A.2d 771, 773 (R.I. 1999), upon which Plaintiffs rely, concerned the quantum and nature of evidence required to obtain damages for the "interference with or deprivation of a possessory interest in ... [real] property," which the Court distinguished from the evidentiary requirement that must be satisfied to support an emotional distress claim.

which Plaintiffs rely emphasize the "rigorous" nature of Rhode Island's standard for imposing punitive damages: such damages will not be awarded *without* evidence that the defendant acted with the "intent to cause harm." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993) (emphasis added). See also Wilson Auto Enters., Inc., 778 F. Supp. at 107 (denying punitive damages despite plaintiff's allegation that defendant acted "with wantonness, recklessness and outrageousness" because plaintiff "has not alleged any facts that would suggest that [defendant] acted with malice -- with an intention to cause harm.").[13] Here, Plaintiffs' allegations amount at most to recklessness. Accordingly, their demand for punitive damages must be stricken.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: Providence, Rhode Island
November 9, 2005

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

[13] Plaintiffs' reliance on the Supreme Court's examination of punitive damages law in Smith v. Wade, 461 U.S. 30 (1983), is unnecessary and irrelevant given Rhode Island's recent pronouncements on the issue.

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP LONDON BROPHY DODDS**
Christina Dodds
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, Texas 78701
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2005, a copy of the foregoing was hand-delivered to:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

and a copy of the foregoing was mailed to the following:

David C. Strouss, Esq.
Brad J. Mitchell, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts, Esq.
McRoberts, Roberts & Rainer
51 State Street
Boston, MA 02109

*360980_1.doc*