# UNITED STATES DISTRICT COURT
**FOR THE**
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **GAIL, JOHN D. and JOHN F. CORVELLO, et al.** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **C.A. No. 05-0221T** |
| **vs.** | ) | |
| | ) | |
| **NEW ENGLAND GAS COMPANY, INC.,** | ) | |
| | ) | |
| *Defendant* | ) | |

## MEMORANDUM SUPPORTING NON-PARTY RIDEM's MOTION FOR PROTECTIVE ORDER REQUIRING THE RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS

### *Background*

On or about September 29, 2006 Defendant, New England Gas Company, Inc. ("NEGas") served the Rhode Island Department of Environmental Management ("RIDEM"), a non-party to this matter, with a subpoena for documents relating to the manufactured gas plant contamination described in Plaintiffs' complaint. In response to the NEGas subpoena, RIDEM collected and reviewed thirteen boxes of documents containing thousands of pages of records from various programs within the agency that were believed to be responsive to the NEGas request. These documents were reviewed by RIDEM counsel, who identified documents for production as well as documents that, while potentially relevant, would be withheld from production under the assertion of privilege. *See* Affidavit of Brian A. Wagner (the "Wagner Affidavit"), attached hereto as Exhibit A, at ¶4. In an effort to both expedite production in this case and to preserve the work that counsel had invested in reviewing and marking the documents for future use, RIDEM retained the services of an outside contractor specializing in litigation support and document preparation to scan the documents into electronic form and "Bates-


AO 1580706.1

number" the scanned documents for identification. Prior to engaging the contractor, RIDEM segregated from the main group of documents and/or specifically flagged prominently those of its privileged documents so those documents could be easily identified when they were copied for production.

The contractor, Warroom Document Solutions, was instructed to scan the documents into an electronic format, number them and then to prepare two sets of CDs; one set that contained the documents that would be produced to NEGas and another set containing the documents that had been segregated or marked "privileged," which would not be produced and would be used to construct a privilege log. Wagner Affidavit ¶5. Several days later Warroom returned RIDEM's documents along with three CDs of the scanned and numbered documents (a series of CDs containing digital photographs were also duplicated). Wagner Affidavit ¶6. Warroom had labeled one document CD "Privileged," another was marked "Bay Street / Tiverton," and the third was labeled with a Bates number as an individual document. Id. A review of the CDs appeared to indicate that Warroom had complied with RIDEM's copying/imaging instructions. Accordingly, the CD identified as "Bay Street / Tiverton" and the single, Bates-numbered CD containing what RIDEM's counsel believed to be only the non-privileged documents were provided to NEGas. Wagner Affidavit ¶7. Immediately following the production, RIDEM began preparing its log of privileged documents, based on the CD prepared by Warroom, that it intended to withhold and believed had been withheld from production. Wagner Affidavit ¶12.

On November 2, 2006, about one week after receiving the documents produced by RIDEM, NEGas advised RIDEM that it had discovered some apparently privileged documents, immediately stopped its review, and questioned whether the production of these unspecified

documents was intentional. Wagner Affidavit ¶8. Upon receiving the inquiry from NEGas, RIDEM immediately began a review of the electronic documents. Wagner Affidavit ¶9. Because NEGas did not provide the Bates numbers for the documents in question or identify the alleged privileged documents with any specificity, RIDEM began its review with document 00001, as NEGas indicated that it had done, and did not find any privileged materials for the first 200 documents. Finally, at documents 00201, 00202 and later at document 00259, RIDEM's counsel found the documents it believed were referenced vaguely in NEGas's November 2, 2006 letter. Id. Upon review, RIDEM counsel determined that while the documents may be technically privileged communications from counsel, they had not been labeled as privileged because their content amounted to little more than requests to various RIDEM managers to provide RIDEM counsel with documents responsive to the NEGas subpoena. Id.

The next day, November 3rd, RIDEM counsel promptly responded to NEGas by telephone, described the privileged documents that RIDEM had located (Nos. 00201, 00202 and 00259) and informed NEGas that **if** this was the type of privileged material that NEGas had discovered when it claims to have stopped its review, **then** RIDEM was not concerned and that NEGas could assume that these documents had been produced intentionally. Wagner Affidavit ¶10. NEGas never responded to RIDEM's counsel's November 3rd telephone call, did not provide any further or more specific information about the privileged documents in its possession, and did not correct RIDEM counsel's apparent misimpression about the scope of the inadvertently produced documents, leading RIDEM's counsel to conclude reasonably that his understanding of the privileged documents that had been produced was correct and that the matter had been resolved. Wagner Affidavit ¶11.

Consistent with this understanding, on or about November 17, 2006, RIDEM produced a log of privileged documents to NEGas. Wagner Affidavit ¶12. On November 20, 2006, NEGas sent RIDEM a letter informing it that all of the documents identified in the privilege log were included among the documents that had been produced on November 2nd. Wagner Affidavit ¶13. RIDEM immediately responded by letter dated November 22, 2006, stating unambiguously that the privileged documents were produced as a result of contractor error and demanded that the CDs and any copies made therefrom be returned. Wagner Affidavit ¶14. By letter dated November 28, 2006, NEGas replied, refusing to return the privileged material, arguing that RIDEM's production was intentional and that its privileged had been waived. Wagner Affidavit ¶15. NEGas subsequently reaffirmed its position in a letter dated December 1, 2006, and RIDEM reasserted its claim of privilege by letter dated December 4, 2006. Id.

*Argument*

Although there appears to be little case law on record in Rhode Island, most federal courts, including some in the First Circuit, appear to have adopted a totality of the circumstances test to determine whether a production of privileged documents was inadvertent and whether such inadvertence should result in a waiver of any privilege that could be asserted over such documents. *See, Hernandez v. Esso Standard Oil Company, 2006 WL 1967364, Slip Op. at 3 (D.P.R. 2006); United States ex rel. Richard D. Bagley v. TRW, Inc., 204 F.R.D. 170, 176-79 (C.D.Cal. 2001); Amgen, Inc. v. Hoechst Marion Roussel, Inc. 190F.R.D. 287, 292-93 (D.Mass. 2000); Hydraflow, Inc. v. Enidine Incorporated, 145 F.R.D. 626, 637 (W.D.N.Y. 1993); Lois Sportswear, U.S.A. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985).* As adopted by the courts in the First Circuit, the test used to determine whether a release of privileged

documents was inadvertent requires the court to consider the following: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.

An analysis of these factors militates the conclusion that RIDEM's privileged documents were produced inadvertently and in error, there has been no waiver of any privilege, and NEGas must immediately return to RIDEM those documents identified in RIDEM's privilege log. Even them NEGas's counsel risks disqualification based on the fact that it has acquired privileged and confidential information from its review of RIDEM's privileged documents, which can not be disgorged.

1. RIDEM took reasonable precautions to prevent the disclosure of its privileged documents.

Prior to the October 25th production, RIDEM counsel spent numerous hours reviewing thousands of pages of responsive documents and either segregated from the main production or physically marked each privileged document that was to be withheld from production. RIDEM's efforts and intent to maintain privilege is supported by the hundreds of documents that were identified as privileged on the detailed privilege log that was produced to NEGas's counsel on November 17, 2006. Wagner Affidavit¶12. RIDEM would not have gone to the effort necessary to produce a detailed privilege log documenting its assertion of privilege necessary to shield privileged documents from production if it did not intend to assert privilege over the documents that were included on the CDROM marked "Privileged" that should not have been included on the CD that was produced to NEGas's counsel. Wagner Affidavit ¶7. The mere fact

that efforts to prevent the disclosure of privileged materials are unsuccessful does not mean that those efforts were insufficient or unreasonable. *See U.S. ex rel. Bagley, 204 F.R.D. at 179-80.* Instead, the reasonableness of RIDEM's precautions should be viewed from the standpoint of reasonable legal practice, not with 20-20 hindsight. *Id.* RIDEM has not engaged in the kind of negligent practice that courts in other cases have found warrants waiver of its claim to privilege.

2. RIDEM Attempted to Recover its Privileged Documents Immediately Upon Discovery of the Scope of its Inadvertent Production.

Immediately upon receipt of NEGas's November 2nd letter, RIDEM's counsel began an inquiry to determine which allegedly privileged documents had been produced to NEGas. Whether intentional or not, NEGas's letter did not describe the documents that were the subject of its inquiry with any specificity. On November 3rd, RIDEM's counsel called NEGas's counsel and left a voice mail describing the documents that he discovered that were non-substantive and ministerial in nature and over which RIDEM did not intend to assert privilege, which he believed in good faith were the subject of NEGas's November 2nd letter. Wagner Affidavit¶9. If NEGas knew at that time that RIDEM's understanding of the scope of the inadvertent production was incorrect, it never so informed RIDEM's counsel, leading RIDEM's counsel to believe in good faith that the issue had been fully resolved. Id.

On November 20, 2006, following production of its privilege log to NEGas, RIDEM learned for the first time from NEGas that all of its privileged documents had been inadvertently produced. It is unclear when NEGas recognized that all of RIDEM's privileged documents had been produced. Nevertheless, RIDEM immediately contacted NEGas and demanded the return the inadvertently produced privileged documents. Wagner Affidavit¶12. RIDEM acted with

alacrity to first identify the scope of its inadvertent production based on the information that NEGas provided in its November 2nd letter and then to recover its privileged documents when it learned about the full scope of the inadvertent production. This situation is not similar to the situation in *Hernandez* where the erroneous production was not discovered for four months. *Hernandez*, 2006 WL 1967364, Slip Op. at 4.

NEGas's position, as reflected in its correspondence, that RIDEM was on notice on November 2nd about the scope of its inadvertent production is inconsistent with the representations that NEGas made at the time. NEGas claimed that upon discovery of the first few privileged documents it immediately ceased its review of RIDEM's documents "[o]ut of caution, we are notifying you of the foregoing [discovery of potentially privileged documents] and have temporarily ceased further review." NEGas's counsel's November 2, 2006 letter, attached as Exhibit 1 to the Wagner Affidavit. In response to this information, RIDEM's counsel undertook the same page-by-page review as NEGas and acted reasonably when he contacted NEGas's counsel upon his discovery of the first few privileged documents (Bates Nos. 201, 202 and 259), which is what NEGas claims to have done.

If NEGas's representation was true and it ceased its review of RIDEM's documents upon discovery of the first few potentially privileged documents, it would and could not have known on November 2nd of the scope of RIDEM's inadvertent production. This begs the question: when did NEGas discover that privileged documents other than those identified on November 3rd by RIDEM's counsel had been produced? If NEGas knew the full extent of RIDEM's inadvertent production on November 2nd then either (1) it had completed its review of RIDEM's documents and the representation that it halted its review upon the discovery of the first few potentially

privileged documents was false, or (2) its November 2nd letter was intentionally vague and misleading about the nature of the potentially privileged documents it discovered. The more likely scenario is that NEGas itself did not discover the scope of RIDEM's inadvertent production until it received RIDEM's privilege log on November 17th. In that case, there can be no legitimate dispute that RIDEM acted promptly and without delay by immediately demanding the return of its inadvertently produced documents after NEGas advised RIDEM of the scope of the inadvertent production.

3. The Scope of the Production (Approximately 6,300 pages) and the Extent of the Inadvertent Production Militate in Favor of a Finding that the Production was in Error and There has Been no Waiver.

The scope of the production in this case was significant. Thousands of documents had to be reviewed in response to the NEGas subpoena to identify the approximately 6,300 documents that were ultimately produced. Comparatively speaking, the number of documents designated as privileged was fairly small, accounting for approximately 10% if the total production. Furthermore, in order to respond in timely and effective manner, RIDEM opted to try a new (to the agency) technology service that markets itself as highly experienced in just these types of document production efforts. RIDEM's reliance on the expertise of its outside contractor does not rise to a level of negligence sufficient to justify the waiver of privilege. Moreover, that all of RIDEM's privileged documents were produced reflects not a slipshod or negligent review process that might justify a finding that there has been a waiver of privilege but, rather an honest mistake that was made by the contractor in the process of copying the documents and labeling the CDROMs for production.

4. The Overriding Considerations of Fairness and Justice Favor a finding that RIDEM's Documents were Produced in Error and Should be Returned.

Given the facts outlined above and in the Wagner Affidavit attached hereto, the interests of fairness and justice fall in favor of the issuance of a protective order requiring the return of the inadvertently produced privileged documents. RIDEM acted in good faith in identifying its privileged documents, segregating and clearly marking such documents for copying so that they would not be mixed in with the non-privileged documents identified for production, and in promptly seeking the return of its privileged documents immediately upon learning of the scope of its inadvertent production. Moreover, if NEGas knew on November 2nd of the true scope of RIDEM's inadvertent production and intentionally failed to identify specifically the privileged documents it discovered in a way that would have allowed RIDEM to discover its contractor's error, the court should not countenance such game playing and NEGas should not be rewarded for making a less than full and complete disclosure of the facts. Alternatively, if NEGas did not discover the scope of RIDEM's inadvertent production until it received RIDEM's privilege log on November 17th, then there can be no legitimate argument that RIDEM failed to act with alacrity when it demanded the immediate return of its inadvertently privileged documents the next business after it learned of the error.

Moreover, the effect of RIDEM's inadvertent production has been potentially magnified by NEGas, which may have provided RIDEM's privileged documents to a third party unrelated to this action for use in a parallel administrative matter where RIDEM is prosecuting alleged administrative violations. It would be patently unfair and unjust to permit NEGas – and by

extension third parties -- to retain the privileged materials when to do so would prejudice RIDEM in another case in which it has a significant material interest.

5. The Newly Enacted Amendment to Rule 26 of the Federal Rules of Civil Procedure Requires NEGas to Return the Inadvertently Produced Documents or Face Disqualification.

The amendments to Federal Rule of Civil Procedure 26, which became effective on December 1, 2006, require that NEGas return the inadvertently produced privileged documents or face disqualification. Rule 26(b)(5)(B) states:

> If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.

F.R.C.P. 26(b)(5)(B). If the information is not returned, sequestered, or destroyed, disqualification of counsel receiving the privileged documents may be warranted if there is evidence of bad faith. *See Milford Power Ltd. P'ship v. New England Power Co.*, 896 F. Supp. 53, 58-59 (D. Mass. 1995), *see also, Maldonado v. New Jersey*, 225 F.R.D. 120, 138 (D.N.J. 2004) ("Numerous jurisdictions have held that a failure by an attorney to [return privileged documents] is grounds for disqualification.") (citations omitted).

NEGas has been informed unambiguously that RIDEM's production of privileged documents was inadvertent. It has no good faith basis to assert an entitlement to retain and use RIDEM's privileged documents. Moreover, given that NEGas has had RIDEM's privileged documents in its possession since at least November 2nd, there may be no way

for NEGas to disgorge the information that it learned from those documents, leaving disqualification as the only appropriate remedy in this matter.

## *Conclusion*

For the reasons stated herein, RIDEM requests that the Court issue a protective order requiring NEGas to immediately return all documents (and any copies thereof) identified on RIDEM's privilege log and to schedule such further proceeding to determine whether NEGas has shared these privileged documents with any other party and whether the information learned by NEGas's counsel from its review of RIDEM's privileged documents, which it can not disgorge, creates an unfair advantage in NEGas's favor such that the interests of justice require that its counsel be disqualified.

Respectfully submitted,
STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT
By its attorney,

/s/ *Brian A. Wagner*

Brian Wagner, Esq. (R.I. Bar No. 4033)
Deputy Chief Legal Counsel
RIDEM – Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908
Tel. – (401) 222-6607
Fax - (401) 222-3378

***Corvello et al. v. New England Gas Co., Inc., C.A. No. 05-0221T***
*RIDEM's Motion for Protective Order*

**Certificate of Service**

This document has been filed electronically pursuant to "AP for Electronic Filing in the United States District Court for the District of Rhode Island," Admin. Order 2006-01. This document is available for viewing and downloading via the court's Electronic Case Filing System at *https://ecf.rid.uscourts.gov/*.

Service upon the following parties was completed electronically via the ECF system on October 18, 2006, pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

John J. McConnell, Jr.
Robert J. McConnell
MOTLEY RICE, LLC
321 South Main Street
Providence, RI 02940

David A. Wollin
ADLER POLLOCK & SHEEHAN
One Citizen's Plaza, 8th Flr.
Providence, RI 02903

Christina C. Dodds
WATSON, BISHOP, LONDON & BROPHY
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, TX 78701

Eric D. Herschmann
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

/s/ Brian A. Wagner

Service upon the following parties has been made by regular mail, postage prepaid.

Neil T. Leifer
THORNTON & NAUMES
100 Summer Street
Boston, MA 02110

Mark W. Roberts
McROBERTS, ROBERTS & PALMER, LLP
Exchange Place
53 State Street
Boston, MA 02109

______________________
Irene Lennox