UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br><br>*Plaintiffs,*<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>*Defendant.* | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T) |

**NEW ENGLAND GAS COMPANY'S OBJECTION TO RIDEM'S MOTION FOR PROTECTIVE ORDER**

New England Gas Company ("NEGasCo") hereby objects to Rhode Island Department of Environmental Management's ("RIDEM") "Motion For Protective Order Requiring The Return Of Inadvertently Produced Privileged Documents."

The grounds for this objection are set forth in the accompanying memorandum of law.

Dated: January 9, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

/s/ *David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP LONDON BROPHY DODDS**
Christina Dodds
3701 Bee Cave Road
Austin, Texas 78746
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of January, 2007, I did send a true copy of the within document by electronic means (ECF) or email to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>226 River View Lane<br>Centerville, MA 02632 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914<br><br>Gregory Schultz, Esq.<br>Brian Wagner, Esq.<br>RIDEM - Office of Legal Services<br>235 Promenade St., 4th Floor<br>Providence, RI 02908-5767 |

/s/ *David A. Wollin*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br><br>*Plaintiffs*,<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>*Defendant*. | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T) |

**NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO RIDEM'S MOTION FOR PROTECTIVE ORDER**

New England Gas Company ("NEGasCo") submits this memorandum of law in opposition to Rhode Island Department of Environmental Management's ("RIDEM") "Motion For Protective Order Requiring The Return Of Inadvertently Produced Privileged Documents" (hereafter "RIDEM's Motion").

## Preliminary Statement

A party must vigilantly guard against disclosure of its privileged communications, lest it lose the privilege. Having produced 400 pages of purportedly privileged documents to NEGasCo, and then having given NEGasCo a month of unfettered access to review such documents, RIDEM now claims their production was inadvertent and asks the Court to "put the genie back in the bottle." While RIDEM lays the blame for their production at the door of their copying contractor, the facts demonstrate that the production was the result of RIDEM's repeated negligence and inattention before, during

and after the production -- the antithesis of the vigilance required to maintain the privilege. RIDEM's negligence included its failure to carefully instruct a contractor with whom it had no prior experience, RIDEM's failure prior to production to conduct even a cursory review of the compact disc which would have revealed that privileged documents were included throughout the production, and its failure to conduct such a review immediately after its production. While those acts and omissions alone would have been sufficient to effect a waiver, RIDEM's negligence here was more egregious: after receiving a formal, two page letter from NEGasCo's counsel warning that it had located apparently privileged documents in the production and was ceasing further review pending RIDEM's advice, RIDEM conducted the most perfunctory review imaginable and advised NEGasCo's counsel it could proceed to review the remainder of the production (which it did). Then, nearly a month later, after being advised that every document on RIDEM's just produced privilege log was in the production, RIDEM further delayed in filing its protective order motion.

Applying the "totality of circumstances" factors here, RIDEM cannot carry its burden to prove that it acted in a vigilant manner to preserve the privilege. First, RIDEM failed to take reasonable precautions to prevent the disclosure, including failing to conduct the most minimal quality control checks -- any one of which would have caught the glaring error.

Second, RIDEM never caught the error during the month the documents were in NEGasCo's possession, even after NEGasCo's counsel waved a "red flag" before RIDEM warning that apparently privileged documents were included in the production. Even then, RIDEM did not conduct a thorough review, did not ask that NEGasCo cease further

review, and did not demand return of the documents. Instead, RIDEM looked at only a few hundred pages of its 6,300 page production and then stopped. Remarkably, during that review, RIDEM identified at least three documents listed on its privilege log that it then knew had been produced to NEGasCo. Such a discovery would have spurred a producing party acting even with minimal vigilance to take further action to make sure that no other privileged documents were included in the production. But RIDEM made no further investigation. RIDEM advised NEGasCo that it was unconcerned by its discovery of the three documents listed on its privilege log, and gave NEGasCo's counsel the green light to review the remainder of the production. It is hard to envision more conclusive evidence of a waiver.

Third and fourth, the scope and extent of the allegedly privileged production were both very substantial here: the privileged documents comprise 400 pages (or nearly 10% of the production), and the documents were intermingled throughout the production. This is not a case where a very small number of pages accidentally slipped through an otherwise carefully established procedure designed to catch such a mistake. Lastly, the overriding interest in justice and fairness militates in favor of finding a waiver here: under all the circumstances, NEGasCo should be entitled to use highly relevant documents which it has already had nearly one month to review and analyze; and RIDEM should not be relieved of its inexcusable negligence nor rewarded for its regrettable attempt to foist responsibility for its failures on its innocent copying contractor.

## **Background**

In September 2006, Magistrate Judge Martin granted plaintiffs' motion to take expedited discovery including a trial deposition of Jose Souza. In conjunction with that

Order, Judge Martin permitted NEGasCo to issue a limited number of document subpoenas relating to the subject matters of Souza's expected testimony. Pursuant to that Order, on September 29, 2006, NEGasCo served a subpoena on RIDEM seeking documents relating to the alleged contamination in the Bay Street Area of Tiverton, Rhode Island.

Instead of responding to the subpoena, RIDEM moved to quash it. During the course of negotiating a resolution of RIDEM's motion, RIDEM's senior counsel, Brian Wagner, advised that the documents RIDEM would be producing would also be used to satisfy NEGasCo's document requests in the then pending administrative suit brought by RIDEM against NEGasCo also relating to Tiverton. Mr. Wagner said he would personally review and oversee the production of documents to NEGasCo, including the review, segregation and logging of RIDEM's allegedly privileged documents. After NEGasCo agreed to limit the scope of the subpoena and to provide RIDEM with extra time to review the documents for privilege, RIDEM withdrew its motion to quash.

On or about October 19, 2006, RIDEM retained Warroom Document Solutions of Rhode Island, Inc. ("Warroom"), a litigation support firm, which RIDEM had never used before, to handle the Bates numbering and scanning to compact disc of the privileged and non-privileged documents responsive to NEGasCo's subpoena. RIDEM provided to Warroom six boxes of documents, with privileged documents mixed throughout the boxes and flagged as privileged. (See Deposition of Matthew DiFabio "DiFabio Dep." attached as Exhibit 1, at pp. 10, 13-16; see also RIDEM's Motion at pg. 8.) After receipt of the documents from RIDEM, Matthew DiFabio, Warroom's general manager, called RIDEM's Brian Wagner to review and confirm the oral instructions Mr. Wagner had

provided to Warroom employee Kevin Worsham when he picked the documents up from RIDEM. During that conversation, Mr. Wagner repeatedly confirmed to DiFabio that RIDEM wanted Warroom to Bates number both the privileged and non-privileged documents and scan that "master set" onto one disc, and to scan the privileged documents onto a second disc. At the end of their conversation, DiFabio had "no question in [his] mind that [RIDEM] wanted one CD that was going to have all of the documents, including privileged, and one CD that was only going to have privileged [documents]." DiFabio then immediately made a written record confirming the instructions he had received from Mr. Wagner. Warroom then processed the documents and prepared the two discs as they had been instructed by RIDEM. (DiFabio Dep. at pg. 16.)

On October 25, 2006, RIDEM produced to NEGasCo, among other things, a compact disc labeled "BAY ST/TIV," containing 6,300 Bates stamped documents. RIDEM did not produce its privilege log at that time.

On November 2, 2006, counsel for NEGasCo sent a letter to RIDEM's Brian Wagner by e-mail and fax informing him that NEGasCo had:

> [J]ust begun reviewing RIDEM's production (from the first Bates numbered document), and noticed that <u>it includes internal communications with counsel</u> (which may not be privileged for various reasons). Given your extended privilege review, we presume such production was intentional. Out of caution, we are notifying you of the foregoing and have temporarily ceased further review. We request that RIDEM immediately confirm that such production was intentional. As you know, time is of the essence in our preparing for the expedited deposition of Jose Souza. Unless we hear from you by 5:00 p.m. tomorrow, Friday November 3, 2006, we will understand that the production was intentional and will proceed with our review.

(NEGasCo's November 2, 2006 Letter attached as Exhibit 2) (emphasis added).

On Friday, November 3, in response to NEGasCo's November 2 letter, Mr. Wagner left a voicemail message for NEGasCo's counsel. He advised that upon receipt of NEGasCo's letter, he had reviewed RIDEM's production and had identified three documents, Bates stamped 201, 202 and 249, that RIDEM considered attorney-client privileged, but that RIDEM was not concerned that such documents had been produced. Wagner further advised that NEGasCo could resume its review of the remainder of RIDEM's production. After listening to Wagner's message, NEGasCo's counsel proceeded to review and analyze the remainder of RIDEM's production, including all of the documents that are the subject of this motion.

On Friday, November 17, 2006, RIDEM provided NEGasCo with its privilege log. RIDEM's log identified as privileged about 400 of the 6,300 pages of RIDEM's Bates stamped production contained on the BAY ST/TIV disc that NEGasCo had thoroughly reviewed. The first three documents identified on RIDEM's privilege log were Bates stamped 201, 202 and 249 -- the same three privileged documents Mr. Wagner had identified in his cursory review following NEGasCo's written warning.

The next business day, Monday, November 20, 2006, counsel for NEGasCo met with and then wrote Mr. Wagner confirming that RIDEM produced on the BAY ST/TIV disc all of the documents contained on RIDEM's privilege log. NEGasCo also wrote:

> We believe RIDEM has waived any claim of privilege with respect to its documents in two ways: first by producing the documents to [NEGasCo], and second by not conducting a thorough review of its production for privilege after we alerted you to our concerns.

(NEGasCo's November 20, 2006 Letter attached as Exhibit 3.)

In response, on November 22, Mr. Wagner wrote to NEGasCo's counsel claiming that the production of any document identified on its privilege log "was the result of error

by the contractor that performed the bates numbering and scanning services," and demanded the return of the allegedly privileged documents. Mr. Wagner also erroneously added that NEGasCo's letter of November 2, "referenced" specific documents that NEGasCo thought may be privileged. (RIDEM's November 22, 2006 Letter attached as Exhibit 4.)

On November 28, counsel for NEGasCo again wrote Mr. Wagner. NEGasCo first pointed out that, contrary to Mr. Wagner's claim, NEGasCo's November 2 letter did not reference any specific documents as potentially privileged. Rather, it was Mr. Wagner, in his oral response to that letter, who identified three privileged documents included in the production, but whose production he was unconcerned about. NEGasCo also pointed out that RIDEM, having discovered that three privileged documents were included in the first 250 pages of the production, plainly had an obligation to continue its review if RIDEM intended to exercise the vigilance necessary to preserve any privilege:

> By your own account of how the scanning and reproduction process was supposed to occur, we should not have received any privileged documents, including the three you specifically identified. Further, when we told RIDEM in writing on November 2, and you confirmed on November 3, that the production in fact included privileged documents, including the three you specifically identified, RIDEM should have known that for whatever reason we had received privileged documents. Yet, despite this unmistakable "red flag," RIDEM did not review the entire production to determine what additional privileged documents RIDEM produced, did not tell us to halt our review (and, indeed confirmed that it was okay to continue our review) or ask us for return of the production, and did not conduct any further inquiry. We then reviewed the remainder of the production including the approximately 400 pages of privileged documents in the [ ] production.
>
> Against this background, it is clear that whether or not RIDEM's initial production of the documents was "inadvertent" within the meaning of the applicable cases

> (which we do not think is the case), RIDEM's conduct thereafter constituted a waiver of the privilege. Accordingly, [NEGasCo] has no obligation to and will not return the documents.

(NEGasCo's November 28, 2006 Letter attached as Exhibit 5.)

On December 1, NEGasCo again wrote RIDEM inquiring whether or when RIDEM intended to move this Court for the return of the documents at issue. (NEGasCo's December 1, 2006 Letter attached as Exhibit 6.)

On December 7, RIDEM filed its protective order motion.[1]

**Argument**

RIDEM took no precautions, let alone reasonable precautions, to protect its purportedly privileged documents from disclosure. The careless manner with which RIDEM instructed its contractor to prepare its documents for production, RIDEM's failure to review its production before producing it to NEGasCo, and its astoundingly perfunctory review even after NEGasCo notified RIDEM that its production contained apparently privileged communications, demonstrate that RIDEM did not take reasonable precautions to prevent the disclosure, and therefore waived any privilege that may have applied to these documents.

Further, the sheer scope and extent of RIDEM's disclosure to NEGasCo of allegedly privileged documents weighs in favor of a finding that RIDEM's motion should be denied. The interest of justice also compel the conclusion that NEGasCo should have unfettered use of the documents it was permitted to review and analyze for nearly a

---

[1] In its motion, RIDEM falsely asserts that NEGasCo has shared its production with an unidentified third party. (<u>See</u> RIDEM's Motion at pp. 9-10.) As represented to the Court during the conference held on December 20, 2006, NEGasCo has not shared RIDEM's production with third parties. Further, pursuant to the Court's Order of December 20, NEGasCo has submitted to the Court all copies in its possession of the allegedly privileged documents identified on RIDEM's privilege log.

month. RIDEM's woeful failure to protect its purportedly privileged documents from disclosure should not be endorsed or rewarded. For these reasons and those discussed below, RIDEM's motion for protective order for the return or destruction of the allegedly privileged documents should be denied in its entirety.

**Legal Standard**

"The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived." Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000). Where a party claims that documents have been inadvertently produced, it bears "the burden of showing by a preponderance of the evidence that the communications should retain its privileged status." Id., quoting State ex rel. Allstate Ins. Co. v. Gaughan, 508 S.E.2d 75, 95-96 (W. Va. 1998). Thus, here, RIDEM must prove both that the documents at issue are privileged and that it did not waive any purported privilege when it made its production to NEGasCo.[2]

In this Circuit, a so-called "totality of the circumstances" test is most commonly applied in determining whether a producing party's production of privileged documents has resulted in a waiver of any applicable privileges. See Amgen, 190 F.R.D. at 291-93. Under this test, courts typically consider the following: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interest of fairness and justice.

[2] RIDEM's motion fails to address, let alone satisfy, its burden of demonstrating that any of the documents at issue are, in fact, privileged. RIDEM's failure to satisfy this initial burden is reason, in and of itself, to deny RIDEM's motion. In any event, the Court need not reach a document by document analysis should it conclude that a waiver has occurred.

Hernandez v. Esso Standard Oil Co., 2006 U.S. Dist. LEXIS 47738, at *12 (D.P.R. July 11, 2006), citing Amgen v. Hoechst, 190 F.R.D. at 291. Here, every one of these factors strongly weigh in favor of the conclusion that RIDEM waived any privilege that may have applied to the documents in question.

### A. RIDEM Took No Precautions, Let Alone Reasonable Precautions, To Prevent Its Disclosure Of Purportedly Privileged Documents.

RIDEM's Motion ignores its repeated failures to take the most fundamental precautions to avoid production of its privileged documents to its adversary. Instead, RIDEM claims its production of allegedly privileged documents was exclusively due to "contractor error" committed by Warroom. (RIDEM's Motion at pg. 8.) The record, including the deposition testimony of Warroom's general manager, belies that contention.

Contrary to RIDEM's account, the evidence demonstrates that Warroom's general manager, DiFabio, took extra precautions to make sure that he fully understood the instructions of his new client, RIDEM. DiFabio personally called Brian Wagner to confirm that RIDEM wanted Warroom to Bates stamp all of the privileged and non-privileged documents intermingled in the six boxes, and then to create two compact discs, one which was a "master disc" containing all of the documents (including the privileged documents) and a second disc with only the privileged documents. DiFabio "reiterated several times with [Wagner] to make sure" that RIDEM wanted those two discs with those two sets of documents as Warroom's final work product. (DiFabio Dep. at pp. 14-16.)[3] Plainly, RIDEM's attempt now to blame Warroom for RIDEM's production of its

[3] Warroom's contemporaneous documentation of RIDEM's instruction corroborates DiFabio's testimony. Immediately after DiFabio's call with Wagner DiFabio prepared a Warroom document entitled "Special Instructions" for the RIDEM job, which states "Some docs will be marked 'Privileged.' These docs need to be on a separate CD as well as the 1st CD." (See DiFabio Dep. exhibit 3, attached as Exhibit 7.) In addition, the invoice Warroom submitted with the compact discs to RIDEM -- itself a red flag -- states that

privileged documents is contrary to the evidence. RIDEM never asked Warroom to scan just the non-privileged documents to a disc. More importantly, RIDEM never reviewed the BAY ST/TIV disc before producing a copy to NEGasCo; if RIDEM had done so, it would have immediately discovered its error.

Even assuming, contrary to the facts, that a fundamental misunderstanding occurred between DiFabio and Wagner, it is clear that RIDEM took no precautions whatsoever to check that the compact disc it intended to produce to NEGasCo did not contain privileged documents. Obviously, one cannot tell the contents of a compact disc by its label -- one must place the disc in a computer and open it electronically to verify its contents. Here, according to RIDEM, it left to a contractor with whom RIDEM had no prior experience, responsibility for segregating RIDEM's purportedly privileged documents from their non-privileged documents and burning them onto separate discs. (See RIDEM's Motion at pg. 8.) Yet, RIDEM did not even make a cursory review of the discs after they were delivered by Warroom. Had it done so, RIDEM would have quickly seen that every single Bates numbered document on the "privilege disc" was also contained on the disc to be produced to NEGasCo. So, for example, if RIDEM identified at random any Bates numbered page from its privilege disc and then checked to see if that Bates numbered page was included in the disc to be given to NEGasCo, RIDEM would have discovered that the privileged page was in the production. Such a review would have taken less than five minutes. Likewise, if RIDEM simply "paged through" the disc to be given to NEGasCo, it would have seen internal attorney-client communications sprinkled throughout the production. Inexplicably, RIDEM failed to conduct either or

---

Warroom had created one disc with both privileged and non-privileged documents and one disc that was limited to documents identified by RIDEM as privileged. (See DiFabio Dep. exhibit 4, attached as Exhibit 8.)

both of these most basic quality control steps to ensure privileged documents were not produced to NEGasCo.[4]

RIDEM's failure to check Warroom's work product before producing the BAY ST/TIV disc to NEGasCo is remarkably similar to what the court found to constitute "egregious circumstances" resulting in a finding of waiver in Amgen v. Hoechst, 190 F.R.D. 287, a case cited by RIDEM. In Amgen, defendant Hoechst accidentally provided to its contractor for copying one box of privileged documents with 23 boxes of non-privileged documents that were intended to be copied and ultimately produced. Id. at 288-89. When, within five days of making its production, Hoechst realized that the box containing privileged documents had also been Bates stamped and produced, it moved to compel the return of the privileged documents. Id. at 291. The court denied Hoechst's motion, finding that "because Hoechst's attorneys outsourced the copying of the documents to a copy vendor, a knowledgeable attorney or legal assistant should quickly have reviewed the performance of the vendor to ensure that the proper documents were copied," before producing them. Id. at 292 (emphasis added). Hoechst's failure to engage in this basic review, the court held, was unreasonable. Id. at 292-93.

Similarly, in Hernandez v. Esso, 2006 U.S. Dist. LEXIS 47738, at *14, also cited by RIDEM, the court held that Esso's production of a disc that was supposed to contain only non-privileged documents, but in fact contained 1,500 privileged documents, could have been prevented had the producing party engaged in a "quick inspection of the [disk] or part thereof, after it was burned on the disk," but before it was produced. Such a review would "have been sufficient to detect" that the disc contained privileged

---

[4] Indeed, had RIDEM merely opened up the electronic "table of contents" on the BAY ST/TIV disc, it could have seen that documents identified on its privilege log had been included on the disc to be provided to NEGasCo.

documents. Id. at *12-15. Esso's failure to check the compact disc before its production constituted a waiver, and its motion for the return of the privileged documents was denied. Id. at 15-17.

Like the producing parties in Amgen and Hernandez, RIDEM's failure to take the reasonable precaution of simply reviewing the BAY ST/TIV disc before producing it to NEGasCo was inexcusable, and is reason enough to deny RIDEM's protective order motion.

**B. RIDEM's Failure To Promptly Recognize And Address Its Obvious Disclosure Also Compels A Finding Of Waiver.**

RIDEM's failure to use the most basic care and quality control prior to its production is further compounded here by RIDEM's reckless response to NEGasCo's written warning that NEGasCo had identified attorney-client documents in RIDEM's production.

Specifically, when on November 2, 2006, NEGasCo notified RIDEM that it appeared that its production contained privileged documents, RIDEM should have -- but did not -- conduct a thorough review of its production. Instead, RIDEM apparently reviewed only the first few hundred pages of its production, and stopped. (RIDEM's Motion at pg. 3.) While this review was plainly inadequate, it nevertheless confirmed that the first few hundred pages of the production included at least three documents RIDEM had identified internally as "privileged." This "red flag" indisputably placed RIDEM on further notice that the BAY ST/TIV compact disc contained privileged documents. This discovery would have spurred any reasonably diligent party to action, but RIDEM inexplicably failed to conduct any further review. Even at that point, RIDEM did not perform the simple comparison of its privileged documents and the disc

produced to NEGasCo. See New Bank of New England v. Marine Midland Realty Corp., 138 F.R.D. 479, 483 (E.D. Va. 1991) (finding waiver where party failed to take steps to discover other previously overlooked privileged documents divulged after realizing that one privileged document already had been inadvertently disclosed).[5] Instead, RIDEM told NEGasCo to continue its review, resulting in NEGasCo's thorough review of every single one of the privileged documents over a period of weeks.

RIDEM's inattention continued even after issue was joined, when NEGasCo advised that the privilege had been waived and it would not voluntarily return the documents. In letters to RIDEM on November 20, 28 and December 1, NEGasCo expressed the view that it had no obligation to return the allegedly privileged documents. Yet, RIDEM failed to seek relief from this Court until December 7, 2006 -- at least 16 days after NEGasCo declined to return the documents. The speed with which a party asks for the return of mistakenly disclosed material is a factor in deciding whether the disclosure amounts to a waiver of privilege. Atronic Intern v. SAI Semispecialists of Am., Inc., 232 F.R.D. 160, 165 (E.D.N.Y. 2005), citing Ngemi v. Board of Educ. of the City School Dist. of the City of New York, 2005 U.S. Dist. LEXIS 543, at *6 (S.D.N.Y. Jan. 11, 2005); see also Hernandez v. Esso, 2006 U.S. Dist. LEXIS 47738, at *16 (finding three day delay before moving for protective order too long).

---

[5] RIDEM's contention that NEGasCo should have specifically identified what documents it believed were privileged is without merit. (See RIDEM's Motion at pg. 3). Once RIDEM realized that the BAY ST/TIV disc contained at least three documents that appeared on its privilege log, it was incumbent upon RIDEM, not NEGasCo, to determine whether other allegedly privileged documents had been produced. See Evenflo Co. v. Hantec Agents Ltd., 2006 U.S. Dist. LEXIS 74684, at *18 (S.D. Ohio Oct. 13, 2006) (placing burden on disclosing party to identify other privileged documents after being placed on notice of the disclosure of privileged documents).

In sum, RIDEM's failure at every turn to take reasonable and timely steps to protect its documents from disclosure, even after express warning from NEGasCo, compels a finding of waiver here.

### C. Both The Scope And Extent Of RIDEM's Disclosure Require A Finding Of Waiver.

Both the scope and extent of RIDEM's disclosure was very substantial and further militate in favor of a finding of waiver. Out of a production of 6,300 pages, RIDEM has identified 400 pages they now claim were inadvertently produced. While "[a]n occasional inadvertently-produced document would be . . . comprehensible," Amgen v. Hoechst, 190 F.R.D. at 293, here the proportion of RIDEM's disclosure of allegedly privileged documents, dispersed throughout the production, is far too great to be excused. Indeed, the proportion of privileged documents included in RIDEM's production is far greater than that in many cases that have found the scope and extent of the disclosure to have resulted in a waiver. See e.g., Amgen v. Hoechst, 190 F.R.D. at 292 (200 documents out of 70,000 document production [i.e., .3%] deemed sufficient to constitute waiver); Hernandez v. Esso, 2006 U.S. Dist. LEXIS 47738, at *16-17 (finding waiver where 2,000 privileged pages of a 400,000 page production [i.e., .5%] were produced); Evenflo Co. v. Hantec Agents Ltd., 2006 U.S. Dist. LEXIS 74684, at *17 (finding 134 pages out of a total of 10,085 pages [i.e., 1.3%], a "significant" disclosure of privileged documents warranting a finding of waiver).

Moreover, the extent of the disclosure cannot be ignored. Here, NEGasCo had unfettered access to the documents for nearly a month before RIDEM requested their return. During that time, NEGasCo's counsel fully reviewed and analyzed the documents which bear both on this case and on the related pending administrative suit. In essence,

the "genie is out of the bottle," and it is far too late for RIDEM to ask this Court to re-bottle it. See Hernandez v. Esso, 2006 U.S. Dist. LEXIS 47738, at *15 ("[W]here it [is] clear that recognition of the privilege would be an exercise in futility, the privilege [can] properly be deemed waived") quoting Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 15 (D. Mass. 1993).

Thus, both the scope and extent of RIDEM's disclosure demonstrate that its motion for protective order should be denied.

**D. The Interest Of Justice Require A Finding Of Waiver.**

At every turn, RIDEM failed to employ the vigilance necessary to protect its allegedly privileged documents from disclosure. "[I]t would be unjust to reward such gross negligence by providing relief from waiver." Amgen v. Hoechst, 190 F.R.D. at 293. In addition, it would be unjust to NEGasCo to deprive it of the use of highly relevant documents that RIDEM permitted NEGasCo to review and analyze for almost a month. Finally, the interest of justice should not reward RIDEM for blaming an innocent third party contractor for RIDEM's negligence.[6]

[6] Finally, RIDEM's suggestion that NEGasCo's counsel should be disqualified from further representing NEGasCo because of their access to RIDEM's documents (see RIDEM's Motion at pp. 10-11), is nonsense. As an initial matter, RIDEM is not a party to this action; thus, any review of its allegedly privileged documents cannot result in disqualification in this matter. More fundamentally, at all times NEGasCo's counsel acted in accordance with the law and met or exceeded their ethical obligations. Indeed, it was NEGasCo that informed RIDEM of their disclosure in the first place, ceased their review, and awaited instructions from RIDEM.

## Conclusion

For the foregoing reasons, RIDEM's Motion For Protective Order should be denied in its entirety, and NEGasCo should receive the documents in question now held by the Clerk of the Court.

Dated: January 9, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

/s/ *David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP LONDON BROPHY DODDS**
Christina Dodds
3701 Bee Cave Road
Austin, Texas 78746
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of January, 2007, I did send a true copy of the within document by electronic means (ECF) or email to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>226 River View Lane<br>Centerville, MA 02632 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914<br><br>Gregory Schultz, Esq.<br>Brian Wagner, Esq.<br>RIDEM - Office of Legal Services<br>235 Promenade St., 4th Floor<br>Providence, RI 02908-5767 |

/s/ *David A. Wollin*

*404476_1.doc*