# UNITED STATES DISTRICT COURT
FOR THE
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **GAIL, JOHN D. and JOHN F. CORVELLO, et al.** | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | **C.A. No. 05-0221T** |
| **vs.** | ) | |
| | ) | |
| **NEW ENGLAND GAS COMPANY, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |

## REPLY IN SUPPORT OF NON-PARTY RIDEM's MOTION FOR PROTECTIVE ORDER REQUIRING THE RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS

Stripped to its core, New England Gas Company, Inc.'s ("NEGas") argument is that RIDEM's handling of its privileged documents was so deficient that this Court should impose the proverbial death penalty and deem the attorney-client, work product and/or deliberative privileges asserted over the documents in question waived, thereby giving NEGas the ultimate legal windfall - unfettered access to and use of RIDEM's privileged documents. NEGas' argument is unsupported by the facts. Moreover, the equities of the situation dictate that RIDEM's assertion of privilege over its documents be upheld.

First, there is no disagreement that RIDEM painstakingly identified and separated its privileged documents for copying/scanning by WarRoom. Brian Wagner Affidavit ¶ 5; December 21, 2006 Deposition of Matthew DiFabio at 18/18-20, Exhibit 3 (WarRoom's internal written instructions: "some docs. will be marked "privileged." "These docs. need to be on a separate CD as well as on the first CD."). RIDEM's intent with respect to its privileged documents was to have those documents marked by Mr. Wagner as privileged copied separately,

segregated from production and excluded from RIDEM's production to NEGas. RIDEM's intent was undermined by WarRoom's error when it copied the privileged documents onto both disks it provided to RIDEM, thus leaving RIDEM without a production set of documents that contained only its non-privileged documents.

Second, NEGas relies heavily on the testimony of Mr. DiFabio from WarRoom to support its assertion that RIDEM failed to adequately protect its privileged documents from disclosure. Messrs. Wagner and DiFabio disagree over the instructions that WarRoom was provided regarding its handling of RIDEM's non-privileged documents. Mr. Wagner asserts he instructed WarRoom to create two disks, one of which was to include only RIDEM's non-privileged documents that he could produce to NEGas' counsel. This assertion is consistent with his discussions with NEGas' counsel regarding RIDEM's production and RIDEM's obligations under the third-party subpoena served by NEGas. Not surprisingly in light of an obvious mistake having occurred, Mr. DiFabio takes a contrary position. He asserts that Mr. Wagner instructed WarRoom to create one disk with only privileged documents and another disk with both privileged and non-privileged documents. WarRoom's version of the facts leads to the conclusion that RIDEM intentionally instructed WarRoom, to leave RIDEM without a set of non-privileged documents for production to NEGas. This is illogical. The point of Mr. Wagner engaging WarRoom on RIDEM's behalf was to create a set of non-privileged documents for production in response to NEGas' subpoena. Absent NEGas' third-party subpoena and its attendant production requirements, RIDEM had no reason to have its documents copied and scanned. Thus, the argument that RIDEM intentionally left itself without a set of non-privileged documents for production to NEGas is illogical and inconsistent with WarRoom's engagement.

Nevertheless, RIDEM concedes that this disagreement, and likely this entire incident, could have been avoided had Mr. Wagner provided WarRoom with written instructions detailing how he wanted RIDEM's documents copied.

Third, NEGas argues that upon receipt of RIDEM's documents it alerted Mr. Wagner that he may have inadvertently produced privileged documents. At that point, NEGas claims Mr. Wagner and RIDEM were on notice of the potential inadvertent production. NEGas argues further that Wagner failed to immediately recognize the full scope of RIDEM's inadvertent production and waived privilege over its documents. RIDEM concedes that Mr. Wagner could have conducted a more thorough review of the documents that he produced when he received NEGas' November 2, 2006 letter. As regrettable as the situation is, Mr. Wagner's actions do not fall below the standard necessary for this Court to find that Mr. Wagner's efforts to preserve RIDEM's privilege over its documents were so deficient that the privilege(s) asserted over those documents should be waived.

Absent from NEGas' argument is any mention of the efforts RIDEM made to cooperate with NEGas to produce documents in response to its third-party subpoena as quickly as possible, as demanded by NEGas. Further absent from NEGas' argument is any acknowledgment of the fact that RIDEM is a stranger to this litigation and its documents were produced solely pursuant to a third-party subpoena. RIDEM does not raise these points to suggest that a lesser standard should be applied to assess it's efforts to protect its privileged documents. Rather, as outlined below, they help put this issue in its proper perspective.

On November 2nd, following receipt of NEGas' letter regarding NEGas' discovery of vaguely described potentially privileged documents, the safest course of action was for

Mr. Wagner to immediately demand the return of the disk that he provided to NEGas, along with any copies of the documents from that disk. Instead, and in an effort to work cooperatively with NEGas, Mr. Wagner allowed NEGas to keep the disk, while he undertook the same page-by-page review of RIDEM's documents described in NEGas' letter. When he discovered what he thought were the privileged documents described in NEGas' letter (without reference to Bates numbers, dates, author, etc.), he stopped his review, which is what NEGas claimed in its letter to have done. He then called NEGas' counsel and left a voice message. In that call he provided the Bates numbers for the documents he found, which he thought were the documents described in NEGas' counsel's letter and confirmed that NEGas' review could continue given that the documents he discovered, while arguably privileged, did not convey confidential information.

Mr. Wagner's permission to proceed was based on the assumption that NEGas was unaware of any other privileged documents and that the documents described in Mr. Wagner's voice mail message were, in fact, the documents mentioned in NEGas' letter. Had Mr. Wagner known at that time that all of RIDEM's privileged documents were interspersed throughout the approximately 6,000 pages of documents that were on the disk, he would not have allowed NEGas' review to continue. Based on the vague and ambiguous description provided by NEGas in its November 2nd letter of the documents and, more importantly, the process undertaken by NEGas described in that letter, Mr. Wagner attempted to replicate NEGas' actions in an effort to find the allegedly privileged documents. Mr. Wagner's efforts, although far from perfect, do not smack of the negligence alleged by NEGas sufficient for this Court to impose the ultimate sanction and conclude that RIDEM's privilege should be waived.

It was not until November 17, 2006, when Mr. Wagner provided NEGas with RIDEM's privilege log, that NEGas disclosed with any specificity what its review of documents revealed: RIDEM had inadvertently produced all of its privileged documents. At that point Mr. Wagner demanded the immediate return of all of RIDEM's privileged documents. In hindsight, NEGas appears to have laid behind the proverbial log for approximately two weeks, leading Mr. Wagner to believe the privileged documents it found were the non-substantive ones it mentioned in the November 2nd letter, when in fact it knew the production of privileged documents materially differed in scope and nature.

NEGas argues further that RIDEM should be penalized because it did not immediately file a Motion for Protective Order to seek recovery of its inadvertently produced documents. NEGas fails to acknowledge that (1) as soon as RIDEM discovered the full scope of the inadvertent production, it immediately demanded the return of its documents, and (2) RIDEM did not instantly file its Motion because it was trying to work cooperatively with NEGas' counsel to recover its inadvertently produced documents, which is what RIDEM believes this court expects of litigants. RIDEM filed its Motion only after it concluded that NEGas would not return its documents and it exhausted all available non-judicial avenues of redress.

Fourth, the equities of the situation compel a finding that RIDEM has not waived its privilege over the documents in question. RIDEM, as a stranger to this litigation, acted with the utmost good faith in responding to NEGas' third-party subpoena. It produced documents in the time ultimately requested by NEGas and made reasonable efforts to identify its privileged documents, to segregate and clearly mark such documents for copying so that they would not be

mixed in with the non-privileged documents identified for production, and, when it discovered the scope of its inadvertent production, to promptly seek the return of such documents.

In each case cited by NEGas, the party against whom the sanction of waiver was imposed was a party to the underlying lawsuit. In this case, RIDEM is not a party. Should this court find that RIDEM has waived privilege over its documents, the impact of that decision will not be felt by RIDEM directly in this case, but will affect other parties and RIDEM in other proceedings. In this case, the impact will be felt by Plaintiffs whose ability to prosecute their case will be prejudiced and impaired given NEGas' counsel access to RIDEM's internal legal deliberations concerning legal issues at issue in this case. The impact of this Court's decision will also be felt collaterally in an administrative action brought by RIDEM against NEGas's affiliate, Southern Union. Southern Union will garner the ultimate windfall and receive the benefit of access to and use of RIDEM's internal deliberation and communications between and among counsel regarding RIDEM's legal strategy. RIDEM, Plaintiffs herein, and the people of Rhode Island should not be prejudiced in their effort to hold NEGas and Southern Union responsible for the contamination of the Town of Tiverton as a consequence of RIDEM's inadvertent production of documents, which, when discovered, RIDEM made immediate efforts to correct.

Counsel for NEGas argues that because they have had access to RIDEM's privileged documents for at least 30 days, this Court can not put the genie back in the bottle. This argument is equally unavailing. Rule 26 and the Federal Rules of Civil Procedure in part addresses this issue. Had NEGas' counsel played by the rules, Rule 26 as amended on December 1, 2006, would not have allowed their access to RIDEM's documents for 30 days. That rule requires a party who is notified that it has received inadvertently produced privileged documents to

immediately return them to the producing party pending resolution of any issues regarding the alleged inadvertent production. In effect, NEGas' counsel, who willfully failed and refused to comply with RIDEM's demand that they comply with Rule 26 and return the inadvertently produced privileged documents identified on RIDEM's privilege log, asks this court to reward their conduct and allow their client to keep RIDEM's privileged documents. This Court should not countenance NEGas' counsel's conduct. Moreover, despite the fact that NEGas' counsel has already benefited from access to RIDEM's documents, and may have shared this confidential information with others, this Court can and should order and preclude NEGas or its counsel from using any of the confidential information gleaned from those documents. Further, as noted above, this Court's order upholding RIDEM's privilege will also preclude Southern Union, NEGas' affiliate, from using the documents or information gleaned therefrom in defense of the administrative action filed by RIDEM. Finally, should the Court believe that NEGas cannot, in fact, fully disgorge the privileged information that it learned from RIDEM's documents, the Court should consider disqualifying NEGas' counsel.

For these reasons and for the reasons stated in RIDEM's Motion for Protective Order, RIDEM requests that the Court issue an order (1) upholding the privilege asserted by RIDEM over those documents identified in its privilege log, (2) requiring NEGas to immediately return to RIDEM all documents (and any copies thereof) identified on RIDEM's privilege log not already sequestered and in the Court's possession, and (3) requiring NEGas to immediately disclose all persons and entities to whom it (a) provided a copy of any of RIDEM's privileged documents, (b) made any such documents available for inspection, copying or review, or (c)

shared information contained in any such documents, and for such other and further relief as the court may deem appropriate.

Respectfully submitted,
STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT
By its attorney,

/s/ Gregory S. Schultz

Gregory Schultz (R.I. Bar No. 5570)
Susan Wilson (R.I. Bar No. 7278)
RIDEM – Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908
Tel. – (401) 222-6607
Fax - (401) 222-3378

## <u>Certificate of Service</u>

This document has been filed electronically pursuant to "AP for Electronic Filing in the United States District Court for the District of Rhode Island," Admin. Order 2006-01. This document is available for viewing and downloading via the court's Electronic Case Filing System at *https://ecf.rid.uscourts.gov/*.

Service upon the following parties was completed electronically via the ECF system on January 18, 2007, pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

John J. McConnell, Jr.
Robert J. McConnell
MOTLEY RICE, LLC
321 South Main Street
Providence, RI 02940

David A. Wollin
John A. Tarantino
ADLER POLLOCK & SHEEHAN
One Citizen's Plaza, 8th Flr.
Providence, RI 02903

Christina C. Dodds
WATSON, BISHOP, LONDON & BROPHY
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, TX 78701

Eric D. Herschmann
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

Mark W. Roberts
McROBERTS, ROBERTS & PALMER, LLP
Exchange Place
53 State Street
Boston, MA 02109

<u>/s/ Gregory S. Schultz</u>

Service upon the following parties has been made by regular mail, postage prepaid.

Neil T. Leifer
THORNTON & NAUMES
100 Summer Street
Boston, MA 02110

David E. Ross
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

<u>/s/ Gregory S. Schultz</u>