**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. and John F. CORVELLO, et al,

Plaintiffs,

v. C.A. No. 05-221T

NEW ENGLAND GAS COMPANY, INC.,

Defendant;

KEVIN BURNS, et al.

Plaintiffs,

v. C.A. No. 05-274T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS

Defendants;

COLLEEN BIGELOW, et al.

Plaintiffs,

v. C.A. No. 05-370T

NEW ENGLAND GAS COMPANY, formerly known as
FALL RIVER GAS COMPANY, an
unincorporated division of
SOUTHERN UNION COMPANY,

Defendants;

SHEILA REIS, et al.

Plaintiffs,

v. C.A. No. 05-522T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS
Defendants.

**MEMORANDUM AND ORDER**

ERNEST C. TORRES, Senior District Court Judge.

The Rhode Island Department of Environmental Management ("RIDEM"), which is not a party in this case, seeks a protective order regarding allegedly privileged documents that it claims to have inadvertently produced in response to a subpoena duces tecum issued by defendant New England Gas Company, Inc. ("NE Gas"). More specifically, RIDEM seeks return of the documents; an order prohibiting NE Gas from, in any way, using the information contained in the documents; and disqualification of any NE Gas counsel who reviewed the documents.[1] NE Gas contends that the documents are not privileged and that, even if they were, any privilege was waived by RIDEM's failure to properly assert the privilege and by RIDEM's failure to take timely corrective action after learning of the disclosure. For the reasons hereinafter stated, the motion for a protective order is denied.

**Background**

The litigation from which this dispute arises is a suit against NE Gas by a number of landowners in Tiverton, Rhode Island, who claim that their property has been contaminated by coal gasification by-products generated by NE Gas's predecessor and

[1] At oral argument, RIDEM withdrew the request to disqualify counsel.

buried approximately 50 years ago. See Corvello v. New England Gas Co., Inc., 460 F. Supp. 2d 314 (D.R.I. 2006).

In September 2006, RIDEM issued a formal Notice of Violation ("NOV"), alleging that NE Gas, a subsidiary of Southern Union Company, is responsible for contamination of the plaintiffs' property and ordering NE Gas to remediate the site. RIDEM also has commenced administrative proceedings against NE Gas which are pending before RIDEM's Administrative Adjudication Division.

On September 29, 2006, NE Gas served a subpoena duces tecum on RIDEM requesting all documents, reports, and communications in RIDEM's files relating to the alleged Tiverton contamination. RIDEM's then deputy chief legal counsel, Brian Wagner, identified approximately 6,300 pages of relevant documents, 400 of which he states he deemed privileged and marked accordingly.

RIDEM then engaged WarRoom Document Solutions ("WarRoom"), a document processing and management service, to use the Bates stamp system to number the pages and to scan the documents onto computer discs ("CDs"). According to Wagner, he requested that the privileged documents be scanned onto one CD and that the non-privileged documents be scanned onto a separate CD. WarRoom, on the other hand, contends that it was instructed to produce two CDs, one marked "privileged" that contained all documents identified by Wagner as privileged and one marked "Bay Street/Tiverton," that contained both the "privileged" and non-privileged documents.

WarRoom delivered the CDs that it says it was told to produce to Wagner who, on October 25, 2006, provided the "Bay Street/Tiverton" CD to NE Gas's counsel, apparently, without first reviewing its contents.

On November 2, 2006, NE Gas's counsel wrote to Wagner informing him that the CD contained "internal communications with counsel," and that NE Gas had halted its review of the documents pending confirmation from RIDEM that it had intended to produce them. The following day, Wagner responded by leaving a voice mail message indicating his awareness that the Baystreet/Tiverton CD contained two letters from RIDEM's executive counsel requesting records relating to the Tiverton contamination and a letter transmitting various documents to RIDEM's executive counsel bearing Bates numbers 201, 202 and 249 "over which privilege could have been asserted," but he stated that RIDEM was not concerned about those letters; and, if they were the kind of documents NE Gas was referring to, NE Gas could assume that they were produced intentionally.

Approximately two weeks later, on November 17, 2006, Wagner sent a privilege log to NE Gas's counsel (the "first privilege log") listing 104 documents that RIDEM claimed were privileged. It is not clear whether the privilege log was meant as a further response to NE Gas's subpoena or whether it reflected second thoughts by Wagner with respect to the documents on the Bay

Street/Tiverton CD. Nor did that privilege log fully describe the documents or the basis for claiming that they were privileged.

In any event, NE Gas's counsel promptly informed Wagner that all of the documents listed on the privilege log were contained on the Bay Street/Tiverton CD and that they already had been reviewed by counsel for NE Gas. In a follow-up letter sent that same day, NE Gas's counsel took the position that RIDEM had waived any claim of privilege to documents on the CD by providing them to NE Gas and, then, failing to promptly assert the claim of privilege after having been alerted by NE Gas, on November 2, that the CD contained possibly privileged materials.

When NE Gas refused to return the documents listed on the privilege log, RIDEM filed its motion for a protective order. The relief requested in RIDEM's motion and supporting memorandum includes return of the documents; a prohibition against any use of the documents by NE Gas in either this litigation or RIDEM's administrative proceeding and disqualification of any of NE Gas's counsel who have reviewed the documents.

This Court ordered NE Gas to file the Bay Street/Tiverton CD with the Court pending resolution of RIDEM's claim of privilege and, on March 7, 2007, an evidentiary hearing was held for the purpose of addressing the following issues:

1. Whether the documents in question were privileged.

2. If so, whether the privilege had been waived or lost.

3. If the documents were privileged and the privilege had not been waived or lost, what remedy was appropriate.

However, instead of presenting evidence, the parties chose only to argue about whether the previously described events amounted to a waiver of any privilege and, if not, what relief should be granted.

Because it remained unclear whether the documents in question were privileged and because there were serious questions as to whether RIDEM's privilege log sufficiently described the documents for which privilege was claimed, this Court afforded RIDEM an opportunity to submit an amended privilege log further describing the documents and explaining the bases for claiming that they were privileged. This court, also, directed the parties to file supplementary memoranda addressing:

1. Whether this Court should presume (a) that documents in question are <u>not</u> covered by any privilege on the ground that RIDEM's privilege log was untimely and did not sufficiently describe the documents for which privilege was claimed; or, alternatively, (b) that the documents in question <u>are</u> covered by some recognized privilege on the ground that NE Gas never disputed that they were and contended only that the claimed privilege(s) had been waived.[2]

---

[2]At the hearing, RIDEM argued that it asserted the privilege by providing the privilege log which shifted the burden to NE Gas to challenge assertion of the privilege and that, because NE Gas

2. Whether the documents, in fact, are covered by a privilege that insulates them from discovery unless it has been waived.

In response to this Court's prodding, the parties have pared down the number of disputed documents and RIDEM has filed an amended "privilege log" listing the documents still at issue (the "amended privilege log").

## Discussion

### I. Asserting Privilege

One claiming privilege "bears the burden of establishing that . . . [the privilege] applies to the communications at issue and that it has not been waived." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corporation), 348 F.3d 16, 22 (1st Cir. 2003). See also Amgen, Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000)("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived.").

The procedure to be followed by a non party in withholding

---

failed to do so, the Court should presume that the documents were privileged. On the other hand, NE Gas argued that it was not obliged to formally challenge the assertion of privilege because the documents already had been produced when the privilege log was provided and because it had clearly expressed its position that any privilege had been waived.

subpoenaed documents on privilege grounds is set forth in Fed. R. Civ. P. 45(d)(2)(A)[3] which provides:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

As the Rule indicates, one of its purposes is to "provide a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate such a claim and to resist if it seems unjustified." Fed. R. Civ. P. 45 advisory committee's notes (1991). A further purpose is to enable a court to make informed judgments regarding the merits of privilege claims without being required to review what often are voluminous documents and to guess why they may or may not be privileged. Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) ("[T]he assertion of privilege . . . must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim.").

In addition to containing sufficient information supporting a

---

[3]A similar standard is contained in Fed. R. Civ. P. 26(b)(5)(A) which applies to parties and requires that a party claiming privilege must "make the claim expressly and . . . describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

claim of privilege, the claim, also, must be asserted in a timely manner. Marx v. Kelly, Hart, & Hallman, PC, 929 F.2d at 12 (The party asserting privilege must "do so in a timely and proper manner.").

Although the federal rules do not specifically address the subject, the "universally accepted means" of claiming that requested documents are privileged is the production of a privilege log. In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001)(quoting Avery Dennison Corp. v. Four Pillars, 190 F.R.D. 1, 1 (D.D.C. 1999)(Privilege log is necessary for the court to "'perform effectively its review.'")). Like any other means of claiming that requested documents are privileged,

> The privilege log should: identify each document and the individuals who are parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.

United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)(internal citation omitted). The privilege log must include "a detailed description of the documents to be protected 'with precise reasons given for the particular objection to discovery.'". Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994)(citation omitted). The privilege log need not be "precise to the point of pedantry," In re Grand Jury Subpoena, 274 F.3d at 576, but "bald faced assertion[s]" are insufficient. Peat, Marwick, Mitchell &

Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).

A failure by the party claiming privilege to adequately describe the documents at issue, to sufficiently explain the basis for the privilege, or to assert the privilege in a timely manner, may be grounds for rejecting the claim. Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (A party who fails to "provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege" risks rejection of his claim); United States v. Constr. Prods. Research, Inc., 73 F.3d at 473 (rejecting "general allegations of privilege ...not supported by information provided"); Marx, 929 F.2d at 12 (rejecting plaintiff's assertion of privilege as "totally uninformative"). Sometimes, such failure has been termed a "waiver" of the privilege. Dorf & Stanton Commc'n, Inc. v. Molson Breweries, 100 F.3d 919, 923 (Fed. Cir. 1996) (failure to submit "a complete privilege log demonstrating sufficient grounds for taking the privilege" constitutes a waiver of the privilege claim)(internal citation omitted).

Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived or lost, the burden shifts to the opposing party to establish that the privilege does not apply. F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000) ("If the privilege is established and the question becomes whether an

exception to it obtains, the devoir of persuasion shifts to the proponent of the exception."); see also Cavallaro v. United States, 284 F.3d 236, 246 (1st Cir. 2002) (Once the privilege is established, the party challenging it "bears the burden of showing that the privilege is defeated by an exception."). If the party seeking discovery does not promptly challenge a claim of privilege, "the process ends with the claim of privilege *de facto* upheld." PaineWebber Group, Inc. v. Zinsmeyer Trusts P'Ship, 187 F.3d 988, 992 (8th Cir. 1999).

In some cases, resolution of a dispute over whether documents are privileged may require an in camera inspection by the Court. However, in camera inspection is unnecessary where the party claiming privilege has failed to make a prima facie showing that the documents in question are privileged by submitting a privilege log that adequately describes the documents and the basis for the claimed privilege. Unless the privilege log contains sufficient information, opposing counsel would be unable to determine whether the claim of privilege is well founded and, therefore, would be forced to object. As a result, limited judicial resources would be expended in reviewing documents with respect to which no genuine dispute may exist and the Court would be required to make a decision without knowing all of the relevant facts and without the benefit of informed input from opposing counsel. Accordingly, in camera review is not "a substitute for a party's obligation to

justify its withholding of documents" and it "should not replace the effective adversarial testing of the claimed privileges." Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 700 (D. Nev. 1994). See United States v. Zolin, 491 U.S. 554, 571-72, 109 S.Ct. 2619, 2630-31; 105 L. Ed. 469 (1989) (While a court may conduct an in camera review in appropriate circumstances, it is not required to do so merely upon the request of a party).

II. Inadvertent Disclosure as a Waiver of Privilege

NE Gas argues that RIDEM's initial disclosure of the documents listed on the amended privilege log and its subsequent failure to take corrective action amounted to a "waiver" of the claimed privilege. While RIDEM acknowledges that the manner in which it treated the documents was "far from perfect," it maintains that the disclosure was inadvertent and its inattentiveness did not rise to the level that might warrant a "waiver" of privilege.

Generally, waiver is defined as the intentional relinquishment of a known right. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938); see Black's Law Dictionary (7th ed. 1999)("The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it.") Therefore, referring to an inadvertent disclosure of privileged documents as a "waiver" of the privilege appears, at first blush, to be an oxymoron resulting from what the First

Circuit has described as a tendency to use "waiver" as a "loose and misleading label for what is in fact a collection of different rules addressed to different problems" that includes "situations as divergent as an express and voluntary surrender of the privilege, partial disclosure of a privileged document, selective disclosure to some outsiders but not all, and the inadvertent overhearings or disclosures." United States of America v. MIT, 129 F.3d 681, 684 (1st Cir. 1997) (citing McCormick on Evidence, § 93, at 341-48 (J.W. Strong, 4th ed. 1992)). Indeed, a number of courts, citing the importance of protecting privileges, have held that negligence, alone, cannot constitute a waiver and that a subjective intent to relinquish the privilege is required. See Amgen Inc. v. Hoechst Marion Roussell, Inc., 190 F.R.D. at 290 (citing cases).

However, most courts, including the First Circuit, have held that a privilege may be lost or impliedly waived by inadvertently disclosing privileged documents and/or by failing to take prompt corrective action upon learning of the error. See Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995) ("[I]t is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege."); Baxter Travenol Labs., Inc. v. Abbott Labs., 117 F.R.D. 119, 121 (N.D. Ill. 1987) (failure to claim privilege for months after discovering that document had been inadvertently produced deemed a waiver); FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 483 (E.D. Va. 1991)

("[I]nadequate efforts to rectify the error of the inadvertent disclosure supports the conclusion of waiver."); Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., 1996 WL 668862 at *5 (S.D.N.Y. Nov. 19, 1996) (delay of a month before requesting return of privileged documents deemed a waiver).

Beyond that, there is considerable disagreement regarding the circumstances under which inadvertent disclosure amounts to an implied waiver. See e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. at 290 (noting that courts "differ significantly with respect to the effect an inadvertent disclosure of privileged information has on the claim of privilege.")(collecting cases). Alldread v. City of Grenada, 988 F. 2d 1425, 1434 (5th Cir. 1993)("There is no consensus . . . as to the effect of inadvertent disclosures of confidential communications."). Some courts have adopted a "strict accountability" rule under which disclosure waives the privilege "regardless of the privilege holder's intent or inadvertence." Amgen, 190 F.R.D. at 290 (citing cases). Other courts have taken a "middle of the road" approach that looks at the totality of the circumstances. See e.g. Ciba-Geigy Corp. v. Sandoz Ltd. 916 F. Supp. 404 (D.N.J. 1995); Amgen, 190 F.R.D. at 290 (citing cases); Briggs & Stratton Corp. v. Concrete Sales & Service Corp., 176 F.R.D. 695, 699 (M.D. Ga. 1997).

Under the "totality of the circumstances" test, the level of care exercised to prevent disclosure is an important factor. As

one court stated: "[I]t seems clear that gross negligence or recklessness can rise to the level of a waiver, while inadvertent disclosure through mere negligence or misfortune may not rise to this level." FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. at 481; see also VLT Corp. v. Unitrode Corp., 194 F.R.D. 8, 11 (D. Mass. 2000) ("Inadvertent disclosure only constitutes a waiver if, in view of the totality of the circumstances, adequate measures were not taken to avoid the disclosure.")(citing Amgen, 190 F.R.D. at 291).

In particular, in a case markedly similar to this one, it was held that a failure to review documents before producing them, coupled with a three-day delay in filing a motion for a protective order after discovering that some of the documents may have been privileged, constituted a waiver of any privilege. Marrero Hernandez v. Esso Standard Oil Co., 2006 WL 1967364 (D.P.R. July 11, 2006). In another case, a waiver was found where, after being alerted that some of the documents produced were privileged, the party producing them failed to review the remaining documents to determine whether any of them also were privileged. Fed. Deposit Ins. Corp. v. Marine Midland, 138 F.R.D. at 483 ("Given that one privileged document had been inadvertently disclosed, a prudent party would have reviewed the documents produced once again to ensure that other privileged documents were not overlooked.").

III. RIDEM's Privilege Claim

A. Assertion of the Privilege

In this case, RIDEM has not met its initial burden of establishing that the documents in question are privileged because it did not assert any privilege until two weeks after being alerted that the Bay Street/Tiverton CD contained attorney-client communications and because neither of the privilege logs that RIDEM provided satisfies the requirements of Rule 45(b)(2).

The first privilege log states the date on which each document listed was prepared, the identities of most of the individuals by and for whom they were prepared, and the type of privilege claimed. However, meaningful information regarding the contents of the documents or the purposes for which they were prepared is almost entirely lacking. Thus, the log is replete with descriptions such as "E-mail re: soil screening levels," "E-mail - Tiverton matter," unaccompanied by any explanation as to why they are privileged. The lack of information was compounded by the fact that, based on the limited information provided, it seems unlikely that many of the documents are privileged. For example, some of the documents appear, on their face, to be record requests, newspaper articles or communications between third parties for which it is difficult to envision any privilege.

Despite these inadequacies, the documents listed might be deemed privileged if NE Gas failed to register a timely objection,

see Paine Webber Group, Inc., 187 F.3d at 992, but that is not the case. Immediately upon receipt of the first privilege log, NE Gas notified RIDEM that it disputed the claims of privilege. Although NE Gas's objection was based on the contention that any privilege had been waived by RIDEM's delay in asserting the privilege until after NE Gas had reviewed the documents, the objection put RIDEM on notice that its claim of privilege was being challenged and did not, in any way, imply a concession by NE Gas that the documents, otherwise, were subject to any privilege.

The amended privilege log, accompanied by two affidavits, provides more detail than the first privilege log but still lacks sufficient information to support any privilege claim with respect to many of the documents listed. Among other things, the amended log still fails to identify some of the individuals by and for whom various documents were prepared. See e.g., Bates Numbers 463, 482-495, 1158-1159, 1160-1166, and 2218. Other documents for which an attorney-client privilege has been claimed are listed as having been prepared by and distributed to individuals who are not attorneys, see Bates Numbers 464-465 and 680, or distributed to parties outside of RIDEM with no explanation of why they would qualify for any privilege. See Bates Numbers 775-777, 781-789. Still other documents are described simply as being prepared either by the Department of Health and Human Services, see Bates Numbers 1167-1169 and 1170-1186, or one of its consultants, see Bates

Numbers 2244, 2245-2246 and 2247-2248, without any explanation of their content or why they should be considered privileged except to say that they are covered by the deliberative process privilege or that they "contain an opinion, draft, discussion, recommendation, deliberation or evaluation" relating to the NOV issued to NE Gas.

Also, there are many discrepancies between the document descriptions contained in the first log and the amended log. Thus, 45 of the 49 documents identified on the amended log are listed as having been prepared by different persons than those listed as preparers in the first log. Further discrepancies exist between the descriptions contained in the amended log and the affidavits accompanying it. For example, the amended log describes the document bearing Bates Number 790 as an internal RIDEM document prepared by one of RIDEM's assistant directors, but the accompanying affidavit describes it as an E-mail generated by the Governor's executive counsel; the amended log identifies the document bearing Bates Number 781-789 as an e-mail from Andrew Hodgkin, the Governor's executive counsel, to Michael Sullivan, the Director of RIDEM, regarding "progress in settlement discussion with SU," but the supplemental affidavits describe it as an "E-mail from G Coyne," an Assistant Attorney General, to Director Sullivan and others; the document bearing Bates Number 1146 is described in the amended log as prepared by the law firm of Sutherland Asbill & Brennann LLP, but the affidavits describe it as meeting notes taken

by Terrence Grey; and the documents bearing Bates Numbers 1147-1150 are described on the amended log as a "draft letter and engagement document" prepared by Terrence Grey and sent to Michael Sullivan, but the affidavits describe them as communications by Sutherland Asbill & Brennan to Patricia Fairweather, RIDEM's chief counsel.

Finally, one of the documents listed on the amended log as an "NOV" actually is a series of E-mails regarding an NOV issued to Southern Union in a totally unrelated case. See Bates Numbers 791-792.

In short, RIDEM has failed to carry its initial burden of establishing that the documents at issue qualify for any privilege because its privilege logs fail to establish any reliable basis for reaching that conclusion. Moreover, without adequate information regarding the basis for the claimed privileges and without the benefit of knowing whether or why opposing counsel would object if the relevant information had been provided, this Court declines the invitation to review all of the documents in camera in an effort to determine whether they may be privileged. See Bowne of New York City, Inc., 150 F.R.D. at 475 (In camera review is no routine substitute for "a party's submission of an adequate record of its privilege claims.").

B. Loss or Waiver of the Privilege

Even if RIDEM had met its initial burden of establishing that

the documents in question, qualified for some recognized privilege, RIDEM has "waived" or lost any such privilege, at least for purposes of this litigation.

As already noted, a privilege may be "waived" or lost by inadvertent disclosure of documents and/or by failing to take prompt corrective action upon learning of the error, depending on the degree of negligence involved. Here, RIDEM's counsel failed to exercise due care when he provided NE Gas with the "Bay Street/Tiverton" CD without, first, reviewing it. Given the volume of documents involved and counsel's stated belief that the CD did not contain documents that he had previously identified as privileged, that oversight is, somewhat, understandable. However, what is not so understandable was counsel's failure to immediately accept NE Gas's offer to temporarily halt its review of the documents after he was alerted that the documents included at least two "internal communications with counsel" or the two-week delay in furnishing a privilege log especially since counsel states that he had identified the allegedly privileged documents before they were copied by War Room.

The failure to take reasonable precautions in order to prevent disclosure of the documents at issue coupled with the failure to take prompt corrective action after learning of the error resulted in a waiver or loss of any privilege that RIDEM may have had in the documents. Therefore, the only remaining issue is the extent to

which any such privilege has been lost.

III. Remedies for Inadvertent Disclosure

Applying traditional waiver principles to an inadvertent disclosure of privileged documents leads to an all-or-nothing result that is impractical to implement and may prevent fashioning a remedy that properly balances the parties' legitimate interests in how the information may be used.

If the privilege is deemed "waived," all protection for the inadvertently disclosed information is lost and the party to which disclosure was made presumably would be free to use the information, even for purposes unrelated to the litigation, including disseminating the information to others. In addition, the waiver may be viewed as extending to other privileged information on the same subject not already disclosed. Texaco Puerto Rico, Inc., 60 F.3d at 883-84 ("[W]aiver premised on inadvertent disclosure will be deemed to encompass 'all other such communications on the same subject.'") (citations omitted). It is difficult to justify such a harsh result in the typical case where the party to which disclosure was made has no legitimate interest in using the information for purposes unrelated to the litigation. See, e.g., FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. at 481 (strict waiver rule "seems too harsh in light of the vast volume of documents disclosed in modern litigation"); Mendenhall v.

Barber-Greene Co., 531 F. Supp. 951, 955 n.8 (N.D. Ill. 1982)(rejecting "harsh results out of all proportion to the mistake of inadvertent disclosure").

On the other hand, if no waiver is found, the holder of the privilege would be entitled to insist that the party to which the inadvertent disclosure was made be required to return the documents and be prevented from, in any way, using or benefitting from the privileged information. See e.g., Hydraflow, Inc. v Enidine Inc., 145 F.R.D. 626, 639 (W.D.N.Y. 1993)(party directed to "promptly return all privileged documents . . . without retaining any copies, and to avoid making any use of such documents during the future course of this action."). However, that is much easier to say than to do. As a practical matter, once privileged information has been disclosed, it becomes virtually impossible to "un-ring the bell" without unfairly penalizing the recipient of the information for the carelessness of the discloser. This case aptly illustrates the dilemma. As even RIDEM now acknowledges, it would be inappropriate to disqualify NE Gas's counsel because they saw documents provided to them due to carelessness on the part of RIDEM's counsel. Nor is it feasible, as RIDEM asks, to preclude NE Gas from using any information gleaned from the disputed documents in formulating discovery requests or cross examining witnesses. It would be virtually impossible for NE Gas's counsel to distinguish between ideas that may have been prompted by information contained in the

disputed documents and ideas that may have been arrived at independently or for the Court to make such distinctions in attempting to enforce such an order. RIDEM's suggestion that NE Gas be barred from offering any of the documents into evidence also is impractical. Without knowing what document(s) might be offered or the purpose(s) for which they may be offered, this Court cannot rule intelligently on whether the document(s) may be admissible.

Some courts have attempted to adapt waiver doctrine to the circumstances of a particular case and to tailor the remedy to what is necessary to protect the parties' legitimate interests by finding "limited" waivers. This approach works well in cases where the issue is whether the waiver extends to other information on the subject not already disclosed. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corporation), 348 F.3d at 24-25, 29 (holding that waiver by implication does not extend beyond the matter actually disclosed); Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 46, 52 (M.D.N.C. 1987) ("In a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue."); FDIC v. Marine Midland Credit Corp., 138 F.R.D. at 484 ("'The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious a party is attempting to gain an advantage or make

offensive or unfair use of the disclosure.'") (quoting Parkway Gallery, 116 F.R.D. at 52). However, when information already has been disclosed, the limited waiver approach is less satisfactory because it still focuses on the technical question of whether the privilege has been "waived" instead of the practical question of whether any remaining vestiges of the privilege can be preserved in a manner that is consistent with the purposes that the privilege serves but that does not unfairly penalize the opposing party or require the impossible.

Courts adopting the "totality of circumstances" waiver test have attempted to address the issue by including "the overriding interest of fairness and justice" as one of the factors to be considered. See e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. at 291); Marrero Hernandez v. Esso Standard Oil Co., 2006 WL 1967364 at *3; Turner v. Brave River Solutions, Inc., 2003 WL 21418540, *1-2 (D.N.H. June 18, 2003). However, in inadvertent disclosure cases, it seems more useful to abandon the waiver approach and to focus, instead, on devising a remedy that preserves any privilege to the extent that can be done without unfairly penalizing the party to which disclosure was made.

In this case, neither approach would afford the relief requested by RIDEM. If RIDEM had met its burden of establishing that the documents at issue were privileged, this Court would have little difficulty in, at least, requiring that the documents be

returned and/or prohibiting NE Gas from using or disseminating the documents for purposes unrelated to this litigation. However, since RIDEM has not established that the documents are privileged, there is no basis, at this time, for granting any relief.

## Conclusion

For all of the foregoing reasons, RIDEM's motion for a protective order is denied.

IT IS SO ORDERED,

Ernest C. Torres

Ernest C. Torres
Senior U.S. District Judge

Date: 6/27/07