**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **GAIL, JOHN D. AND JOHN F. CORVELLO; et al.,** **Plaintiffs,** | ) | |
| | ) | **C.A. No. 05-221T** |
| **v.** | ) | **(Related Case No. 05-274T)** |
| | ) | |
| **NEW ENGLAND GAS COMPANY, INC.;** **Defendant.** | ) | |

Pursuant to Federal Rules of Civil Procedure Rules 45 and 30(b)(6) the New England Gas Company shall designate one or more representatives who will appear to testify, on its behalf, on the following topics:

1. Stone and Webster Service Corporation's business operations of the Coal Gasification Facilities.

2. Stone and Webster Service Corporation's employees, agents and/or contractors who were responsible for the storage, removal, transport, disposal and/or handling of any Residuals and/or Waste Materials at each of the Facilities.

3. Stone and Webster Service Corporation's policies and procedures for the storage, removal, transport, disposal and/or handling of any Residuals and/or Waste Materials at each of the Facilities.

4. Stone and Webster Service Corporation's contracts and business documents regarding their operations at either or both of the Facilities.

New England Gas Company is further required to produce the documents identified below at the deposition of a designated representative(s), beginning at **10:00 a.m. on August 10, 2007**, before a notary public or other person authorized to administer oaths, at the offices of

**Motley Rice, LLC, at 321 South Main Street Providence, RI 02940** or such other place as the parties mutually agrees.

## GENERAL INSTRUCTIONS

1. The person(s) designated by New England Gas Company to appear to respond to questions regarding the subject matters of this Rule 30(b)(6) deposition shall make reasonable inquiry to educate himself/herself concerning what is known and/or reasonably available to New England Gas Company concerning each matter the person is designated to testify.

2. Pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, you are required to produce all responsive documents that are subject to your possession, custody or control including, but not limited to, documents in the possession, custody or control of your agents, employees, attorneys or representatives.

3. Respond to each request for production of documents in full without abbreviation, expurgation or redaction. As to any request that cannot be responded to completely after reasonable efforts are made to secure the requested documents, so state, give the reasons why a complete response cannot be made at this time, and provide as many documents responsive to the request as is possible.

4. As used in these Requests, "and" and "or" shall be interpreted to mean "and/or" if to do so would cause more documents to be produced.

5. Your refusal to produce any documents under color of a privilege, or your objection to any particular Request herein, shall in no way excuse you from timely production of all other documents requested herein.

6. If, in answering any of these requests, you wish to assert or rely upon a privilege or any rule protecting against disclosure of a document or communication, you may specify such

privilege or other protective order rule in lieu of setting forth the substance thereof. However, in that event, you are hereby required to furnish, with respect to each such document, the following: (i) a statement regarding the basis for any claim of privilege, or other form of non-disclosure; and (ii) a sufficient description of the documents, including (a) the title of the document and the nature and subject matter of its contents; (b) the date the document was prepared or any date appearing on the document; (c) the number of the document's pages, attachments and appendices; (d) the names of the persons who authored or prepared the document, and an identification by employment and title of each such person; and (e) the names of each person to whom the document, or a copy thereof, was sent, shown, or made accessible, or to whom it was explained, together with an identification of each person.

7. Unless otherwise noted, these Requests cover requests information for the period of time Defendant, as defined herein, was operating in Fall River, Massachusetts to the present. To the extent that any answer varies with respect to any part of that period, a separate answer is requested for each such part, with pertinent dates included.

8. In the event that any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, you are requested to furnish a list identifying each document and stating the following information with respect to each document: (i) the title of the document and the nature and subject matter of its contents; (ii) the identity(ies) of the person(s) to whom the document was sent or was intended to be sent; (iii) the date on which the document was prepared or transmitted; and (iv) the date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such destruction or other disposition, and the persons(s) requesting and performing the destruction or other disposition.

9. Each and every non-identical duplicate of a document within the scope of any request, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments or attachment to different documents, or for any other reason, is a separate document to be produced in response hereto.

10. This subpoena and accompanying document request is continuing in nature and, to the extent that your responses may be enlarged or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required to promptly produce supplemental responses reflecting such changes.

## DEFINITIONS

1. The term "Coal Gasification Process" shall mean the process which converts a solid or liquid product from coal, petroleum residue, biomass, or other materials which are recovered for their energy or feedstock value into a syngas composed primarily of carbon monoxide and hydrogen for direct use or subsequent chemical or physical conversion.

2. The term "Complaint" shall mean the Third Amended Complaint dated November 22, 2005, as modified by court order, and any amended or revised complaint which is thereafter filed.

3. "Defendant," "you," and "yours" shall mean Defendant The New England Gas Company, Fall River Gas Company, Fall River Gas Works Company, Tiverton Gas Company, Southern Union Company, Southern Union Gas Company, Inc., and each of its departments, divisions, bureaus, offices, agents, employees, or other representatives, including without limitation, persons presently or formerly acting for or on its behalf in relation to the ownership and/or operation of the Facilities as defined herein.

4. The term "Emergency Moratorium Area" shall mean all of the properties within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road.

5. The term "Facilities" shall mean those properties in Fall River, Massachusetts at which the Defendant engaged in the Coal Gasification Process and includes the properties located at Bay Street, Birch Street, Charles Street and Anawan Street.

6. The terms "oil" and "hazardous substances" shall include any substance deemed to be "Oil" or a "Hazardous Substance" within the meaning of CERCLA, 42 U.S.C. § 9601, and regulations promulgated there under, 40 C.F.R. Part 261; any substance deemed a "Hazardous Waste" within the meaning of RCRA, 42 U.S.C. § 6903(5) and any substance defined as a "hazardous waste" pursuant to the Rhode Island Hazardous Waste Management Act, R.I. Gen. Laws § 23-19.1-4.

7. The term "Residuals" shall mean:

   a. Any liquid or solid substance of the Coal Gasification Process that was sold, traded, or given away by Defendant; or

   b. Any liquid or solid substance of the Coal Gasification Process that was sent off-site for further use.

8. The term "Waste Materials" shall mean any liquid or solid substance produced as a result of the coal gasification process including but not limited to ashes, cinders, filter materials, lead, arsenic, cyanide and other hazardous substances that do not qualify as residuals defined above.

**DOCUMENTS TO BE PRODUCED**

1. Any and all documents identifying and/or memorializing Stone and Webster Service Corporation ("Stone and Webster") responsibilities at either or both of the Facilities at any and all times during the period from 1890 to 1960.

2. Any and all documents identifying the location of documents generated by Stone and Webster related to work they performed at either or both of the Facilities.

3. Any and all documents identifying Stone and Webster's employees, agents and/or contractors who were responsible at any time during the period from 1890 to 1960 for the storage, removal, transport, disposal and/or handling of any Residuals and/or Waste Materials at each of the Facilities.

4. Any and all documents memorializing the dates during the period from 1890 to 1960 when Stone and Webster's employees, agents and/or contractors, were responsible for the transportation of any Waste Material and/or Residual from either or both of the Facilities.

5. All documents identifying Stone and Webster's employees, agents and/or contractors who arranged for Residuals and/or Waste Materials at either or both of the Facilities to be sent to the City of Tiverton, specifically including, but not limited to, the Emergency Moratorium Area of Tiverton.

6. Any and all Stone and Webster's documents memorializing Residuals and/or Waste Materials at either or both of the Facilities sent to the City of Tiverton, specifically including but not limited to the Emergency Moratorium Area of Tiverton.

7. Any and all documents identifying payments rendered by Stone and Webster, including but not limited to contracts, checks or vouchers, to any individual and/or entity for the storage, removal, transport, disposal, or handling of Waste Materials and/or Residuals from either or both

of the Facilities, including, but not limited to, record(s) related to services provided by John K. Simpson, John Simpson, Jr., Alvin Simpson, Jack Bravo and Joseph Ferries or their corporate entities, predecessors, affiliates, successors and/or assigns.

8. All documents describing and/or memorializing any distributions made during the period from 1890 to 1960 by Stone and Webster employees, agents and contractors, from either or both of the Facilities to any other party for the storage, removal, transport, disposal and/or handling of any Residuals and/or Waste Materials at either or both of the Facilities.

9. Any and all documents identifying Stone and Webster's policies and procedures during the period from 1890 to 1960 for individuals and/or entities, including but not limited to employees, agents and contractors, with regard to the storage, removal, transport, disposal and/or handling of any Residuals and/or Waste Materials at each of the Facilities.

10. Any and all documents identifying any of Stone and Webster's employees, agents and/or contractors, who caused a spill, release and/or overfill of Residuals and/or Waste Materials at the Facilities, and the details of each identified spill, release and/or overfill of Residuals and/or Waste Materials.

11. Any and all documents identifying any inspections or testing of Residuals and/or Waste Materials at the Facilities.

12. Any and all documents identifying any Stone and Webster insurance policy that may be available to satisfy a judgment or portion of a judgment rendered in this action, including the policy limits and the forms and endorsements that make up each such policy.

13. Any and all documents identifying any legal actions that have been filed against the Stone and Webster in relation to Waste Materials and/or Residuals allegedly used and/or produced at one or both of the Facilities.

Attorneys for the Plaintiffs Gail, John D. and John F. Corvello, et al,
By their Attorneys

/s/ Robert J. McConnell
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

/s/ Neil T. Leifer
David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

/s/ Mark W. Roberts
Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222
(617)-720-2320 Fax

Dated: June 19, 2007

**Certificate of Service**

I hereby certify that on this 19th day of June, 2007, a copy of the foregoing was served electronically and by first class U.S. mail, postage prepaid, upon counsel of record.

/s/ Mark W. Robert
Mark W. Roberts (MA # 554038)