UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br><br>*Plaintiffs,*<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>*Defendant.* | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T) |

**NEW ENGLAND GAS COMPANY'S OBJECTION TO PLAINTIFFS' MOTION <u>TO MODIFY DISCOVERY ORDER</u>**

New England Gas Company ("NEGasCo") hereby objects to Plaintiff's Motion to Modify Discovery Order. For the reasons set forth in the accompanying memorandum of law, plaintiffs' motion is unfounded and should be denied.

Dated: August 16, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

<u>/s/ *Kristen W. Sherman*</u>
John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
1633 Broadway
New York, New York 10019
(212) 506-1700

-and-

**BISHOP LONDON BROPHY DODDS**
Christina Dodds
3701 Bee Cave Road
Austin, Texas 78746
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a division of Southern Union Company*

-and-

**HINCKLEY, ALLEN & SNYDER**
Gerald Petros (#2931)
Robin Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-7200

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2007, I did send a true copy of the within document by electronic means (ECF) or email to the following:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

Neil T. Leifer
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Paul Revere, III, Esq.
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632

Russell X. Pollock, Esq.
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129

Brian R. Cunha, Esq.
Brian Cunha & Associates, P.C.
904 Broadway
East Providence, RI 02914

/s/ *Kristen W. Sherman*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GAIL, JOHN D. AND JOHN F. CORVELLO, et al.

*Plaintiffs,*

vs.

NEW ENGLAND GAS COMPANY, INC.,

*Defendant.*

C.A. No. 05-0221T
(Related Cases: 05-274T; 05-370T; 05-522T)

**NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY DISCOVERY ORDER**

New England Gas Company ("NEGasCo") submits this memorandum of law in support of its objection to plaintiffs' motion to modify a discovery order of Magistrate Judge David L. Martin. For the reasons set forth below, plaintiffs' motion is unfounded and should be denied.

**Preliminary Statement**

Plaintiffs ask this Court to drastically modify a longstanding Order of Magistrate Judge Martin entered in September 2006 (the "Discovery Order") that provided, among other things, that before plaintiffs take their requested videotaped "trial" deposition of Joseph "Jose" Souza, an 87 year-old who plaintiffs claim has information linking the Fall River Gas Company ("FRGC") to the alleged contamination in the Bay Street Area, NEGasCo must first have the opportunity to take and evaluate Mr. Souza's discovery deposition in this case. Now, plaintiffs argue that since NEGasCo is in the midst of cross-examining Mr. Souza during his deposition in the administrative action brought by

the Rhode Island Department of Environmental Management ("RIDEM"), currently pending in its own Administrative Adjudication Division (the "AAD proceeding"), NEGasCo should be denied the opportunity take Mr. Souza's discovery deposition in this case. In apparent recognition of the impropriety of that proposal, plaintiffs also ask that should this Court permit NEGasCo to take Mr. Souza's discovery deposition, that the deposition be limited to no more than two hours. Finally, while demonstrating no particular urgency of any kind, plaintiffs ask this Court to order that Mr. Souza's deposition be taken immediately.

As detailed below, plaintiffs' motion is ill-conceived for numerous reasons and should be denied. Plaintiffs' motion attempts to restrict NEGasCo's opportunity to examine a key witness about his purported knowledge of the sources of the alleged contamination in the Bay Street Area. Plaintiffs' motion is also an effort to keep NEGasCo from fully investigating how plaintiffs and RIDEM procured Mr. Souza's testimony and demonstrating that Mr. Souza is, unfortunately, significantly impaired and easily susceptible to suggestion.

More fundamentally, plaintiffs' effort to cut off NEGasCo's right and opportunity to depose Mr. Souza is not only contrary to Magistrate Judge Martin's Discovery Order, but is also contrary to a subsequent stipulation between the parties that expressly provides that Mr. Souza's discovery deposition in this case will proceed after his deposition in the AAD proceeding is complete.

Further, plaintiffs' attempt to equate the discovery deposition of Mr. Souza in the AAD proceeding with NEGasCo's intended examination of him in this case is simply wrong. The AAD proceeding, the evidence relevant to that proceeding, and discovery in

that proceeding, are materially different from, and more discrete than, the subject matters, burdens of proof and discovery in this case, As a consequence, Mr. Souza's discovery deposition in this case will be substantially broader than his examination in the AAD proceeding, and will cover a significantly wider array of topics, including, in particular, Mr. Souza’s knowledge of the commercial and residential development of the Bay Street Area, the Town of Tiverton’s role in such development, including the tarring of its roads and the maintenance of dumps in the Bay Street Area, and his knowledge of all of the industries that operated in or near the Bay Street Area, and their waste disposal practices.

Moreover, plaintiffs' motion fails to acknowledge that Mr. Souza’s deposition in the AAD proceeding is in midstream and incomplete. Indeed it is the subject of an appeal pending before the Rhode Island Superior Court. In that appeal NEGasCo is challenging the fundamentally unfair restrictions imposed on NEGasCo’s cross examination of Mr. Souza by the AAD Hearing Officer. Such restrictions include severely limiting the time for NEGasCo to complete its cross-examination of Mr. Souza, and barring NEGasCo's counsel of choice from conducting Mr. Souza’s examination. These fundamental violations of NEGasCo's due process rights are yet another reason why the incomplete Souza deposition in the AAD case is no substitute for NEGasCo's right to conduct a thorough discovery deposition of Mr. Souza in this case.

Also, as demonstrated below, plaintiffs' effort to limit NEGasCo's discovery deposition to no more than two hours ignores the difficulty of efficiently deposing Mr. Souza, whose testimony in the AAD proceeding has been garbled, internally inconsistent and often incomprehensible. It also fails to acknowledge that as a purported key witness, who plaintiffs represent has knowledge on a wide array of topics, NEGasCo should have

a full opportunity to conduct Mr. Souza's deposition, as provided in the Rules of Civil Procedure. Consistent with NEGasCo's practice in the AAD proceeding, NEGasCo will accommodate Mr. Souza in every reasonable way including by taking breaks during the deposition whenever Mr. Souza needs one, and by conducting its discovery deposition over a series of sessions, if necessary.

Finally, while plaintiffs argue that Mr. Souza should not be subjected to the strain of multiple depositions, by asking this Court to order that his deposition move forward "forthwith," plaintiffs all but guarantee that Mr. Souza's discovery deposition and trial deposition will not be his last in this case. As the Court knows, NEGasCo has filed an unopposed motion to join eight third party defendants who NEGasCo submits caused or contributed to the alleged contamination in the Bay Street Area. At Mr. Souza's discovery and trial depositions, NEGasCo intends to ask Mr. Souza about these third-party defendants, their industries and waste disposal practices. Should these depositions proceed before these third-party defendants are added, the third party defendants will no doubt ask for (and likely be entitled to) conduct yet another deposition, or series of depositions, of Mr. Souza in support of their case. *Indeed, plaintiffs have already acknowledged that it is reasonable and appropriate to adjourn the deposition of another elderly fact witness until such time as the third-party defendants are added and can participate.* Thus, if Mr. Souza's discovery and trial deposition were to proceed "forthwith," the result would be further depositions of Mr. Souza.

For these reasons, as more fully demonstrated below, plaintiffs' motion to modify Magistrate Judge Martin's Discovery Order should be denied.

## Background

In light of the allegations contained in plaintiffs' motion regarding the conduct of, and circumstances surrounding, Mr. Souza's deposition in the AAD proceeding, it is necessary for NEGasCo to provide this Court with an accurate account of the events leading up to that deposition as well as what has been revealed during Mr. Souza's AAD deposition.

a. Plaintiffs' Motion to Take the Expedited Deposition of Jose Souza.

Plaintiffs moved to take the expedited videotaped "trial deposition" of Joseph "Jose" Souza, an 87 year-old who they claim is the only known witness who can purportedly link FRGC to the alleged contamination in the Bay Street Area. In support of their motion, plaintiffs submitted a proffer that purportedly recounted Mr. Souza's role in the 1930s and 1940s working for a local trucking company that supposedly hauled waste from an FRGC manufactured gas plant in Fall River to the Bay Street Area. (See Proffer of Joseph "Jose" Souza's Expected Testimony ("Proffer"), attached as Exhibit 1.) Plaintiffs further claimed that given Mr. Souza's age and the purported significance of his testimony, his testimony should be preserved in the event he is not available to testify at trial.

On September 22, 2006, Magistrate Judge Martin granted plaintiffs' motion to take an expedited trial deposition of Jose Souza. Recognizing the need to preserve NEGasCo's fundamental rights, Magistrate Judge Martin also ruled that before that deposition could go forward, NEGasCo would first have an opportunity to conduct a discovery deposition of Mr. Souza, and that the trial deposition would follow 30 days thereafter. As the Rule 16 conference had not yet been held, Magistrate Judge Martin

also granted NEGasCo leave to conduct limited discovery of plaintiffs and of non-parties. (See Magistrate Judge Martin's September 22, 2006 Order (the "Discovery Order") attached as Exhibit 2.)

b. Plaintiffs and RIDEM Procure Mr. Souza's Testimony Under Troubling Circumstances.

Because Mr. Souza was hospitalized for gallbladder surgery and other conditions, his deposition did not take place in the Fall of 2006. During that period however, through the course of discovery, and as set forth in detail below, NEGasCo learned that the Proffer submitted by plaintiffs to support their motion for Mr. Souza's expedited deposition was substantially misleading. NEGasCo also learned that plaintiffs' counsel and RIDEM engaged in a disturbing course of conduct to secure Mr. Souza's testimony, including providing Mr. Souza with: legal advice regarding his potential exposure, a promise of immunity from prosecution by RIDEM, legal counsel free of charge, and securing an (un-sworn) affidavit from him under the most troubling of circumstances.

In particular, NEGasCo learned that contrary to what was in the Proffer, Mr. Souza had, in fact, repeatedly denied to plaintiffs and RIDEM that he had any relevant information -- let alone first-hand knowledge -- of the sources of the alleged contamination in the Bay Street Area. Undeterred by Mr. Souza's repeated denial of any participation in hauling waste from FRGC's plant, plaintiffs and RIDEM showered Mr. Souza and his wife with attention, gifts and entreaties to encourage him to testify in a way helpful to his neighbors who are plaintiffs in this case. (See e.g., Plaintiffs' Fourth Supplemental Response To Interrogatories ("Pl. Int. Resp.") at pp. 7-10, attached as Exhibit 3.)

In the months following Mr. Souza's hospitalization, his son, Jose Souza Jr. ("Souza Jr."), acting pursuant to his father's request as his agent, asked plaintiffs and NEGasCo to refrain from contacting his father. Unbeknownst to NEGasCo, plaintiffs and their counsel -- unlike NEGasCo -- did not heed that request. Instead, they worked behind the scenes to procure Mr. Souza's testimony.

In December 2006 and January 2007, Souza Jr., after repeatedly consulting with his father, advised plaintiffs' counsel by e-mail that his father "was 'never' involved with or in a truck that was involved in" trucking waste from any FRGC facility to the Bay Street Area. (See E-Mail from Souza Jr. to Robert McConnell, dated December 8, 2006, attached as Exhibit 4.) In response, plaintiffs' counsel sought to lock Mr. Souza into a story by referencing the Proffer, claiming that it accurately recounted what Mr. Souza had told them. But Souza Jr. reviewed the Proffer with his father and again told plaintiffs' counsel: "The information my Dad is giving me [is] almost [the] opposite of what is written" in the Proffer. (See E-Mail from Souza Jr. to Robert McConnell, dated December 22, 2006, attached as Exhibit 5.) And, on January 11, 2007, Souza Jr. told plaintiffs' counsel: "[O]nce again my father has reiterated to me a very limited involvement in this situation contrary to your" Proffer. (See E-Mail from Souza Jr. to Robert McConnell, dated January 11, 2007, attached as Exhibit 6.)[1]

Upon learning that their Proffer to this Court was inaccurate, plaintiffs' counsel did not notify the Court or defense counsel. Instead, plaintiffs continued to pursue Mr. Souza as their only witness. As part of that campaign, plaintiffs enlisted RIDEM to make

[1] Souza Jr. has since testified that he lied when he made these representations, and that he routinely lies when it suits his purposes. Souza Jr. also testified that the only time in his life when he felt compelled to tell the truth was during his deposition. (Deposition of Jose Souza Jr., dated March 7, 2007 ("Souza Jr. Tr.") at pp. 67-68, attached as Exhibit 7.)

inducements to Mr. Souza and his family so that he would implicate himself and FRGC in purportedly dumping allegedly contaminated waste all over the Bay Street Area. In that regard, RIDEM's General Counsel sent the Souzas a letter granting the Souza family immunity, promising that if Mr. Souza implicated himself and FRGC, RIDEM "will not bring any action against you or your family for liability." (RIDEM Letter to Souza Jr., dated January 13, 2007, attached as Exhibit 8.)

Plaintiffs' and RIDEM's campaign to procure testimony implicating FRGC did not stop there. Plaintiffs' counsel, notwithstanding the apparent conflict of interest in doing so, also provided the Souza family with a "legal opinion" that after a review of the pertinent laws dealing with corporations, employees and hazardous waste clean-up, they do "not believe that [Mr. Souza] face[s] any legitimate liability resulting from this matter." Plaintiffs also promised Mr. Souza and his family that if Mr. Souza is sued in connection with this matter, plaintiffs will supply counsel for him at no charge. (See Motley Rice Letter to Souza Jr., dated January 22, 2007, attached as Exhibit 9.) Though Mr. Souza has not been sued, plaintiffs have since provided him with free counsel at least in part so NEGasCo's counsel could not contact and interview Mr. Souza.

The campaign went even further. In late January 2007, plaintiffs' counsel and RIDEM's General Counsel procured an affidavit from Mr. Souza under troubling circumstances. As recounted by Souza Jr. during his deposition, two of plaintiffs' counsel and RIDEM's General Counsel met with Mr. Souza at Souza Jr.'s home. They tendered an affidavit for Mr. Souza's signature that not only flatly contradicted Souza Jr.'s repeated denial of his father's role in this matter, but which embellished upon the Proffer. Souza Jr. testified that he was not present during any substantive discussions that may

have taken place when counsel met with his father in his living room. He also testified that *his father is easily manipulated and often confused, and prone to exaggeration*. Nevertheless, the three lawyers prepared and then handed an affidavit to Souza Jr. who briefly perused it and then told his father "to sign it." *No one swore the witness, no one read the affidavit to him and Mr. Souza, who did not have his glasses, did not read it before signing it at his son's direction*. (See Souza Jr. Tr. at pp. 81-82, 157, 184-193.)[2] When asked why Souza Jr. permitted plaintiffs and RIDEM to obtain the affidavit and the promise of his father's testimony, Souza Jr. replied that plaintiffs and RIDEM had given him what he wanted -- the immunity letter, the opinion letter and free counsel -- so he gave them what he wanted -- his father's affidavit.[3]

c. Plaintiffs and RIDEM Notice Mr. Souza's Deposition; Plaintiffs' Agreement with NEGasCo Regarding Same.

Within days of procuring the suspect affidavit, and to NEGasCo's surprise, plaintiffs and RIDEM each noticed Mr. Souza's deposition. NEGasCo filed protective order motions in each case citing, among other things, the suspicious circumstances surrounding the procurement of Mr. Souza's testimony and the affidavit. The Hearing Officer in the AAD proceeding, however, ordered that Mr. Souza's deposition commence immediately following the conclusion of the hearing on that motion. The Hearing Officer compelled one of NEGasCo's counsel, Gerald Petros, to attend and begin the cross

[2] Plaintiffs (and possibly RIDEM) procured a third signed statement from Souza that has still not been produced. (See Souza Jr. Tr. at pp. 16-17.) Nor have plaintiffs or RIDEM detailed the circumstances surrounding the execution of that statement.

[3] Mr. Souza has already denied the truth of several statements in that affidavit.

examination of Mr. Souza without the benefit of any preparation whatsoever, and without allowing time for NEGasCo's intended counsel to get to the deposition.[4]

In this case, plaintiffs did not oppose NEGasCo's protective order motion. Instead, plaintiffs' counsel and NEGasCo's counsel entered into a written stipulation providing that, among other things, NEGasCo's discovery deposition, as provided in Magistrate Judge Martin's Order, shall take place "a reasonable time, not to exceed 21 days (subject to the witness's availability), after the completion" of Mr. Souza's deposition in the AAD proceeding, and that Mr. Souza's "trial deposition" take place "no more than 30 days after the completion of defendant's discovery deposition of Mr. Souza." (See E-Mail Exchange Between David Ross and Robert McConnell, dated February 23, 2007, attached as Exhibit 10.) (emphasis added).

d. RIDEM's Deposition of Jose Souza.

On February 15, 2007, Mr. Souza's deposition in the AAD proceeding began at the home of Janice Carroll, a plaintiff in this lawsuit who has visited or spoken with Mr. Souza at least 10 times, often bearing gifts and urging him to testify to a set of facts that would "help" his neighbors. (See Pl. Int. Resp. at pp. 7, 9; see also Deposition Testimony of Janice M. Carroll, dated March 7, 2007 at pg. 80, attached as Exhibit 11.)

From the outset, Mr. Souza's testimony revealed that he is confused and significantly impaired, not only making him challenging to depose, but also raising serious questions about his competence as a witness, and his vulnerability to suggestion. When Mr. Souza's deposition continued on March 8, his mental confusion, lack of recall

[4] Because the Hearing Officer provided NEGasCo with only 20 minutes notice that Mr. Souza's deposition would go forward on February 15, 2007, Eric Herschmann -- Southern Union's primary litigation counsel for the last ten years, who was supposed to handle Mr. Souza's deposition in the AAD proceeding -- was not present.

and reliability was evident. It was also evident that a very old man's mind is sadly impaired, and his "memories" appear to be so confused that Mr. Souza cannot distinguish what truly happened 70 years ago from what plaintiffs' and RIDEM's counsel may have discussed with him weeks earlier. Indeed, Mr. Souza's memory is so compromised that he could not recall signing the affidavit in his son's living room a few weeks earlier. (See Deposition Testimony of Joseph "Jose" Souza, dated March 8, 2007 ("3/8/07 Tr.") at pp. 10-13, attached as Exhibit C to Plaintiffs' Motion.) Nor could Mr. Souza identify the day or month on which his deposition was being taken, variously describing that March date as a day in February and then January of 2007. (See 3/8/07 Tr. at pp. 11, 21-22.)

Mr. Souza's unreliable, inconsistent and confused testimony began with the first question posed by RIDEM. For example, Mr. Souza could not recall basic autobiographical information like his date of birth (see Deposition Testimony of Joseph "Jose" Souza, dated February 15, 2007 ("2/15/07 Tr.") at pg. 18, attached as Exhibit B to Plaintiffs' Motion), or whether he graduated from high school or left school in the eighth grade. (2/15/07 Tr. at pg. 21.) Mr. Souza's testimony of events from 70 or more years ago -- the same time period for which Mr. Souza has been offered to testify -- shows that he is not a reliable witness, and may not even be sufficiently competent to testify at trial. As Mr. Souza himself acknowledged, he simply cannot accurately remember things from so long ago. For example, Mr. Souza could not recall whether he enlisted a year before or just after the attack on Pearl Harbor -- a seminal marker date in the lives of that generation. (See 3/8/07 Tr. at pp. 66-69.)

Further, while it is central to plaintiffs' and RIDEM's reason for deposing Mr. Souza, he could not recall from one minute to the next whether or when he may have

worked for a trucking company that allegedly did hauling work for FRGC. On several occasions, Mr. Souza recounted his entire work history without ever mentioning having ever worked for any trucking company ever in his life. (See, e.g., 3/8/07 Tr. at pp. 23, 38-42.)[5]

After some 90 minutes of testimony interrupted by two breaks to accommodate the witness, at Mr. Souza's request the second session of his examination in the AAD proceeding was adjourned. Mr. Souza and the parties agreed to schedule the completion of Mr. Souza's deposition for a date that was convenient for Mr. Souza.

e. RIDEM's Motion for Protective Order and The Ensuing Order.

After agreeing to continue the Souza deposition, RIDEM moved for a protective order seeking to terminate NEGasCo's cross-examination. RIDEM argued that the Hearing Officer should take this extraordinary step because NEGasCo did not examine Mr. Souza about his purported knowledge of the materials allegedly brought to the Bay Street Area, but instead "wasted" his time asking him harassing and oppressive questions. In the alternative, RIDEM moved to have the Hearing Officer preside over the remainder of Mr. Souza's deposition or that the deposition be limited to no more than an additional 30 minutes. NEGasCo opposed RIDEM's motion on numerous grounds.

[5] Mr. Souza's testimony also included statements un-tethered from reality. For example, Mr. Souza's testimony included non-sequiturs, as illustrated by his answer to a question regarding how long it took him, in the 1930s, to build the still extant Bay View Holy Ghost Social Club (where he claims he was the president at the age of 15):

Q: So at some point after you got off work you built the club?

A: I worked there, yes. We had no money so we had to work to build the club. Secret Service. Oh, God Almighty, I don't know. Why couldn't you come 15 years ago?

(3/8/07 Tr. at pp. 85-86, 98.)

On May 15, 2007, without any support in the record, the Hearing Officer ordered that NEGasCo's cross-examination of Mr. Souza be limited to no more than an additional 90 minutes, including at least one built-in break of up to 15 minutes. This meant that NEGasCo's examination of the key witness in the case was to be limited to some 3 hours. In addition, the Hearing Officer, sua sponte, barred NEGasCo's counsel, Eric Herschmann -- who has been Southern Union's primary litigation counsel for more than a decade and who represented NEGasCo at the March 8 session of Mr. Souza's deposition -- from completing Mr. Souza's cross-examination.[6]

Given the arbitrary and capricious nature of the Hearing Officer's decision, NEGasCo has appealed same to the Superior Court. The appeal has been fully briefed.[7]

f. NEGasCo's Motion for Leave to File and Serve a Third-Party Complaint.

On July 10, 2007, NEGasCo moved this Court for leave to file and serve a third-party complaint naming the following 8 third-party defendants as parties who have caused or contributed to the soil contamination in the Bay Street Area: Bridgestone Firestone North America Tire, LLC; Bridgestone Americas Holdings, Inc.; Honeywell International, Inc.; the Town of Tiverton, Rhode Island; Gulf Oil Corporation; Inland Fuel Terminals, Inc.; Dominion Resources, Inc. and Dominion Energy Brayton Point LLC. (the "Third Party Defendants") (See Dkt. No. 211.) Plaintiffs have filed no opposition to NEGasCo's motion which is *sub judice*.

---

[6] This drastic sanction -- which denies NEGasCo counsel of its own choosing -- was imposed because the Hearing Officer viewed an exchange between Attorney Herschmann and RIDEM's counsel as "intemperate and unprofessional." In fact, as the transcript of the March 8 deposition session makes clear, the exchange at issue was prompted by RIDEM's counsel, who, instead of making concise objections to questions posed by Attorney Herschmann, engaged in lengthy speaking objections, and at one point attempted to unilaterally terminate the deposition.

[7] RIDEM has moved before the Hearing Officer to complete the deposition of Mr. Souza. NEGasCo has opposed that motion citing the appeal of the Hearing Officer's May 15, 2007 Order, which is currently pending in the Superior Court. Oral argument on RIDEM's motion is scheduled for September 12, 2007.

g. Plaintiffs' Motion to Modify Magistrate Judge Martin's Discovery Order.

On July 30, 2007, plaintiffs moved to modify Magistrate Judge Martin's Discovery Order which provides that NEGasCo may take a discovery deposition of Jose Souza, which shall be followed, within 30 days, by a trial deposition of Mr. Souza.

**ARGUMENT**

Plaintiffs now contend that NEGasCo should be denied their right to conduct a thorough discovery deposition of plaintiffs' sole eye-witness because Mr. Souza has been examined by NEGasCo for 90 minutes in the AAD proceeding. Plaintiffs ask in the alternative that, should NEGasCo be permitted to conduct its discovery deposition, such deposition be limited to two hours. Finally, plaintiffs ask that any discovery deposition of Mr. Souza be conducted "forthwith." Plaintiffs' motion is ill-founded for a number of reasons.

As a preliminary matter, plaintiffs' application not only asks this Court to modify the Discovery Order, but also asks this Court to revise a binding agreement entered into between plaintiffs and NEGasCo on February 23, 2007, which provides, in no uncertain terms, that Mr. Souza' discovery deposition in this proceeding shall take place after the completion of Mr. Souza's deposition in the AAD proceeding. Plaintiffs are bound by this agreement. See T I Federal Credit Union v. DelBonis, 72 F.3d 921, 928) (1st Cir. 1995) (noting that "litigation stipulations" are analogous to "binding contracts," for which the parties "are not generally free to extricate themselves from . . . once crafted.") Plaintiffs' motion ignores this binding agreement, and should be denied for this reason alone.

A. NEGasCo is Entitled to Conduct a Thorough Discovery Deposition of Mr. Souza Before His Trial Deposition.

Plaintiffs' motion is premised on the contention that NEGasCo should not be entitled to conduct a discovery deposition of Mr. Souza because it has already conducted some cross-examination of him in the AAD proceeding. Plaintiffs' motion not only ignores the truncated examination that NEGasCo has been permitted to date, but also ignores the fundamental differences between the two proceedings, including the scope of plaintiffs' Proffer in this case.

First, the AAD proceeding is brought pursuant to Rhode Island's analogue to CERCLA. By contrast, this lawsuit is premised upon claims of negligence and strict liability. Under CERCLA, assuming *arguendo* that there is evidence that FRGC deposited byproducts of the manufactured gas process in each of the lots of the Bay Street Area, RIDEM will likely take the position that it has satisfied its threshold burden of proving that NEGasCo is a "Responsible Party." Here, by contrast, whether or not FRGC is one source of some of the alleged contaminants will only be a small part of plaintiffs' ultimate burden of proof. Plaintiffs must also prove duty, a breach thereof, causation and damages. Thus, in its discovery deposition of Mr. Souza in this case, NEGasCo intends to inquire of a far broader array of topics including, among others, his familiarity with the practices of FRGC and the hauler he purportedly worked for, as well as the waste hauling practices of the various industries that operated in or near the Bay Street Area.

Further, also assuming *arguendo* that there is evidence that FRGC is a source of even some of the alleged contaminants in the Bay Street Area, RIDEM will likely take the position that they have no need to seek out other possible responsible parties, whereas

in this proceeding discovery regarding the responsibility of third-party defendants and others is fundamental. Thus, while inquiry of Mr. Souza regarding other responsible parties is important in the AAD proceeding, the significance of this area of inquiry, and the need to cover it more extensively in this case, is essential. Thus, plaintiffs' attempt to equate discovery in the AAD proceeding with discovery in this proceeding is wrong.

Further, should the Superior Court, in deference to the Hearing Officer's May 15 Order, deny NEGasCo's appeal of the drastic restrictions placed on the AAD deposition, NEGasCo will have to rely on a deposition that is fundamentally unfair as its only opportunity to depose Mr. Souza before his trial deposition in this case. Indeed, if the May 15 Order is upheld and NEGasCo is not permitted a discovery deposition, that will mean that NEGasCo will be limited to a total of three hours to depose a purportedly key witness -- a far shorter period of time than the seven hours provided under the Federal Rules. See Fed R. Civ. P. 30(d)(2) ("Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours.") Further, it will mean that NEGasCo's only opportunity to depose Mr. Souza before his trial deposition will be limited to far more limited subjects than NEGasCo will cover during its discovery deposition in this case -- with counsel chosen by the Hearing Officer, not NEGasCo -- conducting that deposition. These unreasonable limitations placed on the AAD deposition, coupled with the differences between the two proceedings, make clear that the AAD deposition is no substitute for the full discovery deposition that Magistrate Judge Martin has already ordered in this case.

B. NEGasCo's Discovery Deposition Should Not Be Limited To Two Hours.

Plaintiffs' application that any discovery deposition be limited to no more than an additional two hours should be denied. Plaintiffs have presented no reason why NEGasCo should not be entitled to the seven hours provided for under Rule 30(d)(2) to conduct its discovery deposition of Mr. Souza. Indeed, limiting a party's opportunity to conduct a discovery deposition is an extreme measure that should be "sparingly used." See Hearst v. Goodway Marketing, Inc., 145 F.R.D. 59, 61-62 (E.D. Penn. 1992) ("[T]he power to halt or limit examination is [to be] sparingly used"). Moreover, any decision to truncate the length of a deposition should be made "in light of the nature of the action, the issues raised and the deponent's involvement in the case." Id. at 63.

Here, given the significance of Mr. Souza's testimony as plaintiffs' purported key witness, who according to the Proffer has information not only about the operation of FRGC but also the development of the Bay Street Area throughout the 20th Century, NEGasCo should be given a full and fair opportunity to take Mr. Souza's discovery deposition.

Further, as the limited deposition of Mr. Souza in the AAD proceeding makes clear, NEGasCo has made every effort to be as efficient as possible in conducting its deposition of Mr. Souza. However, given that Mr. Souza is 87 years old and has a substantially diminished capacity, he has proved to be a very difficult witness to examine with dispatch. For example, Mr. Souza's testimony has been so garbled, internally inconsistent and often incomprehensible, that basic autobiographical information -- routinely elicited from a witness in a few minutes -- has taken much longer to cover. Thus, imposing a two hour limitation on the discovery deposition of Mr. Souza would

prejudice NEGasCo in its effort to elicit testimony from this purported key witness on all the topics of which he purportedly has knowledge.[8]

C. NEGasCo's Discovery Deposition Should Be Conducted After the AAD Deposition is Completed and After The Third-Party Defendants are Joined.

Plaintiffs' application that this Court order that Mr. Souza's depositions in this case be conducted "forthwith" should also be denied. Plaintiffs have put forth no valid reason to suggest that Mr. Souza's health has deteriorated or that he may be unavailable for deposition in this case upon completion of his deposition in the AAD proceeding -- which should happen in a matter of weeks.

Further, while plaintiffs' argue that Mr. Souza should not be subjected to the strain of multiple depositions, that is precisely what will occur if Mr. Souza is deposed now before the Third-Party Defendants are served and given an opportunity to participate. For example, Gulf Oil, which is a named Third-Party Defendant, owned a tank farm immediately adjacent to the Bay Street Area in the 1940s and 1950s. It should come as no surprise that NEGasCo intends to ask Mr. Souza, who plaintiffs claim lived in or near the Bay Street Area most of his life, about his knowledge of the operations of the Gulf Oil tank farm during this period. If Mr. Souza is deposed before Gulf Oil (or any of the other Third-Party Defendants) has been given an opportunity to participate, Gulf Oil will no doubt seek (and will likely be entitled) to take yet another deposition of Mr. Souza, so that they can ask him questions on this topic. Similar issues likely apply to each of the other Third-Party Defendants and their activities in the Bay Street Area over the past 70

---

[8] Of course, consistent with the practice that has been followed during Mr. Souza's deposition in the AAD proceeding, and as is provided in the February 23 agreement between the parties see Exhibit 10, NEGasCo will accommodate Mr. Souza by taking breaks whenever Mr. Souza requests one. Further, NEGasCo is prepared to conduct its deposition over a series of sessions, to ensure that Mr. Souza is comfortable and does not grow too fatigued.

years.[9] Indeed, plaintiffs have acknowledged as much, in that they have agreed to adjourn the deposition of another elderly fact witness until such time as these Third Party Defendants are added and can participate.

Thus, by asking this Court to order that Mr. Souza's deposition proceed immediately, plaintiffs virtually ensure that Mr. Souza will be required to return for another deposition, or series of depositions, once the Third-Party Defendants are joined in this action. Therefore, plaintiffs' motion to require that Mr. Souza's discovery deposition commence immediately should also be denied.

## Conclusion

For the reasons set forth above, plaintiffs' motion to modify Magistrate Judge Martin's September 22, 2006 Discovery Order should be denied.

Dated: August 16, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

/s/ *Kristen W. Sherman*
John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
1633 Broadway
New York, New York 10019
(212) 506-1700

[9] It is no answer to say that testimony about these Third-Party Defendants that is obtained at a deposition in their absence will not be admissible at trial because that would mean that NEGasCo would be denied the opportunity to use such testimony in its defense at trial.

-and-

**BISHOP LONDON BROPHY DODDS**
Christina Dodds
3701 Bee Cave Road
Austin, Texas 78746
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*a division of Southern Union Company*

-and-

**HINCKLEY, ALLEN & SNYDER**
Gerald Petros (#2931)
Robin Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-7200

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2007, I did send a true copy of the within document by electronic means (ECF) or email to the following:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

Neil T. Leifer
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Paul Revere, III, Esq.
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632

Russell X. Pollock, Esq.
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129

Brian R. Cunha, Esq.
Brian Cunha & Associates, P.C.
904 Broadway
East Providence, RI 02914

/s/ *Kristen W. Sherman*