# Exhibit 11

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
ADMINISTRATIVE ADJUDICATION DIVISION

IN RE: AAD NO. 06-011/SRE
SOUTHERN UNION COMPANYd/b/a NEW ENGLAND GAS COMPANY
NOTICE OF VIOLATION OC&I/SR 06-01

Videotaped deposition of JANICE M. CARROLL, a Witness herein, taken on behalf of the Respondent, on WEDNESDAY, MARCH 7, 2007, 1:13 P.M., at the offices of HINCKLEY, ALLEN & SNYDER, 50 Kennedy Plaza, Suite 1500, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

Vivian S. Dafoulas, RMR-CRR
50 Fieldstone Drive
East Greenwich, RI 02818-2064
(401) 885-0992





DEPARTMENT OF ENVIRON INTALAPPEARANCES:

FOR THE PETITIONER:
SUTHERLAND, ASBILL & BRENNAN LLP
BY: GERALD J. PELS, ESQUIRE 2 HOUSTON CENTER
909 FANNIN, SUITE 2200 HOUSTON, TX 77010

SUSAN B. WILSON, ESQUIRE 235 PROMENADE STREET
PROVIDENCE, RI 02908-5767

FOR THE RESPONDENT:
HINCKLEY, ALLEN & SNYDER LLP
BY: GERALD J. PETROS, ESQUIRE 50 KENNEDY PLAZA, SUITE 1500
PROVIDENCE, RI 02903

FOR THE DEPONENT:
MOTLEY RICE LLC
BY: ROBERT J. McCONNELL, ESQUIRE 321 SOUTH MAIN STREET
PROVIDENCE, RI 02903
ALSO PRESENT: ANNE CONNOR, PARALEGAL
BRETT ST. GELAIS, VIDEOGRAPHER





I N D E X

| WITNESS | PAGE |
|---|---|
| JANICE M. CARROLL | |
| EXAMINATION BY MR. PETROS | 5 |
| EXAMINATION BY MR. PELS | 96 |

| EXHIBITS | PAGE |
|---|---|
| 1 Plaintiffs' Fourth Supplemental Responses to Defendant's Interrogatories | 36 |
| 2 Disclosure of Expected Testimony of J. Souza | 73 |
| 3 4/21/2006 e-mail from ENACTRI to CrBar7 | 90 |
| 4 8/4/2006 e-mail from Carroll to Corvello | 93 |





VIDEOGRAPHER: We are now recording and on the record. My name is Brett St. Gelais. I'm a video legal specialist for National Video Reporters. Our business address is 11 South Angell Street, Providence, Rhode Island, 02906. Today's date is March 7th, 2007, and the time is 1:13 p.m.

This is the deposition of Janice Carroll in the matter of Southern Union Co. doing business as New England Gas Co. in the State of Rhode Island and Providence Plantations, Department of Environmental Management, Administrative Adjudication Division, Case No. 06-001/SRE.

This deposition is being taken at 50 Kennedy Plaza, Providence, Rhode Island. The court reporter is Vivian Dafoulas.

Will counsel please state their appearances and will the court reporter please administer the oath?

MR. PETROS: Jerry Petros on behalf of Southern Union Company and my legal assistant, Anne Connor, is also here with me.

MR. McCONNELL: I'm Bob McConnell on behalf of the deponent.

MR. PELS: Gerry Pels on behalf of the Rhode Island Department of Environmental

that was the first time I got that feeling. Mrs. Souza was always somewhat reluctant. It was the first time Mr. Souza felt like he was backing away and did not want to do it.

Q. Okay. I appreciate your answer. It's a slightly different question though.

That's the first time Mr. Souza expressed reluctance to you?

A. Yes.

Q. Had you heard from anybody else that Mr. Souza was reluctant to testify before this particular January meeting with him where you brought over holiday cookies?

MR. McCONNELL: And, again, I'm going to instruct you not to say -- to even answer whether you had any communications with your lawyers about that.

MR. PETROS: I have to say, though, Bob, if -- if she had heard from any source at that point that Mr. Souza was reluctant to testify, it's not a confidential fact. It's something I'd be entitled to know even if you told her.

I don't want to get into specific conversations with you but if she was aware of that fact, it was -- attorney-client protects





confidential information. That would not be confidential information under any definition.

Q. I want to make it clear. I don't want you to describe any conversations you had with your lawyer. I'm just asking you whether prior to this visit in January of 2006 you had learned that Mr. Souza was reluctant to testify.

MR. McCONNELL: You can answer that.

A. Okay. I think that Gail Corvello might have mentioned that, it might have been at an ENACT meeting, that -- that Mr. Souza -- and I don't know whether that -- the timing issue on this, how close it was to that time or not.

Q. Okay. And by the way, just as a correction, I've been referring to this meeting as January of 2006 because that's how you listed it but I'm assuming from the sequence --

A. I think we're --

Q. -- that it should be -- it should be January of 2007.

A. I think it's a typo, yes.

Q. Just to be clear on the record --

A. Yes.

Q. -- the meeting in January --

A. Yes.





Q. -- that we've been talking about where you brought cookies to Mr. Souza and you visited with him, that occurred in January of 2007?

A. I hope so because they were 2007 cookies.

Q. Okay. Made by someone else?

A. Made by someone else.

Q. And the date that we've listed -- that you've listed on the interrogatory answers, or your attorneys have written down, is just a typo; it should be January of 2007?

A. Correct.

Q. And the date below that says February of 2006, that should be February of 2007?

A. Correct.

Q. Okay. You next visited with Mr. Souza in February of 2007, according to these answers, is that accurate?

A. The more I think about this, only because we had a death in the family. My mother-in-law passed away --

Q. I'm sorry to hear that.

A. -- February 1st. Thank you. And between that and we had a trip that we had arranged, we were pretty well tied up with all of that.

I don't really think February is accurate. I





think it was probably in January prior to -- again, with my mother -- my mother-in-law's failing health I wasn't -- I was out of, you know, a little bit more than usual, so perhaps after this January meeting, there might have been another time that I saw him in January. I don't really think it was in February.

Q. And as you described it here, occasionally while you were walking your dog, you would see Mr. Souza outside his house?

A. Yes.

Q. Or standing on his porch?

A. Uh-hum.

Q. You would discuss his health with him?

A. Yes.

Q. And you would tell him that his factual information would be very helpful to you and to the other plaintiffs in the lawsuit?

MR. McCONNELL: Objection.

A. I would say that that was a statement I had said. Whether I said that in January, I don't know. Mr. Souza loved my dog, so every time he saw me with the dog, he always wanted me to bring the dog up to the house so he could pet her.

Q. Okay. There's a statement in the