UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL CORVELLO, ET AL. | : | |
| KEVIN BURNS, ET AL. | : | |
| COLLEEN BIGELOW, ET AL., AND | : | |
| SHEILA REIS, ET AL. | : | |
| | : | |
| v. | : | C.A. No. 05-221T, 05-272T |
| | : | 05-370T, 05-522T |
| NEW ENGLAND GAS COMPANY, INC. | : | |

**MOTION TO QUASH**

**OF NON-PARTY GOVERNOR DONALD L. CARCIERI**

Governor Donald L. Carcieri, a non-party to this action, hereby moves the Court for an order quashing a subpoena *ad testificandum* served upon him on July 17, 2007 by Defendant New England Gas Company, Inc. ("Southern Union"). As grounds therefore, Governor Donald L. Carcieri relies upon the memorandum of law attached hereto and made a part hereof. The Governor does not request oral argument of the within Motion to Quash.

Governor Donald L. Carcieri
By his Attorneys,

/s/ Michael D. Mitchell
Michael D. Mitchell, Esquire (#3473)
Deputy Chief of Legal Services
R.I. Department of Administration
Division of Legal Services
One Capitol Hill
Providence, RI 02903
(401) 222-8339 (401) 222-8244
mmitchell@admin.ri.gov

Date: 9/28/07

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL CORVELLO, ET AL. | : | |
| KEVIN BURNS, ET AL. | : | |
| COLLEEN BIGELOW, ET AL., AND | : | |
| SHEILA REIS, ET AL. | : | |
| | : | |
| v. | : | C.A. No. 05-221T, 05-272T |
| | : | 05-370T, 05-522T |
| NEW ENGLAND GAS COMPANY, INC. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY GOVERNOR DONALD L. CARCIERI'S MOTION TO QUASH**

Governor Donald L. Carcieri, a non-party to this action, hereby moves the Court for an order quashing a subpoena *ad testificandum* served upon him on July 17, 2007 by Defendant New England Gas Company, Inc. ("Southern Union"). A copy of the subpoena compelling his presence and testimony is attached as *Exhibit A.* The Governor moves to quash the subpoena because it seeks testimony and documents that are entirely irrelevant to this case. More importantly, requiring the Governor to appear and testify in Court in this proceeding would subject him to undue burden and may require the disclosure of privileged or otherwise protected information, as more particularly set forth below.

**A. The Governor Cannot be Compelled to Give Testimony Absent Strong Showings that he has Direct Personal Knowledge Material to the Case and that the Information Sought is not Available from any Other Source**

Complying with this subpoena would impose an undue burden on the Governor. His testimony in this matter is neither relevant, nor necessary and any information that could be elicited is not uniquely held by him. If the Court were to order his appearance under such circumstances, it would open the door to numerous other subpoenae in numerous other cases where the Governor may have incidental information on the subject matter of the dispute.

Top government officials are generally not subject to depositions or compelled testimony. *See Sweeney v. Bond, 669 F.2d 542, 546 (8th Cir. 1982)* (upholding protection of state governor from deposition regarding dismissal of plaintiffs from their employment); *Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575 (D.C. Cir. 1985)* ("Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for official actions"); *Peoples v. Department of Agriculture, 427 F.2d 561 (D.C. Cir. 1970)* (subjecting cabinet official to oral deposition is not normally countenanced); *Kyle Engineering Co. v. Kleppe, 600 F.2d 226 (9th Cir. 1979)* ("Heads of government agencies are not normally subject to deposition."); *Monti v. State, 151 Vt. 609, 563 A.2d 629 (1989)* (reversing trial court's denial of Governor's motion for a protective order preventing Governor's deposition and remanding for detailed findings on relevancy, necessity and alternative means of discovery).

The rationale underlying this policy is twofold: first, highly placed government officials must be free to conduct public business without constant interference from the discovery process (*United States v. Miracle Recreation Equipment Co., 118 F.R.D. 100, 108 (S.D. Iowa 1987)*); and, second, their thought processes and discretionary acts should

not be subject to later inspection under the spotlight of deposition or testimony. In other words, decision-makers enjoy a "mental process privilege." *United States v. Wal-Mart Stores, 2002 U.S. Dist. LEXIS 6929 *4-5 (March 29, 2002*) *citing United States v. Morgan, 313 U.S. 409 (1941).*

In *Monti v. State, 151.VT 609, 563 A.2d 629, 631 (1989)* the Vermont Supreme Court best explained the rationale for protecting that State's governor from an unnecessary deposition as follows:

> This is a not doctrine related to the content of the testimony, for which an executive branch official might claim executive privilege, but rather a doctrine founded on notions of the public's interest in limiting unnecessary demands on the time of highly-placed public officials. "[P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Community Fed. Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C.1983).* The trial court must balance the prejudice or injustice to the litigant seeking the deposition with the public interest that high public officials not be "hampered or distracted in the important duties cast upon [them] by law." *California State Bd. of Pharmacy v. Superior Court, 78 Cal.App.3d 641, 644, 144 Cal.Rptr. 320, 322 (1978).*

A litigant wishing to overcome this sound public policy must make two showings. First, it must demonstrate that the official has direct personal information pertaining to material issues in the action. *American Broadcasting Companies, Inc. v. United States Information Agency, 599 F. Supp. 765 (D.D.C. 1984).* Mere knowledge or awareness of information that may be helpful if discovered is insufficient. *Wal-Mart Stores, 2002 U.S. Dist. LEXIS at *8.* Second, the litigant must demonstrate that the information sought from such a deposition is not available through any other source. *Church of Scientology v. Internal Revenue Service, 138 F.R.D. 9, 12 (D. Mass. 1990).*

Defendant Southern Union can make neither showing. In this case, a group of citizens is suing Southern Union for alleged environmental damage to their property which may have occurred decades ago. Southern Union simply cannot show that the Governor has direct personal knowledge that is material to its defense of those claims. Instead, counsel for Defendant Southern Union has indicated that, by virtue of his public statements on contamination in Tiverton, the Governor has "made himself a witness" in the case. The Governor's statements on matters of public concern – an integral part of any governor's job – simply cannot form the basis for compelled testimony. Otherwise, every public statement made by the Governor would be fair game for examination in court and litigants seeking to divert attention from the actual legal/factual claims against them would seek to compel gubernatorial testimony.

Moreover, any testimony that the Governor might provide that would be remotely relevant to Southern Union's defense could be elicited from any number of other sources. The burden is upon Southern Union to demonstrate – as it must before compelling the Governor's testimony – that this information is not available from any other source.

**B. The Subpoena Would Require the Disclosure of Privileged Information Protected by the Deliberative Process/Executive Privilege Immunizing Executive Information from Discovery in Federal Courts**

A government may assert deliberative process or executive privilege to prevent disclosure of sensitive government materials. "The deliberative process privilege is a shield with which the executive branch deflects public scrutiny into its internal processes. This qualified privilege protects deliberative material, such as advice, recommendations, and opinions, from disclosure in civil litigation, Freedom of Information Act ("FOIA")

requests, and from Congress."[1] The privilege is qualified in that in determining whether to uphold a claim of privilege, the court must balance the government's claimed need for secrecy against the court's own need for evidence to resolve a dispute before it. *Redland Soccer Club v. Department of Army, 55 F.3d 827,854 (C.A.3d, 1995).*

The U.S. Supreme Court requires that the privilege be asserted "with particularity." The right to relevant evidence and production of documents in civil proceedings do not have the same "constitutional dimensions" as they do in the criminal context.[2] The courts have stated that "the government must demonstrate that (1) the materials were part of a deliberative process by which policies or decisions are formulated … and (2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise reflective of a deliberative process. *Mobil Oil Corp. v. Department of Energy*, D.C.N.Y. 1983, 102 F.R.D. 1, 5.

In *Cheney, Vice President of the United States v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), the U.S. Supreme Court stated:

> Executive privilege is an extraordinary assertion of power not to be lightly invoked. Once executive privilege is asserted, coequal branches of government are set on a collision course. The Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article III prerogatives. This inquiry places courts in the awkward position of evaluating the Executive's claims of confidentiality and autonomy, and pushes to the fore difficult questions of separation of powers and checks and balances.

---

[1] *Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process Privilege*, 99 Nw. U.L. Rec. 1769 (Summer, 2005). "[T]he existence of this privilege upholds the principle that, although we are an open, democratic society, enlightened policymaking is often best achieved if "agencies are not forced to operate in a fishbowl."(quoting *Wolfe v. Dep't of Health & Human Serv*., 839 F. 2d 768, 773 (D.C. Cir. 1988). *Id*.

[2] *United States v. Nixon*, 418 U.S. 683 (1974) (President claimed executive privilege in criminal action investigating conspiracy and obstruction of justice. Subpoenae were issued by federal trial court for production of tapes of his conversations with aides and advisers. The Court found that because the special prosecutor had demonstrated a specific need for the evidence, it was proper to compel production and examine the materials in camera. The legitimate needs of the judicial process outweighed executive privilege in this case).

> These occasions for constitutional confrontations between the two branches should be avoided whenever possible. *Cheney*, at 389, 390.

The Supreme Court also observed that: *"[S]pecial considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated."* [Emphasis added] *Id.* at 385. The Court noted its own longstanding rule which acknowledges "the high respect that is owed to the office of the Chief Executive … [which] is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Id.* The Executive's "constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it." *Id*. Additionally, the *Cheney* Court observed that the safeguards against abusive discovery, such as imposition of sanctions, had proved insufficient to discourage the filing of meritless claims against the Executive Branch.

The *Cheney* Court specifically distinguished the decision in *Nixon*, which held that the President cannot, through assertion of a "broad and undifferentiated need for confidentiality and the invocation of an absolute unqualified executive privilege, withhold information in the face of subpoena orders." 418 U.S. at 706. The Court noted that in *Nixon*, because the burden was on the special prosecutor to establish the propriety of the specific discovery requests, the requirement that executive privilege be invoked with particularity would not be over burdensome. In *Cheney*, the Court stated that due to the overly broad requests, and the fact that the litigation was civil and not criminal, *Nixon* does not require the Executive Branch to bear the onus of critiquing the unacceptable discovery requests line by line. Id at 389. The Court stated that there is "sound precedent for district courts to explore other avenues, short of forcing the Executive to invoke

privilege, when they are asked to enforce against the Executive Branch unnecessarily broad subpoenae". *Id* at 390; *see United States v. Poindexter*, 727 F.Supp.1501 (D.D.C.1989) (holding that it is undesirable as a matter of constitutional and public policy to compel a President to make his decision on privilege with respect to a large array of documents. The court narrowed the scope of the subpoenas at issue to allow the Executive to consider whether to invoke executive privilege with respect to a smaller number of documents following the narrowing of the subpoenas.)

Post-*Cheney*, the U.S. Supreme Court has framed the issue in these cases as whether the trial court's discovery orders compelling production of governmental information is an unwarranted impairment of another branch in the performance of its constitutional duties. In *Dept. of Interior (DOI) v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), the Court explained that the deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated (*citing NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150"[3]). The Klamath Court continued: "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item for discovery and front page news, …its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." 532 U.S. at 9.

---

[3] The *Sears* court recognized: "The deliberative process privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency action." Id. at 151.

In the instant matter, because neither the Governor, nor the State of Rhode Island are parties to the litigation, this is a civil and not a criminal matter, and the discovery requests made by the defendant are overly broad, this Court should adhere to the *Cheney* holding and require that Southern Union establish the relevancy and propriety of its discovery requests before requiring the Governor to invoke executive privilege. The document requests clearly seek testimony and documents that fall within the protection of executive privilege. Communications between the Governor and RIDEM "or any other state or federal agency" are intra-agency, will inevitably contain deliberative material, such as advice, recommendations, and opinions and would be of an advisory nature, particularly due to the fact that the Governor and State of Rhode Island are non-parties. Furthermore, said documents are unlikely to lead to material evidence needed by the Court to resolve the underlying litigation, and all but a few could be elicited directly from RIDEM, the plaintiffs, ENACT or other federal or state agencies. To require the Governor to invoke the privilege with particularity would place an unnecessary burden upon his office. As such, in balancing the Governor's need for executive secrecy against the Court's need for evidence, the Court, in this instance, must weigh in favor of the Governor.

### C. The Attorney-Client and Work Product Privilege immunize the Requested Information from Discovery

The Rhode Island Supreme Court applies the work-product doctrine as articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947) (in which the US Supreme Court noted that it is "a rare situation" that would justify disclosure of attorney work product). *Id.* at 513. *See also Cabral v. Arruda*, 556 A. 2d 47 (R.I. 1989) (affirming that trial preparation

material is the "work product of the attorney" and such "work product" is qualifiedly immune from discovery…unless relevant and unprivileged facts are otherwise not available).

Rhode Island's Rule 26 (b)(3) embodies and codifies the doctrine as well ("…the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."). *See also Rhode Island Depositors Economic Protection Corp., v. Mapleroot Development Corp.*, 715 A. 2d 1260 (R.I. 1998); *Bogosian v. Gulf Oil Corp*., 738 F. 2d 587 (3d Cir. 1984). Factual work product is afforded less protection than opinion work product. *Data General Corp. v. Grumman Systems Support Corp.*, 139 F. R. D. 556 (D. Mass.1991).

Recently, the Rhode Island Supreme Court considered whether written communications between counsel and a testifying expert witness were protected as part of the attorney client privilege. In *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A. 2d 838 (R.I. 2006) (Suttell, J.), the court noted that in this matter of first impression in Rhode Island, the question was how to resolve the interaction of two fundamental principles underlying our adversarial system: the liberal theory of discovery embodied in the Rules of Civil Procedure, and the work-product doctrine. The trial judge (Rubine) had ruled that once an expert witness is designated as a testifying expert, "any and all documents which were exchanged, which in anyway relate[d] to the opinion that he's given in the case or is prepared to give in the case" are discoverable.[4]

---

[4] Judge Rubine based his conclusion on case law from Colorado (reasoning that opposing counsel should be allowed to demonstrate whether the expert was unfairly prejudiced by an attorney) and California case law (also concerned with effective cross examination at trial). Rubine did note other jurisdictions which require a strong showing of necessity and unavailability by other means before ordering disclosure.

Justice Suttell criticized the motion justice (Rubine) as he "did not review the documents that [plaintiff] was seeking to protect. Rather, the motion justice ruled that all information revealed to a testifying expert was 'open for grabs' and a lawyer is required to be cognizant of that fact when sharing information with experts expected to testify." In overruling the lower court, the Supreme Court ruled that in Rhode Island *"the clear language of [26 (b)(3)] requires that a court protect all core or opinion work product of an attorney, whether or not shared with an expert. …on the other hand, most factual or ordinary work product prepared in anticipation of litigation is discoverable …[but] only if the opposing party shows substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."* *Crowe*, at 847. [Emphasis added].

This Court took a similar position in *The New Mexico Tech Research Foundation v. Ciba-Geigy Corporation*, 37 Fed.R.Serv.3d 971(D.R.I. 1997), wherein the Court set forth its analysis in determining when and to what extent the work product privilege protects the discovery of expert testimony. The Court, citing *In Re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007 (1st Cir.1988) noted that,

> "The courts have granted greater protection to certain materials prepared in anticipation of litigation than other materials. And Rule 26(b)(3) recognizes this distinction. This distinction leads to some work product being labeled "opinion" (materials that contain mental impressions, conclusions, opinions or legal theories of an attorney) and other work product being labeled "ordinary" (the remainder). Courts typically afford ordinary work product only a qualified immunity, subject to a showing of substantial need and undue hardship, while requiring a hardier showing to justify the production of opinion work product. *Id.* at 1014.

The Court went on to affirm the analysis set forth in *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D.289, 294 (W.D.Mich.1995), which held: "…I can find nothing in any version of subdivision (b)(3) and (b)(4), or the committee notes, that suggests core

attorney work product was discoverable under subdivision (b)(4). Because there was no standard for core work product in subdivision (b)(4) that was different from the one in subdivision (b)(3), this Court concludes that the protection accorded an attorney's mental impressions and opinions by the Supreme Court in Hickman v. Taylor … and substantially codified in 1970 in Rule 26(b)(3), was intended to apply to discovery from experts".

In the present case, the defendants have requested such a wide array of documents that many will fall within the gambit of the attorney work product privilege. Even if the Defendants were to claim that some of the materials are "ordinary" work product, they must still first meet the standard and show a substantial need and undue hardship. Due to the facts that have been set forth, particularly the Governor's tenuous relationship to the underlying litigation, there is no basis by which the Defendant can establish the substantial need for the Governor's testimony or the voluminous document requests made in conjunction with the subpoena.

As a courtesy to counsel, the Governor has produced some 1111 pages of non-privileged documents. The Governor has identified an additional 517 pages of documents in a privilege log (see Exhibit B) that he believes are protected by executive/deliberative, attorney work product, and attorney-client privileges.

Accordingly, this Court should grant the Governor's motion to quash the subpoena *ad testificandum.*

Respectfully submitted,
Governor Donald L. Carcieri
By his Attorneys,

/s/ Michael D. Mitchell
Michael D. Mitchell, Esquire (#3473)
Deputy Chief of Legal Services
R.I. Department of Administration
Division of Legal Services
One Capitol Hill
Providence, RI 02903
(401) 222-8339 (401) 222-8244
mmitchell@admin.ri.gov

Date: 9/28/07

**CERTIFICATION**

I hereby certify that on the 28th day of September, 2007, I filed by electronic means (ECF) or email a true and accurate copy of the within Motion to Quash and Memorandum of Law in Support of Defendant Donald L. Carcieri's Motion to Quash to:

Neil T. Leifer
Christian F. Uehlein
Brad J. Mitchell
Thornton & Naumes, LLP
100 Summer Street
Boston, MA 02110

Robert J. McConnell
John J. McConnell, Jr.
Motley Rice LLC
321 South Main Street, 2nd Floor
Providence, RI 02903

Seth Davis
Eric D. Herschmann
Kasonwitz, Benson, Torres, & Friedman, LLP
1633 Broadway

Susan B. Wilson
Gregory S. Schultz
RI Department of Environmental Mgt.
235 Promenade Street, 4th Floor
Providence, RI 02908

Lewis S. Wiener
Sutherland Asbill & Brennan LLP
1375 Pennsylvania Avenue, NW
Washington, DC 20004-2415

Christina C. Dodds
Bishop London Brophy Dodds, P.C.
3701 Bee Cave Road
Austin, TX 78746

New York, NY 10019

Gerald R. Petros
Robin L. Main
Hinckley Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903