UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL.,<br>Plaintiffs,<br><br>- against -<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>Defendant and Third-Party Plaintiff,<br><br>- against -<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC.; and DOMINION ENERGY BRAYTON POINT LLC,<br><br>Third-Party Defendants. | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T) |

**NEW ENGLAND GAS COMPANY'S OBJECTION TO PLAINTFFS' MOTION FOR PROTECTIVE ORDER SEEKING THE TERMINATION OF THE DISCOVERY DEPOSITION OF JOSEPH "JOSE" SOUZA**

Defendant New England Gas Company ("NEGasCo") respectfully objects to Plaintiffs' motion for protective order seeking the termination of the discovery deposition of Joseph "Jose" Souza. The grounds for this objection are set forth in the accompanying memorandum of law.

Dated: October 24, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*<u>/s/ David A. Wollin</u>*
John A. Tarantino (#2586)
David A. Wollin (#4950)

One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |

/s/ *David A. Wollin*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL., Plaintiffs, | |
| - against - | |
| NEW ENGLAND GAS COMPANY, INC., Defendant and Third-Party Plaintiff, | |
| - against - | C.A. No. 05-0221T (Related Cases: 05-274T; 05-370T; 05-522T) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC.; and DOMINION ENERGY BRAYTON POINT LLC, Third-Party Defendants. | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO PLAINTFFS' MOTION FOR PROTECTIVE ORDER SEEKING THE TERMINATION OF THE DISCOVERY DEPOSITION OF JOSEPH "JOSE" SOUZA**

New England Gas Company ("NEGasCo") submits this memorandum of law in opposition to plaintiffs' motion to cut off NEGasCo's fundamental right to conclude its discovery deposition of Joseph "Jose" Souza scheduled for October 26, 2007.

## PRELIMINARY STATEMENT

More than a year ago, plaintiffs identified Joseph "Jose" Souza, an elderly Tiverton resident, as their sole eye-witness to support their claim that NEGasCo bears

responsibility for the purported contamination of the soil in the Bay Street Area of Tiverton, Rhode Island. In response to plaintiffs' motion to preserve Mr. Souza's testimony, Magistrate Judge Martin ruled that NEGasCo was first entitled to documentary discovery and was then entitled to a thorough discovery deposition of Mr. Souza. For the past year, plaintiffs have either procured or acquiesced in numerous delays in the commencement of NEGasCo's discovery deposition of their witness.

On October 12, in accordance with the Order and multiple stipulations, NEGasCo began its discovery deposition of Mr. Souza. The one and half hours of deposition testimony covered background questions regarding the witness, his personal history, job history and memory of events both distant and recent. As the Court's review of the videotape or transcript of the October 12 deposition session will show, the witness's memory is significantly impaired, and his testimony is internally inconsistent and inconsistent with previous testimony he has given.

At the close of the first session of Mr. Souza's deposition, counsel for plaintiffs and counsel for the witness (who is being paid by plaintiffs) agreed that the witness's deposition would continue and hopefully conclude on October 25th or 26th. Since that time, plaintiffs' counsel repeatedly represented that they and the witness were prepared to go forward on either of those dates. At no time prior to receipt of the instant motion was there any complaint or suggestion that the witness was being harassed at this deposition, protested its continuation, or sought any additional controls on the process. As the videotape shows, NEGasCo's counsel was respectful and appropriate in examining a witness with significant memory impairment -- a witness who believes the President is Bill Clinton, and his immediate predecessor was John F. Kennedy, and who could not

recall the number of children he has, or whether he enlisted in the service before or after Pearl Harbor.

Relying upon irrelevant history from an administrative proceeding, plaintiffs' motion is an improper attempt to override Magistrate Judge Martin's Order, renege on multiple stipulations between the parties and cut-off NEGasCo's due process right to prepare for the upcoming trial deposition of Mr. Souza. Plaintiffs' motion is likely motivated by their concern with the faltering memory and unreliable testimony of this witness -- but those are precisely the problems that discovery depositions are intended to expose. NEGasCo is prepared to complete its discovery examination of Mr. Souza and to continue to accord the witness every courtesy and accommodation in the process.[1] The Court should enforce the existing Order and deny plaintiffs' motion in its entirety.

## BACKGROUND AND TRAVEL

a. Plaintiffs' Motion to Take the Expedited Deposition of Jose Souza

Plaintiffs moved to take the expedited videotaped "trial deposition" of Mr. Souza, an 88 year old man who they claim is the only known witness who can purportedly link NEGasCo's predecessor, the Fall River Gas Company ("FRGC"), to the alleged contamination in the Bay Street Area. In support of their motion, plaintiffs submitted a proffer that purportedly recounted Mr. Souza's role in the 1930s and 1940s working for a local trucking company that supposedly hauled waste from a manufactured gas plant operated by FRGC, to the Bay Street Area. (See Proffer of Joseph "Jose" Souza's Expected Testimony ("Proffer") attached as Exhibit 1.) Plaintiffs further claimed that

[1] On the afternoon of October 23, counsel for Mr. Souza advised that, regardless of this Court's ruling, Mr. Souza will not appear for deposition on October 26.

given Mr. Souza's age and the purported significance of his testimony, his testimony should be preserved in the event he is not available to testify at trial.

In September 2006, Magistrate Judge Martin granted plaintiffs' motion to take an expedited trial deposition of Jose Souza. Recognizing the need to preserve NEGasCo's fundamental rights, Magistrate Judge Martin also ruled that *before* that trial deposition could go forward, NEGasCo would first have an opportunity to conduct a discovery deposition of Mr. Souza. The trial deposition would follow 30 days thereafter. As the Rule 16 conference had not yet been held, Magistrate Judge Martin also granted NEGasCo leave to conduct limited discovery of plaintiffs and of non-parties. (See Magistrate Judge Martin's September 22, 2006 Order (the "Discovery Order"), attached as Exhibit 2.)

b. Plaintiffs Agree to Defer NEGasCo's Discovery Deposition of Mr. Souza Until Completion of His Deposition In the RIDEM Proceeding

Because Mr. Souza was hospitalized for gall bladder surgery and other conditions, his discovery deposition did not take place in the Fall of 2006. Unbeknownst to NEGasCo, in late 2006 and early 2007, plaintiffs and the Rhode Island Department of Environmental Management ((“RIDEM”), which was then prosecuting its own administrative case against NEGasCo in its Administrative Adjudication Division (“AAD”)), worked behind the scenes to procure Mr. Souza's testimony under troubling circumstances.

In February 2007, with no prior notice or consultation with NEGasCo, RIDEM moved in the AAD proceeding to depose Mr. Souza. Plaintiffs then moved to compel NEGasCo to conduct its discovery deposition of Mr. Souza in this case. As RIDEM's

deposition of Mr. Souza was then imminent, plaintiffs stipulated with NEGasCo to defer Mr. Souza's discovery and "trial" depositions in this case. That agreement provided, among other things, that NEGasCo's discovery deposition, as provided in Magistrate Judge Martin's Discovery Order, shall take place "a reasonable time, not to exceed 21 days (subject to the witness's availability), after the completion" of Mr. Souza's ongoing deposition in the [AAD] proceeding, and that Mr. Souza's "trial deposition" take place "no more than 30 days after the completion of the defendant's discovery deposition of Mr. Souza." (See E-Mail exchange between David Ross and Robert McConnell, dated February 23, 2007, attached as Exhibit 3) (emphasis added.)

c. RIDEM's Deposition of Jose Souza

RIDEM's deposition of Mr. Souza began on February 15, 2007. To accommodate the witness, the deposition was adjourned after about one hour of testimony. On March 8, NEGasCo continued its examination of the witness. During both abbreviated sessions of Mr. Souza's examination in the AAD proceeding, the witness's confusion and lack of recall of recent and distant events were evident. On March 8, after some 90 minutes of testimony, at Mr. Souza's request, the second session of his examination was adjourned. That deposition is still not complete and there is no scheduled date to resume that deposition.

d. Plaintiffs' Agree That NEGasCo's Discovery Deposition of Mr. Souza's Shall Begin By October 12

On July 30, 2007, plaintiffs moved that Mr. Souza's unfinished AAD deposition be deemed completed and be deemed as taken in this lawsuit, seeking to deny NEGasCo the opportunity to conduct the discovery deposition ordered by Magistrate Judge Martin. NEGasCo opposed plaintiffs' motion, pointing out that it was inconsistent with

Magistrate Martin's Discovery Order and with the parties' previous stipulation providing that NEGasCo's discovery deposition take place after completion of Mr. Souza's AAD deposition. NEGasCo also pointed out that plaintiffs' attempt to equate the discovery deposition of Mr. Souza in the AAD proceeding with NEGasCo's examination in this case is simply wrong, because the evidence relevant to the AAD proceeding (which is brought pursuant to Rhode Island's environmental statutes), and discovery in that proceeding, are materially different from, and concern different subject matters and different burdens of proof than this suit which is premised upon claims of negligence and strict liability.

With full knowledge of all the history of which plaintiffs now complain, plaintiffs withdrew their motion and entered into another stipulation with NEGasCo that provided that NEGasCo's discovery deposition of Mr. Souza would be held on or before October 12, 2007, would be limited to five hours of examination, and would (subject to the witness's availability) be completed by October 26, 2007. The stipulation also provided that Mr. Souza's so-called "trial deposition" take place within 16 days after the completion of the discovery deposition. (See August 27, 2007 Stipulation ("August 2007 Stipulation"), attached as Exhibit 4.)[2]

[2] On September 11, 2007, Judge Torres granted NEGasCo's motion to add eight third-party defendants. Two of them moved for a protective order seeking to stay all discovery, including NEGasCo's October 12 discovery deposition, for 45 to 60 days. On October 11, Magistrate Judge Almond denied those motions for a protective order. (Dkt. No. 289.)

e. The October 12 Session of NEGasCo's Discovery Deposition of Mr. Souza

On October 12, 2007, consistent with the stipulation entered into between the parties, NEGasCo began its discovery deposition of Mr. Souza.[3] NEGasCo's counsel began its examination by asking Mr. Souza basic background and autobiographical questions such as where he has lived, how many children he has, to whom he is married and what jobs he has held throughout his life. Like Mr. Souza's deposition in the AAD proceeding, because of his age and poor memory, Mr. Souza proved to be a difficult witness to examine on these topics, often providing answers that were both internally inconsistent and inconsistent with his testimony in the AAD proceeding. For example, within the course of a few minutes, Mr. Souza testified that he graduated from high school, then testified that he had only completed the eighth grade. (See October 12, 2007 Deposition Testimony of Joseph "Jose" Souza ("Oct. 12 Tr.") at pp. 26-27; 30-31, attached as Exhibit 5.)[4] Or that he had three sons, one wife and one ex-wife, not two sons and one wife as he had previously testified. (See Oct. 12 Tr. at pp. 13-15.)

After about an hour of testimony, and despite numerous inconsistencies that could have been further probed, NEGasCo's counsel's moved on to cover other subjects with the witness, such as Mr. Souza's memory regarding the development of the Bay Street Area, including the construction of homes and the location of dumps in the

[3] In attendance at the deposition was counsel for NEGasCo, plaintiffs' counsel and counsel for a number of the third-party defendants. Also present was Michael Marran, Esq., who had been hired by plaintiffs to represent Mr. Souza. Though Mr. Souza did not recognize Mr. Marran and testified that he did not need a lawyer, Mr. Marran nevertheless acted as his counsel.

[4] Other examples of Mr. Souza's sadly impaired memory abound. Mr. Souza could not recall when he was last deposed, where that deposition took place or who was asking him questions at that deposition. (See Oct. 12 Tr. at pp. 8-9.) Other examples include his identification of the current president of the United States as Bill Clinton, whom Mr. Souza believed succeeded John F. Kennedy. (See Oct. 12 Tr. at pg. 48.) He further testified incorrectly that he had previously met NEGasCo's counsel at a restaurant in Westport, Massachusetts where the October 12 deposition was taking place.

neighborhood. Counsel also asked Mr. Souza whether he recalled the Hurricane of 1938 that caused significant flooding and damage to coastal homes and businesses situated along Mount Hope Bay, such as the Bay Street Area. Though counsel intended to continue this line of examination, including how other man-made and natural disasters impacted the neighborhood, after about 90 minutes of testimony, and several breaks to accommodate the witness, the first session of NEGasCo's discovery deposition ended.

At the conclusion of the October 12 examination, counsel for NEGasCo, plaintiffs' counsel, Mr. Souza's counsel and counsel for the third-party defendants agreed that NEGasCo would complete its examination of Mr. Souza on October 25 or 26, subject to his availability. Neither Mr. Souza's counsel nor Plaintiffs' counsel gave any indication that they objected to the continuation of Mr. Souza's deposition on these dates. To the contrary, the parties agreed that the deposition should probably take place at the offices of Hinckley Allen & Snyder, in Providence, instead of Tiverton or Fall River, as the accommodations would be better for all concerned.

In the week that followed, counsel for NEGasCo twice e-mailed Mr. Souza's lawyer, Michael Marran, and asked for confirmation that Mr. Souza would be available on October 26 for the completion of NEGasCo's discovery examination. (See E-Mails from David Ross to Michael Marran, dated October 16 and 18, attached as Exhibit 6.) Having received no response from Mr. Marran, and anxious to complete its examination by October 26, counsel for NEGasCo contacted plaintiffs' counsel and asked that they speak with Mr. Marran and confirm Mr. Souza's availability on October 26. Plaintiffs' counsel agreed to do so, and they again confirmed that plaintiffs were prepared to

proceed on October 26. Plaintiffs counsel never indicated any intent to file the within motion.

On Friday, October 19, at 6:00 p.m., without notice or any effort to meet and confer as required by the Federal Rules of Civil Procedure, plaintiffs filed the within "emergency" protective order motion. Plaintiffs' motion was filed despite their representation as late as October 18 -- one day before it was filed -- that October 26 was an acceptable date for plaintiffs and that they would check with Mr. Marran to confirm Mr. Souza's availability. Plaintiffs' motion also comes two days after plaintiffs had written all counsel indicating that plaintiffs were taking the position that the third-party defendants would not be given time beyond the five hours provided in the August 2007 Stipulation to question Mr. Souza at the October 26 deposition.

## ARGUMENT

Plaintiffs now contend that this Court should overrule Magistrate Judge Martin's Discovery Order which provided NEGasCo with the opportunity to conduct a thorough discovery examination of Mr. Souza, as well as two stipulations entered into between the parties to that effect, because, they claim, NEGasCo's examination of Mr. Souza has been abusive and harassing. Nonsense. As the videotape of the deposition session shows, NEGasCo's counsel treated Mr. Souza with dignity and respect.[5] Further, to the extent that the Affidavit of Michael Marran purports to convey Mr. Souza's "desire not to continue participating in this matter," any such desire cannot and should not be attributed to NEGasCo's counsel's conduct at the deposition. Rather, as the record reveals, Mr. Souza has always been a reluctant witness, who has consistently denied any knowledge

[5] Two DVDs of the October 12, 2007 deposition are attached as Exhibit 7.

regarding the source of the alleged contamination in the Bay Street Area. Non-party witnesses often would prefer to avoid the inconvenience of testimony and depositions (just as many citizens would prefer to avoid the inconvenience of jury duty) -- but that is not grounds to quash appropriate discovery. Thus, plaintiffs' attempt to attribute Mr. Souza's desire not to continue with his deposition to NEGasCo is without merit.

As more fully set forth below, plaintiffs' motion -- which would deny NEGasCo its fundamental right to examine this witness before trial -- is without merit and should be denied.

a. NEGasCo's Examination of Mr. Souza was Respectful and Appropriate

Plaintiffs' claim that NEGasCo's counsel abused and harassed Mr. Souza during the October 12 deposition is flatly contradicted by a review of either the videotape of that examination or of the deposition transcript. Indeed, the respect afforded to Mr. Souza by NEGasCo's counsel is evidenced from the very start of the examination when counsel explained to Mr. Souza that that day's session would last only about two and a half hours and that they would be taking breaks whenever necessary. (Oct. 12 Tr. at pp. 7-8.) Consistent with that representation, the deposition session lasted about two hours and the witness gave about 90 minutes of testimony. Multiple breaks were taken and, at one point, immediately following a break, counsel asked Mr. Souza whether he wanted to take a longer break so that he could have something to eat. That offer was declined by the witness. (See Oct. 12 Tr. at pp. 70-71.)

Though Mr. Souza gave confused and inconsistent testimony and proved to be a very difficult witness to depose, counsel remained patient in his examination, ensuring that every question asked of the witness was done with deference and respect.

Simply put, plaintiffs' attempt to characterize NEGasCo's counsel's conduct at the October 12 deposition as abusive or calculated to harass the witness lacks any support from the record and is without merit. Rather, the record reveals that NEGasCo's counsel did his best to elicit testimony on multiple topics from a witness who, given his age and significantly diminished capacity, was extremely challenging to depose.

b. Jose Souza Has Always Been Reluctant Witness

Plaintiffs' attempt to blame NEGasCo's for Mr. Souza's purported desire not to continue with his discovery examination is also without merit. In doing so, plaintiffs fail to acknowledge that Mr. Souza has *always* been a reluctant witness who has consistently denied any knowledge about the sources of the alleged contamination in the Bay Street Area. In fact, when plaintiffs first moved for Mr. Souza's examination, they admitted as much, stating in their motion that Mr. Souza had only "recently agreed to provide factual testimony." (See Dkt. No. 48.)

Through the course of the next year, Jose Souza Jr., acting as his father's agent, advised plaintiffs' counsel that his father has limited knowledge about the sources of the alleged contamination, and expressed his father's reluctance to testify in this matter. Specifically, Souza Jr. advised plaintiffs' counsel, after repeatedly consulting with his father, that his father "was 'never' involved with or in a truck that was involved in" trucking waste from any FRGC facility to the Bay Street Area. (See E-Mail from Souza Jr. to Robert McConnell, dated December 8, 2006, attached as Exhibit 8.) Indeed, Mr. Souza's consistent desire not to participate is explicitly captured in a January 10, 2007, e-mail between plaintiffs' counsel and Souza Jr. wherein Souza Jr. explains that he has just

spoken with his father and that his father "is still reluctant to get involved." (See E-Mail from Souza Jr. to Robert McConnell, dated January 10, 2007, attached as Exhibit 9.)

Thus, Mr. Souza purported "desire [not] to continue participating in this matter," is nothing new, and certainly cannot be attributed to the conduct of NEGasCo's counsel's during the October 12 deposition. More importantly, it is beside the point. Non-party witnesses do not get to "terminate" discovery depositions. That is particularly true when the "protest" from the nonparty witness is through an attorney who is being paid by the same plaintiffs who on several occasions tried to defeat NEGasCo's right to a discovery deposition.

c. NEGasCo Should Be Entitled To Complete The Discovery Deposition of Mr. Souza

As demonstrated above, plaintiffs have presented no reason why NEGasCo should not be entitled to the remainder of the five hours agreed to by the parties to complete Mr. Souza's discovery deposition. Indeed, plaintiffs' application not only asks this Court to overrule Magistrate Judge Martin's Discovery Order, but also asks this Court to revise two binding agreements entered into between the parties regarding the timing, conduct and length of NEGasCo's discovery deposition of Mr. Souza, including an agreement that NEGasCo would have five hours -- not 90 minutes -- to examine Mr. Souza. Plaintiffs are bound by this agreement. See TI Federal Credit Union v. DelBonis, 72 F.3d 921, 928) (1st Cir. 1995) (noting that "litigation stipulations" are analogous to "binding contracts," for which the parties "are generally not free to extricate themselves from . . . once crafted.") Plaintiffs' motion ignores this binding agreement, and should be denied for this reason as well.

Further, plaintiffs have demonstrated no cause -- let alone good cause -- why Magistrate Judge Martin's Discovery Order should be overruled and NEGasCo should be denied its right to a thorough examination of this witness before his "trial deposition." Limiting a party's opportunity to conduct a discovery deposition is an extreme measure that should be "sparingly used." See Hearst v. Goodway Marketing, Inc., 145 F.R.D. 59, 61-62 (E.D. Penn. 1992) ("[T]he power to halt or limit examination is [to be] sparingly used"). Moreover, any decision to truncate the length of a deposition should be made "in light of the nature of the action, the issues raised and the deponent's involvement in the case." Id. at 63.

Here, given the significance of Mr. Souza's testimony, as plaintiffs' purported key witness, who according to the Proffer has information not only about the operation of FRGC but also the development of the Bay Street Area throughout the 20th Century, NEGasCo's opportunity to take Mr. Souza's discovery deposition as contemplated both by Magistrate Judge Martin and by the parties through the August, 2007, stipulation, should not be disturbed.

## CONCLUSION

For the foregoing reasons, plaintiffs' emergency motion for protective order should be denied.

Dated: October 24, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*/s/ David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor

Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th[th] day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |

/s/ *David A. Wollin*

433077_1.doc