UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL., Plaintiffs, | |
| - against - | |
| NEW ENGLAND GAS COMPANY, INC., Defendant and Third-Party Plaintiff, | |
| - against - | C.A. No. 05-0221T (Related Cases: 05-274T; 05-370T; 05-522T) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER | |
| Third-Party Defendants. | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S OBJECTION TO**
**PLAINTFFS' MOTION TO SEVER THIRD PARTY DEFENDANTS**

Defendant and third-party plaintiff New England Gas Company ("NEGasCo") hereby objects to plaintiffs' motion to sever the third party defendants (Docket Entry No. 280). The grounds for this objection are set forth in the accompanying memorandum of law.

Dated: October 31, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*/s/ David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>Taylor Duane Barton & Gilman LLP<br>10 Dorrance Street<br>Suite 700<br>Providence, RI 02903 |
| Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White Incorporated<br>20 Washington Place<br>Providence, RI 02903 | David B. Willis<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 |

/s/ *David A. Wollin*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL., Plaintiffs, | |
| - against - | |
| NEW ENGLAND GAS COMPANY, INC., Defendant and Third-Party Plaintiff, | |
| - against - | C.A. No. 05-0221T (Related Cases: 05-274T; 05-370T; 05-522T) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER Third-Party Defendants. | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO PLAINTFFS' MOTION TO SEVER**

Defendant and third-party plaintiff New England Gas Company ("NEGasCo") submits this memorandum of law in opposition to plaintiffs' motion to sever NEGasCo's claims against the third-party defendants.

## PRELIMINARY STATEMENT

These cases concern some ninety separate properties spanning some 50 acres of the so-called "Bay Street Area" of North Tiverton. Plaintiffs allege that all of the purported soil contamination on these properties came from coal gasification waste disposed of by NEGasCo's predecessor, the Fall River Gas Company ("FRGC") between

1880 and 1960. While plaintiffs assert that cyanide is the tell-tale marker of coal gasification waste, in fact only a handful of the more than 2,000 soil samples tested from these various properties show exceedances for cyanide.

Plaintiffs' present motion to sever is premised upon the following tautology: Because the third-party defendants did not manufacture gas, they cannot be the source of the "coal gasification waste" that purportedly contaminates the soils of the Bay Street Area. But plaintiffs' premise is fundamentally flawed because the chemical residues detected on certain of plaintiffs' properties are not labeled, tagged or otherwise identified as coal gasification waste, are not consistent with such material, and are instead consistent with the industrial and municipal wastes deposited by the third-party defendants impleaded by NEGasCo. NEGasCo's defense and third-party claims are thus based on two related points: NEGasCo is not the source of the contamination, and the third-party defendants are the sources of the contamination.

Plaintiffs' severance motion is also premised on the assertion that the addition of the third-party defendants will necessarily delay the discovery closure and trial of this suit. This contention is wrong because substantive depositions have only just begun, and because there is no reason that diligent parties cannot conclude all discovery by the current closure date.[1]

* * *

[1] With respect to the Court's concern, as stated at the September 11, 2007, hearing, that joinder of the third-party defendants could delay the ultimate remediation of the Bay Street Area, filed under separate cover today is NEGasCo's motion seeking dismissal of plaintiffs' claims for remediation on the basis that RIDEM, which is presently in litigation with defendant, is exclusively charged under Rhode Island law with determining and administering the remediation of soil contamination. Accordingly, the appropriate remediation remedy, and the responsibility for same, will be determined through the state court process; NEGasCo submits that these cases are exclusively ones for money damages.

First, plaintiffs' characterization of the alleged contamination as indicative of coal gasification waste -- and only coal gasification waste -- is flawed. Rather, the assortment of compounds with which the Bay Street Area is alleged to be contaminated are not unique to the coal gasification process, and in many instances are not even associated with the coal gasification process. In fact, many of the compounds at issue are linked directly with the industrial and municipal processes and wastes of each of the third-party defendants. For example, the predominant contaminants identified in the over 2,000 soil samples taken of the Bay Street Area are polycyclic aromatic hydrocarbons ("PAHs"). Yet, these same PAH -- which are created through burning or combustion -- are consistent with the current operations of third-party defendant Dominion's Brayton Point Power Plant -- the largest single source of air pollution in Rhode Island -- which operates only two miles up-wind of the Bay Street Area.

Another source of the PAHs detected in the Bay Street Area is the tank farm that is immediately adjacent to the Bay Street Area, which was owned by third-party defendant Gulf for over 40 years and is now owned by third-party defendant Inland Fuel. Among many of the incidents at the tank farm over the years that has caused it to pollute the Bay Street Area was a massive fire in 1933 which was fed by over one million gallons of fuel oil that burned for days, blanketing the Bay Street Area with PAH-riddled soot and smoke.

In addition, as demonstrated below, plaintiffs do not satisfy any of the factors that would support severance here. On the contrary, if severance is granted, NEGasCo will be forced to pursue these third-party defendants in a separate trial, wasting valuable judicial resources, causing unnecessary duplication of discovery and evidence, and creating the

possibility of inconsistent verdicts. Further, severance will not materially simplify the issues or minimize confusion as NEGasCo will present evidence, through fact and expert testimony, demonstrating that the third-party defendants are the sources of the alleged contamination, regardless of whether they are parties at the trials of plaintiffs' claims.

Moreover, denial of severance will not delay these proceedings nor cause prejudice to the third-party defendants. While this Court has set a discovery cut-off date that is ambitious, it is reasonable for all concerned. Further, as substantive depositions have only just begun, and there has been limited documentary discovery, the third-party defendants will not be prejudiced by their participation in this action.

Given these considerations, NEGasCo should not be unfairly prejudiced by being denied an opportunity to develop fully in this case its claims against the third-party defendants, and this Court should not be required to try these cases twice, when it can do so once. At a minimum, the Court should defer consideration of this motion until the discovery closure date to determine the progress of the matter and evaluate the competing risks presented by joinder and severance, rather than those now the subject of plaintiffs' speculation.

## BACKGROUND

Plaintiffs allege that between 1880 and 1960, FRGC deposited materials associated with the coal gasification process in the Bay Street Area of North Tiverton. In October 2002, the Town of Tiverton received a Letter of Responsibility ("LOR") from the Rhode Island Department of Environmental Management ("RIDEM") in connection with the discovery of alleged contaminants beneath the roads in the Bay Street Area. In

March 2003, RIDEM issued a second LOR to NEGasCo relating to the alleged contamination. Though NEGasCo denies any responsibility for the alleged contamination, it has worked with RIDEM to analyze and assess the alleged contamination.

In January 2005, residents of the Bay Street Area brought this action alleging claims sounding in negligence and strict liability, among other claims. In essence, plaintiffs seek compensation for the alleged diminution in value of their properties and for the cost of remediating their respective properties.[2] In the Fall of 2005, NEGasCo moved to dismiss Plaintiffs' complaints. In November 2006, the Court granted NEGasCo's motion in part, dismissing plaintiffs' claims for gross negligence, private nuisance, emotional distress and an alleged violation of Rhode Island's Hazardous Waste Management Act. The Court let stand at that stage plaintiffs' claims for negligence, strict liability and public nuisance.

In November 2006, the Court held a Rule 16 conference at which NEGasCo informed the Court that it intended to issue a substantial number of subpoenas to potential third-party defendants, and that based on its preliminary investigation it expected to join eight to ten third-party defendants. At the conclusion of that conference, the Court set a discovery closure date of November 15, 2007, and noted that should additional third-party defendants be brought into this case, the Court would revisit the discovery closure date at that time.

In the months that followed, NEGasCo issued more than 30 non-party subpoenas resulting in the production of thousands of pages of documents. NEGasCo also

---

[2] The cost of the remediation cannot be determined until RIDEM determines the methodology and extent of remediation, if any, needed on each of the 90 separate properties.

conducted an extensive investigation into the sources of the alleged contamination in the Bay Street Area. During this same period, plaintiffs engaged in virtually no discovery. In fact, although plaintiffs have had access to over 380 boxes of the FRGC's historical records since January 2007, as of the date of this motion, plaintiffs have reviewed approximately 25 of those boxes over a couple of days. Plaintiffs have also conducted extremely limited written discovery, propounding their first written requests in July 2007. Further, plaintiffs have not taken a single deposition in this case. To date, NEGasCo has taken two depositions and is midway through the discovery deposition of Joseph "Jose" Souza, which has been attended by counsel for the third-party defendants.

On July 7, 2007 -- consistent with its representations at the Rule 16 Conference -- NEGasCo moved to add eight third-party defendants, alleging that they are responsible for plaintiffs' damages, if any, and that to the extent that NEGasCo is found liable for any such damages to plaintiffs, NEGasCo is entitled to contribution and/or indemnification from the third-party defendants. Specifically, the third-party complaint details how the third party defendants, through their use, dispersion or disposal of various compounds -- including PAHs, total petroleum hydrocarbons ("TPHs"), and semi-volatile organic compounds ("SVOCs") -- are the sources of the alleged contamination in the Bay Street Area.

On September 11, 2007, this Court granted NEGasCo's motion to add eight third-party defendants. NEGasCo promptly served its third-party complaints and advised counsel for all third-party defendants of the discovery schedule. On September 11, 2007, at plaintiffs' request, the Court also extended the deadline for the close of discovery until

February 29, 2008.[3] At this time, a discovery conference is scheduled for November 16, at which the parties will meet with Magistrate Judge Almond to set a discovery plan that will ensure the completion of discovery by *all parties* by the February 29 closure date.

## ARGUMENT

Though Rule 42 of the Federal Rules of Civil Procedure provides that severance may be proper if it will be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," severance is highly disfavored. Miller v. Am. Bonding Co., 257 U.S. 304, 307 (1921) ("it is only in *exceptional instances* where there are *special and persuasive reasons* for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials") (emphasis added); Monaghan v. SZS 33 Assocs., L.P., 827 F. Supp. 233, 245 (S.D.N.Y. 1993) ("separate trials remain the exception rather than the rule, regardless of the nature of the action").

Further, the burden is on the party seeking severance to establish that the claims should be tried separately. Martinez v. Robinson, Case No. 99 CIV. 11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) ("the burden is on the party seeking bifurcation to demonstrate that it is warranted"); Maldonado v. AT&T, 190 F.R.D. 26, 29 (D.P.R. 1999) (moving party "failed to sustain their burden of proving that separate trials are justified at this stage in the litigation").

[3] On October 24, 2007, this Court granted NEGasCo's motion to add the City of Fall River as a third-party defendant. Fall River has since been served with the Third-Party Complaints in the respective actions.

I. PLAINTIFFS CAN NOT SATISFY THEIR BURDEN OF SHOWING SEVERANCE IS PROPER IN THIS CASE

In denying a severance motion earlier this year, this Court articulated the factors to consider in determining whether to sever claims and order a separate trial:

> (1) whether separate trials will help to simplify the issues and avoid confusion; (2) whether separate trials will result in duplication of evidence; (3) whether separate trials will create a risk of inconsistent verdicts; (4) whether separate trials will result in an efficient use of judicial resources; (5) whether separate trials will expedite or delay the proceedings; and (6) the effect on the parties' rights to a jury trial.

Commonwealth Land Title Ins. Co. v. IDC Props., Inc., 482 F. Supp. 2d 203, 206 (D.R.I. 2007). As set forth more fully below, none of these factors warrants the severance of NEGasCo's third party claims.

A. Simplification of Issues and Avoidance of Confusion

While plaintiffs' theory of this case -- that the alleged contamination in the Bay Street Area is exclusively indicative of coal gasification waste, and only coal gasification waste -- is simple, it is neither a fair, nor scientific, assessment of the facts. (See Plaintiffs' Motion to Sever ("Pl. Memo.") at pp. 5-6, 8.) Rather, as demonstrated above and in NEGasCo's third-party complaint, the assortment of compounds with which the Bay Street Area is alleged to be contaminated are not unique to the coal gasification process and, in fact, are inconsistent with typical coal gasification waste. In fact, the alleged contaminants that have been detected in the soils of the Bay Street Area are consistent with the industrial and municipal chemicals or processes of each of the third-party defendants.

Thus, NEGasCo's defense of plaintiffs' claims will include the scientific proof that the particular chemicals identified on each of the respective plaintiffs' lots did not come from FRGC, but rather originated from one or more of the third-party defendants. As part and parcel of such defense, NEGasCo will adduce proof that each of the third-parties caused or contributed to the mix of compounds detected in the Bay Street Area, and will support such proof with expert testimony linking each of the third-party defendants to the contamination. Accordingly, whether or not the third-party claims are severed, a significant part of the trials of these claims will necessarily concern the responsibility of the respective third-party defendants for the contamination at issue. As such, severing the third-party claims will not simplify the issues or avoid confusion. Indeed, severing the third-party defendants could itself engender confusion as the jury will hear evidence about the third-party defendants, but will not have the benefit of their presence at trial to address that evidence.[4]

B. Duplication of Evidence

This Court's recent observation in Chambers, regarding the unnecessary duplication of evidence that may result from severance, is particularly instructive here. In Chambers, this Court recognized that where the claims of the plaintiff against the defendant are "dominat[ed]" by the "same factual question" as the claims that the

[4] Plaintiffs also argue that their motion to sever should be granted because, after their review of documents produced by the third-party defendants pursuant to NEGasCo's non-party subpoenas, they do not believe there is "evidence that the Third-party Defendants are solely responsible for the contamination." (Pl. Br. at pp. 1, 6.) Plaintiffs' argument is astounding given that they conducted only a cursory review of the tens of thousands of pages of documents produced by the third-party defendants during a handful of visits to NEGasCo's counsel's office to inspect this material. In any event, NEGasCo's claims against the third-party defendants are not based exclusively on what the third-party defendants produced pursuant to non-party subpoenas, but also on NEGasCo's independent investigation of the third-party defendants' roles as the sources of the alleged contamination. Finally, while plaintiffs' memorandum makes reference to an affidavit addressing this point, that affidavit was neither filed with the Court nor served on NEGasCo, and should not be considered even if subsequently filed. (Pl. Br. at pg. 6.)

defendant has against the third-party defendants, a motion to sever should be denied to avoid the presentation of the same evidence in two separate trials. 482 F. Supp. 2d at 207.

Here, a central factual question dominates both plaintiffs' claim against NEGasCo and NEGasCo's claims against the third-party defendants, namely, the source or sources of the alleged contamination in the Bay Street Area. If plaintiffs' claims are severed from NEGasCo's claims, and NEGasCo is forced to pursue its claims against the third-party defendants in a separate trial, NEGasCo will undoubtedly need to present the same evidence regarding the third-party defendants in the second trial. Moreover, at that trial, the third-party defendants will likely rely on evidence similar to that presented by plaintiffs in this lawsuit to demonstrate why they contend FRGC's former coal gasification plants are the source of the alleged contamination. The inevitable duplication of evidence that this Court sought to avoid in Chambers, is precisely why plaintiffs' motion to sever should be denied here too.

C. Inconsistent Verdicts

The risk of inconsistent verdicts that may result from severance also militates in favor of denying plaintiffs' motion to sever. Chambers, 482 F. Supp. 2d at 207 (the "risk of inconsistent verdicts greatly outweighs any simplification of issues . . ."). Here, the risk of inconsistent verdicts is significant. For example, should the Court sever the third-party claims, a jury hearing the third-party claims could determine that one or more third-party defendants are entirely responsible for the contamination which the first jury found to have been NEGasCo's fault alone; alternatively, a second jury's allocation of responsibility as between NEGasCo and the third-party defendants could be inconsistent,

or at odds with, the allocation of fault determined by the first jury on plaintiffs' negligence claims. For this reason as well, plaintiffs' motion to sever should be denied.

D. Use of Judicial Resources

In addition, since a dominant factual question underlies both plaintiffs' claims against NEGasCo and NEGasCo's claims against the third-party defendants, severance of these claims will result in a duplication of judicial resources. If plaintiffs' motion to sever is granted and NEGasCo is forced to pursue the third-party defendants in a separate trial, this Court will be required to address pre-trial and trial motions regarding essentially the same operative facts, and eventually will have to preside over a second set of trials that will center around the same evidence that was the subject of the trial of plaintiffs' claims against NEGasCo. Under these circumstances, where the dominant factual question in both trials would be the same, the Court should conserve its and the parties' resources, by handling these related claims in one action.

E. Expedition or Delay

Plaintiffs' assertion that the presence of third-party defendants in this lawsuit will unreasonably delay its resolution "for many more years," is hyperbolic. (Pl. Memo. at pg. 10.) As plaintiffs acknowledge, the discovery cut-off date is still four months away. Moreover, with a discovery scheduling conference set for November 16, the Court has ensured that the parties will be kept on a short leash and be prepared for trial in short order. Indeed, Magistrate Judge Almond's recent decision denying third-party defendants Chevron's and Honeywell's motions for a stay of discovery demonstrates that discovery will stay on track to be completed by the February 29 closure date set by this Court. Thus, there is no basis for plaintiffs' contention that the inclusion of the third-party

defendants will cause delay to the resolution of this case.

F. Jury Trial

Finally, plaintiffs and NEGasCo are entitled to jury trials on their claims. Severance of the claims would only serve to require the empanelment of multiple juries.

## II. PLAINTIFFS' MOTION IS PREMATURE

At minimum, plaintiffs' motion to sever should be deferred until the parties are given the opportunity to develop the record through discovery. Courts routinely decline to address severance motions at this stage of the proceedings. See, e.g., Martinez v. Robinson, Case No. 99 CIV. 11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (denying motion to bifurcate as premature where "[d]iscovery has barely begun"); Maldonado v. AT&T, 190 F.R.D. 26, 29 (D.P.R. 1999) (denying motion for separate trials where discovery had not concluded); Buller v. Acromed Corp., Case No. 90-3971, 1991 U.S. Dist. LEXIS 250, at *4 (D. La. Jan. 4, 1991) (continuing hearing on motion to sever to "a later date, such as at the pre-trial conference, after the facts and evidence have been more fully developed"). Even in Reynolds v. Rick's Mushroom Service, Inc., which is cited by plaintiffs, severance was granted only after discovery had closed and summary judgment motions were ruled upon. Reynolds v. Rick's Mushroom Serv., Inc., Case No. 01-3773, 2006 WL 1490105, at *4 (E.D. Pa. May 26, 2006) (motion to sever granted where claims asserted against 34 new parties after discovery had closed and summary judgment motion ruled upon).

In this case, the record has yet to be fully developed and the role of each of the third-parties fully determined. The Court can certainly defer any ruling on this motion

until after the closure date, and after determination of summary judgment motions, at which point the above-referenced factors can be evaluated without resort to the speculation on which plaintiffs' motion is now premised. For this reason as well, plaintiffs' motion to sever should be denied.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to sever should be denied in its entirety.

Dated: October 31, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*/s/ David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>Taylor Duane Barton & Gilman LLP<br>10 Dorrance Street<br>Suite 700<br>Providence, RI 02903 |
| Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White Incorporated<br>20 Washington Place<br>Providence, RI 02903 | David B. Willis<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 |

*/s/ David A. Wollin*

*433650_1.doc*