# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **GAIL, JOHN D. AND JOHN F. CORVELLO; et al.,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **C.A. No. 05-221T** |
| **v.** | ) | **(Related Case No. 05-274T, 05-370T,** |
| | ) | **05-522T)** |
| | ) | |
| **NEW ENGLAND GAS COMPANY, INC.;** | ) | |
| **Defendant.** | ) | |

**Plaintiffs' Motion to Sever Defendant's Third-Party Complaint**

Pursuant to Federal Rules of Civil Procedure Rule 42(b), Plaintiffs, by their undersigned counsel, hereby respectfully submit this Motion to Sever Defendant's Third Party Complaint from Plaintiffs' original action.

For reasons set forth in the attached Memorandum of Law, Plaintiffs respectfully request the Court to sever the claims of the defendant New England Gas Company against all third-party defendants.

Dated: October 5, 2007

Respectfully submitted,

PLAINTIFFS,
By and through their attorneys,

/s/ Robert J. McConnell
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

/s/ Neil T. Leifer
David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

/s/ Mark W. Roberts
Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222
(617)-720-2320 Fax

**CERTIFICATION**

Service upon the following parties was completed electronically via the ECF system on September 26, 2007, pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

Mark W. Roberts

David A. Wollin, Esq.
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
401-274-7200
dwollin@apslaw.com

Brian R. Cunha
Law Offices of Brian Cunha & Associates
311 Pine Street
Fall River, MA 02720
brian@briancunha.com

John Tarantino, Esq.
Adler Pollock & Sheehan, P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
617-482-0600
617-482-0604
jtarantino@apslaw.com

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903
401-490-4649 direct
401-331-3400 main
401-331-3440 fax
rzabbo@rbhelaw.com

David E. Ross, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
212-506-1700
212-506-1800
dross@kasowitz.com

Paul Revere, III
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632
(508) 778-7126
RevereIII@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO; et al., Plaintiffs, | ) | |
| v. | ) | C.A. No. 05-221T (Related Case No. 05-274T, 05-370T, 05-522T) |
| NEW ENGLAND GAS COMPANY, INC.; Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO SEVER

By this motion, Plaintiffs respectfully request the Court to sever all claims for contribution against Third Party Defendants made by the Defendant New England Gas Company ("NEGas") and allowed by the Court, and order that these claims proceed as a separate action. Plaintiffs specifically seek to sever all claims made by NEGas against: Dominion Resources, Inc.; Dominion Energy Brayton Point LLC; Inland Fuel Terminals; Gulf Oil Corporation; Honeywell International, Inc.; Bridgestone; Bridgestone Firestone, NA LLC; and Bridgestone Americas Holding, the Town of Tiverton, and if NEGas' new motion to add is allowed, the City of Fall River, (collectively referred to as the "Third-party Defendants").

The allegations in the Third-party Complaint and the documents that NEGas obtained from the Third-party Defendants is response to Rule 30(b)(6) depositions do not contain any evidence that these entities actually sent waste that was disposed of on the Plaintiffs properties or that any of these Third-party Defendants are solely responsible for contamination in any specific part of the Moratorium Area.[1] NEGas's Third-party Complaint appears to be based upon the

[1] There are allegations that the Town of Tiverton operated one or more small municipal dumps, but municipal waste is not the basis for imposing the Moratorium Area. Additionally, there is an allegation that Honeywell manufactured

inference that since these companies operated in the area their waste may have been deposited in the Moratorium, or that because of their operations or accidents in their operations some oil and/or hazardous materials must have become comingled with NEGas' waste. Based upon the state of the knowledge concerning the Third-party Defendants practices, there will be a substantial delay while NEGas conducts discovery to understand the Third-party Defendants practices and whether any of their waste was deposited on the residential properties in the Moratorium Area, while in contrast there is no question that coal gasification wastes have been found throughout the Moratorium Area. The addition of the Third-Party Defendants by NEGas almost 4 ½ years after the NEGas received its Letter of Responsibility from the Rhode Island Department of Environmental Protection ("DEM") and nearly 2 ½ years after the commencement of this lawsuit threatens to unduly delay and complicate the current action, greatly prejudicing Plaintiffs ability to finally resolve the contamination in the Bay Street Area of Tiverton, get the moratorium lifted and move on with their lives.

The filing of the Motion by Gulf Oil Corporation to post-pone the deposition of Jose Souza who is 87 which the Plaintiffs have been trying to take since August 17, 2006 on the grounds that they need to get up to speed in the case, get Rule 26 disclosures and have a Rule 26(f) conference high-lights the delays and disruptions that the entry of the Third-party Defendants will have on the Plaintiffs case.

In support of their Motion, the Plaintiffs submit the following:

---

Tarvia, a road coating with a coal tar base, but there is no evidence that this material has been found on the Plaintiffs properties.

## I. Factual and Procedural History

This is an action brought by Plaintiffs, residents of a Moratorium Area[2], impacted by soil contamination from coal gasification waste, located in Tiverton, Rhode Island to press for the cleanup of the contamination in their neighborhood and to recover all of the damages caused by that contamination. This is not a typical contamination case. In August of 2002, a DEM field investigator observed stockpiled soils at the corner of Judson and Bay Street and at the bottom Last Street in Tiverton that had been excavated as part of a sewer project. The stockpiled soil was in part blue, which was indicative of coal gasification waste. Laboratory analyses of the soil material by the Department's contractor laboratory confirmed the presence of cyanide and other hazardous substances common to coal gasification waste in the stockpiled soils.

In November 2002, EA Engineering on behalf of the Town of Tiverton and Starwood Tiverton, LLC conducted a subsurface investigation beneath the portions of the public roads/streets inclusive of Bay, Judson, Hooper, Hilton, Canonicus, Chase, Foote as far north as State Avenue. The EA Engineering investigation, documented that the coal gasification waste including Semi-Volatile Organic Compounds (SVOCs), totals metals including Lead and Arsenic as well as total Cyanide was present beneath some of the road/street areas of the neighborhood and appeared to be impacting the residential properties as well.

On March 13, 2003, a public meeting was held at the Tiverton Town Hall at which approximately 125 residents expressed their concerns and provided information to the

[2] The Tiverton Moratorium Area was created on August 25, 2003 by the Tiverton City Counsel with the support and encouragement of the Rhode Island Department of Health and at the time of filing this action was defined as "all property within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a drawn line to a point that meets Lepes Road; and bordered on the south by the center of the Lepes Road".

Department concerning historical activities in the Bay Street community. Documentation presented cited a former employee of Fall River Gas Co. dated February 10, 1987 states that "blue soil" was observed in the fill material along State and Bay Street. The source of the contaminated material is was identified as the former Fall River Gas Company (now owned by the Southern Union Company/New England Gas Company). The information collected by the DEM resulted in the conclusion that the coal gasification waste had been placed in the Bay Street area of Tiverton prior to the times some if not all of the homes were constructed.

On March 17, 2003, the Department issued a Letter of Responsibility to Southern Union Company and their local affiliate New England Gas Company (formerly Providence Gas Company, Fall River Gas Company and Valley Gas Company). (See attached Exhibit A, Notice of Responsibility). NEGas is the gas company that historically has operated in Fall River, Massachusetts within one mile of the Bay Street area in Tiverton.

On August 25, 2003, after consulting with the DEM and the Rhode Island Department of Health, the Town Council of the Town of Tiverton established an "Emergency Moratorium Area" due to the coal gasification waste. The Moratorium prohibited any excavation in the soil on both public and private properties and barred the issuance of building permits within the Moratorium Area that would result in the disruption of soils. While the limits of the Moratorium Area were adjusted once, all of the Corvello Plaintiffs have been living under these restrictions for five plus years. The Moratorium was just extended for another six months.

The imposition of the Moratorium Area was due to the pervasive presence of coal gasification waste. NEGas is the only party that has received a Notice of Responsibility for this waste.[3] Plaintiffs allege that NEGas' waste disposal practices, negligence and abnormally

[3] The Town of Tiverton received an NOR due to its ownership of the roads and right-of ways contaminated with coal gasification waste, but has not been alleged to have generated this waste.

dangerous activities resulted in a public nuisance that caused the Town of Tiverton to impose the Moratorium Area, and NEGas' failure to comply with the requirements of the DEM's NOR and subsequent orders has resulted in the Plaintiffs being trapped in the Moratorium Area, unable to sell or refinance their houses, and unable to enjoy or use their properties in normal fashion, all of which has resulted in substantial damages[4]. At best, NEGas has alleged that the Third-party Defendants may also have contributed some other kind of contamination to some undefined portion of the Moratorium area[5], but in no instance has NEGas alleged that these parties sent coal gasification waste to the Moratorium Area, that the parties have refused to honor DEM's orders to investigate and remediate the contamination, or that these parties' actions have prolonged the imposition of the Moratorium Area and the resultant impact on the Plaintiffs' lives. The presence of the Moratorium Area and the resultant impacts dramatically alters this case from litigation in a "normal" contamination case and mandates that the contribution action against the Third-party Defendants be severed. If NEGas is able to establish after extensive discovery that these parties contributed some other kinds of wastes to some parts of the Moratorium Area, NEGas can obtain contribution in a separate action.

On April 1, 2005, Plaintiffs brought this action in the Rhode Island Superior Court which was then removed to federal Court on the basis of diversity jurisdiction. Now pending before the Court are the Plaintiffs' claims sounding in negligence, strict liability, public nuisance, a request for punitive damages, and a request for equitable relief. Plaintiffs allege that coal gasification waste was generated by Defendant and subsequently deposited as fill on the Plaintiffs'

---

[4] NEGas has refused to investigate a significant number of the properties within the Moratorium Area, leaving these properties in limbo, subject to the moratorium, but not knowing whether and to what extent they are contaminated.
[5] NEGas has alleged that the Town of Tiverton operated two small municipal dumps in specific locations within the Moratorium area, but there is no suggestion anywhere in the administrative record that the Moratorium Area was imposed due to the presence of municipal waste, or the DEM has issued orders to The Town of Tiverton to investigate and remediate the Moratorium Area that they have refused to honor.

properties, the Town roads and surrounding lands. Plaintiffs' claims seek damages for injuries to Plaintiffs' property, loss of use and enjoyment of their properties, and all other damages arising from the coal gasification waste disposal by Defendant NEGas and the resulting Moratorium Area, including the money necessary to conduct the investigation and remediation necessary to remove the contamination and eliminate the Moratorium and this public nuisance.

On September 17, 2007, Defendant NEGas filed their Third Party Complaint alleging claims against eight Third Party Defendants. (NEGas has now moved to additionally add the City of Fall River, but this motion has yet to be acted upon. The Third Party Complaint is a model of "notice pleading" and alleges that these third parties are liable for indemnification and/or contribution to New England Gas Company in the event it is found liable. NEGas does not allege that any of the Third Party Defendants were involved in the manufacture or disposal of coal gasification waste materials. Moreover, after review of documents relied upon by the Defendant in filing their Third Party Complaints, Plaintiffs' Counsel has not identified a single document obtained through the use of Federal Rules of Civil Procedure Rule 30(b)(6) depositions that provided a connection to any of the Third Party Defendants and the production or disposal of coal gasification or other waste found in the Moratorium Area which is the central issue in this legal action. (See, Attached Affidavit, Exhibit B). Additionally, the Third-Party Complaint does not allege and the documents do not provide any evidence that any of the Third-party Defendants are solely responsible for the contamination in any particular portion of the Moratorium Area.

Plaintiffs therefore, hereby request that this Court, pursuant to Federal Rules of Civil Procedure Rule 42, sever the claims for contribution against the Third Party Defendant and have this action proceed as a separate action.

## II. Legal Analysis

A party "may move to strike a third-party claim, or for its severance or separate trial." Fed. R. Civ. P. 14(a). The Federal Rules give the trial court broad discretion to grant severance of third party claims. "The power to stay proceedings is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication. How this can best be done is a decision properly vested in the trial courts." Gold v. Johns Manville Sales Corp., 723 F.2d. 1068, 1077 (3rd Cir. 1983) (citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936). A motion to sever a claim and to try it separately is governed by Federal Rule of Civil Procedure 42(b), which provides:

> **(b) Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or third party claim, ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Therefore, when a Third Party Complaint will result in prejudice, delay, inconvenience, prolong a trial, or cause financial hardship, the Court has the discretion to sever the Third Party Complaint and order that those claims be litigated and tried in a separate action. *See,* Linday v. American President Lines, Ltd., 214 Cal.App.2d 146, 149 (1963) (if the trial court determines that issues raised by the cross-complaint should be tried separately from those raised by complaint and answer, the proper procedure is to sever the action).

In exercising discretion under Federal Rule 42(b), district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion. Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 482 F.Supp.2d 203, *206 (D.R.I.,2007) citing Stanley v. Bray Terminals, Inc., 197 F.R.D. 224, 230 (N.D.N.Y.2000) (when considering whether claims should be tried separately, court

should consider whether the issues "are (1) significantly different from one another; (2) triable by jury or the court; (3) have a different discovery posture [sic] (4) require the testimony of different witnesses and documentary proof; and (5) whether prejudice will result if severance is not granted."); Webb v. Hyman, 861 F.Supp. 1094, 1120 (D.D.C.1994) (*quoting* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2388 (1971))("If a single issue could be dispositive of the case, and resolution of it might make it unnecessary to try the other issues, separate trial of that issue may be desirable to save the time of the court and reduce the expense of the parties.").

**A. Defendant's Seven Corporate Third Party Claims should be severed from Plaintiffs' original action because Defendant's claims will unduly delay and complicate the upcoming discovery process and trial, and further prejudice Plaintiffs**

The Plaintiffs allege that the Moratorium Area, which encompasses Plaintiffs' entire neighborhood, was contaminated as a result of coal gasification waste disposal procedures by Defendant NEGas and/or its contractors or agents between the years from approximately 1880 through 1955. These allegations require discovery and the development of substantial evidence on practices that involve more than one plant owned and operated by NEGas during a fifty year period starting before the turn of the century. Adding additional corporate parties to the litigation at this stage that were/are specifically **not** involved in coal gasification processes would significantly 1.) prejudice Plaintiffs by increasing the inconvenience and costs of litigation; 2) complicate the issues at trial by injecting into this case complex factual and legal questions concerning whether the corporate Third-party Defendants contributed some other kind of contamination that became co-mingled with some part of the Defendant's coal gasification waste in the Moratorium Area; 3) substantially prolong the discovery period and upcoming trial of this matter. Given that this case was filed almost two and a half years ago, a further delay is not in

the interest of justice and would continue to leave the Plaintiffs trapped in their contaminated properties inside the Moratorium Area.

UNDULY DELAY

District courts have the discretion to control disposition of cases so as to economize time and effort for itself, the parties, and counsel. *See* United States v. Kramer, 770 F. Supp. 954, 957 (D.N.J. 1991) (citing Landis v. North Am. Co., 299 U.S. 248, 254 (1936)). The addition of the Third party Defendants with no allegation that they disposed of coal gasification waste, and no clear evidence that they disposed of any waste on the residential properties in the Moratorium Area, would cause even more prejudice, complication, and delay right at a time when discovery is set to close in less than five months. NEGas' claims would undoubtedly complicate the case at trial because NEGas will have to conduct discovery of the operations and waste disposal practices of seven major corporations and two municipalities. The time for these parties to come up to speed, and then to conduct discovery involving the new Third-party Defendants, each with its own deposition, document production, and interrogatory needs that will probe the events during the seventy-five year time period alleged in NEGas' Third-party Complaint will make it impossible to complete discovery by the February 29, 2008 cut off established by the Court. Also, given the different nature of the operations and wastes of the Third-party Defendants, there would likely need to be further investigation of the Moratorium area to establish where, if anywhere, the different kinds of contaminants were deposited within the Moratorium Area and to ascertain what, if any, role each of the Third-party Defendants may have played in polluting Plaintiffs' properties and/or the Moratorium Area. Finally, the presence of Defendants seeking to avoid and/or shift liability would create a "battle of the experts" likely to confuse the jury and

substantially increase litigation costs. *See generally* Reynolds v. Rick's Mushroom Service, Inc., 2006 WL 1490105 (E.D. Pa. 2006).

Given that this case has already taken more than two years to proceed to the close of discovery, the likelihood and extent of further delay weighs strongly in favor of severing Defendant's Third-party Complaint. The additional discovery and enlarged scope of trial would delay resolution of this matter for many more years. Plaintiffs will bear the costs of this delay not only financially but also by lengthening the duration that many Plaintiffs must reside in the contaminated community while awaiting resolution of their legal claims against NEGas, a known responsible party. Therefore, the Court should exercise its discretion to sever the third-party complaint from Plaintiffs' main action.

COMPLICATE PROCEEDINGS

Environmental property contamination cases often prove more difficult than most cases arising in tort; dealing with complex subsurface scientific analysis, expert testimony and fact finding. Prior to filing their complaint, Plaintiffs exercised sound due diligence in investigating their claims against NEGas. In reviewing the evidence available from community members and public records, Plaintiffs chose to sue one company, NEGas, who was involved in the coal gasification process when waste materials were known to have been deposited in the Tiverton Moratorium Area and when NEGas operated in that vicinity. The inclusion of corporate parties engaged in *other activities* on the theory that their waste maybe comingled with the coal gasification waste will only serve to complicate and confuse the issues.

Defendant's third party claims are especially disconcerting since 1) the Third Party Defendants are representative of industrial and municipal operations that are not related to coal gasification and 2) the allegations in the Complaint and documents produced in response to the

Rule 30(b)(6) depositions make it clear that NEGas is relying on the inference that since they operated in the area, they may have contributed to the waste on the Plaintiffs properties. Plaintiffs' case is distinguishable from other cases where severance was denied because there is was risk of inconsistent verdicts or significant discovery duplication. In the recent Rhode Island District Court case Commonwealth Land Title Ins. Co. v. IDC Properties, Inc. 482 F.Supp.2d 203, *206 (D.R.I., 2007) this Court denied severance of Defendant development company's third party claims against their attorneys who represented them in a property development transaction. The third party claims alleged that the attorneys were liable because they had failed to disclose certain claims to unit owners and as a result development rights expired. Id.at 205. It is clear in the IDC Properties case that the attorneys played a central role in the transaction and thus were factually and legally connected to Commonwealth's claims against IDC and there would be substantial overlapping discovery and the possibility of inconsistent verdicts if severance was granted.

In the current case, however, liability of the Third-party Defendants is not connected to the Plaintiffs' claims against NEGas. Defendants do not allege a contractual relationship with any of the third parties. Liability of Dominion Resources, Inc. and Dominion Energy Brayton Point LLC, for example, is alleged by NEGas to arise because they are the "largest source of air pollution in Rhode Island". (Third Party Complaint, p. 9). Third Party Defendants Inland Fuel Terminals and Gulf Oil Corporation are alleged to be liable to NEGas because they at one time or currently own or operate a Tank Farm that stores petroleum products adjacent to the Moratorium Area. (Third Party Complaint, p.7) The only Third Party Defendant that is in any way allegedly connected to coal waste arguably could be Honeywell International, Inc. who the

Defendants claim produced a product call Tarvia[6]. Tarvia, the Defendant states, is coal tar allegedly put on roads at the turn of the century. (Third Party Complaint, p.5) Coal tar has not been documented to be present on the residential properties in the Moratorium Area. Although coal tar is a by-product of coal gasification, it does not, produce blue soil or the ash, coal, and metals contained in the fill found in the Moratorium Area. None of the Third party Defendants named by NEGas is or was a generator of coal gasification waste and therefore Plaintiffs' claims against NEGAs, as a generator of coal gasification waste, are distinguishable from the allegations made in the Third Party Complaint.[7]

PREJUDICE TO PLAINTIFFS

There are over 100 Plaintiffs that have brought forth claims that contamination caused by NEGas has contaminated their properties and caused the imposition of the Moratorium Area. NEGas is the sole party who State and Local officials have identified to have manufactured the coal gasification waste which gave rise to the Moratorium Area. To add nine other defendants, whose manufacturing and production operations have not generated coal gasification waste would render a single trial unmanageable, further delay resolution of this case, and prejudice the Plaintiffs. In United States v Kramer, 770 F.Supp. 954, 960 (D.N.J. 1991), third-party contribution actions were severed from plaintiff's action. In its ruling the Court noted:

> To try this case with well over 300 parties would be overwhelming due to the resulting administrative, procedural, factual, and legal complexity. Such a mass trial would also result in the unnecessary expenditure of a tremendous amount of money, time and effort on the part of hundreds of parties and the wasting of judicial resources arising out of months of discovery, motion practice and the trial itself. Determination of issues in the

---

[6] No documents were produced to Defendant NEGas responding to their Keeper of the Records Subpoenas for Honeywell International, Inc., Dominion Resources, Inc. and Dominion Energy Brayton Point LLC.

[7] The remaining Bridgestone Defendants, Bridgestone Firestone, NA LLC and Bridgestone Americas Holding Inc are alleged to have waste generated from their manufacturing plants, while Tiverton and Fall River are alleged to have sent municipal waste, but Defendants fail to state the exact chemical composition of these parties waste or that it met the description of alleged contamination in Plaintiffs' Complaint.

primary case, or a settlement, should it occur, is likely to eliminate many issues in dispute between the defendants and the third-party defendants.

Although, the number of defendants in Plaintiffs' case is somewhat different than in Kramer, the interest of the Court remains the same-judicial economy and fairness.

Logistically, the third-party contribution claims can easily be severed. Plaintiff's causes of action are directly connected to the disposal of coal gasification waste in the Moratorium Area, and the impacts of the Moratorium Area itself, which are identifiable and inherently different from the commingling of other waste alleged by NEGas in their Third Party Complaint. While there may be some overlap of testimony, the issues are largely separate and distinct and will not be ripe for contribution or indemnification by the allegations contained in the Third-party Complaint until the close of Plaintiffs' action and the establishment of NEGas' liability.

**B. The Defendant's claim against the Third-Party Defendants sounds in indemnification and contribution and should be a separate action.**

In the instant case, NEGas' claim against the Third-Party Defendants will not be ripe by the express terms of the Third-Party Complaint until after its liability to the Plaintiffs has been established. Defendant's third-party claims are for contribution and indemnification. Specifically, Defendant states in their Third-Party Complaint "in the unlikely event that Plaintiffs recover any judgment against NEGas, NEGas is entitled to contribution and/or indemnification" from each Third-Party Defendant. It is not manifestly unjust for NEGas to litigate any contribution and/or indemnity claims in a separate suit as these claims are not yet ripe. *See generally* Oklahoma ex rel. Edmondson v. Tyson Foods, Inc., 237 F.R.D. 679 (N.D. Okla., 2006) (The Court granting severance in *dicta* noted the third-party claims will not be pursued unless the Plaintiffs prevail… and even if all third parties remained, at the end of the lawsuit, Defendants

and Third-Party Defendants could pursue the same type of action against countless other entities who remained unjoined.)

Neither statute nor case law mandate that Defendant's claims for contribution be brought in the primary suit. Pursuant to the Rhode Island Uniform Contribution Among Tortfeasors Act a plaintiff may recover 100% of his or her damages from a joint tortfeasor who has contributed to the injury in any degree; the joint tortfeasor may then seek contribution either by a separate action or by impleading the fellow joint tortfeasor under third-party practice. Geneneral Laws of Rhode Island 1956, § 10-6-1 et seq. Calise v. Hidden Valley Condominium Ass'n, Inc., 773 A.2d 834 (2001).

Defendant may argue that it will be require greater judicial resources to sever joint and several tortfeasors and to not adjudicate all issues of liability, causation and damages at one time. Although judicial economy is part of the severance balance test, so to are the concerns for delay, complexity of the issues, economy of the primary litigants and overall prejudice. See Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 482 F.Supp.2d 203, *206 ("In deciding whether to sever claims and try them separately, a court should consider a number of factors, including: (1) whether separate trials will help to simplify the issues and avoid confusion; (2) whether separate trials will result in duplication of evidence; (3) whether separate trials will create a risk of inconsistent verdicts; (4) whether separate trials will result in an efficient use of judicial resources; (5) whether separate trials will expedite or delay the proceedings; and (6) the effect on the parties' rights to a jury trial.")

The primary claims in this case have to do with the negligent disposal of coal gasification waste in Tiverton and the resulting declaration of the Moratorium Area.

**III. Conclusion**

Based on the above, Plaintiffs respectfully requests that the Court sever NEGAs' Third-

party claims and try them in a separate action. Trying the third party claims in this action will result in great prejudice to Plaintiffs, prolong the trial, and will disrupt the orderly presentation of the evidence and issues which have been litigated for the past two years and a half years.

Severing the claims will result in judicial economy as the claims are contingent on NEGas being found liable to Plaintiffs. All of these factors mandate the severance of these actions.

*Dated: October 5, 2007*

Respectfully submitted,

PLAINTIFFS,
By and through their attorneys,

/s/ Robert J. McConnell
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

/s/ Neil T. Leifer
David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

/s/ Mark W. Roberts
Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222
(617)-720-2320 Fax

**CERTIFICATION**

Service upon the following parties was completed electronically via the ECF system on September 28, 2007, pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

/s/ Mark W. Roberts
Mark W. Roberts

David A. Wollin, Esq.
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
401-274-7200
dwollin@apslaw.com

John Tarantino, Esq.
Adler Pollock & Sheehan, P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
617-482-0600
617-482-0604
jtarantino@apslaw.com

David E. Ross, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
212-506-1700
212-506-1800
dross@kasowitz.com

Brian R. Cunha
Law Offices of Brian Cunha & Associates
311 Pine Street
Fall River, MA 02720
brian@briancunha.com

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903
401-490-4649 direct
401-331-3400 main
401-331-3440 fax
rzabbo@rbhelaw.com

Paul Revere, III
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632
(508) 778-7126
RevereIII@aol.com