# EXHIBIT B

CSC®

CORPORATION SERVICE COMPANY®

# Notice of Service of Process

**SLM / ALL**
**Transmittal Number: 5349097**
**Date Processed: 09/20/2007**

**Primary Contact:** Meg Johnson-Law Dept- Ab-2
Honeywell International Inc.
101 Columbia Rd.

Morristown, NJ 07962

| | |
|---|---|
| **Entity:** | Honeywell International Inc.<br>Entity ID Number 2034040 |
| **Entity Served:** | Honeywell International, Inc. |
| **Title of Action:** | Gail Corvello vs. New England Gas Company |
| **Document(s) Type:** | Third Party Complaint |
| **Nature of Action:** | Environmental |
| **Court:** | United States District Court, Rhode Island |
| **Case Number:** | 05-0221T |
| **Jurisdiction Served:** | Rhode Island |
| **Date Served on CSC:** | 09/20/2007 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | David A. Wollin<br>401-274-7200 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of Rhode Island

GAIL, JOHN D. and JOHN F. CORVELLO, et al.
Plaintiffs

v.

NEW ENGLAND GAS COMPANY,
Defendant,
Third Party Plaintiff

v.

BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION, INC.; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., and DOMINION ENERGY BRAYTON POINT, LLC.
Third-Party Defendants

**THIRD PARTY SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 05-0221T
(Related Cases: 05-274T; 05-370T; 05-522T)

**TO: HONEYWELL INTERNATIONAL, INC.**
c/o Corporation Service Company
222 Jefferson Boulevard, Suite 200
Warwick, Rhode Island 02888

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this court and serve upon DEFENDANT AND THIRD-PARTY PLAINTIFF'S ATTORNEY:

David A. Wollin, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903

an answer to the third-party complaint which is herewith served upon you within 20 days after the service of this summons upon you exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the third-party complaint. There is also served upon you herewith a copy of the complaint of the plaintiff. You have the option of answering or not answering the plaintiff's complaint, *unless* (1) this is a case within Rule 9(h) Federal Rules of Civil Procedure, *and* (2) the third-party plaintiff is demanding judgment against you in favor of the original plaintiff under the circumstances described in Rule 14(c) Federal Rules of Civil Procedure, in which situation you are required to make your defenses, if any, to the claim of plaintiff as well as to the claim of the third-party plaintiff.

CLERK

(BY) DEPUTY CLERK

9-18-07
DATE

True copy attest
George R. Clerk, Constable #6025
George R. Clerk, Constable
20 Sept. 07

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and Complaint was made by me | Date |
| Name of Server: | Title |

**Check box below to indicate appropriate method of service**

☐ Served personally upon the defendant. Place where served: ______________________

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: ______________________

☐ Returned unexecuted: ______________________

☐ Other (specify): ______________________

## STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ______________________
Date

______________________
Signature of Server

______________________
Address of Server

Case 1:05-cv-00221-T-DLM Document 249 Filed 09/17/2007 Page 1 of 13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GAIL, JOHN D. and JOHN F. CORVELLO, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY,<br><br>Defendant/Third Party Plaintiff,<br><br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., and DOMINION ENERGY BRAYTON POINT LLC,<br><br>Third-Party Defendants. | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T)<br><br>**THIRD-PARTY COMPLAINT** |

Third-Party Plaintiff, New England Gas Company, by and through its attorneys, Adler, Pollock & Sheehan, P.C., Kasowitz, Benson, Torres & Friedman LLP, and Hinckley, Allen & Snyder LLP, as and for its third-party complaint against defendants Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.; Honeywell International, Inc.; the Town of Tiverton; Gulf Oil Corporation; Inland Fuel Terminals, Inc.; Dominion Resources, Inc.; and Dominion Energy Brayton Point LLC, alleges as follows:

## PARTIES

1. Third-party plaintiff, New England Gas Company ("NEGasCo"), is an unincorporated division of Southern Union Company ("Southern Union"). Southern Union is a Delaware corporation with its principal place of business in Houston, Texas.

2. Upon information and belief, third-party defendants Bridgestone Firestone North American Tire, LLC and Bridgestone Americas Holdings, Inc. (collectively, "Firestone") are companies duly organized and existing under the laws of the State of Nevada with their principal place of business in Nashville, Tennessee.

3. Upon information and belief, third-party defendant Honeywell International, Inc. ("Honeywell") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Morris Township, New Jersey. Upon information and belief, Honeywell acquired the assets of and/or is the successor to the Barrett Company (f/k/a the Barrett Manufacturing Company ("Barrett")).

4. Third-party defendant Town of Tiverton ("Tiverton") is a municipal corporation and a public subdivision of the State of Rhode Island.

5. Upon information and belief, third-party defendant Gulf Oil Corporation ("Gulf") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in San Ramon, California.

6. Upon information and belief, third-party defendant Inland Fuel Terminals, Inc. ("Inland Fuel") is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Bridgeport, Connecticut.

7. Upon information and belief, third-party defendant Dominion Resources, Inc. ("Dominion Resources") is a corporation duly organized and existing under the laws of the State of Virginia with its principal place of business in Richmond, Virginia.

8. Upon information and belief, third-party defendant Dominion Energy Brayton Point LLC ("Dominion Energy") is a limited liability company duly organized and existing under the laws of the State of Virginia and is a wholly-owned subsidiary of Dominion Resources. Upon information and belief, Dominion Resources and its subsidiary, Dominion Energy, are alter egos of one another and own and/or operate the Brayton Point Power Plant in Somerset, Massachusetts.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1367. Each of the third-party defendants is present in or otherwise subject to jurisdiction in Rhode Island including without limitation based on their minimum contacts with the forum.

10. Venue is properly founded in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

11. Plaintiffs own property and/or reside in Tiverton, Rhode Island. Plaintiffs allege that their properties are contaminated by material allegedly generated by one or more manufactured gas plant facilities owned and operated by the Fall River Gas Company prior to its acquisition by NEGasCo. A true and accurate copy of plaintiffs' Complaint is annexed hereto as Exhibit A.

12. NEGasCo denies that any of the alleged contamination of plaintiffs' properties came from the Fall River Gas Company. NEGasCo further denies any liability for the injuries and damages alleged by the plaintiffs and asserts that the third-party defendants are responsible for all or part of the alleged contamination.

13. NEGasCo brings this third-party complaint for contribution and/or indemnification against each of the third-party defendants if, and to the extent, it is liable to plaintiffs in this action. Each and every claim herein for contribution and/or indemnification is brought separately with respect to the claim of each plaintiff, and is combined herein solely for practical convenience as each is a separate, independent claim herein.

<u>Factual Allegations As Against Third-Party Defendant Firestone</u>

14. Upon information and belief, from 1937 until about 1971, third-party defendant Firestone operated a manufacturing plant in Fall River, Massachusetts (the "Fall River Facility") less than three miles from the area where plaintiffs' property is located (the "Bay Street Area").

15. Upon information and belief, Firestone had a business relationship with John Simpson, Jr. and his sons, John K. Simpson and Alvin Simpson (collectively, the "Simpsons"), the owners and operators of one of the largest contracting, excavating and hauling businesses in the Tiverton/Fall River area during the relevant period.

16. Upon information and belief, waste from the manufacturing processes at Firestone's Fall River Facility were deposited and/or distributed in the Bay Street Area by Firestone and/or the Simpsons, on Firestone's behalf.

17. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Firestone for any and all sums that it is required to pay as a result of this action, including attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

Factual Allegations As Against Third-Party Defendant Honeywell

18. Upon information and belief, Barrett, whose assets were acquired by third-party defendant Honeywell, manufactured a product called Tarvia.

19. Upon information and belief, Tarvia was made from coal tar and used to pave and maintain roadways at the turn of the 20th century and thereafter.

20. Upon information and belief, beginning in the 1930s, Tarvia was applied to one or more of the streets in the Bay Street Area, and thereafter leached, washed or was carried onto plaintiffs' properties.

21. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Honeywell for any and all sums that it is required to pay as a result of this action, including attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

Factual Allegations As Against Third-Party Defendant Town Of Tiverton

22. Upon information and belief, third-party defendant Tiverton is responsible for the alleged contamination in the Bay Street Area. In a Letter of Responsibility issued to Tiverton on October 2, 2002, the Rhode Island Department of Environmental Management ("RIDEM") concluded, in relevant part, that Tiverton is responsible for "concentrations of hazardous substances [including] Total Petroleum Hydrocarbons

(TPH) and Semi-Volatile Organic Compounds (SVOCs)" in the Bay Street Area. RIDEM subsequently named Tiverton as a respondent in a September 2006 Notice of Violation relating to the Bay Street Area.

23. Upon information and belief, the contaminants referenced in the October 2, 2002 Letter of Responsibility were caused by, among other things, the application of Tarvia by the Town of Tiverton on the roads in the Bay Street Area.

24. Upon information and belief, throughout most of the 20th Century, Tiverton operated, permitted and/or failed to prevent, the use of portions of the Bay Street Area, including the corner of Judson and Bay Streets, as a dump for waste from multiple industrial, commercial and/or other sources, which waste has caused or contributed to the alleged contamination in the Bay Street Area.

25. Tiverton was acting in a proprietary capacity at the time that the conduct complained of was committed.

26. Tiverton breached a special duty it owed to plaintiffs and engaged in egregious activities at the time that the conduct complained of was committed.

27. By letter dated March 23, 2007, NEGasCo sent a notice and demand to Tiverton pursuant to R.I. Gen. Laws §45-15-5.

28. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Tiverton as to the claim of each separate plaintiff for any and all sums that it is required to pay as a result of this action, including attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

Factual Allegations As Against Third-Party Defendant Gulf

29. Since about 1928, a tank farm has been located at 25 State Avenue in Tiverton, Rhode Island, which is at the westernmost portion of the Bay Street Area (the "Tank Farm").

30. Upon information and belief, the Tank Farm suffered a devastating fire in 1933 (the "1933 Fire") and sustained considerable damage in 1938 and 1954 as a result of two of the largest hurricanes in the history of New England (the "Hurricanes").

31. Upon information and belief, third-party defendant Gulf owned and operated the Tank Farm from 1940 until approximately 1981, and also owned land immediately north of the Tank Farm in Fall River, which Gulf used as part of its operation of the Tank Farm.

32. Upon information and belief, over the course of Gulf's ownership of the Tank Farm, it engaged in significant excavation and construction at the Tank Farm in conjunction with the expansion of the Tank Farm.

33. Upon information and belief, the 1933 Fire, the Hurricanes, and the above-referenced excavation and construction, as well as the day-to-day operations of the Tank Farm caused or contributed to the contamination in the Bay Street Area as alleged by plaintiffs.

34. Upon information and belief, Gulf also owned and operated a lot located at 52 State Avenue in Fall River, Massachusetts that was formerly owned and occupied by the State Coal Company (the "State Coal Company Lot").

35. Upon information and belief, contaminants from the State Coal Company Lot were deposited in, or caused or contributed to the contamination in the Bay Street Area as alleged by plaintiffs.

36. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Gulf for any and all sums that it is required to pay as a result of this action, including attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

Factual Allegations As Against Third-Party Defendant Inland Fuel

37. Upon information and belief, third-party defendant Inland Fuel acquired ownership of the Tank Farm in 1995.

38. Upon information and belief, tanks or trucks operated by or for the benefit of Inland Fuel have spilled petroleum in the Bay Street Area, causing or contributing to the alleged contamination.

39. Upon information and belief, one example of this occurred in November of 2005 when a petroleum based substance leaked from a truck exiting the Tank Farm (the "November 2005 Spill"). At the time of the November 2005 Spill, Tiverton was in the process of flushing hydrants east of the Bay Street Area causing the petroleum based substance to cascade down Judson Street and to collect at the corner of Judson and Bay Streets, in the Bay Street Area.

40. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Inland Fuel for any and all sums that it is required to pay as a result of this action, including

attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

Factual Allegations As Against Third-Party Defendants Dominion

41. Upon information and belief, third-party defendants Dominion Resources and Dominion Energy (collectively, "Dominion") are the owners and/or operators of the Brayton Point Power Plant ("Brayton Point").

42. Brayton Point is the largest single source of air pollution in Rhode Island, which pollution includes polycyclic aromatic hydrocarbon emissions ("PAHs").

43. Brayton Point caused or contributed to the alleged contamination in the Bay Street Area.

44. In the unlikely event that plaintiffs recover any judgment against NEGasCo, NEGasCo is entitled to contribution and/or indemnification from Dominion for any and all sums that it is required to pay as a result of this action, including attorneys' fees, costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

**FIRST CAUSE OF ACTION**

(Contribution As Against The Third-Party Defendants)

45. NEGasCo repeats and realleges Paragraphs 1 through 44 as if fully set forth herein.

46. To the extent that plaintiffs recover a judgment against NEGasCo, NEGasCo will be damaged and the third-party defendants will therefore be liable to NEGasCo for all or part of the monies paid by NEGasCo, or for such proportionate part thereof that is attributable to the negligence or wrongful conduct of each third-party

defendant respectively, together with the costs and disbursements incurred by NEGasCo in the defense of plaintiffs' lawsuit.

**SECOND CAUSE OF ACTION**

(Indemnification As Against The Third-Party Defendants)

47. NEGasCo repeats and realleges Paragraphs 1 through 46 as if fully set forth herein.

48. In the event that plaintiffs recover a judgment against NEGasCo, any such liability on the part of NEGasCo, by operation of law or otherwise, will have been caused and brought about by the negligence, carelessness and/or wrongful conduct of the third-party defendants, their agents, servants and employees, and not by any negligence, carelessness and/or wrongful conduct on the part of NEGasCo, its agents, servants or employees.

49. By reason of the foregoing, the third-party defendants are primarily liable for any injuries or damages that were sustained by plaintiffs, and therefore the third-party defendants are required to indemnify and hold harmless NEGasCo for any damages it may sustain by reason of being found liable to plaintiffs.

**JURY TRIAL REQUEST**

NEGasCo hereby requests a trial by jury of all issues triable to a jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** NEGasCo demands judgment against each of the third-party defendants for contribution and/or indemnification, in whole or in part, for any and all moneys that may be paid by NEGasCo arising from plaintiffs' lawsuit, together with the costs and disbursements of this action, and such further relief as this Court believes to be just and proper.

Dated: September 17, 2007

**ADLER, POLLOCK & SHEEHAN P.C.**[1]

By: /s/ *Kristen W. Sherman*

John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
1633 Broadway
New York, New York 10019
(212) 506-1700

- and -

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

[1] Adler, Pollock Sheehan P.C. does not represent NEGasCo with respect to its claims against Third-Party Defendants Dominion Resources, Inc., and Dominion Energy Brayton Point LLC.

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company*

-and-

**HINCKLEY, ALLEN & SNYDER**

By: */s/ Gerald Petros*

Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company, as to*
*Third-Party Defendants*
*Dominion Resources, Inc. and*
*Dominion Energy Brayton Point LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2007, I did send a true copy of the within document by electronic means (ECF) or email to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>226 River View Lane<br>Centerville, MA 02632 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |

/s/ *Kristen W. Sherman*

*422751_1.doc*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE SLAND

RECEIVED
NOV 22 2005
U.S. District Court
District of Rhode Island

GAIL, JOHN D. AND JOHN F. CORVELLO; )
LINDA M.AND ROBERT M. FERREIRA; )
GARY P. ROSE; VICTOR ROSE III; LORRAINE )
AND FRANK J. AGUIAR, JR.; CATHLEEN )
AND MICHAEL A.ALVARNAS; MARY LOU )
AND CARLOS AMARAL; FATIMA AMARAL; )
LIRIA AMARAL; BAY VIEW HOLY GHOST )
CITIZENS CLUB; DEBRA BEAUSOLEIL; )
ELLEN G. AND JOHN CABRAL; SUSAN )
CORREIA; MARIA I. AND PEDRO M. )
AMARAL; HENRY M. BEIROLA, JR.; )
STEPHEN BIGOS; NANCY ANN AND )
ROBERT BORDEN; JANE AND RICHARD A. )
BORGES; MARK BOUCHARD; SARA CABRAL;)
WILLIAM G. CAMARA; JUNYA )
AND JOHN CAMBRA; JANICE M.AND )
BARRY C. CARROLL; KAREN A. AND )
CLAYWELL M. CHAFTON,III; KATHLEEN )
AND JOHN CHRISTO; CAROLYN COLLINS; )
NORMENIA AND JOSE P. CORDEIRO; )
SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; )
ISABEL M. AND FRANCIS R.CORREIA; )
COLLEEN FERNANDES AND MANUEL )
CHRISTO; DORIS AND DENNIS DUARTE; )
JOHN F. DUARTE; ESTATE OF CHRISTINA )
FARIAS; LINDAAND BARRY HAIR; MARY )
AND LARRY A. HELD;PAMELA A. AND )
EDWARD J. KLUS; RAYMOND AND )
JUDITH LEPAGE; VICTORIA AND )
MICHAEL MACOMBER; HILDA R., )
MYRON J.AND RICHARD M. MARTIN; JEAN )
AND THOMAS J.MEDEIROS; LINDA )
MELLO-FOURNIER; ELEANOR AND )
MICHAEL MONAST; EVELYN MORRIS; )
ANTONE CUSTODIO;LUCIA AND DIMAS )
PAVAO; MANUEL AND ODELIA PAVAO; )
CYNTHIA A. REAGAN, DEBRA A. )
DEPAOLA, AND THE ESTATE OF GEORGE )
OLIVEIRA; LOIS AND STEPHEN J. SCANLON; )
MICHELLE AND DAVID SILVA; ANGELINA )
SILVIA; LOREE A. AND DANA SILVIA; )
DANA AND JOHN SILVIA; BARBARA A. )

AND TOBIAS SILVIA, JR.; GEORGIANNA AND ALVIN B. SIMPSON; ALVIN B SIMPSON REVOCABLE TRUST; GEORGIANNA SIMPSON REVOCABLE TRUST; MARSHA AND CLINTON SKARKA; MARY SOUZA, MARY P. FARIA, VIRGINIA BORGES, HILDA MARTIN AND DELORES BOYLE; DANIEL J.TERCEIRO; THERESA FARIAS; MARGARET MEDEIROS; PAUL F. TERCEIRO; BRUCE THOMPSON; CAROLYN AND DENNIS VALOIS; HEATHER AND ANTONIO VIEIRA; BETSEY D. WARREN; LYNNE V., ANDTIMOTHY WATERS; LISA AND ROBERT WILT, JR.; STEPHEN AND ROCHELLE FERRY; JOSE A. AND GINA ADORNO; EVELYN ROGERS; ADAM BRAGA; JENNIFER BRAGA; DONNA BRAGA; DAVID A. TAVARES; PAULINE CARVALHO; ERNEST AND NORMA SIMPSON; MARION BRADSHAW TRUST; LISA M. MENDOZA:

*Plaintiffs*,

vs.

NEW ENGLAND GAS COMPANY, INC.;
*Defendant.*

C.A. No. 05-221T
(Related Case No. 05-274T)

**THIRD AMENDED COMPLAINT**

For their complaint, the Plaintiffs by and through their attorneys, MOTLEY RICE, THORNTON & NAUMES, AND MCROBERTS, ROBERTS & RAINER, allege as follows:

## I. INTRODUCTORY STATEMENT

1. The Plaintiffs own property and/or reside in Tiverton, Rhode Island and file this complaint to recover damages for the diminution in the value of their properties, lost use and enjoyment of their properties, and severe emotional distress caused by the

Defendant's disposal of and/or release of coal gasification waste material containing arsenic, lead, cyanide and other hazardous substances.

## II. PARTIES

**Plaintiffs**

2. The Plaintiffs all own and/ or reside at property in Tiverton, Rhode Island:

a. Plaintiffs Gail, John F. and John D. Corvello own and reside at the property located at 188-190 Bay Street;

b. Plaintiffs Linda M. and Robert M. Ferreira own and reside at the property located at 37 A. Connell Street;

c. Plaintiffs Gary P. Rose and Victor Rose III own and reside at the property located at 34 Chace Avenue;

d. Plaintiffs Lorraine A. and Frank J. Aguiar, Jr. own and reside at the property located at 62 Canonicus Street;

e. Plaintiffs Cathleen and Michael A. Alvarnas own and reside at the property located at 39 Chace Avenue and own the property located at 31 Chace Avenue;

f. Plaintiffs Mary Lou and Carlos Amaral own and reside at the property located at 17 Foote Street;

g. Plaintiffs Fatima Amaral, Liria Amaral, Debra Beausoleil, and Susan Correia own and reside at the property located at 38 Hilton Street;

h. Plaintiffs Maria I. and Pedro M. Amaral own and reside at the property located at 49 Hilton Street;

i. Plaintiff Henry M. Beirola, Jr. owns the property located at 79 Canonicus Street;

j. Plaintiff Stephen Bigos owns and resides at the property located at 36 Canonicus Street;

k. Plaintiffs Nancy Ann and Robert Borden own the properties located at 58 Bay Street and 15 Chace Avenue;

l. Plaintiffs Jane and Richard Borges own and reside at the property located at 60 Chace Avenue;

m. Plaintiff Mark Bouchard owns the property located at Block 160, Lot 72;

n. Plaintiff Sara Cabral owns and resides at the property located at 58 Canonicus Street;

o. Plaintiff William G. Camara owns the properties located at Block 3, Lot 1C and Block 3, Lot 1D;

p. Plaintiffs Junya and John Cambra own and reside at the property located at 91 State Street and own the properties located at Block 17, Lot 1; Block 17, Lot 3; Block 17, Lot 4A; Block 17, Lot 5A and Block 17, Lot 6;

q. Plaintiffs Janice M. and Barry C. Carroll own and reside at the property located at 145 Judson Street;

r. Plaintiffs Karen A. and Claywell M. Chafton, III own and reside at the property located at 16 Chace Avenue;

s. Plaintiffs Kathleen and John Christo own and reside at the property located at 48 Canonicus Street;

t. Plaintiff Carolyn Collins owns and resides at the property located at 61 Hilton Street;

u. Plaintiffs Normenia and Jose P. Cordeiro own and reside at the property located at 51 Canonicus Street;

v. Plaintiffs Shirley M. Cordeiro and Patricia Aguiar own and reside at the property located at 130 Bay Street and own the property located at 110 Bay Street;

w. Plaintiffs Isabel M. and Francis R. Correia own and reside at the property located at 8 Bay Street;

x. Plaintiffs Colleen Fernandes and Manuel Christo own and reside at the property located at 39 Hilton Street;

y. Plaintiff the Estate of Christina Farias owns the property located at 61 Canonicus Street;

z. Plaintiffs Linda and Barry Hair own and reside at the property located at 52 Hilton Street;

aa. Plaintiffs Mary and Larry A. Held own and reside at the property located at 28 Hilton Street;

bb. Plaintiffs Pamela A. and Edward J. Klus own and reside at the property located at 36 Hooper Street;

cc. Plaintiffs Victoria and Michael Macomber own and reside at the property located at 103 Canonicus Street;

dd. Plaintiffs Hilda R., Myron J. and Richard M. Martin own and reside at the property located at 44 Hilton Street;

ee. Plaintiff Jean and Thomas J. Medeiros own and reside at the property located at 111 State Avenue;

ff. Plaintiff Linda Mello-Fournier owns and resides at the property located at 114 Canonicus Street;

gg. Plaintiffs Eleanor and Michael Monast own and reside at the property located at 40 Judson Street;

hh. Plaintiffs Evelyn Morris and Antone Custodio own and reside at the property located at 126 Hilton Street;

ii. Plaintiffs Lucia and Dimas A. Pavao own and reside at the property located at 88 Bay Street;

jj. Plaintiffs Lois and Stephen J. Scanlon own and reside at the property located at 129 Bottom Street;

kk. Plaintiffs Michelle and David Silva own and reside at the property located at 29 Canonicus Street;

ll. Plaintiff Angelina Silvia owns and resides at the property located at 42 Chace Avenue;

mm. Plaintiffs Loree A. and Dana Silvia own and reside at the property located at 30 Judson Street;

nn. Plaintiffs Dana and John Silvia own the property located at 96 Bay Street;

oo. Plaintiffs Barbara A. and Tobias Silvia, Jr. own and reside at the property located at 50 Hooper Street;

pp. Plaintiffs Georgianna and Alvin B. Simpson own the property located at 123 Judson Street;

Case 1:05-cv-00221-T-DLM Document 40-2 Filed 11/22/2005 Page 7 of 23

qq. Plaintiffs Alvin B. Simpson Revocable Trust and Georgianna Simpson Revocable Trust own the properties located at Lot 41, Block 34 and Lot 41, Block 35;

rr. Plaintiffs Marsha and Clinton Skarka own and reside at the property located at 114 Lepes Road;

ss. Plaintiffs Daniel J. Terceiro, Theresa Farias and Margaret Medeiros own the properties located at Block 22, Lot 3; Block 22, Lot 4 and Block 22, Lot 6;

tt. Plaintiff Paul E. Terceiro owns and resides at the property located at 33 Bay Street;

uu. Plaintiff Bruce Thompson owns and resides at the property located at 126 Chace Avenue;

vv. Plaintiffs Carolyn and Dennis Valois own and reside at the property located at 42 Bay Street and own the property located at Block 16, Lot 6A;

ww. Plaintiffs Heather and Antonio Vieira own and reside at the property located at 55 Canonicus Street;

xx. Plaintiff Betsey D. Warren owns and resides at the property located at 17 Canonicus Street and owns the property located at 12 Canonicus Street;

yy. Plaintiffs Lynne V. and Timothy Waters own and reside at the property located at 54 Judson Street;

zz. Plaintiffs Lisa and Robert Lee Wilt, Jr. own and reside at the property located at 218 Lepes Road.

aaa. Plaintiffs Ellen G. and John Cabral own and reside at the property located at 85 Canonicus Street.

bbb. Plaintiffs Bay View Holy Ghost Citizens Club own and reside at the property located at 66 Bottom Street.

ccc. Plaintiffs Doris and Dennis Duarte own and reside at the property located at 58 Hilton Street.

ddd. Plaintiff John F. Duarte as Trustee own and reside at the property located at 9 Hilton Street.

eee. Plaintiffs Raymond and Judith Lepage own and reside at the property located at 23 Methuen Street.

fff. Plaintiffs Manuel and Odelia Pavao own and reside at the property located at 80 Bay Street.

ggg. Plaintiffs Cynthia A. Reagan, Debra A. Depaola, and the Estate of George Oliveira own and reside at the property located at 35 Hilton Street.

hhh. Plaintiffs Mary Souza, Mary P. Faria, Virginia Borges, Hilda Martin and Delores Boyle own the property located at 43 Hilton Street.

iii. Plaintiffs Jose A. and Gina Adorno own the property located at 15 Bay Street.

jjj. Plaintiffs Stephen and Rochelle Ferry own the property located at 47 A Connell Street.

kkk. Plaintiffs Donna Braga, Jennifer Braga and Adam Braga own the property at 40 Bottom Street.

lll. Plaintiffs Donna Braga, Jennifer Braga and Adam Braga own the property at 8 Bottom Street.

mmm. Pauline Carvalho owns the property at 11A Connell Street.

nnn. Plaintiffs Georgianna Simpson Revocable Trust, Alvin B. Simpson Revocable Trust, Norma and Ernest Simpson AND the Marion Bradshaw Trust own the property at Parcel 181-18-2 (Borden Tuell Farm).

ooo. Plaintiffs Georgianna Simpson Revocable Trust, Alvin B. Simpson Revocable Trust, Norma and Ernest Simpson AND the Marion Bradshaw Trust own the properties located at Parcel 24-25-1/24-26-1 Waterfront.

ppp. Plaintiffs Evelyn Rogers and David A. Tavares rent the property at 51 Hooper Street, but would have built a house on family-owned land on Bottom Street but for the contamination moratorium which has prevented construction.

qqq. Plaintiff Lisa M. Mendoza owns the property at 28 Hooper St.

**Defendant**

3. The Defendant, New England Gas Company, formerly known as Fall River Gas Company, has its headquarters in Providence, Rhode Island.

## III. FACTS

**Plaintiffs' Properties Filled With Contaminated Coal Gasification Waste Material From Fall River Gas Company**

4. In or about August 2002, during construction and installation of the Mount Hope Bay Sewer Interceptor Project in Tiverton, Rhode Island, the sewer contractor, Starwood

Tiverton LLC, as operator of the project, contracted with D'Ambra Construction to conduct excavation activities in the vicinity of Bay Street at the intersections with Judson Street and Last Street.

5. The excavation activities conducted by D'Ambra Construction included the stockpiling of soils on the corner of Judson and Bay Street and at the bottom of Last Street in Tiverton.

6. Complaints received by the State of Rhode Island Department of Environmental Management [hereinafter "RIDEM"] concerning the stockpiled soils initiated an investigation by a member of the RIDEM hazardous materials response team.

7. The RIDEM field investigator observed that the stockpiled soils placed by the sewer contractor at the corner of Judson and Bay Street and at the bottom of Last Street had a blue color associated with it, indicative of historic coal gasification waste material.

8. RIDEM had the stockpiled soils analyzed by RIDEM's contractor laboratory.

9. The laboratory analysis of the stockpiled soils revealed the presence of cyanide and other hazardous substances in the stockpiled soils.

10. On October 8, 2002, RIDEM issued a Letter of Responsibility to the Town of Tiverton as the owner of the property and to Starwood Tiverton, LLC as the operator of the sewer installation project.

11. In or about November 2002, EA Engineering, on behalf of the Town of Tiverton and Starwood Tiverton, LLC conducted a subsurface investigation beneath portions of the following public roads and public streets in Tiverton as far north as State Avenue: Bay, Judson, Hooper, Hilton, Canonicus, Chase, and Foote.

12. The EA Engineering subsurface investigation revealed the presence of toxic and hazardous substances, including total petroleum hydrocarbons (TPH), semi-volatile organic compounds (SVOCs), lead, arsenic and cyanide in the soils.

13. Additional analytic testing of the contaminated soils determined that some contained toxic and hazardous substances, including poly aromatic hydrocarbons (PAHs), cyanide and naphthalene at levels exceeding the Residential and Industrial/Commercial Direct Exposure Criteria.

14. The results reported by EA Engineering indicated to RIDEM that there was a more wide spread problem with the contaminated soil than had been assumed as the fill containing contaminated soil extended beyond the sewer pipeline right of way and beneath areas of the public roads and public streets in the adjacent community.

15. On or about March 13, 2003, RIDEM met with representatives from the Town of Tiverton who provided historical information to RIDEM concerning the area of Tiverton that was the subject of the RIDEM activities.

16. Historical information provided to RIDEM by the Town of Tiverton included documentation citing a former employee of Fall River Gas Company concerning disposal of "blue soil."

17. Based on the foregoing, RIDEM concluded that some of the properties in this residential area of Tiverton were filled with contaminated coal gasification waste from Fall River Gas Company prior to the construction of the homes and that undeveloped property to the south of the residential development may also have been filled with contaminated coal gasification waste material from Fall River Gas Company.

18. On March 17, 2003, RIDEM issued a Letter of Responsibility to New England Gas Company/Southern Union Company stating in part:

> RE: Historical Manufactured Gas Plant Contaminated Soils in Tiverton, Rhode Island (former Fall River Gas Co.) along Bay Street, Judson Street, Canonicus Street, Hooper Street, Hilton Street, Chase Street and Foote Street, and adjoining properties (i.e. "the site").
>
> The contaminated soil appears to contain historical manufactured coal gasification materials.
>
> Based upon the information identified to date, Southern Union Company, as the owner of the former Fall River Gas Company (d.b.a. New England Gas Co.), is identified as a Responsible Party as defined by Rule 3.44 for the improper disposal of contaminated soils.

19. Soil with a blue color indicates the presence of coal gasification waste material.

20. Fall River Gas Company was involved with coal gasification.

21. Coal gasification waste material contains lead, arsenic, cyanide and other hazardous substances.

22. Subsequent testing, field work, observations, information and analysis confirmed that properties in the site, a residential area of Tiverton where Plaintiffs own property and reside, were filled with coal gasification waste containing lead, arsenic, cyanide, and other hazardous substances that contaminated the soil.

**<u>Emergency Moratorium Area</u>**

23. On August 25, 2003, the Town Council of the Town of Tiverton placed an "Emergency Moratorium" on all property within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a

drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road [hereinafter "Emergency Moratorium Area"]

24. A letter dated August 27, 2003 from the Town of Tiverton to All Property Owners in the Northwest Quadrant of Tiverton states in part:

> The 'Emergency Moratorium' prohibits immediately any excavation within the bordered area. Additionally, any building permit that requires excavation will not be issued within the area.
>
> (RIDEM) and the Department of Health are currently working with the residents and town regarding contaminated soil within the bordered area.
>
> Remember, the 'Emergency Moratorium' includes all type of Excavation on your property.

25. Plaintiffs all own property located in the Emergency Moratorium Area.

26. Testing on properties in the Emergency Moratorium Area, including properties owned by Plaintiffs, properties abutting properties owned by Plaintiffs, and properties in the vicinity of properties owned by Plaintiffs, has revealed the presence of hazardous substances such as lead, arsenic and cyanide.

27. For the forgoing reasons, Plaintiffs have suffered irreparable harm as a result of the presence of coal gasification waste on their properties.

28. The finding of responsibility by the RIDEM against New England Gas Company/ Southern Union demonstrates that the Plaintiffs have a high likelihood of success on the merits of their claims.

## IV. CAUSES OF ACTION

**COUNT ONE**
**(Negligence)**

29. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

30. The Defendant had a duty to exercise reasonable care in handling, disposing of, and/or releasing hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

31. The Defendant had a statutory duty, pursuant to R.I.GEN. LAWS § 23-19.1-22 (1956), to transport, store, and dispose of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location authorized by that chapter or the rules and regulations promulgated pursuant to it.

32. The Defendant had a continuing duty to advise and warn of the dangers associated with the hazardous substances Defendant handled, disposed of, and/or released, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area.

33. The Defendant knew or should have known that the hazardous substances Defendant handled, disposed of and/or released would cause harm to the Plaintiffs.

34. The Defendant breached its duties by, among other things:

a. disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area;

b. transporting, storing, or disposing of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or

location not authorized by R.I.GEN. LAWS § 23-19.1-22 (1956) or the rules and regulations promulgated pursuant to that chapter;

c. failing to notify or warn property owners in the Emergency Moratorium Area of the hazards Defendant had created;

d. failing to remove the hazards Defendant had created.

35. As a direct and proximate result of the Defendant's conduct, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages as described above.

36. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its negligence.

**COUNT TWO**
**(Gross Negligence)**

37. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

38. The Defendant had a manifest duty to exercise reasonable care in handling, disposing of, and/or releasing hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

39. The Defendant had a manifest statutory duty pursuant to R.I.GEN. LAWS § 23-19.1-22 (1956) to transport, store, and dispose of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location authorized by that chapter or the rules and regulations promulgated pursuant to it.

40. The Defendant had a continuing manifest duty to advise and warn of the dangers associated with the hazardous substances Defendant handled, disposed of, and/or released, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area.

41. The Defendant, acting in reckless disregard of the consequences as affecting life or property of the plaintiffs knew or should have known that the hazardous substances Defendant handled, disposed of and/or released would cause harm to the Plaintiffs.

42. The Defendant intentionally breached its manifest duties by, among other things:

a. disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area;

b. transporting, storing, or disposing of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location not authorized by R.I.GEN. LAWS § 23-19.1-22 (1956) or the rules and regulations promulgated pursuant to that chapter;

c. failing to notify or warn property owners in the Emergency Moratorium Area of the hazards Defendant had created;

d. failing to remove the hazards Defendant had created.

43. As a direct and proximate result of the Defendant's conduct, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages as described above.

**COUNT THREE**
**(Strict Liability)**

44. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

45. The Defendant engaged in ultrahazardous and abnormally dangerous activities when it handled, disposed of and/or released hazardous substances in its possession, custody and control, including coal gasification waste material containing Lead, Arsenic, and Cyanide.

46. The Defendant knew, or should have known, that there was a high degree of risk associated with the handling, disposal and/or release of the hazardous substances, including a risk of harm to the Plaintiffs.

47. As a direct and proximate result of Defendant's ultrahazardous and abnormally dangerous activity, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

48. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its conduct.

**COUNT FOUR**
**(Private Nuisance)**

49. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

50. The Defendant, by its handling, disposal of, and release of hazardous substances emanating from its own property, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area, has materially interfered with the Plaintiffs' physical comfort and/or use of their property and has thereby created a private nuisance.

51. As a direct and proximate result of the private nuisance created by the Defendant, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

52. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT FIVE**
**(Public Nuisance)**

53. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

54. The Defendant, by its handling, disposal of, and release of hazardous substances, coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area, has unreasonably interfered with the health, safety, peace, comfort or convenience of the public and has thereby created a public nuisance.

55. The plaintiffs as owners of property in the Emergency Moratorium Area have suffered harms different than those suffered by the general public.

56. As a direct and proximate result of the public nuisance created by the Defendant, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

57. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT SIX**
**(Infliction of Emotional Distress)**

58. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

59. The Defendant's acts and omissions as described above represent conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

60. The Defendant knew or was reckless in not knowing that its acts and omissions would inflict emotional distress on the Plaintiffs.

61. The Defendant's acts and omissions have in fact inflicted severe emotional distress on all or some of the Plaintiffs and the Defendant is liable for the resulting damages Plaintiffs have suffered and will continue to suffer.

**COUNT SEVEN**
**(Unauthorized Disposal of Hazardous Waste)**

62. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

63. The Defendant, acting in a willful and knowing manner, engaged in the transportation, storage, or disposal of hazardous wastes in a manner or location not authorized by R.I. GEN. LAWS § 23-19.1-22 (1956) and has, therefore, caused the unauthorized transportation, storage, or disposal of hazardous wastes through its activities in disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area.

64. The Defendant is liable for treble the amount of the costs, damages, losses, or injuries suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT EIGHT**
**(Recovery of Response Costs Under CERCLA §107 42 U.S.C. § 9607)**

63. Each of the allegations contained in Paragraphs 1 through 62 is incorporated herein by reference.

64. Defendant is the owner of a facility where hazardous substances were generated, and the Defendant arranged for the transportation and/or disposal of hazardous substances in the Moratorium Area.

65. The Defendant disposed of substances defined as hazardous substances under 42 U.S.C. § 9601(14) and 40 CFR Part 302.4 in the Moratorium Area and such substances

have contaminated the soil and ground water in the Moratorium Area at levels exceeding maximum allowable contaminant levels.

66. The plaintiffs are required to incur necessary response costs, consistent with the national contingency plan, including costs entailed in testing their properties for the presence of hazardous substances.

67. The Defendant is liable to the Plaintiffs for the amount of the response costs required to be incurred by the Plaintiffs in testing their properties for the presence of hazardous substances.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiffs by and through their attorneys, MOTLEY RICE, THORNTON & NAUMES, AND MCROBERTS, ROBERTS & RAINER, request that this Honorable Court issue an order and judgment against Defendant as follows:

1. Judgment against the Defendant for compensatory and punitive damages, plus interests, costs, and attorneys' fees;
2. An order awarding Plaintiffs such other extraordinary, declaratory and/or injunctive relief as permitted by law or equity as necessary to assure that the Plaintiffs have an effective remedy; and
3. For such other and further relief as the Court deems equitable just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY.

PLAINTIFFS,
By and through their attorneys,

Robert J. McConnell (#3888)
Michael G. Rousseau (#6940)
Jonathan D. Orent
**MOTLEY RICE LLC**
321 South Main Street
Providence, RI 02940
(401) 521-9400

David C. Strouss
Brad J. Mitchell
**THORNTON & NAUMES LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

Mark W. Roberts
**MCROBERTS, ROBERTS & RAINER**
53 State Street
Boston, MA 02109
(617) 722-8222

**CERTIFICATION**

I hereby certify that a copy of the foregoing memorandum was mailed, first-class and postage pre-paid, to all counsel of record per the attached service list on this 22nd day of November, 2005.

[signature]

**SERVICE LIST – C.A. No. 05-0221T (Related Case # 05-274T)**

John A. Tarantino
Patricia K. Rocha
David A. Wollin
Kristen W. Sherman
**ADLER, POLLOCK & SHEEHAN P.C.**
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
401.274.7200

Eric D. Herschmann
**KASOWITZ, BENSON, TORRES & FREIDMAN LLP**
1633 Broadway
New York, NY 10019

Christina Dodds
**WATSON, BISHOP, LONDON & BROPHY**
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, TX 78701
512.479.5900