UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL., Plaintiffs, | |
| - against - | |
| NEW ENGLAND GAS COMPANY, INC., Defendant and Third-Party Plaintiff, | |
| - against - | C.A. No. 05-0221T (Related Cases: 05-274T; 05-370T; 05-522T) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER Third-Party Defendants. | |

**DEFENDANT AND THIRD-PARTY PLAINTIFF NEW ENGLAND GAS COMPANY'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendant and Third-Party Plaintiff New England Gas Company ("NEGasCo") moves, pursuant to Fed. R. Civ. P. 12(c), for partial judgment on the pleadings finding that the Plaintiffs cannot obtain relief in this proceeding requiring NEGasCo to remediate their properties because there is no common law right to, nor remedy of, remediation of contaminated soil. The regulation of the cleanup of any contamination in Rhode Island lies within the exclusive jurisdiction of the Rhode Island Department of Environmental Management ("RIDEM").

Dated: October 31, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*/s/ David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>Taylor Duane Barton & Gilman LLP<br>10 Dorrance Street<br>Suite 700<br>Providence, RI 02903 |
| Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White Incorporated<br>20 Washington Place<br>Providence, RI 02903 | David B. Willis<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 |

/s/ *David A. Wollin*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL., Plaintiffs, | |
| - against - | |
| NEW ENGLAND GAS COMPANY, INC., Defendant and Third-Party Plaintiff, | |
| - against - | C.A. No. 05-0221T (Related Cases: 05-274T; 05-370T; 05-522T) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER | |
| Third-Party Defendants. | |

**DEFENDANT AND THIRD-PARTY PLAINTIFF NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

On September 11, 2007, the Court heard and granted NEGasCo's motion for leave to file third-party complaints. During that hearing, the Court expressed concern that joinder of the third-parties could require an extension of the closure date, with a concomitant delay in the ultimate remediation of the soil contamination that is the subject of this case. Discussion then ensued regarding the pendency of RIDEM's administrative suit against NEGasCo seeking the remediation of the Bay Street Area, and whether Plaintiffs can obtain a remediation remedy in this case. The instant motion addresses whether remediation is exclusively the province of RIDEM as a matter of law.

## I. Preliminary Statement

In their complaint, Plaintiffs allege that soil contamination on their properties is from waste byproducts of the manufactured gas process ("MGP") that Fall River Gas Company ("FRGC"), NEGasCo's predecessor, purportedly generated and then failed to dispose of properly. Compl. ¶¶ 17,18. Plaintiffs further claim that NEGasCo is negligent for allowing the placement and continued migration of the MGP waste on their properties. Compl. ¶ 32. Plaintiffs seek, among other things, injunctive relief to enjoin the Defendant, NEGasCo, from allowing the continued placement and migration of MGP waste on their properties – in effect seeking an order that requires NEGasCo to "remove" the alleged waste.

Nevertheless, Plaintiffs are not entitled, under the common law claims they assert, to obtain relief that requires NEGasCo to remediate their properties or to "remove" the alleged waste. Rhode Island has established a comprehensive statutory and regulatory scheme administered by RIDEM that completely occupies the field of environmental remediation. This complex set of laws and regulations provides the framework for RIDEM to oversee the selection of appropriate remedial objectives, determine the method of remediation, and decide when a cleanup is complete.

NEGasCo is entitled to judgment in its favor on Plaintiffs' common law "duty to remediate" claims because Rhode Island law does not recognize such a common law duty and the comprehensive statutory scheme that governs contaminated sites occupies the field of environmental investigation and remediation. RIDEM is prosecuting a parallel administrative proceeding against NEGasCo alleging that NEGasCo is responsible for contaminating some or all of Plaintiffs' properties and seeking an order that requires

NEGasCo to proceed to remediate those properties. Accordingly, the Court should not exercise jurisdiction over Plaintiffs' claims for remediation or removal of contamination, and should defer to RIDEM and the state proceedings to resolve those issues.

## II. Background

RIDEM is already exercising its enforcement authority against NEGasCo under various Rhode Island environmental statutes and regulations for the investigation and cleanup of Plaintiffs' properties allegedly caused by MGP waste. On September 19, 2006, RIDEM issued to NEGasCo an Amended Notice of Violation ("Amended NOV"), alleging that NEGasCo violated the Rhode Island Industrial Property Remediation and Reuse Act, § 23-19.14.6 ("IPRRA"), and §§ 4.02 and 7.00 of the Remediation Regulations because it has not, among other things, prepared a Site Investigation Report that includes a minimum of two remedial alternatives to remediate an identified release in and around the Plaintiffs' properties.[1] Shortly thereafter, NEGasCo filed a request for hearing and denial of the allegations in the Amended NOV with RIDEM's Administrative Adjudication Division ("AAD"). Since the filing of the Request for Hearing, NEGasCo and RIDEM have been involved in discovery and motion practice in the AAD. This RIDEM administrative process will result in a hearing on some or all of the allegations of the Amended NOV before an administrative hearing officer.

## III. Argument

### A. <u>Standard of Review</u>

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on

[1] The only difference between the original NOV and the Amended NOV appears to be the deletion of the Town of Tiverton as a responsible party in the Amended NOV.

the pleadings." Fed. R. Civ. P. 12(c). In this Circuit, a Rule 12(c) motion "ordinarily warrant[s] the same treatment" as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). A court will dismiss an action pursuant to Rule 12(c) where the relief sought by plaintiffs in their complaint is not available as a matter of law. See Moreau v. State of Rhode Island, 2006 WL 3524462, at *3 (D.R.I. Dec. 6, 2006) (Smith, J.).

### B. RIDEM is Vested With the Exclusive Authority to Address Contamination, Particularly The Remediation Thereof, in Rhode Island

The Rhode Island General Assembly has created a comprehensive statutory scheme to protect the State of Rhode Island from pollution, including contamination resulting from the disposal of hazardous substances. See R.I. Gen. Laws §§ 23-19.14-1 et seq. ("IPRRA") and R.I. Gen. Laws §§ 23-1931-1 et seq. (the "Hazardous Waste Management Act"). In these Acts, the legislature made clear that exclusive authority to implement the cleanup of real property in Rhode Island is vested with RIDEM.

IPRRA, which is primarily the Act at issue in the Amended NOV, provides that RIDEM is charged with developing objectives for environmental cleanup. Specifically, IPRRA declares that RIDEM is the agency authorized to develop objectives for cleanup that are protective of human health and the environment based on the current and reasonably foreseeable future use of a property and the surrounding natural resources. R.I. Gen. Laws §23-19.14-4.[2]

[2] Pursuant to the IPRRA, RIDEM promulgated the Remediation Regulations, which establish the regulatory framework for, among other things, the investigation and remediation of contamination in Rhode Island. In the Amended NOV, RIDEM alleges that NEGasCo has violated these regulations, which NEGasCo, through the AAD process, is vigorously contesting.

In the Hazardous Waste Management Act, the General Assembly has also placed extensive regulatory authority in RIDEM for the management of hazardous waste. For example, under the Hazardous Waste Management Act, the Director of RIDEM has the authority to issue a notice of violation and order regarding the disposal of hazardous waste onto real property. R.I. Gen. Laws § 23-19.1-33. The Director's authority to exercise the above described powers is unequivocal under the statute's language.

Simply put, IPRRA and the Hazardous Waste Management Act, and the regulations promulgated pursuant to those Acts, occupy the field of investigating and remediating contamination and must therefore be regarded as the only authority in this area. Because these Acts occupy the field of environmental remediation, they necessarily preempt state common law actions that seek alternative determinations regarding "investigating and remediating contamination" from other administrative bodies or from courts. To do otherwise would usurp the authority that the General Assembly vested in RIDEM and create an untenable situation of conflicting directives on remediation that the General Assembly intended should be uniform. See Amico's, Inc. v. Mattos, 789 A.2d 899, 907 (R.I. 2002)(the Rhode Island General Assembly may preempt other law if a statutory scheme completely occupies the field of regulation on a particular subject). As such, courts may not create common law duties or obligations regarding the existence and specific requirements of a party's remedial obligation.

Indeed, if this Court were to do so, the danger of potentially conflicting directives would be very real. At this time, RIDEM has brought an enforcement action against NEGasCo which NEGasCo has contested in the AAD. If NEGasCo is later determined to be a "responsible party," then RIDEM through its statutory and regulatory process will

regulate any remediation that may be required on the properties at issue. Indeed, RIDEM seeks to require NEGasCo to submit remedial alternatives under the Remediation Regulations that will then be vetted and analyzed under those Regulations. This is merely one step in a detailed administrative process to implement and oversee the execution of a remediation plan. The Regulations detail RIDEM's supervisory role in this process as well as the obligations of responsible parties. Legislative delegation of exclusive regulatory authority to administrative agencies like RIDEM is both valid and desirable. Administrative agencies provide a more uniform approach to the regulated activity and have a specialized expertise capable of responding to the complex and highly technical issues they oversee. See Town of East Greenwich v. O'Neil, 617 A.2d 104, 109 (R.I. 1992) (recognizing exclusive authority of Public Utilities Commission ["PUC"] to regulate public utilities and preemption of area legislature intended PUC to thoroughly occupy).

Deference to agency decisions on the rules it is responsible for implementing is also compelled by the separation of powers doctrine. See State v. Jacques, 554 A.2d 193, 196 (R.I. 1989)(the doctrine prohibits the assumption by one branch of government of powers that are central or essential to the operation of a coordinate branch in the performance of its duties). Here, RIDEM is vested with the authority and expertise to: (1) determine the nature and extent of the remediation required within the confines of its Remediation Regulations; and (2) monitor and oversee the implementation and execution of the remediation. Because judicial directives on remediation in this case would essentially assume and necessarily interfere with RIDEM's superior right to implement its duties and responsibilities, the Court should decline to adjudicate in this area.

### C. Rhode Island Does Not Recognize a Common Law Duty to Remediate

When asked to create a new common law duty in the pollution context, the Rhode Island Supreme Court refused to do so, citing existing state and federal environmental liability statutes. See Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950, 955 (R.I. 1994). In Hydro-Manufacturing, the plaintiff sued the defendant, a prior owner of a textile manufacturing site, for cleanup costs for a contaminated site on the basis that the defendant had failed to remediate a spill that had occurred during its prior ownership. The plaintiff premised the defendant's alleged failure to remediate in part on a novel common law theory that prior owners owe remote purchasers a duty to maintain their property and refrain from activity that may harm the property. The Rhode Island Supreme Court held that the creation of a new duty was "unwarranted in light of recent state and federal laws" imposing liability for the type of environmental injury claimed by the plaintiff. Hydro-Manufacturing, 640 A.2d at 956.

Like the plaintiff in Hydro-Manufacturing, the Plaintiffs here are attempting to invent a common law duty outside of the statutory framework designed to deal with remediation of pollution. However, as demonstrated by the Rhode Island Supreme Court's refusal to create a duty in Hydro-Manufacturing, creation of environmental common law in an area already addressed by state and federal anti-pollution statutes is inappropriate. The General Assembly has already provided substantive law and a procedural mechanism to determine and implement an obligation to remediate contamination in the State. Further, the General Assembly has created an environmental agency -- RIDEM -- with particular expertise to oversee actions that require the remediation of contaminated sites. RIDEM is currently exercising that authority in

prosecuting the Amended NOV against NEGasCo before the AAD. RIDEM is staffed with environmental engineers, biologists, risk assessors, hydrogeologists, and other professionals trained to assess and make determinations in this area. The Court should not consider or act on Plaintiffs' request for an order requiring removal or remediation of the alleged wastes because (1) Rhode Island does not recognize a common law duty to remediate, and (2) such obligations, if any, are properly determined in the ongoing state proceeding that is specifically equipped to deal with the highly technical issues raised in this dispute.[3]

**D. The Court Should Exercise Its Discretion and Defer to RIDEM**

**1. Burford Abstention Is Appropriate In this Matter**

NEGasCo maintains that the Plaintiffs have no viable claim for a common law duty to remediate and, thus, this Court has no jurisdiction over such a claim. Moreover, the Court should properly abstain under Burford v. Sun Oil Co., 319 U.S. 315 (1943), from exercising any jurisdiction or authority alleged by Plaintiffs to order remediation. In New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.D. 350 (1989), the Supreme Court expounded on the Burford abstention principles:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases

[3] Rhode Island's legislative scheme in this area is not unique. Indeed, it appears that no jurisdiction has recognized a common law duty to remediate and at least one court apparently refused to create such a common law duty. Plainview Water District v. ExxonMobil Corporation, New York Supreme Court, Nassau County, 9975/01, April 8, 2002, Short Form Order, at p.6 (finding there to be no common law duty to remediate which could support Plaintiff's negligence claim because the duty to remediate is created only by statute).

> would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Burford abstention is appropriate in this matter. Because the Rhode Island General Assembly has vested exclusive authority over environmental remediation in RIDEM and because RIDEM is exercising that authority now under the Amended NOV, this Court should defer to RIDEM and allow that process to determine what remediation, if any, NEGasCo may have to perform. To do otherwise, would constitute a serious "interference with the proceedings or orders of a state administrative agency" that would be "disruptive of state efforts to establish a coherent policy." New Orleans Public Service, 491 U.S. at 361. See also Rojas v. Fitch, 928 F. Supp. 155 (D.R.I. 1996)(Burford abstention warranted when federal court decision would disrupt the state administrative process).

### 2. The Doctrine of Primary Jurisdiction Provides an Alternative Basis for Deference to RIDEM

This Court may also refer any determination of a duty to remediate to RIDEM under the doctrine of primary jurisdiction. As stated by the United States Supreme Court, the doctrine of primary jurisdiction "gives effect to the eminently sensible notion that 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created . . . for regulating subject matter should not be passed over.'" United States v. Western Pacific Railroad Co., 352 U.S. 59, 64 (1956)(citations omitted).

The First Circuit has set forth three factors that guide the decision whether to defer to an administrative agency under the doctrine of primary jurisdiction: (1) Whether the agency determination lies at the heart of the task assigned to the agency by Congress

[or a legislature]; (2) Whether agency expertise is required to unravel intricate, technical facts; and (3) Whether, though perhaps not determinative, the agency determination would materially aid the court. Commonwealth of Massachusetts v. Blackstone Valley Electric Company, 67 F.3d 981, 992 (1st Cir. 1995); Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co., 215 F.3d 195, 205 (1st Cir. 2000)(same). All of these factors are easily satisfied in this case. First, the type of remediation that may be required on the Plaintiffs' properties if liability is established is clearly within the scope of RIDEM's exclusive authority. Second, RIDEM's expertise is required to deal with the technical issues involved in the remediation of any hazardous wastes. Third, RIDEM's determination of any duty to remediate will materially aid the Court in determining any monetary relief if NEGasCo is found liable.[4] Thus, for these reasons and the promotion of uniformity in regulation, this Court should defer to RIDEM on the duty to remediate under the doctrine of primary jurisdiction.

## IV. Conclusion

For the reasons stated above, NEGasCo requests that this Court grant its motion for partial judgment on the pleadings.

Dated: October 31, 2007

**ADLER POLLOCK & SHEEHAN P.C.**

*/s/ David A. Wollin*
John A. Tarantino (#2586)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor

[4] See also Davies v. Nat'l Coop. Refinery Ass'n, 963 F. Supp. 990, 999 (D. Kan. 1997) (concluding "that it should abstain from exercising jurisdiction … in order to permit [the state agency] to continue its investigation, supervision, and remediation of the site without the prospect of conflicting directives from this court as to how the contamination should be remedied."); O'Leary v. Moyer's Landfill, Inc., 677 F. Supp. 807, 820-21 (E.D. Pa. 1988) (deferring issues concerning implementation and funding of remediation under primary jurisdiction doctrine).

Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy<br>One Constitution Plaza<br>Boston, MA 02129 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>Taylor Duane Barton & Gilman LLP<br>10 Dorrance Street<br>Suite 700<br>Providence, RI 02903 |
| Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White Incorporated<br>20 Washington Place<br>Providence, RI 02903 | David B. Willis<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 |

*/s/ David A. Wollin*

433764_1.doc