UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW ENGLAND GAS COMPANY,<br><br>Defendant and Third Party Plaintiff,<br><br>v.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL.,<br><br>Third Party Defendants. | Case No. 05-221T<br>(Related cases: 05-274T; 05-522T; 05-370T) |

**ANSWER AND COUNTERCLAIM OF**
**DOMINION RESOURCES, INC. AND DOMINION ENERGY BRAYTON POINT, LLC**

Third Party Defendants / Counterclaim Plaintiffs Dominion Resources, Inc. ("DRI") and Dominion Energy Brayton Point, LLC. ("Brayton Point") (collectively "Dominion Entities"), by counsel, state as follows for their Answer and Counterclaim to the Third Party Complaint filed by Third Party Plaintiff / Counterclaim Defendant New England Gas Company:

**ANSWER**

1. – 6. Dominion Entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 1 through 6 of the Third Party Complaint.

7. Dominion Entities admit the allegations in Paragraph 7 of the Third Party Complaint.

8. Dominion Entities admit that Dominion Energy Brayton Point, LLC is a limited liability company duly organized and existing under the laws of the Commonwealth of Virginia, and that Dominion Energy Brayton Point, LLC is a wholly-owned indirect subsidiary of DRI. Dominion Entities aver that Dominion Energy Brayton Point, LLC is an indirect, third-tier subsidiary of DRI. Dominion Entities deny that DRI and Brayton Point are alter egos of one another. Dominion Entities deny that DRI "owns" or "operates" the Brayton Point Power Plant in Somerset, Massachusetts. Dominion Entities admit that Dominion Energy Brayton Point, LLC "owns" and "operates" the Brayton Point Power Plant in Somerset, Massachusetts. Finally, Dominion Entities aver that Dominion Energy Brayton Point, LLC has only "owned" and "operated" the Brayton Point Power Plant in Somerset, Massachusetts since January 1, 2005.

9. Dominion Entities admit that they are subject to personal jurisdiction in the District of Rhode Island. Dominion Entities are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Third Party Complaint.

10. Dominion Entities deny the allegations in Paragraph 10 of the Third Party Complaint, and aver that venue is proper in the District of Maryland for the reasons stated in the Third Defense herein.

11. – 12. Dominion Entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 11 and 12 of the Third Party Complaint.

13. Dominion Entities make no response to the allegations of Paragraph 13 of the Third Party Complaint. Paragraph 13 states a legal conclusion to which no response is required.

14. – 17. Dominion Entities make no response to the allegations of Paragraphs 14 through 17 of the Third Party Complaint, which apply to Third Party Defendant Firestone.

18 – 21. Dominion Entities make no response to the allegations of Paragraphs 18 through 21 of the Third Party Complaint, which apply to Third Party Defendant Honeywell.

22. – 28. Dominion Entities make no response to the allegations of Paragraphs 22 through 28 of the Third Party Complaint, which apply to Third Party Defendant Town of Tiverton.

29. – 36. Dominion Entities make no response to the allegations of Paragraphs 29 through 36 of the Third Party Complaint, which apply to Third Party Defendant Gulf.

37. – 40. Dominion Entities make no response to the allegations of Paragraphs 37 through 40 of the Third Party Complaint, which apply to Third Party Defendant Inland Fuel.

41. Dominion Entities deny that DRI "owns" or "operates" the Brayton Point Power Plant. Dominion Entities admit that Dominion Energy Brayton Point, LLC "owns" and "operates" the Brayton Point Power Plant in Somerset, Massachusetts. Finally, Dominion Entities aver that Dominion Energy Brayton Point, LLC has only "owned" and "operated" the Brayton Point Power Plant in Somerset, Massachusetts since January 1, 2005.

42. – 44. Dominion Entities deny the allegations in Paragraphs 42 through 44 of the Third Party Complaint.

45. Dominion Entities incorporate the admissions, denials and averments made in response to Paragraphs 1 through 44 of the Third Party Complaint as if set forth fully herein.

46. Dominion Entities deny the allegations in Paragraph 46 of the Third Party Complaint to the extent such allegations relate to Dominion Entities as "third-party defendants." Dominion Entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 regarding the other "third-party defendants."

47. Dominion Entities incorporate the admissions, denials and averments made in response to Paragraphs 1 through 46 of the Third Party Complaint as if set forth fully herein.

48. – 49. Dominion Entities deny the allegations in Paragraphs 48 and 49 of the Third Party Complaint to the extent such allegations relate to Dominion Entities as "third-party defendants." Dominion Entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 48 and 49 regarding the other "third-party defendants."

50. All allegations not specifically admitted herein are hereby denied.

**FIRST DEFENSE**

The Third Party Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

Dominion Entities deny that Third Party Plaintiff New England Gas Company is entitled to any relief, monetary or otherwise.

**THIRD DEFENSE**

The claims asserted by Third Party Plaintiff New England Gas Company against the Dominion Entities in the Third Party Complaint are barred by the terms of *Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure: (I) Authorizing and Approving the Terms of the Asset Purchase and Sale Agreement and Related Agreements [by USGen New England, Inc., Debtor, and] Dominion Energy New England, Inc. [, Buyer]; and (II) Authorizing Consummation of the Transactions Contemplated Therein*, Case No. 03-30465 (PM), U.S. Bankruptcy Court, D. Md. (Nov. 23, 2004) (Docket No. 1299, the "Sale Order").

By the terms of the Sale Order and the Asset Purchase and Sale Agreement dated September 3, 2004 (attached to the Motion For Orders Under 11 U.S.C. §§ 105(a), 363(b), (f) And (m), 365, And 1146(c) And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(i) Approving Bidding Procedures With Respect To Proposed Sale Of A Portion Of Debtor's Assets [Fossil] To Dominion Energy New England, Inc. Or Its Designated Subsidiary, (ii) Scheduling Hearing On Approval Of Sale, (iii) Approving Form And Manner Of Notice Of Sale, (iv) Approving Break-Up Fee And Expense Reimbursement Fee And (B) (i) Approving Sale Of The Transferred Assets Of Debtor Free And Clear Of All Liens Under Section 363, (ii) Authorizing Assumption And Assignment Of Certain Assigned Contracts And (C) Granting Related Relief [Docket No. 1034] (the "Sale Motion") dated September 7, 2004), the purchase of the Brayton Point Power Plant in Somerset, Massachusetts by Dominion Energy New England, Inc.[1] was "free and clear of all interests and claims of any kind or nature whatsoever" other than as expressly permitted by the Asset Purchase and Sale Agreement, *i.e.*, Assumed Liabilities and Permitted Liens. Sale Order ¶¶ 5, 6, 9. The claims asserted by Third Party Plaintiff New England Gas Company against the Dominion Entities in the Third Party Complaint are not among the Assumed Liabilities and Permitted Liens in the Asset Purchase and Sale Agreement.

The Sale Order is binding on all creditors of USGen New England, Inc. and other parties in interest in Case No. 03-30465 (PM), U.S. Bankruptcy Court, D. Md. *See id.* ¶ 26. Third Party Plaintiff New England Gas Company filed two proofs of claim in the chapter 11 case of USGen New England, Inc., and was served with prior notice of the Sale Motion, in accordance with the Federal Rules of Bankruptcy Procedure. Third Party Plaintiff New England Gas Company failed

---

[1] By Assignment and Assumption Agreement dated January 1, 2005, Dominion Energy New England, Inc. assigned all of its assets (and assumed liabilities) in the Brayton Point Power Plant to Dominion Energy Brayton Point, LLC.

to assert a claim for indemnity and contribution in Case No. 03-30465, and did not object to the Sale Motion therein.

The U.S. Bankruptcy Court for the District of Maryland retains jurisdiction to (a) "[i]nterpret, implement and enforce the terms and provisions of [the] Sale Order . . . and each of the agreements executed in connection therewith in all respects . . . ;" and (b) "Protect Buyer . . . including, without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Buyer successor liability . . . ." *See* Sale Order ¶ 22; *see also* Second Amended Plan of Liquidation for USGen New England, Inc., Article 11.01, D and R, ("the Bankruptcy Court shall retain jurisdiction for the following purposes, without limitation: . . . Resolution of controversies and disputes regarding the enforcement or interpretation of . . . the Bankruptcy Court's orders that survive confirmation of the Plan pursuant to the Plan or other applicable law; . . . Resolution of controversies and disputes regarding each Sale Transaction or each Purchase Agreement;"); Order Confirming the Modified Second Amended Plan of Liquidation For USGen New England, Inc. (Case No. 03-30465 (PM)),¶ 2 ("this Court retains jurisdiction of the Chapter 11 case: (i) pursuant to and for the purposes of section 105(a) and 1127 of the Bankruptcy Code; and (ii) as set forth in Article XI of the Plan; which is incorporated by reference . . . .").

**FOURTH DEFENSE**

Dominion Entities deny that they have any successor liability for indemnity or contribution to Third Party Plaintiff New England Gas Company stemming from the alleged debts, obligations or liabilities of USGen New England, Inc., the prior owner of Brayton Point Power Plant in Somerset, Massachusetts. *See* Sale Order ¶¶ 11, 12, 13.

**FIFTH DEFENSE**

The doctrine of laches bars the claims of Third Party Plaintiff New England Gas Company in whole or in part.

**SIXTH DEFENSE**

The doctrines of estoppel, acquiescence and/or waiver bar the claims of Third Party Plaintiff New England Gas Company in whole or in part.

**SEVENTH DEFENSE**

The applicable statutes of limitation bar the claims of Third Party Plaintiff New England Gas Company in whole or in part.

**EIGHTH DEFENSE**

The doctrine of unclean hands bars the claims of Third Party Plaintiff New England Gas Company in whole or in part.

**NINTH DEFENSE**

If Third Party Plaintiff New England Gas Company suffered damages as alleged, then such damages may have been caused by its own contributory negligence, and any recovery by Third Party Plaintiff New England Gas Company should, therefore, be reduced by the proportion of its contributory negligence, if any, or barred altogether.

**TENTH DEFENSE**

If Third Party Plaintiff New England Gas Company suffered damages as alleged, which the Dominion Entities expressly deny, then said damages were caused by the acts of a third person(s) over whom the Dominion Entities had no control, and for whom the Dominion Entities are not legally responsible.

## ELEVENTH DEFENSE

In addition to the foregoing affirmative defenses, Dominion Entities reserve the right to raise any affirmative defenses that are warranted by the facts as developed through discovery and at trial.

**WHEREFORE**, Third Party Defendants / Counterclaim Plaintiffs Dominion Resources, Inc. and Dominion Energy Brayton Point, LLC respectfully request that the Court grant judgment in its favor dismissing the Third Party Complaint, and awarding Dominion Entities their fees and costs incurred in defending this matter, along with such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

This counterclaim seeks a declaration that a Third Party Complaint filed by New England Gas Company ("NEG") against Brayton Point and DRI is forever time-barred, enjoined, and discharged by, among other things, the November 23, 2004 Order of the United States Bankruptcy Court of the District of Maryland, and to permanently enjoin NEG from pursuing in any forum the claims alleged in its Third Party Complaint against the Counterclaim Plaintiffs.

### Parties

1. Dominion Resources, Inc. is a corporation duly organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia.

2. Dominion Energy Brayton Point, LLC is a limited liability company duly organized and existing under the laws of the Commonwealth of Virginia and is an indirect, third-tier subsidiary of DRI.

3. New England Gas Company ("NEG") is an unincorporated division of Southern Union Company ("Southern Union"). Southern Union is a Delaware business corporation having its principal place of business in Houston, Texas.

Jurisdiction and Venue

4. This proceeding is commenced pursuant to 28 U.S.C. §§ 2201 and 2461.

5. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1332(a) and 1334(b) and the *Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure: (I) Authorizing and Approving the Terms of the Asset Purchase and Sale Agreement and Related Agreements [by USGen New England, Inc., Debtor, and] Dominion Energy New England, Inc. [, Buyer]; and (II) Authorizing Consummation of the Transactions Contemplated Therein*, Case No. 03-30465 (PM), U.S. Bankruptcy Court, D. Md. (Nov. 23, 2004) (the "Sale Order").

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

Factual Background

**A. The Bankruptcy Filings, Notice to NEG, and the Sale of the Power Plant.**

7. On July 8, 2003 (the "Petition Date"), USGen New England, Inc., a Delaware corporation, (the "Debtor") filed a voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), in the United States Bankruptcy Court of the District of Maryland (the "Bankruptcy Court"), thereby commencing Case No. 03-30465 (PM) (the "Bankruptcy Case").

8. NEG filed a Notice of Appearance and Request for Notices and Service of Papers under Bankruptcy Rule 2002 in the Bankruptcy Case on November 10, 2003. Additionally, NEG filed Proofs of Claim on January 7 and April 8, 2004.

9. A true and accurate copy of NEG's Notice of Appearance and Proofs of Claim are attached hereto as Exhibit A.

10. On September 7, 2004, the Debtor filed a motion (the "Sale Motion") in the Bankruptcy Case seeking authority from the Bankruptcy Court to sell certain of its assets to Dominion Energy New England, Inc. pursuant to a Fossil Asset Purchase and Sale Agreement between the parties, dated September 3, 2004 (the "APA").

11. True and accurate copies of the Sale Motion and APA, without schedules, are attached hereto as Exhibits B and C.

12. The sale under the APA included the Brayton Point Station Power Plant ("Power Plant"), which was to be sold through an auction procedure. An amended order approving the procedures for the auction sale was entered by the Bankruptcy Court on October 8, 2004 (the "Sale Procedures Order").

13. A true and accurate copy of the Sale Procedures Order is attached hereto as Exhibit D.

14. In accordance with the Sale Procedures Order, the Debtor published notice of the sale in The Boston Globe, The Providence Journal, and The National Edition of the Wall Street Journal, as described in Affidavits of Publication.

15. True and accurate copies of the Affidavits of Publication are attached collectively hereto as Exhibit E.

16. In addition, the Debtor gave actual notice by mail to numerous parties, including parties with any potential interest in the assets being sold, parties to executory contracts or unexpired leases being assigned as part of the sale, and those parties requesting notice under Bankruptcy Rule 2002.

17. NEG was provided actual notice of the sale through service of the Sale Motion, Notice of Sale, Assignment and Cure Notice, and Sale Procedures Order, which were sent to NEG by regular mail on October 15, 2004.

18. A true and accurate copy of the Certificate of Mailing showing service on NEG and its counsel are attached hereto as Exhibit F.

19. Despite such notice, NEG did not object or otherwise respond to the Sale Motion or contest the sale of the assets as proposed in the Sale Motion.

20. On November 18, 2004, the Bankruptcy Court conducted a hearing on the Sale Motion and approved the sale of assets, including the Power Plant, to Dominion Energy New England, Inc. under the APA. The Sale Order approving the sale was entered by the Bankruptcy Court on November 23, 2004.

21. A true and accurate copy of the Sale Order is attached hereto as Exhibit G.

22. The sale of the assets under the APA as approved by the Sale Order closed on December 31, 2004 (the "Closing Date").

**B. Power Plant Sold Free and Clear.**

23. Under the explicit language of the Sale Order, Dominion Energy New England, Inc. purchased certain assets of the Debtor, including the Power Plant, free and clear of all claims against, and liabilities or obligations of, the Debtor arising before the Closing Date.

24. The Sale Order provides, in relevant part, that:

> 6. Except for the Assumed Liabilities and the Permitted Liens, pursuant to 105(a) and 363(f) of the Bankruptcy Code, the Transferred Assets shall be transferred to Buyer, and upon Closing shall be, free and clear of all interests and claims of any kind or nature whatsoever, and all such interest of any kind whatsoever shall attach to the net cash proceeds of the Transactions in the order of their priority, if any with the same validity, force and effect that they now have as against the Transferred Assets,

> subject to any claims and defenses the Debtor may possess with respect thereto.
>
> * * * * * * * *
>
> 11. In addition, except as expressly set forth in the Purchase Agreement or as may be agreed to in writing by Seller and Buyer, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of its facilities prior to the Closing Date.
>
> 12. Except for the Assumed Liabilities, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Transferred Assets.
>
> 13. Except for the Assumed Liabilities and the Permitted Liens, the sale, transfer, assignment and delivery of the Transferred Assets shall not be subject to any interests and claims, and interest and claims of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor and its estate.

Sale Order at 7 & 9.

25. The only exception to this "free and clear sale" was for "Assumed Liabilities" and "Permitted Liens."

26. The term "Permitted Liens" is defined in the APA:

> (i) Liens created by Buyer, or its successors and assigns, (ii) Liens for Taxes not yet due and payable, (iii) Liens of record as of the effective date of, and as set forth in, the Title Commitments, (iv) Liens of record after the date of the Title Commitments up to and including the Closing Date that Buyer's title company has agreed to affirmatively insure against any Loss caused thereby in the applicable title policy at no additional premium costs to Buyer, (v) Liens set forth on Schedule 1.1(a)(vii) as of the date hereof, (vi) materialman's, mechanics', repairmen's, landlord's and other similar Liens arising before Closing in the ordinary course of business securing payments not yet due and payable, but which shall not be Permitted Liens as of the Closing for purposes of this Agreement and shall also not be Permitted Liens for purposes of the Sale Order, and (vii) such Liens, defects, imperfections, and irregularities of title as are, individually or in the aggregate, immaterial in character, scope, or amount.

APA at 11.

27. The term "Assumed Liabilities" is defined in the APA by reference to Schedule 3.1:

> Other than liabilities for fines, damages and penalties to the extent arising or accruing in, or to the extent relating to, periods prior to the Closing Date, all liabilities and obligations (including Environmental Costs and Liabilities) arising out of or accruing in connection with the operation of the Business or the ownership of the Transferred Assets by Buyer from and after the Closing Date.

Disclosure Schedules to Fossil Asset Purchase and Sale Agreement, Schedule 3.1 (a true and accurate copy of which is attached hereto as Exhibit H).

28. Therefore, under the definition of Assumed Liabilities, all liabilities and claims, including Environmental Costs and Liabilities, arising prior to the Closing Date are neither "Assumed Liabilities" nor "Permitted Liens," but are instead "Excluded Liabilities" (as defined in section 3.2(a) of the APA) not transferred or assumed as part of the sale. A true and accurate copy of Schedule 3.2(a), "Excluded Liabilities," is attached hereto as Exhibit I.

29. The Sale Order further provides for the sale and transfer of assets free and clear of interest in accordance with section 363(f) of the Bankruptcy Code, stating:

> The Debtor may sell the Transferred Assets free and clear of all interest of any kind or nature whatsoever as contemplated by the Agreement because, in each case, one or more of the standards set forth in section 363(f)(1) through 363(f)(5) of the Bankruptcy Code have been satisfied.

Sale Order at 4.

30. Under 11 U.S. C. § 363(f), a sale of property of a debtor "free and clear of any interest in such property of an entity other than the estate" is allowed when:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

31. Accordingly, the Sale Order states that the assets sold to Dominion Energy New England, Inc. were sold free and clear of any claims and/or interests arising prior to the Closing Date, unless such claims and/or interests were expressly assumed as part of the sale.

32. Under its Sale Order, the Bankruptcy Court expressly retained jurisdiction, among other things, to:

> a. Interpret, implement and enforce the terms and provisions of this Sales Order, the Bidding Procedures Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, and resolve any disputes thereunder, except as otherwise provided therein;
>
> b. Protect Buyer and the Assigned Contracts, Leases or Transferred Assets against any interests or Excluded Liabilities, including without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Buyer successor liability. . . .

Sale Order ¶ 22.

33. The Bankruptcy Court also retained jurisdiction pursuant to the Debtor bankruptcy plan and confirmation order. *See* Second Amended Plan of Liquidation for USGen New England, Inc., Article 11.01, D and R, ("the Bankruptcy Court shall retain jurisdiction for the following purposes, without limitation: . . . Resolution of controversies and disputes regarding the enforcement or interpretation of . . . the Bankruptcy Court's orders that survive confirmation of the Plan pursuant to the Plan or other applicable law; . . . Resolution of controversies and disputes regarding each Sale Transaction or each Purchase Agreement;"); Order Confirming the Modified Second Amended Plan of Liquidation For USGen

New England, Inc. (Case No. 03-30465 (PM)),¶ 2 ("this Court retains jurisdiction of the Chapter 11 case: (i) pursuant to and for the purposes of section 105(a) and 1127 of the Bankruptcy Code; and (ii) as set forth in Article XI of the Plan; which is incorporated by reference . . . .").

34. The Sale Order is binding on all creditors of the Debtor.

35. Under an Assignment and Assumption Agreement dated January 1, 2005, Dominion Energy New England, Inc. assigned the APA to Dominion Energy Brayton Point, LLC.

36. A true and accurate copy of the Assignment and Assumption Agreement is attached hereto as Exhibit J.

**C. NEG's Third Party Complaint.**

37. In violation of the Sale Order, NEG filed its Third Party Complaint in this Court.

38. In the Third Party Complaint, the NEG seeks contribution and indemnification from Brayton Point and DRI for any liability NEG may incur regarding a Complaint filed against NEG by various individuals in Tiverton, Rhode Island (the "Tiverton Plaintiffs"). *See* C.A. No. 05-221T & Related Cases: 05-274T; 05-522T; 05-370T (the "Tiverton Complaints").

39. In the Tiverton Complaints, the Tiverton Plaintiffs allege that their properties are contaminated with hazardous materials deposited by NEG's predecessor in interest, Fall River Gas Company. These materials allegedly came from a former manufactured gas plant owned and operated by Fall River Gas Company and located less than one mile away from the properties of the Tiverton Plaintiffs.

40. In August 2002, soil contamination was discovered on property owned by the Town of Tiverton ("Town") during excavation associated with a sewer project in the vicinity of the properties of the Tiverton Plaintiffs.

41. On or about October 8, 2002, the Rhode Island Department of Environmental Management ("RIDEM") issued a Letter of Responsibility to the Town as the owner of the property and to Starwood Tiverton LLC ("Starwood") as the operator of the sewer project.

42. On behalf of the Town and Starwood, EA Engineering, Science and Technology, Inc. ("EA Engineering") conducted a site investigation in the vicinity of the sewer project.

43. Based on the observations and analyzed results secured by RIDEM's inspector and EA Engineering's March 2003 Site Investigation Report, RIDEM concluded the contamination was the result of the disposal of wastes generated during the production of manufactured gas, otherwise known as coal gasification.

44. On March 17, 2003, RIDEM issued a Letter of Responsibility to NEG which identified NEG as a responsible party for the release of hazardous materials in what has been named the Bay Street Neighborhood Study Area (which includes the properties of the Tiverton Plaintiffs) based on NEG's ownership of the former manufactured gas plant located less than one mile away.

45. A true and accurate copy of RIDEM's March 17, 2003 Letter of Responsibility is attached hereto as Exhibit K.

46. Analysis and study of the contaminated area continued. For example, on or about July 19, 2004, NEG submitted a proposed Supplemental and Phase II Site Investigation Work Plan to further investigate the 67 properties investigated in 2003, along with 17 (later expanded to 25) additional properties. NEG commenced the fieldwork for this Phase II Site Investigation Work Plan in late August 2004.

47. On July 30, 2004, RIDEM received a document entitled "Immediate Response Action Plan" prepared by ENSR International on behalf of NEG. The Immediate Response

Action Plan states that ENSR "reviewed historical records of the former Fall River Gas Company to determine what information is available with respect to offsite disposal of Coal Gasification Related Materials (CGRM) in Massachusetts. Those records indicate that some of the material was sold as product, while other material was hauled offsite for disposal."

48. On September 14, 2006, RIDEM issued a Notice of Violation to NEG based in part on its "failure to satisfy [certain] requirements of the March 23 LOR."

49. A true and accurate copy of the September 14, 2006 Notice of Violation is attached hereto as Exhibit L.

50. NEG has denied all liability for the contamination but nonetheless filed the Third Party Complaint against Brayton Point and DRI as the "owners and/or operators of the Brayton Point Power Plant." Third Party Complaint ¶ 41.

51. DRI, however, does not own or operate the Power Plant. Instead, it is owned and operated solely by Brayton Point pursuant to the Assignment and Assumption Agreement. *See* Exhibit J.

52. Summarily and without any supporting facts, NEG further alleges that Brayton Point and DRI are "alter egos" of one another. Third Party Complaint ¶ 8. Brayton Point and DRI deny this allegation. Brayton Point is an indirect third-tier subsidiary of DRI, and the two entities maintain all corporate formalities and requirements necessary for their separate and independent legal status.

53. NEG alleges that the Power Plant emitted air pollution including "polycyclic aromatic hydrocarbons" that "caused or contributed to the alleged contamination" of the Corvello landowners' properties. Third Party Complaint ¶¶ 42-43.

54. Counterclaim Plaintiffs deny that any air emissions from the Power Plant caused or contributed to the alleged contamination in the Town. In any event, the claims asserted by NEG in the Third Party Complaint relate solely to alleged pre-petition air emissions from the Power Plant, and are not among the Assumed Liabilities and Permitted Liens identified in the APA.

**COUNT I**
**(Declaratory Judgment Pursuant To 28 U.S.C. § 2201)**

55. Counterclaim Plaintiffs incorporate herein by reference all of the allegations in the foregoing paragraphs.

56. Pursuant to 28 U.S.C. § 2201, Counterclaim Plaintiffs are entitled to and seek a declaratory judgment finding that (a) NEG's claims against Counterclaim Plaintiffs as alleged in the Third Party Complaint are forever time-barred, enjoined, and discharged under the Sale Order and (b) NEG's Third Party Complaint and continuing prosecution of the Third Party Complaint is a violation of the Sale Order.

**COUNT II**
**(Permanent Injunctive Relief Pursuant to Fed. R. Civ. P. 65)**

57. Counterclaim Plaintiffs incorporate herein by reference all of the allegations in the foregoing paragraphs.

58. Because the Third Party Complaint constituted a violation of the Sale Order, the Court should permanently and affirmatively enjoin NEG from seeking in any way to assert or prosecute their claims against Counterclaim Plaintiffs as set forth in the Third Party Complaint, including, without limitation, ordering NEG to dismiss the Third Party Complaint immediately with prejudice. Failure to enjoin NEG from prosecuting their pre-petition claims in the Third Party Complaint shall cause Counterclaim Plaintiffs to incur additional substantial damages and

shall unjustly exempt NEG from the discharge and injunction provisions of the Bankruptcy Court's orders.

WHEREFORE, Third Party Defendants / Counterclaim Plaintiffs Dominion Resources, Inc. and Dominion Energy Brayton Point, LLC, by counsel, respectfully request this Court to enter an Order providing for the foregoing relief and granting such other and further relief as this Court deems appropriate.

Third Party Defendants and Counterclaim Plaintiffs
DOMINION RESOURCES, INC. AND
DOMINION ENERGY BRAYTON POINT, LLC,
By Their Attorneys,

Craig R. Waksler, Esq.
R.I. Bar # 4945
Taylor, Duane, Barton & Gilman, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171
(401) 273-2904 (FAX)

Andrew G. Mauck, Esq.
Admission *pro hac vice* pending
Matthew B. Kirsner, Esq.
Admission *pro hac vice* pending
Troutman Sanders LLP
P. O. Box 1122
Richmond, VA 23218-1122
(804) 697-1200
(804) 698-6001 (FAX)

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and accurate copy of the foregoing document was served by U.S. Mail to:

[SEE ATTACHED COUNSEL LIST]

on October 31, 2007.

Craig R. Waksler

#1667435v1

| | | |
|---|---|---|
| John A. Tarantino, Esq.<br>David A. Wollin, Esq.<br>Adler Pollock & Sheehan, P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903-1345<br><br>Eric D. Herchmann, Esq.<br>David E. Ross, Esq.<br>Seth Davis, Esq.<br>Noelle M. Kowalczyk<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br><br>Christina Dodds<br>Bishop, London, Brophy, & Dodds<br>3701 Bee Cave Road, Suite 200<br>Austin, Texas 78746<br><br>Gerald J. Petros<br>Robin L. Main<br>Hinckley Allen & Snyder<br>50 Kennedy Plaza<br>Providence, RI 02903<br><br>Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Johnathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109<br><br>Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02109<br><br>Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110<br><br>Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601<br><br>Brian Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914<br><br>William Wick, Esq.<br>Wactor & Wick<br>180 Grand Avenue, Suite 950<br>Oakland, CA 94612 | Christopher P. McCormack<br>Pullman & Comley, LLC<br>850 Main Street<br>P.O. Box 7006<br>Bridgeport, CT 06601-7006<br><br>Jerry W. Ross, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>2 Houston Center<br>909 Fannin, Suite 2000<br>Houston, TX 770010-1018<br><br>Jeffrey Bromme, Esq.<br>Arnold & Porter LLP<br>555 Twelfth Street, N.W.<br>Washington, D.C. 20004<br><br>Jeanne M. Scott, Esq.<br>Ursillo, Teitz & Ritch, Ltd.<br>2 Williams Street<br>Providence, RI 02903<br><br>Thomas F. McGuire, Jr., Esq.<br>City of Fall River<br>Corporation Counsel<br>1 Government Center, 6th Floor<br>Fall River, MA 02722 |