**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. AND JOHN F. CORVELLO, et al.,

*Plaintiffs,*

v.

NEW ENGLAND GAS COMPANY, INC.,

*Defendant and Third-Party Plaintiff,*

v.

BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC.; DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER

*Third-Party Defendants.*

C.A. No. 05-221T
(Consolidated case nos: 05-274T, 05- 370T, 05-522T)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

New England Gas Company ("NEG") has moved for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) requesting the Court hold that NEG cannot be required to remediate the Plaintiffs' properties as the (i) regulation of the cleanup of contamination lies within the exclusive jurisdiction of the Rhode Island Department of Environmental Management ("RIDEM"), and (ii) Plaintiffs are not entitled to this relief under their common law claims due to the doctrines of pre-emption and abstention. These arguments are in contravention to well established Rhode Island law, which permits the Court to require NEG under both common and statutory law to remove the contamination and abate the nuisance. Therefore, the Court must deny NEG's pending motion.

## I. Standard of Review

In determining whether to grant a Rule 12(c) motion, the court is to "view the alleged facts presented in the pleadings in the manner most favorable to the nonmoving party." Haley v. Town of Lincoln, 611 A.2d 845, 847 (R.I. 1992). The factual allegations contained in the nonmovant's pleadings are admitted as true for the purposes of the motion and, all inferences are to be drawn in favor of the nonmovant. Id. Accordingly, "a defendant may not prevail on a Rule 12(c) motion unless that defendant is able to demonstrate to a certainty that the plaintiff will not be entitled to relief under any set of facts that might be proved at trial." Id.

## II. Rhode Island Recognizes that the Court Can Order Abatement of a Public Nuisance

This Court ruled in its Memorandum and Order on NEG's Motion to Dismiss, Document Entry Number 65 dated November 3, 2006 ("Order"), that the Plaintiffs have viable common law claims stemming from the disposal of NEG's MGP waste on the Plaintiffs' properties. Corvello v. New England Gas Co., Inc., 460 F.Supp. 314 (D.RI 2006). The Court has held that, under Rhode Island law, a private citizen may bring an action "to abate the nuisance and to perpetually enjoin the person or persons maintaining the nuisance." See Order, p. 18 (quoting R.I. Gen Laws. § 10-1-1.) As set forth herein, the law of public nuisance in Rhode Island has a longstanding history of abatement as a remedy.[1]

Indeed, Rhode Island courts have recognized for almost a century that public nuisance allows for the abatement of environmental contamination.[2] See Payne & Butler v. Providence Gas Co., 31 R.I. 295, 310, 77 A. 145, 151 (1910) (holding a manufacturer liable to any person

[1] Plaintiffs assert Defendant has a legal duty to remove the hazard they created within the moratorium area in this action and intend to produce evidence to show how Defendant was negligent in failing to do so in a reasonable manner. Plaintiffs' damages flow from Defendants negligent failure to remove the hazards alleged by Plaintiffs in their complaint. Since Defendant has moved in their Motion to strike Plaintiffs' requested remedies, focusing on the requested abatement of Defendant's coal gasification waste, Plaintiffs do not address their negligent claims and the damages that flow forthwith in this Memorandum.

[2] The continued viability of a court's equitable powers to order abatement in public nuisance actions is seen in other jurisdictions as well. State v. Norris, 50 P.3d 595, 599 (Or. App. 2002); State of N.Y. v. Shore Realty Corp., 759 F.2d 1032 (2nd Cir. 1985); Hooker Chemical & Plastics Corp., 118 F.R.D. 321 (W.D.N.Y.1987); Westwood Pharmaceuticals v. National Fuel Gas Distr.Corp., 737 F.Supp. 1272, 1281 (W.D.N.Y.1990); and Scheufler v. General Host Corp., 895 F.Supp. 1513, 1514 (D.Kan.1995).

who is injured for allowing waste to contaminate State waters); See also Braun v. Iannotti, 57 R.I. 194, 189 A. 25 (1937) (public nuisance created by emitting smoke and soot from smokestack). In 1982, in Wood v. Picillo, 443 A.2d 1244 (R.I. 1982), the Rhode Island Supreme Court issued one of the seminal opinions considering the applicability of public nuisance to a modern environmental contamination case.[3] In Wood, the Court upheld the trial court's determination that the defendants' conduct constituted a public nuisance because their storage of the hazardous and toxic waste on the defendant's private property posed a threat to the health of both aquatic wildlife and humans. Id. at 1248. Moreover, the equitable remedy of abatement in nuisance actions existed in this state prior to the adoption of the Rhode Island Constitution and continues to be a viable remedy to this day. State of Rhode Island v. Lead Industries Ass'n, 2003 WL 1880120 *3 (R.I. Super. 2003); See also Greenough v. Industrial Trust Co., 82 A. 266, 266 (R.I. 1912) (recognizing action to abate a nuisance); Engs. v. Peckham, 11 R.I. 210, 212 (R.I. 1875) (finding that a "public nuisance…may be proceeded against by information in equity and be abated…"); Reitsma v. Recchia, 2000 WL 1781960 (R.I. Super. 2000)(Court ordered abatement in public nuisance action brought by DEM). Rhode Island courts have consistently awarded plaintiffs injunctive relief requiring defendants to abate nuisances. In Zannini v. Aboretum Dev., 1988 WL 1017288 (R.I.Super. 1988), the court required the defendant to not only compensate the plaintiff for property damage but also ordered the defendant "install an artificial drainage system to afford relief to [the] plaintiff from the nuisance created by [the] defendant." Id. at *3. Likewise, in Pine v. Vinagro, the Rhode Island Superior Court found that the defendants' creation, maintenance and use of a tailings stockpile constituted a public

[3] See Tom Kuhnle, The Rebirth of Common Law Actions for Addressing Hazardous Waste Contamination, 15 Stan. Envtl. L. J. 187, 214 (1996) (recognizing Rhode Island was one of the first states to uphold a public nuisance claim in a modern hazardous waste contamination case).

nuisance, and required the defendant to promptly abate the nuisance at the defendants' expense. 1996 WL 937004, *23 (R.I. Super. Nov. 4, 1996) (Israel, J.).

The Plaintiffs have a viable cause of action for public nuisance against NEG, should be permitted to present evidence concerning the abatement of that nuisance, and to obtain relief from the Court to abate the nuisance in as timely a manner as possible. See id. at 325. "[A]n individual who sustains an injury peculiar to himself may have relief against a public nuisance, and is entitled to proceed in equity for the abatement of or an injunction against the nuisance." Steere v. Tucker, 39 R.I. 531 (1916); Pine v. Shell Oil Co., 1993 WL 389396, *4 (D.R.I. Aug. 23, 1993) (Lovegreen, J) (traditional remedy for public nuisance is abatement).

Defendant's reliance on Hydro Manufacturing, Inc. v. Kayser-Roth Corp, 640 A.2d 950 (R.I. 1994) for the suggestion that Plaintiffs cannot seek abatement as a remedy for their nuisance claim is misplaced. First and foremost, the Court in Hydro-Manufacturing held "because Hydro's harm was not suffered in the exercise of a right common to the general public, Hydro lacks standing to pursue a public-nuisance action." Id. at 958. Thus, the portions of the case that the Defendant relies upon do not relate to issues regarding public nuisance actions. Moreover, as this Court recognized, this case is distinguishable from Hydro Manufacturing "because these plaintiffs are not subsequent purchasers of the FRGC's property. Accordingly, these plaintiffs presumably, were not alerted to the possibility that waste generated by FRGC had contaminated their property…". See Order, p. 8. This Court further stated that the complaint "does allege that the waste contains a number of highly toxic substances and that the presence of those substances has prompted the Town to impose a building moratorium in the area. Consequently, this Court cannot say that the Plaintiffs will be unable to prove any facts that would entitle them to relief on their public nuisance claims." See Id. at 20. The Plaintiffs' claim

and intent to seek injunctive relief to abate the public nuisance in the moratorium area of Bay Street in Tiverton is viable, and therefore, NEG's motion should be denied.

**III. Rhode Island Hazardous Waste Management Act Does Not Supersede the Common Law Tort of Public Nuisance**

NEG incorrectly argues that the remediation of MGP waste is under the exclusive jurisdiction of the RIDEM. The Hazardous Waste Management Act ("HWMA") does not supersede or abrogate the common law tort of public nuisance. In order for the HWMA to curtail the remedies available under common law public nuisance, the Legislature must have stated its intention to do so explicitly. Under Rhode Island law, it is well settled that the courts must strictly construe statutes that establish rights not recognized at common law or that operate in derogation of the common law. Providence Journal Co. v. Rodgers, 711 A.2d 1131, 1134 (R.I.1998). Derogation is not a mere change in the common law, but rather "[t]he partial abrogation or repeal of a law." O'Sullivan v. Rhode Island Hospital, 874 A.2d 179, 184-85 n. 9 (R.I.2005) (*quoting* O'Grady v. Brown, 654 S.W.2d 904, 907-08 (Mo.1983)) (holding that a wrongful death statute should be liberally construed). Applying these rules of strict construction to the HWMA, the Court should conclude that the absence of any mention by the General Assembly of its desire to alter the common law of public nuisance is dispositive of this issue. By enacting these environmental statues, the legislature explicitly provided RIDEM with additional tools to remedy environmental contamination, but nowhere stated an intension to limit the tools available to private parties. The fact that the Legislature did not intend to take away the right for private parties to abate a nuisance is further supported by the fact the Legislature did not repeal R.I. Gen Laws. § 10-1-1, which explicitly gives private parties the right to seek injunctive relief to abate public nuisances when it enacted the HWMA.

The State's simultaneous use of the HWMA and the common law is documented in cases like Reitsma v. Recchia, 2000 WL 1781960 (R.I. Super. 2000) (where RIDEM and the Attorney

General have instituted actions based upon both environmental contamination laws and public nuisance further supports the argument.) In that case, the Court exercised its equitable powers and ordered the abatement of a public nuisance. Similarly, the Court in Rhode Island v. Lead Industries Association found harmony between the statutory scheme and common law public nuisance claim and that the common law public nuisance action could co-exist with the RI Lead Poisoning Prevention Act. State of Rhode Island v. Lead Ind. Ass'n, Inc., 2003 WL 1880120 at * 2 (R.I. Super. Mar. 20, 2003) (Silverstein, J.); See State of Rhode Island v. Lead Ind. Ass'n, Inc., C.A. No. 99-5226, Hearing Tr. at 4-5 (Aug. 14, 2002) (Court held that "if the Attorney General ultimately succeeds on his public nuisance count by establishing all of the necessary elements in accordance with law as against one or more of these defendants, that result would be in harmony with the provisions of our statutory scheme" and that "[n]othing in the act or, indeed, in any other statute called to the Court's attention either clearly expresses an intent or by necessary implication requires that this Court as to these defendants preclude the Attorney General from proceeding at this time."). The Legislature did not evidence any intention to abrogate the common law remedies of public nuisance when enacting HWMA and, the Court should similarly deny the pending Motion.

NEG argues that the Court should defer to the related RIDEM case because there is a danger of inconsistent verdicts. The Plaintiffs should not have to wait until the RIDEM case is fully adjudicated to have the nuisance abated; they have the separate right to obtain redress from the Court to abate a nuisance that interferes with their constitutional and property rights. As the United States Supreme Court discussed in Loretto v. Teleprompter Manhattan CATV Corp., a property owner suffers a "special kind of injury" when a stranger invades the owner's property. 458 U.S. 419, 436 (1982). Such an invasion is "qualitatively more severe than a regulation of use … since the owner may have no control over the timing, extent, or nature of the invasion."

Id. Because Plaintiffs have a separate and distinct right to force NEG to abate the nuisance, the verdict in the DEM matter does not bind the Plaintiffs as it is under the State's separate statutory authority. Therefore, in light of the well-established Rhode Island law allowing the Plaintiffs' common law claims against NEG, this Court has the authority to order NEG to pay all costs necessary to properly abate the nuisance.

**IV. The Doctrines of Abstention and Primary Jurisdiction are Inapplicable to this Case**

The Defendant seeks to muddy the waters by urging the court to utilize the inapplicable doctrine of abstention in this case. Abstention enables a federal court sitting in equity to refuse to "enforce or protect legal rights, the exercise of which may be prejudicial to the public interest." Burford v. Sun Oil Co., 319 U.S. 315 (1943)(internal citations omitted). In further defining the doctrine's parameters, federal courts have held that:

> A federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Public Service Inc. v. City of New Orleans, 491 U.S. 350 (1989)(internal citations and quotations omitted). Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. See Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236 (1984) (citing Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 813 (1976); see also County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959). A federal court's obligation to exercise its jurisdiction has been described by the Supreme Court as "virtually unflagging." See Deakins v. Monaghan, 484 U.S. 193, 203 (1988).

The Plaintiffs are not questioning the authority, proceedings or orders of RIDEM's administrative action. Rather they have brought a public nuisance claim which seeks the relief

afforded to nuisances both at common law and R.I. Gen. Laws § 10-1-1. Thus, the issues raised in this case are not even within the initial parameters for application of the abstention doctrine.

Given that this action does not raise questions of the application of a state law or substantial public policy and allowing Plaintiffs' claims to proceed would not be disruptive of state efforts to establish a coherent public policy, abstention is inapplicable. Federal courts have long recognized that they "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution," New Orleans, 491 U.S. at 359. Moreover, the "courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." Id. (citing Chicot County v. Sherwood, 148 U.S. 529 (1893)). Plaintiffs have submitted to the jurisdiction of this Court and, as there is no basis for refraining, the Court should deny NEG's motion and allow Plaintiffs' claims to proceed.

The Defendant also urges the court to adopt the doctrine of primary jurisdiction. In defining when the doctrine should be utilized the courts have held that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, the agencies created by Congress for regulating the subject matter should not be passed over." Id. In sum, "it is a doctrine allocating the law-making power over certain aspects' of commercial relations." Id. Primary jurisdiction is similarly inapplicable and Defendant's arguments in support of its adoption should be ignored.

In Western Pacific, the court was presented with the question of whether a statutory tariff rate was applicable to the shipment of particular materials. See id. at 63. The court stated that because it was the agency, not the court that made the determinations as to the rate at which certain materials would be taxed, the court ruled that it was the agency that should decide whether certain materials met the requirements to be assessed at a particular rate. See id.

Similarly, in Commonwealth of Massachusetts v. Blackstone Valley Electric Co., 67 F.3d 981 (1995), a case cited by the Defendant, the court declined to determine, whether a chemical, met the definition of a class of chemicals included within the statutorily defined term "hazardous substances."[4] The Blackstone Valley court held that: (1) whether the chemical was a hazardous substance under the federal statute was within the agency's delegated authority; (2) the agency's expertise was required to make the determination; and (3) an agency ruling on this issue would assist the court in ultimately determining liability under the statute. See id. at 992. Here, the Court is not being asked to rule on the construction of complex statutes. Rather, the Plaintiffs seek to have it determined whether they are entitled to damages under their claims for nuisance, and if so, have the Court order NEG, like the defendants in Vinagro and Reitsma, to abate the nuisance *in accordance with* the RIDEM statutes and regulations. Vinagro, 1996 WL 937004, at *23-24; Reitsma, 2000 WL 1781960, at *7.

## V. Alternatively, the Court Should Allow Plaintiffs to Add a CERCLA Count

If the Court finds that the Plaintiffs are not entitled to have Defendant NEG abate the contamination within the Moratorium Area under their common law claims, then Plaintiffs respectfully request that the Court allow them to amend their Complaint to add the count based upon the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9607 ("CERCLA") contained in their Third Amended Complaint which was originally filed on November 22, 2005.[5] On December 2, 2005, with Defendant NEG's Motion to Dismiss pending, this Court denied without prejudice Plaintiffs' Motion to Amend Complaint stating in part that the Court will delay the entry of that order on the Motion to Dismiss for 10 days. During that time, the Court "will allow counsel to file Motions to Amend…After the 10 day period has

[4] The remaining first circuit case cited by the Defendant also involved concerned the court's assessment of whether certain facts or scenarios fell within the framework of a statute administered by an administrative bodies. See Pjepscot Ind. Park, Inc. v. Maine Central RR Co., 215 F.3d 195 (2000)(referring a shipper's claim that a rail carrier actions fell within the scope of actions prohibited by certain statutes regulating the interstate rail industries to the agency established by the statute).

[5] See Docket Entry No. 40, entered on November 22, 2005.

elapsed, no further Motions to Amend may be filed unless there is a …change in circumstances that warrant the amendment." See Minute Entry for 12/01/2005. Plaintiffs, upon review of the Court's ruling on Defendant's Motion to Dismiss, determined the requested remedies under the Second Amended Complaint, including the prayer for injunctive relief to abate the nuisance were valid under the common law claims and, therefore, adding the CERCLA count was unnecessary and duplicative. If the Court finds Plaintiffs' requested remedies are not allowed under their common law claims, Plaintiffs request in good faith, pursuant to the Fed.R.Civ.P. Rule15(a), for leave to add the CERCLA count from the Third Amended Complaint.

Plaintiffs submit that allowing the addition of the CERCLA count will not cause undue delay or prejudice to NEG as neither the claims nor the remedies sought by Plaintiffs will change. Further, this Amended Complaint was originally filed in November 2005 and, as stated above, the only reason Plaintiffs would seek to add the CERCLA count at this juncture would be if the Court changes its views regarding the Plaintiffs' common law claims, finding that they do not provide the requested remedies of abatement and injunctive relief. The Plaintiffs have suffered with the moratorium for more than five years; they should be able in this action to take control of their lives and have the properties properly investigated and abated.

**VI. Conclusion**

For the foregoing reasons, the Plaintiffs respectfully request the Court to deny NEG's Motion for Partial Judgment on the Pleadings.

Dated: November 19, 2007

Respectfully submitted,

PLAINTIFFS,
By and through their attorneys,

*/s/ Robert J. McConnell*
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

*/s/ Neil T. Leifer*
David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

*/s/ Mark W. Roberts*
Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222
(617)-720-2320 Fax

## CERTIFICATION

Service upon the following parties was completed electronically via the ECF system on November 19, 2007 pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

*/s/ Mark W. Roberts*
Mark W. Roberts

**Plaintiffs' Counsel**

Paul Revere, III
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632
ReverelII@aol.com

Brian R. Cunha
Law Offices of Brian Cunha & Associates
311 Pine Street
Fall River, MA 02720
brian@briancunha.com

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903
rzabbo@rbhelaw.com

**Southern Union**

David A. Wollin, Esq.
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
dwollin@apslaw.com

John Tarantino, Esq.
Adler Pollock & Sheehan, P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
jtarantino@apslaw.com

Kristen W. Sherman
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903
Email: ksherman@apslaw.com

David E. Ross, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
dross@kasowitz.com

Seth Davis
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019

Eric D. Herschmann
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
Email: eherschmann@kasowitz.com

Noelle Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Gerald J. Petros
Hinckley, Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903
Email: gpetros@haslaw.com

Robin-Lee Main
Hinckley Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903-0819
Email: rmain@haslaw.com

Christina C. Dodds
Bishop London Brophy Dodds, P.C.
3701 Bee Cave Road
Austin, TX 78746
Email: CDodds@bishoplondon.com

Noelle Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

**INTERESTED PARTIES:**

**RIDEM**
Lewis S. Wiener, Esq.
Sutherland, Asbill & Brennan LLP
1375 Pennsylvania Ave, NW
Washington, DC 20004-2415
Email: lewis.wiener@sablaw.com

Patty Allison Fairweather, Esq.
Executive Counsel
State of Rhode Island
Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908-5767
patty.fairweather@dem.ri.gov

Gerald J. Pels, Esq.
Sutherland, Asbill & Brennan, LLP
2 Houston Center
909 Fannin, Suite 2200
Houston, TX 77010
gerry.pels@sablaw.com

Gregory S. Schultz, Esq.
Legal Counsel
State of Rhode Island
Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908-5767
gregory.schultz@dem.ri.gov

Susan B. Forcier
R.I. Department of Environmental Mngt.
Office of Legal Services
235 Promenade Street
Fourth Floor
Providence, RI 02908
Email: susan.wilson@dem.ri.gov

Brian A. Wagner
RI Department of Environmental Management
Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908
Email: brian.wagner@dem.ri.gov

**RI Governor Donald L. Carcieri**

Matthew B. Smith
Matthew B. Smith, Esq., Attorney At Law
1206 Westminster St.
Providence, RI 02909
Email: matthew@verdecchialaw.com

Michael D Mitchell, Esq.
Department of Administration
One Capitol Hill
Providence, RI 02908
Email: mmitchell@admin.ri.gov

**THIRD PARTY DEFENDANTS**

Gulf Oil Corporation

Bruce Gregory Tucker, Esq.
55 Hammarlund Way
Middletown, RI 02842
401-843-8400/ Fax: 401-843-8401
Email: btucker@legalmgt.com

Gulf Oil Corp

David B. Willis, Esq.
Legal Management Services, LLC
55 Hammarlund Way
Middletown, RI 02842

Gulf Oil Corporation

David A. Crichlow
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York 10036

Gulf Oil Corporation

David M. Goldberg
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York 10036

Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.:

Benjamin V. White, III Esq.
Kimberly A. Simpson, Esq.
Vetter & White Inc.
20 Washington Place
Providence, RI 02903
Tel: 401-421-3060/Fax: 401-272-6803
bwhite@vetterandwhite.com
ksimpson@vetterandwhite.com

Honeywell International, Inc

Gregory L. Benik, Esq.
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
401-454-1025/Fax: 401-454-1030
Email: gbenik@nixonpeabody.com

Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.:

William David Wick
Wactor & Wick LLP
180 Grand Avenue
Suite 950
Oakland, CA 94612

Inland Fuel Terminals, Inc

Paul M. Sanford, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
Email: psanford@burnslev.com

Town of Tiverton:

Jeanne M. Scott
URSILLO, TEITZ & RITCH, Ltd.
2 Williams Street
Providence, RI 02903
Email: Jeannescott@utrlaw.com

City of Fall River:

Thomas F. McGuire, Jr.
City of Fall River
Corporation Counsel
1 Government Center, 6th Floor
Fall River, MA 02722

Thomas F. McGuire, Jr.
LAW OFFICES OF MCGUIRE & COUGHLIN, P.C.
The Academy Building
70 South Main Street
P.O. Box 1187
Fall River, MA 02722-1187
Tmcguire@meganet.net

Inland Fuel Terminals, Inc.

Christopher P. McCormack, Esq.
PULLMAN & COMLEY, LLC
850 Main Street P.O. Box 7006
Bridgeport, CT 06601-7006
Email: cmccormack@pullcom.com

Dominion Resources, Inc
Dominion Energy Brayton Point LLC :

Craig R. Waksler, Esq.
Taylor Duane Barton and Gilman, LLP
10 Dorrance Street, Ste 700
Providence, RI 02903

Dominion Resources, Inc
Dominion Energy Brayton Point LLC :

Christian B.W. Stephens, Esq.
Taylor Duane Barton and Gilman, LLP
10 Dorrance Street, Ste 700
Providence, RI 02903

Dominion Resources, Inc
Dominion Energy Brayton Point LLC :

Andrew G. Mauck
Troutman Sanders LLP
P.O. Box 1122
1001 Halifax Point
Richmond, VA 23208