UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al.,<br>KEVIN BURNS, et al.,<br>COLLEEN BIGELOW, et al., and<br>SHEILA REIS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY,<br><br>Defendant/Third Party | C.A. No. 05-274T<br>(Consolidated Cases:05-221T; 05-370T;<br>05-522T)<br><br>**TOWN OF TIVERTON'S FIRST AMENDED ANSWER AND COUNTERCLAIM** |
| Plaintiff,<br><br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC., and DOMINION ENERGY BRAYTON POINT LLC,<br><br>Third-Party Defendants | |

1. Third-Party Defendant Town of Tiverton ("Tiverton") has insufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 1 of the Third-Party Complaint and therefore denies the same.

2. The allegations contained in paragraph 2 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

3. The allegations contained in paragraph 3 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

4. Admitted that Tiverton is a municipal corporation within the State of Rhode Island.

5. The allegations contained in paragraph 5 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

6. The allegations contained in paragraph 6 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

7. The allegations contained in paragraph 7 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

8. The allegations contained in paragraph 8 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

9. Paragraph 9 contains purported legal conclusions to which Tiverton is not obligated to respond. To the extent a response is required, Tiverton denies the same.

10. Paragraph 9 contains purported legal conclusions to which Tiverton is not obligated to

respond. To the extent a response is required, Tiverton denies the same.

11. Admitted.

12. The allegations contained in paragraph 12 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

13. The allegations contained in paragraph 13 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

14-17. The allegations contained in paragraphs 14 through 17 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

18-21. The allegations contained in paragraphs 18 through 21 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

22. The allegations contained in paragraph 22 relative to Tiverton are denied. To the extent paragraph 22 references RIDEM communications, those communications speak for themselves and were later rescinded.

23. The allegations of paragraph 23 are denied.

24. The allegations of paragraph 24 are denied.

25. The allegations of paragraph 25 are denied.

26. The allegations of paragraph 26 are denied.

27. The allegations of paragraphs 27 are admitted.

28. The allegations of paragraph 28 are denied.

29-36. The allegations contained in paragraphs 29 through 36 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

37-40. The allegations contained in paragraphs 37 through 40 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

41-44. The allegations contained in paragraphs 41 through 44 of the Third-Party Complaint are not directed to Tiverton and Tiverton does not respond to the allegations. To the extent the allegations call for a response from Tiverton, Tiverton denies the same.

45. Tiverton repeats and realleges its responses to paragraphs 1 through 44 as if fully set forth herein.

46. To the extent paragraph 46 is directed to Tiverton, Tiverton denies the same.

47. Tiverton repeats and realleges its responses to paragraphs 1 through 46 as if fully set forth herein.

48. To the extent paragraph 48 is directed to Tiverton, Tiverton denies the same.

49. To the extent paragraph 49 is directed to Tiverton, Tiverton denies the same.

## AFFIRMATIVE DEFENSES

1. The third-party complaint as it relates to Tiverton fails to state a claim upon which relief can be granted.

2. To the extent third-party plaintiff's claims are based on alleged actions that occurred outside the applicable statutes of limitations, such claims are barred.

3. Third-party plaintiff's claims are barred, in whole or in part, for failure to exercise reasonable diligence in mitigating its alleged damages.

4. If third-party plaintiff is found ordered to pay damages to the plaintiffs, its claims herein are barred because such damages are the result of third-party plaintiff's own conduct.

5. Third-party plaintiff's claims are barred by the doctrine of unclean hands.

6. Third-party plaintiff's claims are barred in whole or in part by the doctrines of issue preclusion, collateral estoppel and/or res judicata.

7. Tiverton reserves the right to subsequently assert other defense(s) of which it becomes aware during the course of this proceeding.

WHEREFORE, Tiverton demands judgment dismissing the third-party complaint with prejudice, together with costs, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## COUNTERCLAIM

1. Third-party defendant and plaintiff in third-party counterclaim, Town of Tiverton, (hereinafter "Tiverton"), is a municipality in the State of Rhode Island.

2. Third-party plaintiff and defendant in third-party counterclaim, New England Gas Company (hereinafter "NE Gas"), is an unincorporated division of Southern Union Company. Southern Union is a Delaware corporation with its principal place of business in Houston, Texas.

3. In or about August 2002, during construction and installation of the Mount Hope Bay Sewer Interceptor Project in Tiverton, Rhode Island, the sewer contractor, Starwood

Tiverton LLC, as operator of the project, contracted with D'Ambra Construction to conduct excavation activities in the vicinity of Bay Street at the intersections with Judson Street and Last Street.

4. The excavation activities conducted by D'Ambra Construction included the stockpiling of soils on the corner of Judson and Bay Street and at the bottom of Last Street in Tiverton.

5. Complaints received by the State of Rhode Island Department of Environmental Management [hereinafter "RIDEM"] concerning the stockpiled soils initiated an investigation by a member of the RIDEM hazardous materials response team.

6. The RIDEM field investigator observed that the stockpiled soils placed by the sewer contractor at the corner of Judson and Bay Street and at the bottom of Last Street had a blue color associated with it, indicative of historic coal gasification waste material.

7. RIDEM had the stockpiled soils analyzed by RIDEM's contractor laboratory.

8. The laboratory analysis of the stockpiled soils revealed the presence of cyanide and other hazardous substances in the stockpiled soils.

9. On October 8, 2002, RIDEM issued a Letter of Responsibility to Tiverton as the owner of the property and to Starwood Tiverton, LLC as the operator of the sewer installation project.

10. As required by RIDEM, Tiverton and Starwood Tiverton, LLC engaged an environmental engineering firm to conduct a subsurface investigation beneath portions of the following public roads and public streets in the town of Tiverton as far north as State Avenue: Bay, Judson, Hooper, Hilton, Canonicus, Chase, and Foote. EA Engineering performed the above referenced investigation in or about November 2002.

11. The EA Engineering subsurface investigation revealed the presence of toxic and hazardous substances, including total petroleum hydrocarbons (TPH), semi-volatile organic compounds (SVOCs), lead, arsenic and cyanide in the soils.

12. Additional analytic testing of the contaminated soils determined that some contained toxic and hazardous substances, including poly aromatic hydrocarbons (PAHs), cyanide and naphthalene at levels exceeding the Residential and Industrial/Commercial Direct Exposure Criteria.

13. The results reported by EA Engineering showed that the fill containing contaminated soil extended beyond the sewer pipeline right of way and beneath areas of the public roads and public streets in the adjacent community.

14. On or about March 13, 2003, RIDEM met with representatives from Tiverton who provided historical information to RIDEM concerning the area of that was the subject of the RIDEM activities.

15. Historical information provided to RIDEM by Tiverton included documentation citing a former employee of Fall River Gas Company concerning disposal of "blue soil."

16. Based on the foregoing, RIDEM concluded that some of the real property in this residential area was filled with contaminated coal gasification waste from Fall River Gas Company.

17. On March 17, 2003, RIDEM issued a Letter of Responsibility to New England Gas Company/Southern Union Company stating in part that "Southern Union Company, as the owner of the former Fall River Gas Company (d.b.a. New England Gas Co.), is identified as a Responsible Party as defined by Rule 3.44 for the improper disposal of

contaminated soils."

18. Soil with a blue color indicated the presence of coal gasification waste material.

19. Fall River Gas Company conducted coal gasification.

20. Coal gasification waste material contains lead, arsenic, cyanide, and other hazardous substances.

21. Subsequent testing, field work, observations, information and analysis confirmed that properties in the site, a residential area of the town of Tiverton , were filled with coal gasification waste containing lead, arsenic, cyanide, and other hazardous substances that contaminated the soil.

Emergency Moratorium Area

22. Due to the presence of the above referenced hazardous substances and RIDEM requirements, on August 25, 2003, the Tiverton Town Council placed an "Emergency Moratorium" on all property within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island / Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road [hereinafter the "Moratorium Area"].

23. Upon information and belief NE Gas, formerly known as, Fall River Gas Company, caused the waste materials from the coal gasification conducted at its Fall River site to be transported to and dumped into the Moratorium Area including numerous residences and Tiverton's roadways and right of ways.

24. The 'Emergency Moratorium' prohibited and continues to prohibit any excavation

withing the Moratorium Area.

25. Tiverton owns property within the Moratorium Area including various road ways and right of ways.

26. Tiverton has been prohibited from performing any excavation work, including the sewer project, on its roadways and right of ways in the Moratorium Area and costs of construction are rising.

27. The property values of the residences in the Moratorium Area have diminished in value due to the presence of the coal gasification waste materials.

28. Tiverton is financed in large part on property tax revenue.

29. Based on the diminished value of the properties in the Moratorium Area, Tiverton has lost and continues to lose tax dollars on the land and residences located in the Moratorium Area.

30. As described herein, NE Gas has acted with such willfulness, recklessness or wickedness as amounts to criminality, which for the good of society and warning to NE Gas, ought to be punished.

**COUNT ONE**
**(Negligence)**

31. Tiverton realleges and incorporates herein by reference the foregoing paragraphs of its counterclaim.

32. NE Gas had a duty to exercise reasonable care in handling, disposing of, and/or releasing hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

33. NE Gas had a statutory duty, pursuant to R.I. Gen. Laws §233-19.1-22 (1956), to transport, store, and dispose of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location authorized by that chapter or the rules and regulations promulgated pursuant to it.

34. NE Gas had a continuing duty to advise and warn of the dangers associated with the hazardous substances NE Gas handled, disposed of, and/or released, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Moratorium Area.

35. NE Gas knew or should have known that the hazardous substances NE Gas handled, disposed of and/or released would cause harm to Tiverton.

36. NE Gas breached its duties by, among other things:

a. disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Moratorium Area;

b. transporting, storing, or disposing of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location not authorized by R.I. Gen. Laws §23-19.1-22 (1956) or the rules and regulations promulgated pursuant to that chapter;

c. failing to notify or warn Tiverton of the hazards NE Gas had created;

d. Failing to remove the hazards NE Gas had created.

37. As a direct and proximate result of NE Gas' conduct, Tiverton has been damaged and continues to be damaged.

38. NE Gas is liable for the damages suffered by Tiverton as a direct and proximate result of its negligence.

39. At all times relevant hereto, Tiverton was in the exercise of due care.

**COUNT TWO**
**( Public Nuisance)**

40. Tiverton realleges and incorporates herein by reference the foregoing paragraphs of its counterclaim.

41. NE Gas, by its handling, disposal of, and release of hazardous substances, coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area, has unreasonably interfered with the health, safety, peace, comfort or convenience of the public and has thereby created a public nuisance.

42. Tiverton, as the owner of various roadways and right of ways in the Emergency Moratorium Area and as a municipal entity financed in large part by property tax revenues, has suffered harm different from those suffered by the general public.

43. As a direct and proximate result of the public nuisance created by NE Gas, Tiverton has suffered and will continue to suffer damages as described herein.

44. NE Gas is liable for the damages suffered by Tiverton as a direct and proximate result of its conduct.

**COUNT THREE**
**( Strict Liability)**

45. Tiverton realleges and incorporates herein by reference the foregoing paragraphs of its counterclaim.

46. NE Gas engaged in ultrahazardous and abnormally dangerous activities when it handled,

disposed of and/or released hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

47. NE Gas knew or should have known, that there was a high degree of risk associated with the handling, disposal and/or release of the hazardous substances, including a risk of harm to Tiverton.

48. As a direct and proximate result of NE Gas' ultrahazardous and abnormally dangerous activity, Tiverton has suffered damages and will continue to suffer damages, as described herein.

49. NE Gas is liable for the damages suffered by Tiverton as a direct and proximate result of its conduct.

**COUNT FOUR**

**(Recovery of Response Costs Under CERCLA 42 U.S.C. §9601, et seq)**

50. Tiverton realleges and incorporates herein by reference the foregoing paragraphs of its counterclaim.

51. NE Gas is the owner of a facility where hazardous substances were generated, and NE Gas arranged for the transportation and disposal of hazardous substances into the Moratorium Area.

52. NE Gas disposed of substances defined as hazardous substances under 42 U.S.C. §9601(14) and 40 CFR Part 302.4 in Tiverton owned property in the Moratorium Area and such substances have contaminated the soil and ground water in the Moratorium Area at levels exceeding maximum allowable contaminant levels.

53. Tiverton has incurred response costs, consistent with the national contingency plan,

including costs entailed in testing its properties for the presence of hazardous substances.

54. NE Gas is liable to Tiverton for the amount of the response costs and for future response costs incurred as a result of its transportation and disposal of hazardous substances in the Moratorium Area.

**COUNT FIVE**
**(Trespass)**

55. Tiverton realleges and incorporates herein by reference the foregoing paragraphs of its counterclaim.

56. At all relevant times, Tiverton owned various roadways and right of ways located within the Moratorium Area.

57. Upon information and belief, NE Gas caused coal gasification waste material to be disposed of on Tiverton roadways and right of ways in the Moratorium Area.

58. Tiverton's real property continues to be occupied by NE Gas' waste material despite demand for removal of same.

59. NE Gas' conduct has resulted in an entry and intrusion into Tiverton's property without privilege, permission, invitation or justification.

60. As a direct and proximate result of NE Gas' conduct, Tiverton has suffered damages and will continue to suffer damages, as described herein.

61. NE Gas is liable for the damages suffered by Tiverton as a direct and proximate result of its conduct.

**WHEREFORE,** Tiverton, by and through its attorneys, **Ursillo, Teitz & Ritch, Ltd,** requests that this Honorable Court issue an order and judgment against NE Gas as follows:

1. Judgement against NE Gas for compensatory and punitive damages, plus costs, interest and attorneys' fees;

2. An order awarding Tiverton such other extraordinary, declaratory and/or injunctive relief as permitted by law or equity as necessary to assure that Tiverton has an effective remedy; and

3. For such other and further relief as the Court deems just and proper.

**Tiverton hereby demands a trial by jury on all counts so triable.**

Town of Tiverton,
By its Attorneys,

*/s/Jeanne M. Scott*

Jeanne M. Scott, Esq. (#6178)
Ursillo, Teitz & Ritch, Ltd
2 Williams Street
Providence, RI 02903
(401) 331-2222
(401) 751-5257 (facsimile)
jeannescott@utrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that all counsel of record are so registered.

*/s/* Jeanne M. Scott
Jeanne M. Scott, Esq.

Dated: November 20, 2007