UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al.,<br>KEVIN BURNS, et al.,<br>COLLEEN BIGELOW, et al., and<br>SHEILA REIS, et al.<br><br>Plaintiffs<br>v.<br><br>NEW ENGLAND GAS COMPANY,<br><br>Defendant and Third Party Plaintiff,<br>v.<br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al.<br><br>Third Party Defendants. | Case Numbers: 05-221T (Lead Case)<br>(Related and Consolidated cases:<br>05-274T; 05-370T, 05-522T) |

**NEW ENGLAND GAS COMPANY, INC.'S OPPOSITION TO MOTION TO STAY AND TRANSFER VENUE OF THIRD PARTY DEFENDANTS DOMINION RESOURCES, INC. AND DOMINION ENERGY BRAYTON POINT, LLC**

## PRELIMINARY STATEMENT

This Court should deny the motion brought by third party defendants and counterclaim plaintiffs Dominion Resources, Inc. and Dominion Energy Brayton Point LLC (collectively "Dominion") that seeks (i) a stay of the third party complaint filed by New England Gas Company, Inc. ("NEGasCo") against Dominion and (ii) a transfer of venue of Dominion's counterclaim against NEGasCo to the United States Bankruptcy Court for the District of Maryland. Neither attempted maneuver makes sense here.

In September 2007, NEGasCo filed its third party complaint against Dominion as owner and/or operator of the Brayton Point Power Plant ("Brayton Point"), the largest single source of air pollution in Rhode Island, seeking contribution and indemnification for any damages NEGasCo must pay as a result of alleged contamination of plaintiffs' property in Tiverton,

Rhode Island. Dominion answered and served a counterclaim of its own seeking a declaration that NEGasCo's claims are forever enjoined and discharged by the Bankruptcy Court's Sale Order by which Dominion purchased certain assets from USGen New England, Inc., the "debtor" in chapter11 proceedings in the Bankruptcy Court. Dominion contends that because the Sale Order governs its purchase of Brayton Point, and the bankruptcy proceedings are still "open," the dispute between NEGasCo and Dominion belongs in the Bankruptcy Court.

Dominion is wrong. Interpretation of the Sale Order has no bearing on NEGasCo's suit against Dominion. Thus, no purpose would be served by transferring the counterclaim. As Dominion admits, Brayton Point was acquired "free and clear" of all claims against, and liabilities or obligations of the debtor – US Gen New England – "*arising before*" the "Closing Date" of the sale, December 31, 2004. NEGasCo's claims against Dominion arose *after* the Closing Date. NEGasCo's claims against Dominion concern air pollution generated at Brayton Point which for years contributed and currently continues to contribute to the alleged contamination of the Bay Street area of Tiverton, Rhode Island. Under any of the three approaches set forth in the federal case law, the "response cost" test, the "conduct plus relationship" standard and, in particular, the preferred "fair contemplation" approach, the environmental liability for air pollution contributing to the contamination at Tiverton arose well after December 31, 2004. This is because such future liability was in no way "fairly contemplated" by Dominion at the time it purchased Brayton Point. Dominion failed to secure a release for this future contingency. More fundamentally, Brayton Point continues to contribute to the alleged contamination today, and has done so from and after the Closing Date such that Dominion has specifically assumed this liability under its purchase agreement.

In this case, the notice of violation was not issued until September 2006, nearly two years after the Closing Date, and, upon information and belief, the Rhode Island Department of Environmental Management ("RIDEM") has yet to incur any costs for the remediation of plaintiffs' properties, nearly three years after the sale of Brayton Point. Further, it is beyond dispute that Brayton Point has continued to generate air pollution post-Closing which, in turn, at least potentially contributes to contamination at Tiverton. Thus, NEGasCo's claims are Assumed Liabilities under Schedule 3.1 of the sales agreement: They are "liabilities and obligations (including Environmental Costs and Liabilities) arising out of or accruing in connection with the operation . . . or the ownership of [Brayton Point] by [Dominion] *from and after the Closing Date*. . . ."[1] (emphasis added). There is no need to transfer this action to "interpret" the Sale Order. The only issue presented is *when* the liability arose, a question this Court, sitting in Rhode Island and governed by First Circuit law, is well suited to determine.

Further, the debtor's estate has no interest in NEGasCo's claim against Dominion. NEGasCo's suit against Dominion is simply an action between one non-debtor against another. Moreover, the chapter 11 proceeding, while still technically open, is in its final administrative stages, having issued a confirmation plan and a second report of asset distribution.[2] The Bankruptcy Court is merely monitoring the final distribution of assets and has no particular interest in (or familiarity with) NEGasCo's dispute with Dominion. To the extent an agreement or order needs to be construed, this Court is more than capable of doing so.

---

[1] Fossil Asset Purchase and Sale Agreement ("APA"), dated September 3, 2004, Schedule 3.1 ("Assumed Liabilities"), attached as Exhibit H to Dominion's Answer and Counterclaim.

[2] *See* Post-Confirmation Chapter 11 Report of USGen New England, Inc. (Case No. 03-30465-PM), dated December 14, 2006, for post-confirmation period of June 1, 2006 through November 30, 2006. This report was submitted to the bankruptcy court to assist in that court's effort to monitor the final distribution of assets of the estate. Indeed, the Second Amended Plan of Liquidation for USGen New England, Inc. was approved and confirmed over two and a half years ago, effective June 1, 2005. *See* Second Amended Plan of Liquidation for UsGen New England, Inc., June 1, 2005. Thus, the bankruptcy court's current role in the estate is largely ministerial.

Accordingly, this Court should see Dominion's tactic for what it is: a stealth motion to dismiss brought prematurely before relevant facts can be discovered in hopes of avoiding what is a complex issue of First Circuit law. There is no reason to delay the proceedings. There is even less reason to splinter the dispute and transfer Dominion's counterclaim to the Bankruptcy Court. Dominion has failed to meet its heavy burden of demonstrating that such a transfer would be in the interest of justice or more convenient for the parties. The parties, site-specific evidence, and witnesses are all located near this Court, and the relevant legal principles are governed by First Circuit precedent. Thus, Dominion's efforts to forum shop should be rejected.

## BACKGROUND

In the spring of 2005, nearly a year and a half after Dominion and its related entity purchased Brayton Point, plaintiffs filed their underlying civil complaint against NEGasCo alleging that property in the Town of Tiverton contains soil contaminated by coal gasification waste generated by the Fall River Gas Company, NEGasCo's predecessor. *See, e.g.*, *Corvello* First Amended Complaint ("Cplt.") ¶¶ 17, 18.[3] In September 2006, a year and a half after plaintiffs filed their suit and nearly three years after Dominion purchased Brayton Point, RIDEM issued a notice of violation against NEGasCo alleging, among other things, responsibility for the contamination of property in the Town of Tiverton. *See* Third Party Complaint ("T.P. Cplt.") ¶ 22.[4] In September 2007, NEGasCo filed its third party action against Dominion and others seeking contribution and indemnification "in the unlikely event that plaintiffs recover any

[3] In this memorandum, NEGasCo tracks only one of the four civil complaints filed against it to avoid confusion. *See Corvello, et al. v. New England Gas Company, Inc.*, C.A. No. 05-221T. As the Court recognizes, all four cases include overlapping claims, are closely related, and have been consolidated for administrative purposes.

[4] Prior to issuing its Notice of Violation, RIDEM did in fact issue a Letter of Responsibility to both the Town of Tiverton, *see* T.P. Cplt. ¶ 22, and NEGasCo in March of 2003. *See* Cplt. 18. RIDEM improperly refused to permit NEGasCo to conduct its risk assessment pursuant to its Method 3 Remedial Objectives, eventually precipitating the issuance of a notice of violation. It was this notice of violation that triggered the initiation of the current administrative dispute in RIDEM's Administrative Adjudication Division. *See In re Southern Union Company*, AAD No. 06-001/SRE.

judgment against NEGasCo" because Brayton Point, as a major generator of a chief contaminate alleged by plaintiffs, polycyclic aromatic hydrocarbon ("PAHs"), "caused or contributed to the alleged contamination" in Tiverton. T.P. Cplt. ¶¶ 41-44. To date, upon information and belief, RIDEM has not incurred any costs for the remediation of plaintiffs' properties in Tiverton.

Meanwhile, in September 2004, three years prior to NEGasCo's third party complaint against Dominion, Dominion's related entity entered into the APA to purchase Brayton Point.[5] *See* Dominion's Answer and Counterclaim, Exhibits C & H. The APA, governed by New York state law, *see* APA § 14.6, provided that except for permitted liens and certain assumed liabilities, Dominion would purchase Brayton Point "free and clear." *See* APA §§ 2.1, 3.1. Dominion expressly assumed "all indebtedness, liabilities and obligations" including "Environmental Costs and Liabilities," "arising out of or accruing in connection with the operation of the Business [generating electricity] or the ownership of the Transferred Assets [Brayton Point] by [Dominion] from and after the Closing Date." *Id.* § 3.1 and Exhibit H to Dominion's Answer and Counterclaim, Schedule 3.1 at ¶ 2. Without altering any of the relevant provisions regarding assumed liabilities in the APA, the Bankruptcy Court issued its Sale Order approving the sale of Brayton Point as of the Closing Date, December 31, 2004. *See* Dominion's Answer and Counterclaim, Exhibit G. Thus, to the extent any indebtedness, liabilities or obligations arise "from or after the Closing Date," it is undisputed that Dominion has expressly assumed and agreed to satisfy those obligations. APA § 3.1. The Sale Order merely confirms what is contained in the APA and is otherwise irrelevant to the case at bar.

[5] The Brayton Point Plant was purchased by Dominion Energy New England, Inc., which, on the closing date of December 31, 2004, assigned the plant to Dominion Energy Brayton Point, effective the following day. The Assignment and Assumption Agreement is attached to Dominion's Answer and Counterclaim, Exhibit J. Like the APA, the Assignment and Assumption agreement is governed by New York state law. *See id*. § 9.

## ARGUMENT

This Court is in the best position to decide the issues presented in Dominion's motion. There is simply no reason to stay the action against Dominion. Nor is there justification for disregarding NEGasCo's choice of forum and transferring venue to the Bankruptcy Court in Maryland to litigate Dominion's counterclaim against NEGasCo. The case before this Court involves alleged contamination in Tiverton, Rhode Island. This Court has overseen these and related matters since the inception of plaintiffs' underlying actions. It is far more familiar with applicable state and federal environmental laws and regulations, tort law, and issues of potential contribution and indemnification than a bankruptcy court in Maryland. Moreover, it is beyond dispute that Dominion, through its continued operations at Brayton Point, has at the very least specifically assumed liability for any conduct post-Closing that contributed and continues to contribute to the Tiverton contamination. This Court in this forum in this Circuit is the appropriate tribunal to decide when the balance of Dominion's potential liability arises. That Brayton Point was sold during chapter 11 proceedings administered by the Bankruptcy Court is irrelevant. No interpretation of the APA or Sale Order is required to decide this matter, but to the extent Dominion disagrees, this Court is more than competent to do so.[6] Nor do any of NEGasCo's claims implicate the Sale Order itself. Indeed, that Order adds nothing to the APA with respect to what liabilities Dominion assumed or when they attach.[7]

---

[6] Dominion repeatedly cites the Sale Order because Dominion wrongly assumes NEGasCo's claims depend solely upon Dominion's successor liability, an issue common in many actions involving contamination and the Comprehensive Environmental Response Compensation, and Liability Act ("CERCLA"). *See, e.g., John S. Boyd Co., Inc. v. Boston Gas Co.,* 992 F.2d 401, 406 (1st Cir. 1993) (applying state law for successor liability in CERCLA context); *United States v. Davis*, 1998 WL 166222, at *4-6 (D.R.I. Feb. 26, 1998) (discussing "mere continuation" and "substantial continuity" tests for successor liability). However, at this early stage in the litigation, NEGasCo's claims do not rely on Dominion's liability as a successor under the APA because Dominion "assumed liability" for any Tiverton contamination, and this is true regardless of when the conduct generating pollution at Brayton Point actually occurred. The liability arose post-Closing.

[7] Because New York law governs both the APA and the Assignment and Assumption Agreement, New York state law is also implicated with respect to any construction of the underlying agreements. *See* Dominion's Answer and

### A. Liability from Brayton Point Air Pollution Arose Post-Closing.

Although not yet decided in the First Circuit, the issue presents this Court with the task of reconciling the competing objectives of environmental law on the one hand (to promote accountability and cleanup of hazardous waste) and the Bankruptcy Act on the other (to provide reorganized debtors with a fresh start). *See, e.g., Mesiti v. Microdot, Inc.*, 156 B.R. 113, 117 (D.N.H. 1993) (discussing without deciding when environmental liability arises). This case, however, is an action between one non-debtor against another during the post-confirmation phase of chapter 11 proceedings.[8] The debtor no longer has an interest in this matter. *See In re Schwinn Bicycle Co.*, 210 B.R. 747, 754.[9]

The central issue in NEGasCo's third party complaint is whether Dominion can be held liable for potential environmental liability arising from the alleged Tiverton contamination. It can and should be. Dominion wrongly contends that because it purchased Brayton Point "free and clear," it is not liable, and that any attempt to impose such liability should be enjoined by the Bankruptcy Court, which retained jurisdiction over such matters.[10] *See* Dominion's Memorandum in Support of Motion to Stay and Transfer Venue ("Dominion's Brief") at 2-3.

---

Counterclaim, Exhibit C, §14.6, and Exhibit J, § 9. However, this Court should look to federal circuit law to determine when an environmental liability arises, particularly in the context of a bankruptcy proceeding.

[8] Dominion incorrectly contends that NEGasCo's claims against Dominion are a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) because they implicate the "allowance or disallowance of claims against the estate." Dominion's Brief at 3 n.3. As courts in this District have recognized, core proceedings are those "which arise only in bankruptcy or involve a right created by federal bankruptcy law." *In re Almac's, Inc.*, 202 B.R. at 657. However, the debtor's estate is not involved in NEGasCo's claim against Dominion, except to the extent that Dominion purchased Brayton Point from USGen New England, Inc., the debtor. This tenuous connection is insufficient to secure any jurisdiction in bankruptcy court, let alone "core proceeding" jurisdiction. *See In re Schwinn Bicycle Co.*, 210 B.R. at 755-56 (holding that possibility that a purchaser of debtor's assets might look to bankruptcy estate for indemnification should it be held liable in another litigation was too attenuated to secure even "related to" jurisdiction in the bankruptcy court). The principles set forth in *In re Schwinn Bicycle* govern here, and the Court should not transfer this action to the United States Bankruptcy Court in Maryland.

[9] In *Schwinn Bicycle*, the court noted that "jurisdictional authority of a bankruptcy judge is sharply reduced following confirmation." *Id.*; *see also In re Picard,* 302 B.R. 112, 2003 WL 21643436, at *3 (Table) (10th Cir. BAP (Wyo.) July 14, 2003) (recognizing that two creditors with an "internecine conflict" is of no moment for bankruptcy jurisdiction); *cf. In re Almac's, Inc*., 202 B.R. 648, 656 (Bankr. D.R.I. 1996) (declining to exercise jurisdiction).

[10] The fact that a bankruptcy court retains jurisdiction in its order is hardly dispositive of whether a matter should be brought before it, particularly post-confirmation. *See In re Schwinn Bicycle*, 210 B.R. at 755-56; *see also In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987).

However, the APA is clear on its face. Dominion assumed environmental liabilities that arise on or after the Closing Date, December 31, 2004. Not only do such liabilities include NEGasCo's claims for pollution generated at Brayton Point since the Closing, but also all liability for Brayton Point's proportional contribution to the alleged Tiverton contamination, regardless of when the conduct occurred, since that liability too arose post-Closing under legal precedent.

Courts have adopted essentially three approaches to determine when an environmental claim arises in the context of a bankruptcy proceeding:[11] The right of payment/response costs test, the conduct plus relationship test, and the fair contemplation/foreseeability standard.[12] Under any of these tests, liability arises after the Closing Date. The First Circuit has not yet spoken on the issue, but at least one court has recognized that the fair contemplation test is the "preferred means" of evaluating whether post-bankruptcy environmental claims are discharged. *Mesiti*, 156 B.R. at 117 (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 974 F.2d 775 (7th Cir. 1992)) (other citations omitted); *see also In re Jensen*, 995 F.2d 925, 930 (9th Cir. 1993).[13] Under this approach, liability arises:

---

[11] *See generally* Ingrid Michelsen Hillinger & Michael G. Hillinger, *Environmental Affairs in Bankruptcy: 2004*, 12 Am. Bankr. Inst. L . Rev. 331, 380-88 (Winter 2004); *see also* Kevin J. Saville, Note, *Discharging CERCLA Liability in Bankruptcy: When Does a Claim Arise*, 76 Minn. L. Rev. 327, 338-44 (Dec. 1991). The case law and law review articles focus on when liability arises under CERCLA, a statutory scheme not directly relevant here. However, courts have routinely applied federal CERCLA principles to analogous state statutory schemes. *See Charter Int'l Oil Co. v. United States*, 925 F. Supp. 104, 109-10 (D.R.I. 1996); *see also John S. Boyd Co.*, 992 F.2d at 405 n.3. This Court should do so here. Further, the case law also focuses on when an environmental liability arises against a debtor for purposes of discharging that debt in bankruptcy proceedings. The case at bar is distinguishable in that NEGasCo seeks damages not from the debtor, but from Dominion. Nevertheless, with respect to *when* liability arises from Brayton Point, the case law is instructive and should guide this Court.

[12] *See Hillinger & Hillinger*, *id*. & n. 249 (explaining that a fourth test, the conduct test, yields the same result as the more modern "conduct plus relationship" test, which, in any event, relatively few courts appear to use).

[13] The "right of payment" or "response cost" test holds that an environmental liability does not arise unless and until the "pre-bankruptcy relationship between the debtor and third party contained all the elements necessary to give rise to a legal obligation under the relevant substantive non-bankruptcy law." *United States v. Union Scrap Iron & Metal*, 123 B.R. 831, 835 (Bankr. D. Minn. 1990). NEGasCo's claims are clearly not barred under this theory. To date, no "right of payment" has been triggered. Likewise, Dominion is liable under the "relationship plus conduct" test. Under this approach, a claim only arises when the conduct has occurred and the debtor has a relationship with the claim holder regarding the resulting harm. *See In re Piper Aircraft Corp.*, 162 B.R. 619, 625-28 (Bankr. S.D. Fla. 1994), *aff'd*, 58 F.3d 1573 (11th Cir. 1995) (holding pre-petition relationship test holds that a claim has arisen when there is "contact, exposure, impact, or privity between the debtor's pre-petition conduct and claimant"). While

> when a potential CERCLA claimant can tie the bankruptcy debtor to a known release of a hazardous substance which the potential claimant knows will lead to CERCLA response costs, and when this potential claimant has, in fact, conducted tests with regard to this contamination problem, then this potential claimant has . . . a contingent . . . claim. . . .

*In re Chicago*, 974 F.2d at 786. Thus, NEGasCo's claims are not barred. Dominion did not fairly contemplate NEGasCo's contribution claims arising from the alleged Tiverton contamination. Furthermore, at this early stage and without the benefit of discovery, NEGasCo cannot know whether or to what extent Dominion conducted tests with regard to contamination, and it is logically impossible that Dominion "knew" such pollution would lead to response costs, since RIDEM, upon information and belief, has yet to incur any costs for the remediation of plaintiffs' properties. In short, while Dominion and the debtor plainly contemplated some liability, NEGasCo's claims for contribution and/or indemnification were not among them.

**B. This Court Should Reject Dominion's Efforts to Stay or Transfer the Case.**

There is no reason to stay NEGasCo's claims against Dominion, and even less reason to splinter the dispute and transfer Dominion's counterclaims to the Bankruptcy Court in Maryland. To do so would prejudice NEGasCo through needless delay, inconvenience the parties and potential witnesses, and force a bankruptcy court in Maryland to become familiar with First Circuit and Rhode Island laws and regulations, particularly with respect to environmental issues.

To be sure, a district court enjoys discretion to stay proceedings. *See Brayton v. Boston Safe Deposit and Trust Co.*, 937 F. Supp. 150, 151 (D.R.I. 1996) (Torres, J.). Likewise, a court can transfer venue for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). However, the "party seeking to transfer venue under Section 1404(a) bears a heavy burden," *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 679 (Bankr. D.R.I. 1998),

---

the conduct – generating air pollution – may have occurred prior to the Closing Date, neither the debtor nor Dominion had any relationship either with RIDEM or with the ultimate claim holder – here, the residents of Tiverton – until well after the Closing Date.

and must establish that a "*strong balance of inconvenience*" weighs in its favor. *Id*. (citing *Blinzler v. Marriott Int'l, Inc.*, 857 F. Supp. 1, 3 (D.R.I. 1994)) (emphasis added). Dominion has failed to meet this burden.[14] Nor has Dominion provided a credible basis for granting a stay.

First, NEGasCo's choice of forum is entitled to significant weight. *See id*. at 678. Second, not only are the plaintiffs and Tiverton located within this District, but Brayton Point is located in nearby Somerset, Massachusetts. Thus, this Court is far more convenient than Maryland's District Court with respect to all of the following factors: (1) access to sources of proof involving environmental liability; (2) availability of compulsory process to compel attendance of any of the witnesses involved in the underlying suit; (3) the cost of attendance of witnesses; (4) the ease of viewing Brayton Point and Tiverton; and (5) the relative ease of a fair trial already involving the contamination issue at Tiverton. Moreover, there is no reason to believe that this District Court's docket is overcrowded, despite Dominion's characterization of the "procedural morass" enveloping plaintiffs' claims, *see* Dominion Brief at 9, and a court in Rhode Island is far more familiar with applicable local, state and federal laws. That the District of Maryland may be more familiar with the bankruptcy proceedings and orders is of no moment. NEGasCo's claims do not implicate those post-confirmation proceedings.

Accordingly, this Court should deny Dominion's motion in its entirety.

## CONCLUSION

Based on the foregoing, NEGasCo respectfully requests that the Court deny in its entirety the Motion to Stay and Transfer Venue of Dominion Resources, Inc. and Dominion Energy Brayton Point, LLC.

[14] Indeed, as some courts have recognized, Dominion's assertion of a counterclaim constitutes acceptance of the jurisdiction of this Court and waives any venue objection, *see Rubens v. Ellis*, 202 F.2d 415, 417 (5th Cir. 1953); *Goldberg v. Wharf Constructers*, 209 F. Supp. 499, 501-02 (N.D. Ala. 1962), particularly to the extent Dominion's interposed counterclaim is permissive under Fed. R. Civ. P. 13(b).

NEW ENGLAND GAS COMPANY, INC.

*/s/ Robin L. Main*
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
rmain@haslaw.com

Dated: December 3, 2007

**CERTIFICATE OF SERVICE**

To:
Notification via CMECF:

Gregory L. Benik - gbenik@jreri.com

David A. Cetola - dcetola@mcrobertslaw.com

Brian R. Cunha – brian@briancunha.com

Christina C. Dodds - CDodds@bishoplondon.com

Susan B. Forcier - susan.wilson@dem.ri.gov

Eric D. Herschmann - eherschmann@kasowitz.com

Robin-Lee Main - rmain@haslaw.com, sjfoster@haslaw.com

John J. McConnell, Jr. - jmcconnell@motleyrice.com

Robert J. McConnell - bmcconnell@motleyrice.com

Michael D Mitchell - mmitchell@admin.ri.gov

Charles K. Mone – cmone@campbell-trial-lawyers.com

Jonathan D Orent - jorent@motleyrice.com

Gerald J. Petros - gpetros@haslaw.com, clomas@haslaw.com

Russell X Pollack – rpollack@campbell-trial-lawyers.com

Paul Revere, III – revereiii@aol.com

Mark W. Roberts - mroberts@mcrobertslaw.com

David E. Ross - dross@kasowitz.com

Paul M. Sanford - psanford@burnslev.com, scook@burnslev.com

Anthony J. Sbarra, Jr. - asbarra@campbell-trial-lawyers.com

Gregory S. Schultz - gregory.schultz@dem.ri.gov

Kristen W. Sherman - ksherman@apslaw.com, afontaine@apslaw.com, btallman@apslaw.com

Aileen L. Sprague - asprague@motleyrice.com

Heather Spurlock Kennealy - hskennealy@mcrobertslaw.com

John A. Tarantino - jtarantino@apslaw.com, dhumm@apslaw.com

Bruce Gregory Tucker - btucker@legalmgt.com

Brian A. Wagner - brian.wagner@dem.ri.gov

Lewis S. Wiener - lewis.wiener@sablaw.com

David A. Wollin - dwollin@apslaw.com, dciuffetelli@apslaw.com, epickett@apslaw.com

Notification via first class mail:

Michael D. Mitchell, Esq.
Deputy Chief of Legal Services
R.I. Department of Administration
Division of Legal Services
One Capitol Hill
Providence, RI 02903

Susan B. Wilson
RI Department of Environmental Management
235 Promenade Street, 4th Floor
Providence, RI 02908

Neil T. Leifer
Thornton & Naumes LLP
100 Summer Street
Boston, MA 02110

Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1375 Pennsylvania Avenue, NW
Washington, DC 20004-2415

Robert J. McConnell
Motley Rice LLC
321 South Main Street, 2nd Floor
Providence, RI 02903

Christina C. Dodds
Bishop London Brophy Dodds, P.C.
3701 Bee Cave Road
Austin, TX 78746

Seth Davis
Eric D. Herschmann
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

I hereby certify that on December 3, 2007, a copy of the foregoing Opposition to Motion to Stay and Transfer Venue of Third Party Defendants Dominion Resources, Inc. and Dominion Energy Brayton Point, LLC and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.

/s/ Robin L. Main
Robin L. Main