**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GAIL CORVELLO, JOHN D. CORVELLO and JOHN F. CORVELLO, et al,<br>Plaintiffs<br>-vs-<br>NEW ENGLAND GAS COMPANY,<br>Defendant,<br>Third Party Plaintiff<br>-vs-<br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; et al<br>Third Party Defendants | C.A. No. 05-521T (Lead Case) |
| KEVIN BURNS, ET AL<br>Plaintiffs,<br>vs.<br>NEW ENGLAND GAS COMPANY,<br>Defendant/Third Party Plaintiff,<br>vs.<br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL<br>Third Party Defendants. | C.A. No. 05-274T |
| COLLEEN BIGELOW, ET AL<br>Plaintiffs,<br>vs.<br>NEW ENGLAND GAS COMPANY,<br>Defendant/Third Party Plaintiff, | C.A. No. 05-370T |

| | | |
|---|---|---|
| vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL<br>Third Party Defendants. | : | |
| SHEILA REIS, ET AL<br>Plaintiffs,<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY,<br>Defendant/Third Party Plaintiff,<br><br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL<br><br>Third Party Defendants | : | C.A. No. 05-522T<br><br>December 4, 2007 |

**RESPONSE OF THIRD-PARTY DEFENDANT INLAND FUEL TERMINALS, INC.**

**RE MOTION TO SEVER**

Inland Fuel Terminals, Inc. ("Inland") submits this Response in compliance with the Court's order (no. 376, Nov. 20, 2007) for a statement of position on Plaintiffs' "Motion to Sever Defendant's Third Party Complaint" (Oct. 5, 2007) ("Motion to Sever").

Inland initially took no position on the Motion to Sever in the expectation that pretrial proceedings could be managed to avoid prejudice to the third-party defendants. Subsequent events have cast sufficient doubt on this expectation that Inland now joins the request for severance.

**Background**

Familiarity with the procedural posture of this motion is assumed. Insofar as they relate to Inland, the operative issues are as follows.

The plaintiffs claim generally that wastes from a former manufactured gas plant (MGP) were disposed of on what are now the plaintiffs' properties. Plaintiffs allege that defendant New England Gas Company (NEGC) is the successor to the entity that operated the MGP when these wastes were generated and disposed of, and as such liable to them for damages caused by the contamination. The predicate of these claims is that MGP wastes are identifiable by their chemical constituents – in effect, that they conform to a distinctive MGP profile or fingerprint that establishes their origin.

The Rhode Island Department of Environmental Management (RIDEM) has indicated that MGP contamination is a principal focus of investigation in the area of the plaintiffs' properties. In a letter dated January 27, 2003, for example, RIDEM's comments on an interim NEGC investigative report repeatedly referred to MGP waste characteristics.[1]

A significant theme in NEGC's defense is apparently that the contaminants on plaintiffs' properties do not fit the profile of MGP waste, or that the contaminants are from other sources even if they resemble those typical of MGP waste.

---

[1] http://www.dem.ri.gov/programs/ombuds/tiverton/pdf/demcom.pdf, visited Dec. 4, 2007.

NEGC's third-party claim against Inland, served in September 2007, seeks indemnity and/or contribution on the theory that some or all of the contamination of which plaintiffs complain was released in connection with Inland's operation of a bulk petroleum storage facility near the plaintiffs' properties.

NEGC does not allege that Inland conducted any MGP operations or was otherwise involved with handling or disposal of MGP waste. Rather, NEGC alleges that a release of petroleum products occurred in November 2005 from a truck that was transiting the neighborhood after leaving the Inland facility. NEGC also alleges "on information and belief" that there may have been other spills of petroleum from "tanks or trucks operated by or for the benefit of Inland," thereby "causing or contributing to the … contamination" alleged by the plaintiffs. See, e.g., Third-Party Complaint in Corvello v. New England Gas Co., C.A. No. 05-0221T (doc. 249, filed Sept. 17, 2007) ("NEGC Third-Party Complaint"), paragraphs 38-39. NEGC alleges, correctly, that Inland acquired the petroleum storage facility in 1995. See NEGC Third Party Complaint, paragraph 37. As reflected in the 2003 RIDEM comments noted above, see n.1, however, contaminants identified as MGP contamination had been detected in the area before the alleged November 2005 incident.

As of the time Inland and other third-party defendants appeared in this action, a scheduling order was already in place with a discovery cutoff of February 29, 2008. No provision for discovery by third-party defendants was included, however, in the proposed discovery schedules submitted by plaintiffs and NEGC in advance of the status

conference of November 16, 2007. There has been no attempt to hold a planning conference to define and allow for the discovery needs of the third-party claims. Although NEGC has served a document purporting to constitute initial disclosure in compliance with Rule 26(a), that document does not specifically mention NEGC's allegations against Inland or identify evidence concerning those allegations; indeed, notwithstanding the diverse factual bases alleged for the third-party claims, it identifies no evidence specific to any third-party defendant.

NEGC has noticed thirty fact depositions beginning on December 3, 2007, and has indicated that it intends to notice over one hundred additional depositions.

No plaintiff has asserted a direct claim against any third-party defendant.

**Argument**

The Motion to Sever should be granted because severance will promote the efficient resolution of all matters now before the Court, and because severance is the only means – other than indefinite further delay – to avoid irreparable prejudice to Inland in the conduct of pretrial discovery.

Severance should be, however, for all purposes. The third-party claims need not be addressed until it has been established that NEGC actually has some liability for which it might seek indemnity or contribution. It would be illogical and inefficient to try them, or even conduct discovery on them, until and unless findings from the trial of plaintiffs' claim clarify the properties and contaminants for which NEGC is liable.

## I. Severance Will Promote Efficiency and Minimize Prejudice.

Separate trials appear to be appropriate in light of the six factors articulated by this Court in Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 482 F.Supp.2d 203, 206 (D. R.I. 2007) (Rule 42(b)).

- **Will separate trial simplify issues and avoid confusion?**

In a trial limited to plaintiffs' claims, NEGC can avoid liability by demonstrating that the contamination on plaintiffs' properties does not fit the MGP profile. An initial trial that resolves this issue will be simpler in itself, and is likely to simplify further proceedings or completely eliminate the need for them.

NEGC's defense will apparently involve evidence that contaminants on plaintiffs' properties are not typical of MGP waste, or are found in combinations distinct from those typical of the MGP profile. NEGC's third-party claims, however, involve the distinct additional question of where any such non-MGP constituents originated. It is unnecessary to reach that question in order to determine whether contamination fits the MGP profile.

NEGC's claim against Inland illustrate this distinction. As against plaintiffs, NEGC can use forensic chemistry and expert opinion to argue that contamination is petroleum rather than MGP waste. NEGC may contend that the contamination is exclusively petroleum, or that it includes a petroleum component distinct from MGP waste. For this purpose, NEGC need establish only the presence of petroleum material, not its origin. NEGC's third-party claim against Inland would involve the distinct question of whether

any such petroleum contamination originated from a source for which Inland is responsible. The evidence on that question departs from the bare presence of petroleum and goes on to issues such as whether the type of petroleum matches anything handled by Inland and whether the truck from which it spilled was in fact Inland's.

The third-party claims would require proof of issues unrelated to plaintiffs' claims. Particularly when complex issues of environmental science are to be presented to a lay jury, the risk of confusion is self-evident. Separate trials will minimize this risk.

- **Will separate trial result in duplication of evidence?**

The plaintiffs' claims turn on what the contamination is, but do not involve where it came from except in the limited sense of whether it fits the MGP profile. By contrast, the third-party claims involve a subset of what – in those areas for which NEGC will have been found liable to plaintiffs, the particular contaminants that are outside the MGP profile or that NEGC claims were deposited by others – and adds an entirely distinct layer of issues involving where those particular contaminants came from. Because these issues are largely distinct, the risk of duplicating evidence is negligible.

- **Will separate trial create a risk of inconsistent verdicts?**

NEGC's third-party claims are in the nature of contribution or indemnity, and thus presuppose a judgment against NEGC. Because the third-party claims largely involve facts and issues entirely distinct from those at issue in the plaintiffs' claims, separate trials in this case would not involve litigating similar issues twice. Cf. Commonwealth Land Title Ins. Co., 482 F.Supp.2d at 206-07 (denying motion to sever because

"separate" trials would involve evidence and potentially inconsistent findings on a "dominant factual question underlying all of [the] claims" at issue).

- **Will separate trial make efficient use of judicial resources?**

Any trial that simultaneously attempted to resolve the source as well as the nature of all contaminants on all plaintiffs' properties would be extraordinarily complex.

Severance for an initial trial of plaintiffs' claims against NEGC will almost certainly narrow any contribution claims. That narrowing could occur in several ways. NEGC may avoid liability to some plaintiffs altogether, leaving only a subset of properties for which it would be necessary to address third-party liability. Or the trier could reject NEGC's arguments that contamination on certain properties is inconsistent with, or not exclusively composed of, MGP waste; such findings would have preclusive effect against NEGC and effectively bar contribution claims. Third-party claims for contribution and indemnity would ultimately need to be heard only as to a subset of properties.

If such third-party claims had to be tried, there would obviously be a second layer of proceedings, including additional discovery focused specifically on the remaining issues. Overall, however, judicial resources will be used more efficiently if the third-party claims proceed after the issues have been clarified and narrowed in a first trial phase.

It is also appropriate to consider the burden of discovery on the third-party defendants. Aside from the prejudice of having to catch up with two years of case history in the scant weeks remaining before the scheduled discovery cutoff, it would be extraordinarily burdensome for Inland to sit through scores of depositions involving

properties for which NEGC may well have no contribution claim against Inland. Looking beyond the courthouse to the resources of the parties and efficiency in the civil justice system overall, this is a significant factor in favor of severance.

- **Will separate trial expedite or delay the proceedings?**

On the present record, delay has two dimensions.

The first is delay of the plaintiffs' cases, slated to conclude discovery by February 29, 2008. For third-party defendants served in September 2007, this timetable is impracticable. This is apparent from the fact that the discovery plans proposed by plaintiffs and NEGC do not provide for discovery by third-party defendants. Unless this entire class of parties is to be deprived of discovery, failure to sever the third-party claims would necessitate an extension to the deadline for concluding discovery.

The second class of delay involves the ultimate resolution of all claims currently at issue. A second trial phase, preceded by a second phase of fact and expert discovery on whatever third-party claims remain after the first phase, would extend the overall schedule. But a non-severance scenario would require extension of the existing discovery deadline. Severed proceedings might well take no longer overall.

In terms of promoting orderly progress, phased trials are likely to increase efficiency. Certainly discovery and trial of third-party claims would be better focused once an initial trial establishes which of NEGC's now-potential liabilities result in adverse judgments. In this important respect, severance may well expedite the overall process.

- **Will separate trial affect the parties' rights to a jury trial?**

Severance would not affect the parties' jury trial rights.

* * *

Based on these six factors, severance is appropriate.

It is crucial to afford the third-party defendants adequate time for discovery. The time remaining before the existing February 29, 2008 discovery cutoff is inadequate.

Unless some accommodation is made to protect the third-party defendants, they will be swept along with a flood of depositions involving the original parties but likely to be of no or negligible relevance to the third-party claims. Because NEGC has disclosed scant information about its third-party claims, the third-party defendants cannot even know what to ask deponents. The circumstances materially compromise third-party defendants' ability to conduct discovery at all, and certainly without undue burden.

Although severance is warranted as a matter of promoting efficiency, it is virtually compelled in order to avoid prejudice to Inland and the other third-party defendants.

## II. Third-Party Claims Should be Severed for All Purposes

The Motion to Sever cites Fed. R. Civ. P. Rule 42(b) and seeks "separate trials" of the plaintiffs' claims and the third-party claims of NEGC. The six factors discussed in Part I above were articulated in a decision under Rule 42(b). The severance plaintiffs seek is more aptly viewed, however, as severance of claims pursuant to Rule 21.

As the First Circuit has explained, the district courts have "wide discretion to manage the litigation" under either rule. See Acevedo-Garcia v. Monroig, 351 F.3d 547, 559 (1st Cir. 2003); see also 4 Moore's Federal Practice (3d ed. 2007) § 21.05, at 21-23 &

no.3 ("trial court … has great discretion [under Rule 21] to restructure an action to promote the efficient administration of justice"); 8 Moore's Federal Practice (3d ed. 2007) § 42.20[4][a], at 42-44 (district court has broad authority to order separate trial if any of interests enumerated in rule is present, i.e. to further convenience, avoid prejudice, or promote expedition and economy). The difference is that a separate trial under Rule 42(b) does not result in an appealable final judgment and would not have collateral estoppel effect in the remaining trials. Acevedo-Garcia, 351 F.3d at 559-60.

The objective of trying plaintiffs' claims against NEGC first would be to resolve as much of the case as possible before proceeding with a narrower, better-focused set of third-party claims. Severance on terms leading to an appealable final judgment would best promote that objective.

The THIRD PARTY DEFENDANTS,
INLAND FUEL TERMINALS, INC.

By: /s/ Christopher P. McCormack
Christopher P. McCormack
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Telephone 203 330 2000
Facsimile 203 576 8888
Its Attorneys

-and-

Paul Sanford
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903

Attorneys for Inland Fuel Terminals, Inc.

**CERTIFICATION**

I hereby certify that on this 4th day of December, 2007, a true copy of the foregoing was sent by electronic means (ECF) and first class mail, postage pre-paid to:

John A. Tarantino
David A. Wollin
Kristen W. Sherman
Adler, Pollock & Sheehan, PC
One Citizens Plaza, Suite 8
Providence, RI 02903

Christina Dodds
Bishop, London, Brophy & Dodds
3701 Bee Cave Rd., Suite 200
Austin, TX 78746

Robert J. McConnell
Michael G. Rousseau
Jonathan D. Orent
Motely Rice LLC
321 South Main Street
Providence, RI 02940

Mark W. Roberts
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Russell X. Pollock
Campbell Campbell Edwards & Contory, PC
One Constitution Plaza
Boston, MA 02129

Eric D. Herschmann
David E. Ross
Kasowitz Benson Torres & Friedman, LLP
1633 Broadway
New York, NY 10019

Gerald J. Petros
Robin L. Main
Hinckley Allen & Snyder
50 Kennedy Plaza
Providence, RI 02903

Neil T. Leifer
Thornton & Naumes, LLP
100 Summer St., 30th Floor
Boston, MA 02110

Paul Revere, III
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632

Brian R. Cunha
Brian Cunha & Associates, PC
904 Broadway
East Providence, RI 02914

Paul M. Sanford, Esq.
Burns & Levinson, LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
Fax: 401-831-8359
psanford@burnslev.com
***Attorneys for Inland Fuel Terminals, Inc.***

/s/ Christopher P. McCormack
Christopher P. McCormack

Bridgeport/70242.3/CMCCORMACK/662909v1