UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br>Defendant and<br>Third-Party Plaintiff,<br><br>v.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAS HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC.; DOMINION ENERGY BRAYTON POINT LLC; and CITY OF FALL RIVER,<br>Third-Party Defendants. | C.A. No. 05-221T<br>(Consolidated Cases:<br>05-274T; 05-370T; 05-522T) |

**<u>CITY OF FALL RIVER'S RESPONSE TO PLAINTIFFS' MOTION TO SEVER DEFENDANT'S THIRD-PARTY CLAIMS</u>**

In accordance with the Court's order entered on November 20, 2007, the City of Fall River ("City") submits the following as its response to plaintiffs' motion to sever the third-party claims of defendant New England Gas Company ("NEG"). In this response, the City urges the Court either to extend the current discovery closure date to July 29, 2008, or grant the motion to sever.

**I – <u>Background</u>**

Approximately one year ago, on November 16, 2006, this Court entered a scheduling order in these cases providing, among other things, for the close of discovery on November 15, 2007. Ten months later, on September 11, 2007, the Court extended the discovery closure date to February 29, 2008.

On October 29, 2007, NEG served a third-party complaint against the City seeking "contribution and/or indemnification" in connection with NEG's potential liability in these cases. Third-Party Complaint ¶ 7. Accordingly, if this case continues on its present track, the City will have just four months from the date of service to complete discovery and otherwise prepare its case.

The third-party complaint is short on facts to support NEG's claims. In one paragraph, for example, it is alleged "[u]pon information and belief, [that] third-party defendant Fall River acquired the former State Coal Company Lot in or about 1980 for the southward expansion of the Fall River Water Treatment Facility . . . ." Third-Party Complaint ¶ 8. Then, in an equally tentative allegation, NEG asserts "[u]pon information and belief, [that] the allegedly contaminated dirt from the expansion of the [Water Treatment Facility], which included the former State Coal Company Lot, was deposited and/or distributed in the Bay Street Area by or on behalf of Fall River." Third-Party Complaint ¶ 9. Nothing further is alleged about the factual underpinnings of the claim.

On October 5, 2007, plaintiffs filed a motion "[p]ursuant to Federal Rules of Civil Procedure 42(b) . . . to Sever Defendant's Third-Party Complaint from Plaintiffs' original action." <u>Plaintiffs' Motion to Sever Defendant's Third-Party Complaint</u> ("Plaintiffs' Motion")

at 1. The thrust of Plaintiffs' Motion is that a separate trial of the third-party claims is warranted because of the prospect for delay in litigating the main claims while discovery occurs on the third-party claims (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Sever ("Plaintiffs' Memorandum") at 9-10); because the third-party claims introduce an unnecessary level of complexity to the trial of an already cumbersome case (Id. at 10-12); and because such delay and complexity will result in prejudice to plaintiffs (Id. at 12-13).

On October 31, 2007, NEG filed an objection to the Motion. Where Plaintiffs see complexity and confusion in joinder of the third-party claims, NEG sees only "simplification" and order. NEG's Memorandum of Law in Support of Its Objection to Plaintiffs' Motion to Sever ("NEG's Memorandum") at 8-9. Where Plaintiffs see the prospect for delay resulting from joinder, NEG predicts "expedition" in the disposition of all claims. NEG's Memorandum at 11-12.

NEG offers additional reasons to deny Plaintiffs' Motion. For example, it argues that this case is much like Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 482 F. Supp. 2d 203 (D.R.I. 2007), where this Court denied a motion for a separate trial in large part because a "dominant factual question" (whether the existence of certain claims had been disclosed) was at the heart of both the main and third-party claims. Id. at 206; NEG's Memorandum at 9-10. Further, NEG refers to a potential for inconsistent verdicts and the "duplication of judicial resources." NEG's Memorandum at 10-11.

Honeywell International, Inc. ("Honeywell"), Bridgestone Firestone North American Tire, Inc. and Bridgestone Americas Holdings, Inc. (collectively "Bridgestone"), and Gulf Oil

Corporation ("Gulf"), through its successor Chevron U.S.A. Inc., have responded to Plaintiffs' Motion.[1]

Honeywell has sought to join in Plaintiffs' Motion citing the prospect for confusion in the trial of the case if joinder is sustained, and prejudice to Honeywell if the current discovery closure date remains in place. Honeywell's Memorandum of Law in Support of Its Motion to Join and Adopt Plaintiffs' Motion to Sever Defendant New England Gas Company's Third-Party Complaint ("Honeywell's Memorandum") at 3-5. Alternatively, Honeywell asks the Court to extend the discovery closure date for an unspecified period. Honeywell's Memorandum at 5.

Bridgestone's response focuses on its ability to prepare a proper defense to the third-party claim. Bridgestone argues that, if Plaintiffs' Motion is granted, then the current "discovery deadline for the third-party defendants presumably would be extended . . . ." Response of Bridgestone to Plaintiffs' Motion to Sever ("Bridgestone's Response") at 2. Bridgestone then adds: "If the Court denies plaintiffs' motion . . . [Bridgestone] would be constrained to ask the Court for a substantial enlargement of the current deadline to assure the right to a reasonable opportunity for discovery and other trial preparation." Bridgestone's Response at 2-3.

Gulf has responded to say that it supports a Rule 21 severance of the third-party claims "into two separate actions or lawsuits, each of which will proceed as a discrete, independent lawsuit with its own pleadings, discovery, trial, judgment and appeal . . . ." Chevron U.S.A. Inc's Response to Plaintiffs' Motion to Sever ("Gulf's Response") at 2. At the same time, Gulf expresses concern about "how the rights of the Third-Party Defendants would be protected" in the event of an order for separate trials in the manner contemplated by Rule 42(b)." Gulf's Response at 2-3.

[1] Subsequent to the preparation of this response, Inland Fuel Terminals, Inc. ("Inland") filed a response to Plaintiffs' Motion in which Inland endorses severance.

## II - Argument

NEG's decision to join the third-party defendants more than two years after the filing of these cases leaves no completely satisfactory way to accommodate the interests of the parties. While a further extension of the discovery closure date would permit the City and others to conduct discovery and prepare for trial, it would at the same time postpone the trial of this case. Similarly, while an order for separate trials would presumably relieve the third-party defendants of the requirement that they complete discovery and prepare for trial within an unusually short period, it would at the same time eliminate whatever efficiencies are inherent in trying all claims at the same time. Doing neither, however, would seriously prejudice the City.

### A – The City will be prejudiced if it is required to meet the requirements of the Court's Scheduling Order providing for the close of discovery on February 29, 2008.

This is neither a simple nor an insubstantial case. It involves, among other things, the separate claims and theories of numerous plaintiffs, a long history, a fair amount of environmental science, and difficult issues of valuation, damages, and, perhaps, remediation.

The City has a great deal to do. Among other things, it must locate and review its own records of the last twenty to thirty years to learn what it can about its alleged relationship with the Tiverton site; identify, locate, and interview, where possible, the City employees and contractors who may have information about NEG's claims; prepare interrogatories and document requests for NEG and, perhaps, other parties; depose a number of witnesses; and contact and engage appropriate consultants and experts to assist with the technical issues raised by the case. The City does not expect to be able to accomplish all of this within a four-month period. As a consequence, if there is no change in the current discovery closure date, the City will be unable to prepare its case properly.

Had it been suggested to plaintiffs and NEG at the start of this case that they should conclude discovery within a space of four months, they undoubtedly would have protested strongly. Instead, as things stand, they will have had more than two years within which to do these things.

While the City does not seek two years, it does require a reasonable period based on the case presented. In all of the circumstances, the City believes that an extension of the discovery deadline to July 29, 2008—nine months from the date of service on the City—would be appropriate.

**B – Alternatively, the City urges the Court to exercise its discretion under Rule 42(b) and order a separate trial of the third-party claims.**

Like extension of the discovery closure date, bifurcation and a separate trial of the third-party claims is not a perfect solution to the problem presented by late joinder. At the same time, the City does not share all of NEG's and, to some extent, Gulf's concerns about the undesirability of separate trials.

In fact, the City's review of the factors set forth in this Court's opinion in Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 482 F. Supp. 2d 203, 206 (D.R.I. 2007), suggests that this is a case where the benefits of a separate trial outweigh the detriments.

1. Simplification and Avoidance of Confusion. The City disagrees with NEG that a separate trial would not simplify the issues. Given the number of plaintiffs, the variety of their remaining theories, their insistence that each of plaintiffs' individual properties receive separate treatment, and the complexity of the environmental issues presented, it seems fairly plain that the case will be simplified, and the prospect of confusion reduced, if the third-party claims are severed. Indeed, there seems to be an implicit acknowledgement of this in the fact that plaintiffs and NEG have discussed a format for the trial of the case that involves fewer than all

plaintiffs, i.e., a trial of a representative group of plaintiffs' claims. If the trial of the main claims presents sufficient complexity to warrant such thinking, it would seem to follow that the case is one in need of the further reduction in complexity and potential confusion that would accompany severance.

2. Duplication of Evidence. In its defense of plaintiffs' claims, NEG will attempt to offer evidence to suggest that plaintiffs' damages are attributable to conduct of the third-party defendants. NEG's Memorandum at 9. If the third-party claims are severed and plaintiffs are successful, NEG is correct that it will be required to present some of the same exculpatory evidence in the second trial. For this reason, NEG argues that this case is like IDC Properties where this Court denied a motion for a separate trial in part because the claims presented in the main and third-party cases were dependent upon a "dominant factual question." IDC Properties, 482 F. Supp. 2d at 206.

The City believes that IDC Properties is distinguishable. In that case, a single factual question (Did defendant make full disclosure of existing claims to its title insurer?) had the potential for being dispositive of the entire case. If the disclosure had been complete, then the main claim would fail and the third-party claim would become moot. If disclosure had been incomplete, then the main claim would succeed and the third-party claim would have potential merit. But no single factual question plays such a dominant role in the present case. Here, NEG's potential liability will turn on the individual facts of each owner's case, or on the collective facts of groups of cases. In short, this case does not have the same factual simplicity as was present in IDC Properties, and, as a consequence, there is less reason to try the main and third-party claims together.

3. Inconsistent Verdicts. NEG argues that, in two respects, there is a potential for inconsistent verdicts if Plaintiffs' Motion is granted. NEG's Memorandum at 10-11. But neither instance seems to present a real potential for inconsistency.

In one case, NEG suggests that a jury in the second trial could determine that "one or more third-party defendants are entirely responsible for the contamination which the first jury found to have been [NEG]'s fault alone." NEG's Memorandum at 10. But this seems to lose focus on both the nature of the main claims against NEG, and the theories of liability advanced by NEG to support the third-party claims. If the case is severed as plaintiffs have requested, the first trial would determine whether NEG is liable to plaintiffs and, if so, the damages for which NEG is responsible. In the event of a verdict adverse to NEG, it would then be free to pursue its claims for indemnity and contribution against the third-party defendants. But no verdict favorable to NEG in the second trial could be inconsistent with a verdict against NEG in the first trial because the question of joint-tortfeasor liability would not have been decided in the first trial. No matter how unfavorable the verdict might be to NEG in the first trial, NEG would be free to demonstrate in the second trial that its liability should be distributed, in whole or in part, among the third-party defendants.

For similar reasons, NEG's second example of potential inconsistency appears to be more imagined than real. NEG states: "[A] second jury's allocation of responsibility as between NEGasCo and the third-party defendants could be inconsistent, or at odds with, the allocation of fault determined by the first jury on plaintiffs' negligence claims." NEG's Memorandum at 10-11. But since the first jury would be limited to determining the liability, if any, of NEG, and the second whether the third-party defendants should share in that same liability, it is difficult to see how the two verdicts could be in conflict.

4. Use of Judicial Resources

Relying again on its view that " a dominant factual question underlies" both the main claims and the third-party claims, NEG argues that, if the claims are severed,

> this Court will be required to address pre-trial and trial motions regarding essentially the same operative facts, and eventually will have to preside over a second set of trials that will center around the same evidence that was the subject of the trial of plaintiffs' claims against NEGasCo.

NEG's Memorandum at 11 (emphasis added). NEG does not identify the "pre-trial and trial motions" to which it refers, or elaborate on its reference to "a second set of trials."

The City agrees with NEG that there would be some inefficiency in separate trials. At the same time, however, the City believes that NEG overstates the problem substantially and does not account for the countervailing benefits (e.g., simplification, avoidance of confusion) that separate trials would offer. Surprisingly, neither does NEG give much weight to the possibility that it would prevail in the first trial and thereby achieve the ultimate efficiency: the mootness of the third-party claims.

5. Expedition or Delay. The City's view, for the reasons set forth above, is that severance offers the prospect of moving the main claims toward trial without further delay, while preserving the rights of the third-party defendants to properly prepare their cases. It is not a perfect solution; only an accommodation of important competing interests.

6. Jury Trial. Neither NEG nor any of the responding third-party defendants have suggested that a party's right to jury trial would be impaired by separate trials. The City too sees no such impairment.

**III – Conclusion**

For these reasons, the City urges the Court to either extend the discovery closure date to July 29, 2008 or grant Plaintiffs' Motion.

Respectfully submitted,
City of Fall River,
By its attorneys,

/s/ Anthony F. Muri
Anthony F. Muri, Esq. (#539)
MURI ASSOCIATES LLC
10 Weybosset Street
Providence, RI 02903
(401) 421-7300 Voice
(401) 421-7352 Facsimile
amuri@murilaw.com

-and-

Kerry T. Ryan, Esq.
Emily C. Shanahan, Esq
TARLOW, BREED, HART & RODGERS, P.C.
101 Huntington Avenue
Boston, MA 02199
(617) 218-2000 Voice
(617) 261-7673 Facsimile
kryan@tbhr-law.com
eshanahan@tbhr-law.com

CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2007 this Response was filed electronically, that it is available for viewing and downloading from the ECF system, and that each of the following persons has been served by means of the ECF system:

Gregory L. Benik
gbenik@jreri.com

David A. Crichlow
david.crichlow@pillsburylaw.com

Brian R. Cunha
brian@briancunha.com

Christina C. Dodds
CDodds@bishoplondon.com

David M. Goldberg
david.goldberg@pillsburylaw.com, catherine.mcculley@pillsburylaw.com,
judy.way@pillsburylaw.com

Stephen P. Harten
sharten@rbhelaw.com, kpaiva@rbhelaw.com

Eric D. Herschmann
eherschmann@kasowitz.com

Robin-Lee Main
rmain@haslaw.com, sjfoster@haslaw.com

Christopher P. McCormack
cmccormack@pullcom.com

Anthony F. Muri
amuri@murilaw.com

Gerald J. Petros
gpetros@haslaw.com, clomas@haslaw.com

Paul Revere , III
revereiii@aol.com

Paul M. Sanford
psanford@burnslev.com, scook@burnslev.com

Jeanne M. Scott
jeannescott@utrlaw.com

Kristen W. Sherman
ksherman@apslaw.com, afontaine@apslaw.com, btallman@apslaw.com

Kimberly A. Simpson
ksimpson@vetterandwhite.com

Christian Bennett White Stephens
cstephens@taylorduane.com

John A. Tarantino
jtarantino@apslaw.com, dhumm@apslaw.com

Bruce Gregory Tucker
btucker@legalmgt.com

Craig R. Waksler
cwaksler@taylorduane.com

Benjamin V. White , lll
bwhite@vetterandwhite.com

David B. Willis
dwillis@legalmgt.com

David A. Wollin
dwollin@apslaw.com, dciuffetelli@apslaw.com, epickett@apslaw.com

Richard J. Zabbo
rzabbo@rbhelaw.com

David A. Cetola
dcetola@mcrobertslaw.com

Susan B. Forcier
susan.wilson@dem.ri.gov

Heather Spurlock Kennealy
hskennealy@mcrobertslaw.com

Neil T. Leifer
nleifer@tenlaw.com

John J. McConnell , Jr.
jmcconnell@motleyrice.com

Robert J. McConnell
bmcconnell@motleyrice.com

Brad J. Mitchell
bmitchell@tenlaw.com

Michael D Mitchell
mmitchell@admin.ri.gov

Jonathan D Orent
jorent@motleyrice.com

Mark W. Roberts
mroberts@mcrobertslaw.com

David E. Ross
dross@kasowitz.com

Gregory S. Schultz
gregory.schultz@dem.ri.gov

Matthew B. Smith
matthew@verdecchialaw.com

Aileen L. Sprague
asprague@motleyrice.com

Christian F. Uehlein
cuehlein@tenlaw.com

Brian A. Wagner
brian.wagner@dem.ri.gov

Lewis S. Wiener
lewis.wiener@sablaw.com

I further certify that on December 4, 2007 the following were served by U.S. mail, postage prepaid, at the addresses noted:

Matthew B. Kirsner
Andrew G. Mauck
Troutman Sanders, LLP
P.O. Box 1122
1001 Halifax Point
Richmond, VA 23208

William David Wick
Wactor & Wick LLP
180 Grand Avenue
Suite 950
Oakland, CA 94612

Seth Davis
Noelle Kowalczyk
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019

Michael K. Marran
P.O. Box 6067
321 South Main St.
Suite 200
Providence, RI 02940-6067

*/s/ Anthony F. Muri* .
Anthony F. Muri, Esq.