UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al.,<br>KEVIN BURNS, et al.,<br>COLLEEN BIGELOW, et al., and<br>SHEILA REIS, et al.<br><br>Plaintiffs<br>v.<br><br>NEW ENGLAND GAS COMPANY<br><br>Defendant and Third Party Plaintiff,<br>v.<br><br>BRIDGESTONE FIRESTONE NORTH<br>AMERICAN TIRE, LLC, et al.<br><br>Third Party Defendants. | Case Numbers: 05-221T (Lead Case)<br>(Related and Consolidated cases:<br>05-274T; 05-370T, 05-522T) |

**DEFENDANT NEW ENGLAND GAS COMPANY'S OBJECTION TO PLAINTIFFS' MOTION FOR TRIAL PLAN**

Defendant New England Gas Company ("NEGasCo") objects to Plaintiff's Motion for Trial Plan. In support of its objection, NEGasCo relies on the memorandum of law submitted herewith.

NEW ENGLAND GAS COMPANY

/s/Gerald J. Petros

Gerald J. Petros (#2931)
Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
gpetros@haslaw.com

David A. Wollin (#4950)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

**CERTIFICATE OF SERVICE**

To:

John J. McConnell, Jr., Esq.
Robert J. McConnell, Esq.
Aileen L. Sprague, Esq.
Jonathan D. Orent, Esq.
Motley Rice
321 South Main Street
Providence, RI 02903

Neil T. Leifer, Esq.
Christian F. Uehlein, Esq.
Thorton & Naumes LLP
100 Summer Street
Boston, MA 02110

Mark W. Roberts, Esq.
David A. Cetola, Esq.
Heather Spurlock Kennealy, Esq.
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Brian Cunha, Esq.
Brian Cunha & Associates
904 Broadway
East Providence, RI 02914

Paul Revere, III, Esq.
297 North Street, Suite 337
Hyannis, MA 02601

Richard J. Zabbo, Esq.
Stephen P. Harten, Esq.
Ratcliffe, Burke, Harten & Elias LLP
1600 Financial Plaza
Providence, RI 02903

Christina C. Dodds, Esq.
Bishop, London & Brophy, P.C.
3701 Bee Caves Road, Suite 200
Austin, TX 78746

Gregory S. Schultz, Esq.
Susan Forcier, Esq.
Office of Legal Services
RI Department of Environmental Management
235 Promenade Street
Providence, RI 02908

Lewis S. Wiener, Esq.
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004

Michael D. Mitchell, Esq.
Deputy Chief of Legal Services
State of Rhode Island
Department of Transportation
Two Capital Hill
Providence, RI 02903

Michael K. Marran, Esq.
P.O. Box 6067
321 South Main Street, Suite 200
Providence, RI 02940-6067

Anthony F. Muri, Esq.
Muri Associates LLC
Ten Weybosset Street
Providence, RI 02903

Kerry T. Ryan, Esq.
Emily C. Shanahan
Tarlow, Breed, Hart & Rodgers, P.C.
100 Huntington Avenue, Suite 500
Boston, MA 02199

Benjamin V. White, Esq.
Kimberly A. Simpson, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

William D. Wick, Esq.
Wactor & Wick LLP
180 Grand Avenue, Suite 950
Oakland, CA 04612

Andrew G. Mauck, Esq.
Matthew B. Kirsner, Esq.
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23208

Craig R. Waksler, Esq.
McGivney & Kluger, P.C.
72 Pine Street, 1st Floor
Providence, RI 02903

Bruce G. Tucker, Esq.
David B. Willis, Esq.
Legal Management Services LLC
55 Hammerlund Way
Middletown, RI 02842

David A. Crichlow, Esq.
David Goldberg, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036

Paul M. Sanford, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903

Christopher P. McCormack, Esq.
Pullman & Comley LLC
850 Main Street
Bridgeport, CT 06601

Gregory L. Benik, Esq.
Benik & Associates
931 Jefferson Boulevard, Suite 208
Warwick, RI 02886

Jeffrey Bromme, Esq.
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004-1206

Jeanne M. Scott, Esq.
Ursillo, Teitz & Ritch, Ltd.
Two Williams Street
Providence, RI 02903

Matthew B. Smith, Esq.
1206 Westminster Street
Providence, RI 02909

I hereby certify that on January 2, 2008, a copy of the foregoing Objection to Plaintiffs' Motion for Trial Plan was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros

862044v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al.,<br>KEVIN BURNS, et al.,<br>COLLEEN BIGELOW, et al., and<br>SHEILA REIS, et al.<br><br>Plaintiffs<br>v.<br><br>NEW ENGLAND GAS COMPANY<br><br>Defendant and Third Party Plaintiff,<br>v.<br><br>BRIDGESTONE FIRESTONE NORTH<br>AMERICAN TIRE, LLC, et al.<br><br>Third Party Defendants. | Case Numbers: 05-221T (Lead Case)<br>(Related and Consolidated cases:<br>05-274T; 05-370T, 05-522T) |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MEMORANDUM IN RESPONSE TO PLAINTIFFS' TRIAL PLAN**

## I. Introduction

This case presents 129 separate claims that require individual determinations of liability and damages regarding alleged contamination on approximately 90 different properties. As plaintiffs state, "It will be asking a jury a great deal to deliberate on 129 separate determinations of liability and damages," and "a simultaneous trial of all property owners would be very impractical, unwieldy and time consuming." (Plaintiffs Memo at p. 5.) New England Gas Company ("NEGasCo") agrees with plaintiffs' proposal that the Court should first try a limited subset of cases with the varied factual circumstances and claims presented by each individual plaintiff. NEGasCo submits, however, that the selection of those cases must come after

discovery has been completed, not before, so that a fair and reasonable selection of cases may be made. NEGasCo also submits that the actual number of plaintiff claims to be tried in that first trial should be six rather than eight. Plaintiffs' attempt now, in the middle of the discovery process, to limit full discovery to only eight plaintiffs would deprive NEGasCo of relevant information it requires to defend each claim, including those claims to be tried in the first joint trial. Further, it is unreasonable to ask a jury to consider more than 6 claims given the detailed and highly individualized lay and expert testimony surrounding each claim. NEGasCo's specific response to plaintiffs' trial plan is set forth below.

## II. Argument

Plaintiffs could have filed 129 separate complaints. Each of the properties at issue presents individualized facts that will determine both liability and damages. For example, plaintiffs admit that some of the properties do not have any contamination.[1] Other properties have contamination, such as mercury or lead, that is unrelated to any alleged former manufactured gas plant ("MGP") material. Still other properties have contaminants that are ubiquitous in our environment, such as PAHs. Simply put, each property presents a separate contaminant profile.

Similarly, each property presents a distinct development profile. Some of the homes were literally built on top of Town or neighborhood dumps where Tiverton and Fall River residents and industries commonly disposed of waste for several decades. Some homes were built in the early 1900s, and others were built in the 1980s, and many of the older homes sit next to the newer homes. As deposition discovery of various of the plaintiffs reveals, many of the

[1] More precisely, some of the properties investigated do not have any exceedances of RIDEM's cleanup standards for residential properties. These properties are available for full use and enjoyment and require no cleanup. These properties, like all properties in the region, contain background levels of metals and other materials at levels that fall below RIDEM's residential cleanup standards. The term "contamination" as used in this memorandum refers to contamination in excess of those residential cleanup standards.

homes in the Bay Street Area ("BSA") were built on land that was farmed during the same time-period when plaintiffs allege that MGP material was deposited in the BSA. Others once hosted manufacturing operations, coal yards, or demolition debris sites. Finally, developers brought fill into the BSA in an irregular manner in terms of time, location, and source. For example, much of the fill in one section of the BSA comes from the construction of the sewage treatment system in the former location of a coal yard located adjacent to the BSA.

As a result, some of plaintiffs' properties contain no contamination or fill, just houses built on native soil. Others may contain only mercury contamination caused by fill from the former hat manufacturing plant once located in the BSA. Still others contain general landfill waste from historic dumping operations. What is shown from discovery to date is that each property presents unique liability and damages issues.

Even though plaintiffs chose to bring their clients' claims together in various lawsuits (rather than file them separately), they now recognize that it would be very difficult for a jury to hear and decide all 129 claims in one trial. Plaintiffs propose trying 8 claims at a time, with four chosen by each side. Plaintiffs suggest some type of "representative selection" without providing any criteria for selecting "representative plaintiffs" from this diverse group. Plaintiffs also propose that this selection occur soon – as soon as plaintiffs complete their long overdue responses to NEGasCo's written discovery – and that full discovery proceed only with respect to the subset of cases selected for the first trial. Finally, plaintiffs express some hope that this first trial will permit the parties to resolve the remaining claims, though they offer no specifics on how this may occur other than a vague and improper reference to collateral estoppel. NEGasCo responds to plaintiffs' suggestions seriatim.

1. The Court should try a subset of cases.

The Court should try a subset of cases. No jury could hear or decide fairly all 129 claims in a single trial. Moreover, such a trial would last for months, and the jury likely would not recall who Mr. and Mrs. Able were by the time they heard evidence regarding Mr. and Mrs. Miller. NEGasCo submits that a subset of six plaintiffs is more reasonable and workable than eight. This trial will require specific and highly individualized lay and expert testimony and evidence for each of the six properties. While there will be some common evidence, by far most of the evidence will be property specific. In the end, the jury will be asked to render separate verdicts concerning the respective plaintiffs' claims against New England Gas Company.[2] Plaintiffs' proposal to try eight claims is overly ambitious; six is a more reasonable number, though still challenging.

2. Selection of the claims.

Plaintiffs' proposal that each side should select one-half of the subset of claims initially to be tried is reasonable. However, Plaintiffs' suggestion that the claims selected for trial should reflect "the range of potential damages sought in the Amended Complaint" is both inappropriate and unworkable. NEGasCo proposes that the parties meet to confer and agree on more appropriate criteria including (1) the nature of the alleged contamination on the property; (2) the development of the property; and (3) the geographic location of the property. The parties can then present those criteria to the Court.

For example, the first set of cases should include at least one property with no contamination,[3] one property with contamination not commonly associated with MGP material,

[2] The jury may also be asked to determine the third-party claims depending on the Court's ruling on the motion to sever.

[3] Southern Union intends to move for summary judgment with respect to these properties – these plaintiffs have no claim and do not belong in this case.

one property with contaminants that are associated with multiple sources, including potential MGP material, and one property with contaminants that could be associated with MGP material. They should also include properties with diverse development histories, for example: one older home, one newer home, one property built on observable fill, and one property that was once the location of a industrial enterprise. Finally, the properties should be spread across different sections of the BSA. NEGasCo and the plaintiffs should discuss at the appropriate time and attempt to agree on the selection of six properties to be included in the first trial. If they can not agree, they should try to establish the selection criteria so that each side can then choose three properties.

3. <u>The parties must complete discovery before selecting the properties.</u>

Discovery is presently proceeding at a brisk pace to meet the closure deadline proposed by the plaintiffs and imposed by the Court. It is a tasking deadline that will require the good faith and cooperation of all parties. NEGasCo is prepared to strive to meet that deadline.

Plaintiffs are now struggling with their obligation to produce responses to written discovery and parties for depositions. NEGasCo will not here itemize the many failures by plaintiffs to produce written discovery and witnesses in a timely fashion, but there have been many. Counsel for NEGasCo and the plaintiffs enjoy a good relationship and continue to try to resolve those problems and get back on track to meet the discovery deadlines.

Plaintiffs' request to abort this schedule and to limit full discovery to the subset of claims is inefficient, unreasonable, and unnecessary. It is inefficient because it presupposes that we will have as many as 20 "mini-discovery" periods where the parties will take "full discovery" of the next tranche of plaintiffs selected for trial. Plaintiffs appear to suggest that we spend one or two months trying six claims, then take discovery of the next six for several months, including expert

discovery, and then try the next six claims. This could extend the duration of these cases for years. It is a wasteful, inefficient and very expensive process.

It is also an unreasonable and unfair process because it is premised on the notion that none of the other 129 plaintiffs has discoverable information about the first set of claims being tried. Plaintiffs' premise is wrong. Already, the deposition testimony of the plaintiffs has disclosed a wealth of information not just about the history of their own property and how they have used their property, but also about activities and development on the various properties and streets that bears directly on liability issues relevant to other plaintiffs' claims. Many of these plaintiffs have lived in the BSA for years and have relevant information concerning the development of the neighborhoods, the industrial activity in the BSA, the use of the Town and neighborhood dumps, the use of fill in the area, farming operations, and other matters. In short, NEGasCo is entitled to take discovery from all of the plaintiffs because they have relevant information regarding the neighborhood that bears on the claims of other plaintiffs. Written discovery is not sufficient. Answers to interrogatories do not capture or reveal the specific and detailed information that NEGasCo requires to defend these claims. And quite often, the depositions demonstrate that the answers to interrogatories are either incomplete or inaccurate. Depositions have a unique way of focusing the mind and uncovering information.[4]

Finally, truncating or limiting discovery is unnecessary because the parties can probably complete fact discovery consistent with the Court's discovery closure date of February 29, 2008 -- (a date that was suggested to the Court by plaintiffs). There is no reason to abandon this schedule to the uncertainties and delay proposed by plaintiffs.

---

[4] The Court should not credit plaintiffs' suggestion that it is somehow unfair to require the plaintiffs to give deposition testimony. These individuals made the conscious decision to file this action, and appearing at a deposition to give testimony regarding their claims is certainly not an unreasonable burden. This request to cut off discovery may have more to do with the inconvenience to the attorneys than with any inconvenience to the parties.

Full and complete discovery will also present more opportunity for the parties to attempt to resolve these claims following the first trial. Without full discovery, the parties will be unable to determine how the untried claims compare with the determined claims, and to make reasonable decisions on that basis.

For all of these reasons, the parties should complete full discovery of all claims before proceeding to trial on the initial subset of claims.

4. The impact of the decided claims.

If the parties select appropriate claims and have full access to discovery, there is reason to believe that the completion of the trial of the first six cases could lead to a resolution by agreement of all the claims. Certainly, NEGasCo and the plaintiffs would like to see these claims resolved. Reasonable judgments could emerge following the first set of verdicts.

While an agreed settlement of the remaining claims is possible, these verdicts will ***not*** produce collateral estoppel type findings.[5] As the plaintiffs concede and the evidence to date demonstrates, each property presents unique and individualized facts and claims. The contaminant profile, development history, and lot locations are all different. Properties with no contamination sit next to properties that contain some type of purported contamination. Old homes sit next to new homes. Homes with fill sit next to homes with only native soil. Homes built on farms sit next to homes built on a town dump. Collateral estoppel findings regarding liability can not apply to this heterogeneous collection of properties and facts. The same conclusion obtains with respect to damages.

At this time, NEGasCo is not asking the Court to make any findings or rulings on the collateral estoppel issue – there is no record before the Court that would enable it to do so. But

[5] Even the authorities cited by the plaintiffs recognize that collateral estoppel is not appropriate in circumstances where subsets of diverse and unique cases are tried.

the Court should have the benefit of NEGasCo's position, and briefing on the issue, before adopting a trial plan for this case.

## III. <u>Conclusion</u>

For these reasons, NEGasCo proposes that the Court adopt a trial plan that contains the following elements or requirements:

1. The parties will complete all discovery pursuant to the current discovery order, subject to any modifications approved by the Court;
2. The first trial in this case will involve a subset of six properties selected as set forth below.
3. Within one week of the close of discovery, the parties will meet to either select six properties for trial, or to establish criteria for the selection of the six properties. If the parties cannot agree on the criteria, the Magistrate-Judge will resolve any disputes and then each side will select three of the properties pursuant to those criteria. The Court expects the parties to select properties that reflect the diversity of the properties, including (1) the nature of the contamination on the property; (2) the development of the property; and (3) the geographic location of the property.
4. The Court will try this first subset of cases and then give the parties a short period of time to determine whether they can resolve the remaining claims. The Court will proceed to promptly try the next six properties selected by the parties as outlined above if the remaining claims can not be resolved.
5. The Court retains the discretion to modify this plan as it sees fit following the first trial of six cases.

NEGasCo looks forward to discussing these elements with the plaintiffs and with the Court.

NEW ENGLAND GAS COMPANY

*/s/Gerald J. Petros*
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
gpetros@haslaw.com

David A. Wollin (#4950)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

**CERTIFICATE OF SERVICE**

To:

John J. McConnell, Jr., Esq.
Robert J. McConnell, Esq.
Aileen L. Sprague, Esq.
Jonathan D. Orent, Esq.
Motley Rice
321 South Main Street
Providence, RI 02903

Neil T. Leifer, Esq.
Christian F. Uehlein, Esq.
Thorton & Naumes LLP
100 Summer Street
Boston, MA 02110

Mark W. Roberts, Esq.
David A. Cetola, Esq.
Heather Spurlock Kennealy, Esq.
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Brian Cunha, Esq.
Brian Cunha & Associates
904 Broadway
East Providence, RI 02914

Paul Revere, III, Esq.
297 North Street, Suite 337
Hyannis, MA 02601

Richard J. Zabbo, Esq.
Stephen P. Harten, Esq.
Ratcliffe, Burke, Harten & Elias LLP
1600 Financial Plaza
Providence, RI 02903

Christina C. Dodds, Esq.
Bishop, London & Brophy, P.C.
3701 Bee Caves Road, Suite 200
Austin, TX 78746

Gregory S. Schultz, Esq.
Susan Forcier, Esq.
Office of Legal Services
RI Department of Environmental Management
235 Promenade Street
Providence, RI 02908

Lewis S. Wiener, Esq.
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004

Michael D. Mitchell, Esq.
Deputy Chief of Legal Services
State of Rhode Island
Department of Transportation
Two Capital Hill
Providence, RI 02903

Michael K. Marran, Esq.
P.O. Box 6067
321 South Main Street, Suite 200
Providence, RI 02940-6067

Anthony F. Muri, Esq.
Muri Associates LLC
Ten Weybosset Street
Providence, RI 02903

Kerry T. Ryan, Esq.
Emily C. Shanahan
Tarlow, Breed, Hart & Rodgers, P.C.
100 Huntington Avenue, Suite 500
Boston, MA 02199

Benjamin V. White, Esq.
Kimberly A. Simpson, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

William D. Wick, Esq.
Wactor & Wick LLP
180 Grand Avenue, Suite 950
Oakland, CA 04612

Andrew G. Mauck, Esq.
Matthew B. Kirsner, Esq.
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23208

Craig R. Waksler, Esq.
McGivney & Kluger, P.C.
72 Pine Street, 1st Floor
Providence, RI 02903

Bruce G. Tucker, Esq.
David B. Willis, Esq.
Legal Management Services LLC
55 Hammerlund Way
Middletown, RI 02842

David A. Crichlow, Esq.
David Goldberg, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036

Paul M. Sanford, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903

Christopher P. McCormack, Esq.
Pullman & Comley LLC
850 Main Street
Bridgeport, CT 06601

Gregory L. Benik, Esq.
Benik & Associates
931 Jefferson Boulevard, Suite 208
Warwick, RI 02886

Jeffrey Bromme, Esq.
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004-1206

Jeanne M. Scott, Esq.
Ursillo, Teitz & Ritch, Ltd.
Two Williams Street
Providence, RI 02903

Matthew B. Smith, Esq.
1206 Westminster Street
Providence, RI 02909

I hereby certify that on January 2, 2008, a copy of the foregoing Response to Plaintiffs' Proposed Trail Plan was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros

861796v1