**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. and John F. CORVELLO, et al,

Plaintiffs,

v. C.A. No. 05-221T

NEW ENGLAND GAS COMPANY, INC.,

Defendant;

KEVIN BURNS, et al.

Plaintiffs,

v. C.A. No. 05-274T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS

Defendants;

COLLEEN BIGELOW, et al.

Plaintiffs,

v. C.A. No. 05-370T

NEW ENGLAND GAS COMPANY, formerly known as
FALL RIVER GAS COMPANY, an
unincorporated division of
SOUTHERN UNION COMPANY,

Defendants;

SHEILA REIS, et al.

Plaintiffs,

v. C.A. No. 05-522T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS
Defendants.

**MEMORANDUM AND ORDER**

These four consolidated cases were brought by more than 120 residents of Tiverton, Rhode Island who allege that their properties have been contaminated by hazardous substances contained in coal gasification wastes that were buried in Tiverton approximately fifty years ago. The plaintiffs seek damages and injunctive relief against New England Gas Company ("NEG"), an unincorporated division of Southern Union Company and the successor to Fall River Gas Company ("FR Gas"), the entity that allegedly generated the coal gasification waste. NEG has filed third-party complaints seeking contribution and/or indemnity from six other companies, two municipalities and another utility which NEG claims may be responsible for some or all of the alleged contamination.

The plaintiffs have moved to sever the third-party claims and to try them separately from the plaintiffs' claims against NEG. For the reasons hereinafter stated, the plaintiffs' motion is granted to the extent that it seeks to have the third-party claims tried separately.

**Background**

It appears to be undisputed that, in August 2002, a sewer interceptor line was being installed in an area near the plaintiffs' property and some of the excavated soil was an unusual blue color and emitted a strong odor. After investigating, the Rhode Island Department of Environmental Management ("RIDEM") concluded that the excavated material was coal gasification waste

that contained hazardous substances in concentrations that exceed safe levels.

Because the contamination appeared to be widespread, the Town of Tiverton imposed an emergency moratorium prohibiting excavation or the issuance of building permits in a section of the town that encompasses the plaintiffs' properties. Meanwhile, RIDEM concluded that a nearby facility operated by NEG was the source of the coal gasification waste and, on March 17, 2003, RIDEM sent a "Letter of Responsibility" to NEG. NEG has denied responsibility and administrative enforcement proceedings have been brought against NEG by RIDEM. Those proceedings are still pending.

Around May 2005, the Corvello, Burns, and Bigelow plaintiffs commenced suit against NEG in the Rhode Island Superior Court and on August 5, 2005, the Reis plaintiffs sued NEG in the United States District Court for the District of Massachusetts. The Corvello, Burns, and Bigelow cases were removed to this Court and the Reis case was transferred here. All of the plaintiffs seek damages for alleged diminution of their property values as well as injunctive relief. In addition, some of the plaintiffs seek damages for what they claim are adverse health effects that they have suffered as a result of the alleged contamination.

On December 16, 2006, this Court set a discovery closure date of November 15, 2007, which projected a trial date in January 2008. On September 11, 2007, the trial date was postponed until April

2008 because the parties requested additional time to complete discovery. It was not until November 2007 that NEG filed its third-party complaint.

Although the plaintiffs' motion is denominated as a Motion to Sever and the plaintiffs' supporting memorandum contains references to Fed. R. Civ. P. 14(a), the motion is brought "pursuant to Federal Rules of Civil Procedure Rule 42" and seeks a separate trial of the third-party complaints. Pl.'s Mem. at 6.

## Analysis

### I. The Applicable Rules

Rule 14(a) of the Federal Rules of Civil Procedure recognizes a defendant's right to assert claims for contribution and/or indemnity against a person who is not a party to an action but "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the [defendant]." However the Rule also provides that "any party may move to strike the third-party claim or for its severance or separate trial". Fed. R. Civ. P. 14(a).

Although the terms "severance" and "separate trial", sometimes, are used interchangeably, they refer to two different procedures. See, Moore's Federal Practice §42.20[2] (3d ed. 2007). Severance refers to the process of dividing a case containing multiple claims into "separate actions" and it is governed by Rule 21. Acevedo-Garcia v. Monroig 351 F. 3d 547, 558 (1st Cir. 2003).

On the other hand, ordering separate trials refers to the process of dividing "a single action into separate trials that remain under the umbrella of the original solitary action," thereby enabling a court to "hear and decide one or more issues without trying all of the controverted issues at the same hearing." Id. at 559. Decisions regarding whether claims or issues should be tried separately or bifurcated are governed by Rule 42(b). Id.

The distinction between severance and separate trials is important because a "judgment in a severed action is final, enforceable and appealable when it disposes of all parties and issues," but an "order entered at the conclusion of a separate trial" may not be because it is "often interlocutory." Acevedo-Garcia, 351 F. 3d at 559. Accordingly, severance under Rule 21 may be appropriate where "the two claims are 'discrete and separate,' i.e., one claim must be capable of resolution despite the outcome of the other claim" while separate trials under Rule 42(b) may be appropriate where "final resolution of one claim affects the resolution of the other." 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2387, Note 2.

II. The Rule 42(b) Bifurcation Decision

Rule 42(b) provides:

> (b) Separate Trials. The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issue or of any number of claims,

> cross-claims, counter-claims, third-party claims or issues, always preserving inviolate the right of trial by jury . . . ."

Rule 42(b) gives courts broad discretion to decide whether claims or issues should be tried separately. Gold v. Johns Manville Sales Corp., 723 F.2d. 1068, 1077 (3d Cir. 1983) (citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936). In exercising that discretion, the overarching consideration is whether separate trials will facilitate the fair and efficient adjudication of the case. The principal factors that must be considered are: (1) whether separate trials will help to simplify the issues and avoid confusion; (2) whether separate trials will expedite or delay the proceedings; (3) whether separate trials would unfairly prejudice any of the parties; (4) whether separate trials will result in more efficient utilization of judicial resources and the resources of the parties; (5) whether separate trials will result in duplication of evidence; (6) whether separate trials will create a risk of inconsistent verdicts; and (7) whether separate trials would deprive a party of any right that it may have to a jury trial. See Fed. R. Civ. P. 42(b); Commonwealth Land Title Insurance Co. v. IDC Properties, Inc., 482 F.Supp.2d 203, 206 (D.R.I. 2007) (and cases cited therein).

A. Simplification of Issues and Avoidance of Confusion

In this case, separate trials would greatly simplify the issues and minimize the risk of confusion. The plaintiffs' claims

against NEG are based on allegations that the source of the hazardous substances contaminating the plaintiffs' properties is coal gasification waste for which NEG is responsible. Unlike NEG, the plaintiffs have not alleged that the third-party defendants bear any responsibility for these hazardous substances and they have not asserted any claims against the third-party defendants. Moreover, while litigating NEG's claims for contribution would involve effort to establish the precise percentage of responsibility that each third party defendant bears, those questions would not arise in litigating the plaintiffs' claims against NEG.

In short, the issue raised by the plaintiffs' claims that NEG is responsible for the alleged contamination is separate and distinct from the issues raised by NEG's claims for contribution and indemnity which require findings as to whether the third-party defendants <u>also</u> are responsible; and, if so, what percentage of the responsibility they bear. Consequently, trying NEG's third-party claims together with the plaintiffs' claims against NEG would result in the presentation of additional evidence not relevant to the plaintiffs' claims, would complicate the trial, and would tend to confuse the jury.

B. <u>Expediting or Delaying Proceedings</u>

Since the third-party defendants were not added until November 2007, it is clear that denial of the motion for separate trials

would require that the trial of the plaintiffs' claims against NEG be further postponed in order to afford the third-party defendants a fair opportunity to conduct discovery. Indeed, several third-party defendants already have requested postponements ranging from four to six months if the separate trials are not ordered.

While it could take as long to complete two trials as it would to complete a single trial dealing with the claims of all parties, separate trials could greatly expedite resolution of the case because, if it is determined that there is no coal gasification waste buried on the site or that NEG is not responsible for it, there will be no need for a second trial regarding contribution or indemnity. Even if NEG is found responsible for the presence of hazardous substances, such a finding could facilitate settlement by eliminating much of the uncertainty with respect to NEG's liability.

C. <u>Prejudice</u>

While denial of the motion for separate trials and the concomitant delay in adjudicating the plaintiffs' claims against NEG would greatly prejudice the plaintiffs, granting the motion would cause little or no prejudice to the defendants.

It is undisputed that significant quantities of hazardous substances have been found in the soil on or near the plaintiffs' properties and that the emergency moratorium prevents the plaintiffs from excavating or building on those properties until

the site has been remediated. In addition, it is alleged that the presence of hazardous substances has diminished the value of the plaintiffs' properties and that continued exposure to the hazardous substances is adversely affecting the health of some of the plaintiffs. Furthermore, it appears that one of the plaintiffs' principal witnesses is an elderly man who is in poor health and may not be able to testify if the trial is postponed for any substantial period of time. The magnitude and continuing nature of the harm, together with the risk that a key witness might become unavailable, threaten to significantly prejudice the plaintiffs if the trial of their claims against NEG is further postponed.

By contrast, it is difficult to see how NEG would be unfairly prejudiced if its third-party claims were tried separately from the plaintiffs' claims. NEG will not suffer any loss unless and until it is found liable to the plaintiffs and has paid a judgment for damages which, most likely, would not occur until after its appeals have been exhausted. Moreover, even if NEG is found liable to the plaintiffs, NEG would be free to pursue its third-party claims. The lack of any urgency in litigating the third-party claims is underscored by the fact that NEG did not assert them until more than four and a half years after RIDEM issued its "Letter of Responsibility" to NEG and two and a half years after the plaintiffs' complaints were filed.

D. Efficiency

Separate trials also would result in more efficient utilization of judicial resources and the resources of the parties.

As already noted, if it is determined that NEG is not responsible for any hazardous substances on the site, there would be no need for a second trial. Accordingly, there would be no need for the Court or the parties to expend the time or resources necessary to litigate the additional issues raised by NEG's claims for contribution. In any event, plaintiffs' counsel would not be required to participate in a trial to determine whether NEG is entitled to contribution, which would involve the presentation of considerable evidence that is irrelevant to the plaintiffs' claims against NEG. Similarly, counsel for the third-party defendants might be spared from participating in a trial to determine whether NEG is responsible for any of the alleged contamination.

E. Duplication of Evidence

It is true that there may be some duplication of the evidence presented during separate trials. Although the threshold issue raised by the plaintiffs' claims against NEG is whether coal gasification wastes were buried on the site, NEG might seek to help rebut that allegation by offering evidence that any hazardous substances found there are attributable, instead, to the third-party defendants. However, any duplication of evidence, likely, would be minimal because the evidence needed to show that the

hazardous substances may have come from other sources would be much less extensive than the evidence required to prove that the third-party defendants, in fact, contributed to the contamination and the respective percentages of responsibility that they bear.

More importantly, the risk of possible duplication of evidence is outweighed by the fact that, as already noted, separate trials will greatly simplify the issues, prevent confusion, mitigate prejudice to the plaintiffs, and more efficiently utilize the resources of the Court and the parties.

F. Risk of Inconsistent Verdicts

Separate trials would not create any risk of inconsistent verdicts because, as previously stated, in a trial to determine whether NEG may be liable to the plaintiffs, the issue would be whether the hazardous substances allegedly contaminating the plaintiffs' property came from coal gasification waste and, if so, whether NEG is responsible. On the other hand, in a trial to determine whether NEG has a right to contribution, the issue would be whether the third-party defendants, also, are responsible and what percentage of responsibility each bears.

NEG argues that the results could be inconsistent if, in the first trial, it is found responsible for some or all of the contamination but, in the second trial, it is determined that the third-party defendants are responsible for all of the contamination. However, even if that scenario materialized, NEG

would not be prejudiced because it, then, would be entitled to recover for the entire amount of the judgment against it. Put another way, the only consequence would be that NEG would prevail on its indemnification claims rather than its contribution claims.

G. Right to Jury Trial

No party has argued that its right to a jury trial would be infringed if the third party claims are tried separately and this Court sees no basis for any such claim especially since both sets of claims are scheduled for jury trials.

To summarize, trying the plaintiffs' claims against NEG separately from NEG's claims against the third party defendants will greatly simplify the issues, avoid confusion, expedite the proceedings, and more efficiently resolve the case. Furthermore, these benefits greatly outweigh any minimal duplication of evidence that may result from the separate trials.

**Conclusion**

For all of the foregoing reasons, the plaintiffs' motion for a separate trial of the third-party claims is granted.

In addition, since it appears that separating the trial of the plaintiffs' claims that NEG is responsible for the hazardous substances found on the site from their claims for damages and injunctive relief would further simplify the issues, avoid confusion, and more efficiently utilize the resources of the Court,

the parties are hereby ordered to show cause, on or before January 29, 2008, why the plaintiffs' claims for damages and other relief should not be tried separately and why they should not be tried together with NEG's third-party claims.

IT IS SO ORDERED:

Ernest C. Torres

Ernest C. Torres
Senior United States District Judge

Date: ~~December~~ _____, ~~2007~~
January 9, 2008