KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 BROADWAY
NEW YORK, NEW YORK 10019-6799
212-506-1700
FACSIMILE: 212-506-1800

NOELLE M. KOWALCZYK
212-506-1778

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

November 9, 2007

**VIA E-MAIL AND REGULAR MAIL**

Robert McConnell, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02903

Re: Corvello et al. v. New England Gas Co.

Dear Bob:

In April of 2007, New England Gas Company ("NEGasCo") served subpoenas on Ransom Environmental Consultants, Inc. ("Ransom") and GeoInsight, Inc. ("GeoInsight"). In May of 2007, approximately four boxes of responsive documents were delivered to your firm to be reviewed for privilege. Over the next several months, we were in regular contact with your associate, Jonathan Orent, to inquire about the status of your review and the subsequent production of responsive documents and privilege logs.

In September of 2007, you produced some responsive documents from Ransom and GeoInsight, but no privilege logs. In fact, we have yet to receive a privilege log for the GeoInsight documents and did not receive a privilege log for the Ransom documents (the "Ransom Privilege Log") until October 5 and nearly seven months after the subpoenas were served.

We write to object to plaintiffs' invocation of privilege generally and to address certain deficiencies in Ransom's Privilege Log, particularly in light of Judge Torres's June 27, 2007 Memorandum and Order in *Corvello v. New England Gas Co.*, which is reported at 243 F.R.D. 28 (D.R.I. 2007). For the reasons set forth below, the documents identified on the Ransom Privilege Log are not privileged and, in any event, the Ransom Privilege Log fails to satisfy plaintiffs' burden in asserting a claim of privilege. Plaintiffs must either (i) produce the documents listed therein or (ii) provide authority to support their contention that the documents are privileged and amend the Ransom Privilege Log to cure its deficiencies. If plaintiffs fail to produce the Ransom documents or amend their log, NEGasCo will move to compel the production of the documents listed on the Ransom Privilege Log.

The Ransom Documents Are Not Privileged

As you know, Nixon Peabody (and Ransom) were retained by Janice Carroll and the Simpson Estate to assist with their lobbying efforts directed toward RIDEM concerning the Moratorium. All but one of the documents on the Ransom Privilege Log were created in connection with Nixon Peabody's representation of Janice Carroll and the Simpson Estate, and well in advance of the commencement of this lawsuit.[1] Under these circumstances, neither the work product doctrine nor the attorney client privilege protects these documents from disclosure.

The work product doctrine is intended to protect the role an attorney plays in the adversarial process. Under *Fed. R. Civ. Pro.* 26(b)(3), a claim for work-product protection must be based on the fact that the documents in question were prepared "in anticipation of litigation." In deciding whether such a protection applies, the First Circuit has adopted the "because of" test, which requires a court to inquire "whether the document was prepared or obtained 'because of' the prospect of litigation." *See United States v. Textron Inc.*, 2007 U.S. Dist. LEXIS 63921, at *25 (D.R.I. Aug. 29, 2007) (Torres, J.) (citation omitted).

With the exception of REC 1665-1665A, the remaining documents for which plaintiffs seek to invoke the work product protection were created in connection with Nixon Peabody's lobbying efforts for the benefit of Janice Carroll and the Simpson Estate. *See* REC 54, REC 55, REC 63, REC 64, REC 65, REC 508-553, REC 554-616, REC 773, REC 1666-1666A, REC 1667, REC 1668-1668A, REC 1672-1674, REC 1675-1686, REC 1687-1689, REC 1690-1694, REC 1695-1696, REC 1697-1698, REC 1702, REC 1702 [sic]-1705, REC 1706-1717, REC 1717-1722, REC 1723-1725, REC 1887-1891, REC 1892-1902, REC 1903-1904, REC 1905, REC 1906, REC 1907, REC 1908, REC 1909, REC 1911-1912, REC 1913-1917, REC 1908, REC 1920-1921, REC 1928, REC 1948-1956. Accordingly, the protection of the work product doctrine does not apply where, as here, the services rendered by Nixon Peabody were not provided in the context of an adversarial proceeding. Even plaintiffs cannot dispute that Carolyn Kaplan, the Nixon Peabody lawyer who represented Janice Carroll and the Simpson Estate, was acting principally as a lobbyist and not primarily as a lawyer in connection with the services she provided to Janice Carroll and the Simpson Estate.

Similarly, there is no basis for plaintiffs to invoke the attorney client privilege. Information obtained at Ms. Kaplan's request or conveyed to her for the purpose of helping her to fulfill her role as a lobbyist does not become privileged by virtue of the fact that she is a lawyer and might also have given legal advice to Janice Carroll, including on matters that are the subject of her lobbying efforts.

Moreover, even if there existed a basis for withholding these documents, which we submit there is not, that privilege was waived when Ransom disclosed its findings (which

[1] For example, document REC 64 is dated June 1918, some 87 years before this lawsuit was commenced.

presumably included its review of the history of the Simpson properties, public records, and on site inspections along with its communications with Janice Carroll and her counsel) to a third-party, RIDEM. According to an October 10, 2005 letter from Janice Carroll to Louise Durfee, Tiverton Town Council Member, "representatives of Ransom were in regular verbal and written contact with the Rhode Island Department of Environmental Management (RIDEM)" and met with RIDEM on February 25, 2004 and on April 2, 2004, to disclose Ransom's research and information concerning the Simpson properties. *See* REC 00050-00053. This information was also made available to Louise Durfee for her review. *Id.* Accordingly, even if the documents in question were privileged, that privileged was waived by plaintiffs' deliberate disclosure to a third party. Thus, there is absolutely no basis for withholding the Ransom documents on the ground that they are protected by the work product or attorney-client privileges, and plaintiffs must immediately produce the documents set forth on the Ransom Privilege Log.

<u>Even If The Ransom Documents Were Privileged, Plaintiffs Fail To Meet Their Burden</u>

In his Memorandum and Order, Judge Torres clearly sets forth the burden imposed on a party seeking to maintain an assertion of privilege through the use of a privilege log. As Judge Torres makes clear, a privilege log must contain "meaningful information regarding the contents of the documents or the purposes for which they were prepared." *See Corvello v. New England Gas Co.*, 243 F.R.D. at 35-36. For the reasons set forth below, the Ransom Privilege Log fails to satisfy plaintiffs' burden in asserting a claim of privilege.

First, the Ransom Privilege Log does not include adequate detail to determine if the assertion of privilege is appropriate. Many entries fail to identify (i) the author and the recipient, (ii) the purpose underlying the preparation of the document or (iii) why the document satisfies the privilege. *See* 6-26 *Moore's Federal Practice - Civil* § 26.90 (A log must contain "[t]he name(s) of the person(s) who prepared the document, [t]he person to whom the document was directed, or for whom it was prepared, [t]he purpose for preparing the document or communication, [t]he privilege or privileges asserted for the document or communication, and [h]ow the document or communication satisfies the asserted privilege or privileges.") At the most fundamental level, the log must contain sufficient information for the reviewer to ascertain the nature of the privilege. Here, the Ransom Privilege Log is replete with descriptions such as "Handwritten notes . . . re: Moratorium Area" unaccompanied by any explanation as to why the documents are privileged. A claim of privilege cannot be sustained if the log is incomplete.

Second, plaintiffs have no grounds for seeking to withhold as work product every document that contains handwritten notes, and no basis for seeking to protect the handwritten notes themselves from disclosure. *See* REC 55, REC 63, REC 508-533, REC 554-616, REC 1666-1666A, REC 1667, REC 1690-1694, REC 1695-1696, REC 1697-1698, REC 1702, REC 1702-1705, REC 1706-1717, REC 1717-1722, REC 1723-1724, REC 1887-1891, REC 1892-1902, REC 1903-1904, REC 1905, REC 1906, REC 1907, REC 1908, REC 1909, REC 1911-1912, REC 1948-1956. Even if the entries accompanying these documents were sufficient, and

we submit they are not, the handwritten notes contained therein must have been made "in anticipation of litigation" to be protected. Assuming, *arguendo*, that plaintiffs can satisfy this burden, the proper procedure is for the documents to be produced with the notes redacted[2]. *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986) ("[t]o the extent that one or more of the disputed documents is subject only in part to [a claim of privilege] appropriate redaction should be made [] and production of the unprivileged portion should follow").

Similarly, the entries for documents REC 54, REC 1723-1725 and REC 1887-1891 must fail. Document REC 54 is a diagram of certain Simpson properties that was prepared by the Gilbert Silva Company. There is no indication that this document was prepared in anticipation of this litigation or at the request of counsel. Documents REC 1723-1725 and REC 1887-1891 are summaries of public meetings or conversations with third parties that were prepared by a Ransom representative. Plaintiffs have no basis for seeking to protect these documents from disclosure on the ground that they are protected by the work product privilege.

Third, with respect to those documents for which plaintiffs assert the attorney-client privilege, there is no evidence that legal advice is either being given or sought with respect to many of the entries. *See* REC 1665-1665A, REC 1668-1668A, REC 1672-1674, REC 1675-1686, REC 1687-1689, REC 1695-1696, REC 1697-1698, REC 1699, REC 1700, REC 1706-1717, REC 1717-1722, REC 1885-1886, REC 1903-1904, REC 1905, REC 1906, REC 1910, REC 1913-1917, REC 1908, REC 1920-1921, REC 1925-1927, REC 1929-1932, REC 1933-1934, REC 1935, REC 1936-1938, REC 1939, REC 1940, REC 1942-1943, REC 1944-1945, REC 1946-1947, REC 1957, REC 1958, REC 1959, REC 1960, 1961, REC 1962-1965. Again, Judge Torres's opinion in *United States v. Textron Inc.*, *supra*, is instructive wherein he observes that "[t]he attorney-client privilege protects confidential communications between an attorney and client relating to *legal advice sought from the attorney.*" *See United States v. Textron Inc.*, *supra*, at *14-15 (citation omitted) (emphasis added). As Judge Torres cautioned, the privilege should not be invoked broadly, as the withholding of relevant material "hamper[s] the search for truth by preventing the disclosure of relevant evidence." *Id.* at 15.

Plaintiffs have also wrongfully invoked the attorney client privilege in an attempt to protect documents authored, in part, by a third party. *See* REC 1913-1917 (RIDEM is identified as an author). *See Corvello v. New England Gas Co.*, 243 F.R.D. at 36 ("Other documents for which an attorney-client privilege has been claimed are listed as having been prepared by and distributed to individuals who are not attorneys [] or distributed to parties outside of [the attorney-client relationship] with no explanation of why they would qualify for any privilege.")

[2] Likewise, plaintiffs should be required to produce in redacted form all documents that they have withheld on the basis of the attorney-client privilege where the document is responsive and would have been produced but for the presence of a handwritten note.

Fourth, there appear to be multiple entries for the same documents. For example, REC 1702 is listed twice with two different dates and descriptions as is REC 1908.

Finally, and separate and apart from the foregoing objections to the Ransom Privilege Log, we are still missing documents REC 240, REC 506, REC 632, REC 751-752, REC 774-778, REC 1701 and REC 1918-1919 and have yet to receive non-corrupt versions of numerous GeoInsight documents which we requested in September of 2007. Despite our numerous attempts to resolve these deficiencies without court intervention, neither you nor your associate, Mr. Orent, have responded to our emails and phone messages concerning these issues. In addition, we have yet to receive a privilege log for the GeoInsight documents, notwithstanding that these documents have been in your possession for some seven months.

* * *

Accordingly, NEGasCo submits that the documents listed on the Ransom Privilege Log are not privileged and should be produced to NEGasCo. If plaintiffs disagree, plaintiffs must immediately provide authority for their position, revise their privilege log to cure the deficiencies identified herein and produce any documents that, after reconsideration, are not protected by any valid assertion of privilege. If plaintiffs fail to produce the documents in question or amend their log within one week, NEGasCo will challenge plaintiffs' assertion of privilege as set forth in the Ransom Privilege Log by motion to compel the production of the documents identified therein.

Sincerely,

Noelle Kowalczyk

cc: Jonathan Orent, Esq. (Via Email)
Mark W. Roberts, Esq. (Via Email)