UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al. | C.A. No. 05-0221T (Lead Case)<br>(Related and Consolidated Cases: 05-274T; 05-370T; 05-522T) |

**DEFENDANT NEW ENGLAND GAS COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant New England Gas Company ("NEGC"), hereby moves, pursuant to Fed. R. Civ. P. 56, for summary judgment with respect to plaintiffs' complaints in these consolidated cases.[1] The grounds of NEGC's motion are set forth in its accompanying Statement of Undisputed Material Facts and supporting memorandum of law.

Dated: March 26, 2008

**ADLER POLLOCK & SHEEHAN P.C.**

By: */s/ David A . Wollin*
John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (fax)

[1] NEGC's motion for summary judgment applies to the above-captioned case as well as the consolidated cases of *Kevin Burns, et al. v. New England Gas Co.* (C.A. No. 05-274T), *Sheila Reis, et al. v. Southern Union Co.* (C.A. No. 05-522T), and *Colleen Bigelow, et al. v. New England Gas Co.* (C.A. No. 05-370T).

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Noelle Kowalczyk
Seth Davis
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

-and-

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2008, I did send a true copy of the within Motion for Summary Judgment and supporting Memorandum of Law by *electronic means (ECF)* to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Jeanne M. Scott<br>Ursillo, Teitz & Ritch, Ltd<br>2 Williams Street<br>Providence, RI 02903 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Benik & Associates<br>931 Jefferson Blvd., Suite 2008<br>Warwick, RI 02886 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>McGivney & Kluger, P.C<br>One State Street<br>Suite 800<br>Boston, Massachusetts, 02109 |
| Jeffrey Bromme<br>Arnold & Porter LLP<br>555 Twelfth Street, N.W.<br>Washington, DC 20004-1206 | Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White, Incorporated<br>20 Washington Place<br>Providence, RI 02903 |

| | |
|---|---|
| Anthony F. Muri<br>Muri Associates LLC<br>10 Weybosset Street<br>Providence, RI 02903 | William D. Wick<br>Wactor & Wick LLP<br>180 Grand Avenue<br>Suite 950<br>Oakland, CA 94612 |
| Christopher P. McCormack<br>Pullman & Comley LLC<br>850 Main Street<br>Bridgeport, CT 06601 | Matthew B. Kirsner<br>Andrew G. Mauck<br>Troutman Sanders, LLP<br>P.O. Box 1122<br>1001 Haxall Point<br>Richmond, VA 23208 |
| Kerry T. Ryan<br>Emily C. Shanahan<br>Tarlow, Breed, Hart & Rodgers P.C.<br>101 Huntington Avenue<br>Prudential Center<br>Suite 500<br>Boston, MA 02199 | Andrew G. Mauck<br>Troutman Sanders LLP<br>P.O. Box 1122<br>1001 Haxall Point<br>Richmond, VA 23208 |
| David B. Willis<br>Legal Management Services LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 | |

/s/ *David A. Wollin*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al. | C.A. No. 05-0221T (Lead Case)<br>(Related and Consolidated Cases:<br>05-274T; 05-370T; 05-522T) |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant New England Gas Company ("NEGC") submits this memorandum of law in support of its motion for summary judgment with respect to plaintiffs' complaints in these consolidated cases.[1]

## UNDISPUTED MATERIAL FACTS

NEGC incorporates by reference its separate Statement of Undisputed Material Facts, which is limited to facts germane to this summary judgment motion.

## ARGUMENT

Under Fed. R. Civ. P. 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Initially, the summary judgment burden requires the

[1] NEGC's motion for summary judgment applies to the above-captioned case as well as the consolidated cases of *Kevin Burns, et al. v. New England Gas Co.* (C.A. No. 05-274T), *Sheila Reis, et al. v. Southern Union Co.* (C.A. No. 05-522T), and *Colleen Bigelow, et al. v. New England Gas Co.* (C.A. No. 05-370T).

moving party to show "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). Then the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that demonstrate a genuine trialworthy issue remains. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). An issue of fact is "material" "only when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir. 1996). When deciding a summary judgment motion, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Cadle Co.*, 116 F.3d at 959. For the reasons discussed below, NEGC is entitled to summary judgment on plaintiffs' claims.

## I. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

All of plaintiffs' claims are barred by Rhode Island's ten-year statute of limitations. R.I. Gen. Laws § 9-1-13(a). In Rhode Island, the general rule is that a cause of action accrues at the time of injury. *Anthony v. Abbott Lab.*, 490 A.2d 43, 45 (R.I. 1985). Here, the alleged injury occurred many decades ago. The statute of limitations began to run for all of plaintiffs' claims when material from FRGC was allegedly disposed of -- primarily in the 1930's, but certainly by 1970 at the latest. (Statement of Undisputed Facts at ¶ 5; Corvello Second Amended Compl. at ¶¶ 16, 17; Reis Amended Compl. at ¶¶ 28, 30). *New York v. Moulds Holding Corp.*, 196 F. Supp.2d 210, 220 (N.D.N.Y. 2002) (holding that the statute of limitations began to run for public nuisance claim when corporation had allegedly dumped hazardous wastes and damaged land, and claim was therefore time barred three years later).

Plaintiffs cannot save their claim by reliance on a "discovery rule." The Rhode Island Supreme Court has confined the discovery rule to claims involving medical malpractice, drug

product liability and improvements to real estate. *Mills v. Para-Chem*, CA 04-393S, 2005 U.S. Dist. LEXIS 8202, at *11-12 (D.R.I. April 11, 2005); *see also Hill v. Rhode Island State Employees Ret. Bd.*, 935 A.2d 608, 616 (R.I. 2007) (noting that the discovery rule has been applied in certain limited contexts); *Martin v. Howard*, 784 A.2d 291, 299 (R.I. 2001) (same); *Lee v. Morin*, 469 A.2d 358, 360 (R.I. 1983) (applying discovery rule to claim involving construction of a house). The Rhode Island Supreme Court has never adopted a discovery rule that is applicable to the claims in this case. This Court should not, in a diversity case, create new law that eliminates the repose provided by the statute of limitations.

## II. THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR NEGC ON PLAINTIFFS' STRICT LIABILITY CLAIMS

NEGC is entitled to summary judgment on the plaintiffs' strict liability claims. Under Rhode Island law, a defendant who knowingly engages in abnormally dangerous activities or causes an abnormally dangerous condition to exist may be held liable for any resulting harm to persons or property even if the defendant exercised reasonable care. *Corvello v. New England Gas Co.*, 460 F. Supp.2d 314, 321 (D.R.I. 2006) (relying on Restatement (Second) of Torts § 519(1) (1977)). The focus is on ultra-hazardous or abnormally dangerous *activities* and not ultra-hazardous or abnormally dangerous *materials*. *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 465-66 (R.I. 1996). As this Court noted, "[t]he mere fact that an activity involves an ultra-hazardous or abnormally dangerous substance is not, by itself, sufficient to trigger strict liability." *Corvello*, 460 F. Supp.2d at 322. "'[I]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable.'" *Id*. (quoting *Splendorio*, 682 A.2d at 466). "Generally, '[a]n activity is not abnormally dangerous if the risks therefrom could be limited by the exercise of reasonable care.'" *Id*. *See Toledo v. Van Waters &*

*Rogers, Inc.*, 92 F. Supp.2d 44, 56 (D.R.I. 2000) ("courts have focused on whether the risk involved could be reduced through the exercise of reasonable care").

Based on the forgoing principles and the undisputed record, plaintiffs' strict liability claims fail. Before the advent of natural gas as a fuel source, NEGC's predecessor, the Fall River Gas Company ("FRGC"), a regulated Massachusetts public utility, provided manufactured gas to its customers. (Statement of Undisputed Facts at ¶¶ 1, 2.) As alleged by plaintiffs, the "activity" in question is the disposal of waste from FRGC's manufactured gas process. (Corvello Second Amended Complaint at ¶¶ 1, 16, 17; Reis Amended Complaint at ¶ 1, 28, 30.) Plaintiffs' manufactured gas plant historian and expert witness, Eric Suuberg, testified that consistent with the practice reflected in FRGC's historical records, manufactured gas plants throughout the country routinely and customarily disposed of byproducts of the manufactured gas process which had little or no commercial value by having that material deposited in dumps. (Statement of Undisputed Facts at ¶ 3.) Thus, by plaintiffs' own admission, there is no dispute that the placement of such waste in dumps was an appropriate means of disposing of such waste. Accordingly, the risks associated with this waste could be limited by the exercise of reasonable care -- through the safe disposal of such wastes in a dump.

A case on point, which this Court relied upon, is *Splendorio*, where the Rhode Island Supreme Court upheld the entry of summary judgment in favor of a company hired to develop an abatement plan for any asbestos found in buildings being demolished. The plaintiffs claimed that asbestos in the debris removed from the site contaminated their property and that the defendant, as the architect of the plan, was strictly liable. However, the Rhode Island Supreme Court ruled that, even though asbestos may be an abnormally dangerous substance, strict liability did not apply because the task performed by the defendant was not inherently dangerous and its

"value to the community . . . far outweighed its dangerous attributes." *Splendorio*, 682 A.2d at 466. Here, too, there can be no dispute that the disposal of byproducts of FRGC's manufactured gas plant operations could be safely accomplished and was not abnormally dangerous.[2] The risks, particularly compared to the societal benefit of producing energy, could, and were, limited by the exercise of reasonable care -- here, contracting with a hauler to dispose of the waste material in a dump. *See Toledo,* 92 F. Supp.2d at 55-57 (under Rhode Island law, the transportation of barrels containing nitric and sulfuric acid was not in and of itself abnormally dangerous so as to warrant strict liability because such activity is routinely performed safely when parties exercise reasonable care).

No Rhode Island court has ever held that the disposal of hazardous waste is an abnormally dangerous activity warranting the imposition of strict liability. Other courts have specifically held that such an activity is *not* abnormally dangerous. For example, in *Bernbach v. Timex Corp.*, 989 F. Supp. 403, 407 (D. Conn. 1996), the court dismissed, for failure to state a cause of action, strict liability claims based on soil and groundwater contamination resulting from a manufacturing facility's disposal of various hazardous substances, where plaintiffs failed to allege "circumstances and conditions in [defendant's] activities such that, irrespective of due care, the activities involve a risk of probable injury to such a degree that [they] fairly can be said to be intrinsically dangerous." (internal quotations omitted). *See also Schwartzman, Inc. v. Gen. Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993) (granting motion to dismiss strict liability claim based on disposal of petroleum products and other hazardous wastes; despite the fact that such materials "may present a substantial degree of risk to persons or property when mishandled," the

[2] The burden of coming forward with facts sufficient to support a theory of strict liability based on abnormally dangerous activities rests with the proponent of the claim. *Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp.2d 1255, 1260 (W.D. Mo. 2001).

court held that "the risks can be eliminated through the exercise of reasonable care"); *Marmo v. IBP, Inc.*, 362 F. Supp.2d 1129, 1134 (D. Neb. 2005) (operation of a wastewater treatment facility generating hydrogen sulfide was not an abnormally dangerous activity because the risk of harm associated with its emissions could be controlled with due care); *Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp.2d 1255, 1261 (W.D. Mo. 2001) (dismissing strict liability claim where neither the operation of a petroleum pipeline nor the use of cathodic protection was an abnormally dangerous activity as a matter of law because they are activities that can be performed safely); *Arlington Forest Assoc. v. Exxon Corp.*, 774 F. Supp. 387, 390 (E.D. Va. 1991) (storage and removal of gasoline in underground tanks not abnormally dangerous because it could be made safe through the exercise of reasonable care).

Accordingly, the disposal of waste from a manufactured gas plant facility is not an abnormally dangerous activity because the risks could be limited by the exercise of reasonable care. The Court should therefore enter summary judgment for NEGC and against plaintiffs on their strict liability claims.

## III. NEGC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS

NEGC is also entitled to summary judgment on the plaintiffs' public nuisance claims. In order to prevail on their public nuisance claim under Rhode Island law, plaintiffs must establish that NEGC unreasonably interfered with a "right common to the general public" and that they sustained "special damages" as a result of the interference. *Corvello*, 460 F. Supp.2d at 324. "A right 'common to the general public' is a collective right that is shared by everyone in the community." *Id*. at 324. "It differs from a right that is possessed only by certain individual members of the public." *Id*. "[T]he fact that a condition interferes with the private rights of a substantial number of individuals does not, by itself, make it a public nuisance." *Id*. As this

Court noted, the distinction is illustrated by Prosser's example of a polluted stream: "The pollution would be a private nuisance if it interferes only with the use and enjoyment of property belonging to a number of riparian owners but it would be a public nuisance if it kills all of the fish, thereby depriving the public of the right to fish in the stream." *Id*. at 324-25 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 90, at 645 (5th ed. 1984)). Thus, a public nuisance is something that substantially and unreasonably interferes with the use of a public place or the activities of an entire community. Plaintiffs cannot meet this standard for several independent reasons.

### A. **<u>There Has Been No Interference With A Right Common To The General Public</u>**

First, NEGC has not interfered with a right common to the general public. Plaintiffs do not allege any interference with rights common to the general public such as the right to fish in a stream or to use the public roads, which is an essential element of any public nuisance claim. *Iafrate v. Ramsden*, 190 A.2d 473, 476-77 (R.I. 1963). Though plaintiffs allege in passing that contaminated fill may have been deposited under certain of Tiverton's roads, plaintiffs do *not* claim any limitation in their use of the public roads, nor do they claim any special damages arising from any such limitation in such use. Rather, plaintiffs seek relief only for the impact of soil contamination on *their own properties*.[3] (Corvello Second Amended Complaint at ¶¶ 1, 2, 16, 17; Reis Amended Complaint at ¶¶ 1, 3-9, 28, 30.) Accordingly, plaintiffs have no claim for public nuisance in this case. *Iafrate*, 190 A.2d at 476-77. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985) (overturning jury verdict and dismissing public nuisance claim where the property owner was not harmed "in any way by the pollution of [the] waters" but "specially harmed only in the exercise of its private property rights"); *Jersey City*

---

[3] In fact, that is the only way plaintiffs could attempt to allege the special damages necessary for them to assert a public nuisance claim.

*Redevel. Auth. v. PPG Indus.*, 665 F. Supp. 1257, 1265-66 (D.N.J. 1987) (dismissing on summary judgment property owners' public nuisance claim for contaminated fill, finding that the presence of the fill on their land was not "damages suffered in the exercise of a right common to the general public"; "[i]n order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public *exercising the right common to the general public that was the subject of the interference*") (citing Restatement (Second) of Torts § 821(C)(1))(emphasis in original); *Hanlin Group, Inc. v. Int'l Minerals & Chem. Corp.*, 759 F. Supp. 925, 936 (D. Me. 1990) (granting summary judgment dismissing public nuisance claim). For this reason alone, plaintiffs' public nuisance claim should be dismissed.

Second, there is no claim for public nuisance where the alleged impact is only to a subset of privately owned properties in a limited geographic area. (Statement of Undisputed Facts at ¶ 15.) As this Court noted, "the fact that a condition interferes with the private rights of a substantial number of individuals does not, by itself, make it a public nuisance." *Corvello*, 460 F. Supp.2d at 324 (citing *Iafrate v. Ramsden*, 96 R.I. 216, 222, 190 A.2d 473 (R.I. 1963)). In *Iafrate*, the Rhode Island Supreme Court noted that the injury suffered by plaintiffs caused by the collapse of a wall located on city-owned property "affected only persons on the city's premises, not the general public." *Iafrate*, 96 R.I. at 222. "[T]he nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." *Id*. Here, the alleged "affected interest" is a private interest in private property. The allegation that the private interests of a number of privately-owned residences in a limited part of Tiverton are affected does not establish a right common to the general public or convert this private injury into a

public nuisance. The critical inquiry is the nature of the interest affected, not the number of individuals affected.

Third, the so-called moratorium on building and excavation does not transform private rights into a right common to the general public. Actions by a local government on behalf of private interests cannot change the underlying nature of the common law claim. Here, the Tiverton Town Council's decision to impose the moratorium -- whether unreasonable or unwise -- cannot convert plaintiffs' private claims into a public nuisance. The moratorium is a form of government imposed police power action and, as such, it cannot serve as the gravamen for a public nuisance claim. *See, e.g., Ace Tire Co. v. Waterville*, 302 A.2d 90, 98 (Me. Sup. 1973) ( "[w]hat is not in fact a nuisance cannot be conclusively made so by mere legislative declaration. The final determination of the legal question remains for the courts"; "whether any particular type of business endeavor so injuriously affects the public good as to mandate legislative regulation as a nuisance through the exercise of the police power is, in the first instance, a question for the judgment of the law-making branch of the government, but its final determination . . . is for the courts").

### B. <u>FRGC Did Not Control The Nuisance At The Time Of The Alleged Harm</u>

Another critical requirement of a public nuisance lacking in this case is that of control. A defendant is not liable in public nuisance unless he or she controls the offending instrumentality at the time the harm occurs. This fundamental concept in nuisance law is confirmed in *Citizens for Preservation of Waterman Lake v. Davis*, 420 A.2d 53, 59-60 (R.I. 1980), where the Rhode Island Supreme Court affirmed the dismissal of a public nuisance action against an operator of a commercial dump based on the noise of trucks traveling to and from the site. The flaw in the claim was that the plaintiffs "failed to produce any evidence directly bearing on the amount of

noise created by trucks *under [defendant's] control*." (emphasis added). *See also Friends of the Sakonnet v. Dutra*, 738 F. Supp. 623, 633-34 (D.R.I. 1990) ("[t]he paramount question is whether the defendant was in control of the instrumentality alleged to have created the nuisance when the damage occurred."); *Friends of the Sakonnet v. Dutra*, 749 F. Supp. 381, 395 (D. R.I. 1990) ("[o]ne who controls a nuisance is liable for damages caused by that nuisance.").

In this case, plaintiffs' expert witness Suuberg has testified that FRGC contracted with a waste hauler -- Simpson -- to remove waste material from FRGC's plant to the dump. (*See* Eric Suuberg Depo. Tr. at pp. 210:16-22, 213: 3-214:11.) If after Simpson's trucks left FRGC's plant any harm occurred because Simpson mishandled the material or sold it as fill, FRGC did not have control over these activities and is not responsible for their consequences. *See City of Bloomington, Indiana v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (the absence of a manufacturer's control over a product at the time the nuisance is created is fatal to any nuisance claim); *Traube v. Freund*, 775 N.E.2d 212, 216 (Ill. App. 2002) (same).

## IV. NEGC CANNOT BE LIABLE TO PLAINTIFFS WHOSE PROPERTIES HAVE NO CONTAMINATION

Plaintiffs claim that FRGC's actions resulted in the contamination of each of their respective properties, causing them injury. However, fully 31 plaintiffs have no proof of any kind that their soil is contaminated, requiring dismissal of their claims as a matter of law. *See Adams v. Star Enter.*, 51 F.3d 417, 423 (4th Cir. 1995) (absent impact on property from oil spill, plaintiffs had no nuisance and negligence claims against oil facility operators); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (absent impact on property from waste, plaintiffs lacked negligence and public nuisance action against waste manufacturers); *Rose v. Union Oil Co.*, No. C 97-3808 FMS, 1999 WL 51819, at *6-7 (N.D. Cal. Feb. 1, 1999) (plaintiffs had no negligence and public nuisance claims when they failed to show that levels of

contamination on their property are a risk to health). A list of those plaintiffs and their respective properties is set forth in the Statement of Undisputed Facts at ¶ 15. NEGC is entitled to summary judgment as against each of those plaintiffs as a matter of law.

## V. PLAINTIFFS' PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW

The claim for punitive damages asserted by plaintiffs fails for the following reasons. First, plaintiffs cannot meet their burden of producing evidence that FRGC engaged in conduct of such willfulness, recklessness or wickedness as amounts to criminality. *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993).[4] FRGC generated certain byproducts of the manufactured gas process and retained a reputable contracting and trucking firm to deliver some of those byproducts to a dump. This conduct was entirely lawful and appropriate. Simply put, there is no evidence that FRGC intended to inflict any harm on anyone, at any time.

Second, there is no evidence that FRGC ever intended to harm *these Plaintiffs*. *See Corvello*, 460 F. Supp.2d at 326-27 (intentional infliction of emotional distress requires that the defendants acted with requisite intent to cause emotional distress to these plaintiffs). As this Court noted, "[i]t is well established that intent to cause emotional distress cannot exist in the abstract and, *like any other intentional tort*, it requires a victim who is the object of the defendant's intentional act." *Id*. at 326 (emphasis added). Here, since none of the plaintiffs owned any of their properties at the time of the waste generation and alleged dumping, there can be no intent to harm these plaintiffs.

---

[4] Punitive damages are awarded only in the "rare" circumstances when a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. *Palmisano*, 624 A.2d at 318. Merely reckless conduct that is not malicious, wanton or willful is insufficient to support a claim for punitive damages. *Regan v. Cherry Corp.*, 706 F. Supp. 145, 153 (D.R.I. 1989).

Third, punitive damages are improper here because, as the United States Supreme Court has held, a state does not have "a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). Indeed, a jury must be instructed that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred. *Id.* at 422. Here, all the activities at issue involving FRGC occurred in Massachusetts, not Rhode Island. There is no evidence that any activity of FRGC was unlawful at the time, nor do plaintiffs make any such allegation. Yet, it is that out-of-state conduct for which plaintiffs are seeking to hold FRGC liable for punitive damages. That is inconsistent with *State Farm* and is not a permissible basis for imposing punitive damages.

Fourth, there has been no "intentional" invasion by FRGC onto plaintiffs' property. *See, e.g.*, Restatement (Second) of Torts § 825, Illustration 3 (migration of waste from one area to another insufficient to establish an intentional invasion).

## CONCLUSION

For the reasons stated, NEGC respectfully requests that the Court grant summary judgment dismissing plaintiffs' complaints in their entirety.

Dated: March 26, 2008

Respectfully submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

By: */s/ David A. Wollin*
John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (fax)

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
1633 Broadway
New York, New York 10019
(212) 506-1700

**BISHOP, LONDON & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

-and-

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant New England Gas Company, an unincorporated division of Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2008, I did send a true copy of the within Motion for Summary Judgment and supporting Memorandum of Law by *electronic means (ECF)* to the following:

| | |
|---|---|
| Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Jonathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109 | Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601 |
| Jeanne M. Scott<br>Ursillo, Teitz & Ritch, Ltd<br>2 Williams Street<br>Providence, RI 02903 | Brian R. Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914 |
| Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842 | Richard J. Zabbo, Esq.<br>Ratcliffe Burke Harten & Elias LLP<br>160 Financial Plaza<br>Providence, RI 02903 |
| Gregory L. Benik<br>Benik & Associates<br>931 Jefferson Blvd., Suite 2008<br>Warwick, RI 02886 | Paul M. Sanford<br>Burns & Levinson LLP<br>One Citizens Plaza<br>Suite 1100<br>Providence, RI 02903 |
| David A. Crichlow<br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, NY 10036 | Craig Waksler<br>McGivney & Kluger, P.C<br>One State Street<br>Suite 800<br>Boston, Massachusetts, 02109 |
| Jeffrey Bromme<br>Arnold & Porter LLP<br>555 Twelfth Street, N.W.<br>Washington, DC 20004-1206 | Benjamin V. White, III<br>Kimberly A. Simpson<br>Vetter & White, Incorporated<br>20 Washington Place<br>Providence, RI 02903 |

| | |
|---|---|
| Anthony F. Muri<br>Muri Associates LLC<br>10 Weybosset Street<br>Providence, RI 02903 | William D. Wick<br>Wactor & Wick LLP<br>180 Grand Avenue<br>Suite 950<br>Oakland, CA 94612 |
| Christopher P. McCormack<br>Pullman & Comley LLC<br>850 Main Street<br>Bridgeport, CT 06601 | Matthew B. Kirsner<br>Andrew G. Mauck<br>Troutman Sanders, LLP<br>P.O. Box 1122<br>1001 Haxall Point<br>Richmond, VA 23208 |
| Kerry T. Ryan<br>Emily C. Shanahan<br>Tarlow, Breed, Hart & Rodgers P.C.<br>101 Huntington Avenue<br>Prudential Center<br>Suite 500<br>Boston, MA 02199 | Andrew G. Mauck<br>Troutman Sanders LLP<br>P.O. Box 1122<br>1001 Haxall Point<br>Richmond, VA 23208 |
| David B. Willis<br>Legal Management Services LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 | |

/s/ *David A. Wollin*

*449472_1.doc*