UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                                )
GAIL CORVELLO, et al.,          )
                                )
        Plaintiffs,             )
                                )
    v.                          )
                                )
NEW ENGLAND GAS COMPANY,        )
                                )
        Defendant and           )
        Third-Party Plaintiff,  )
                                )
    v.                          )   CA. No. 05-0221 S
                                )
BRIDGESTONE FIRESTONE NORTH     )
AMERICAN TIRE, LLC, BRIDGESTONE )
AMERICAS HOLDINGS, INC., and    )
HONEYWELL INTERNATIONAL, INC.,  )
                                )
        Third-Party Defendants. )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court are Third-Party Defendants' motions to dismiss, Third-Party Plaintiff's motion to amend, and a motion for leave to amend the complaint or substitute a party, which the Court had previously construed as incorporated into Third-Party Plaintiff's submissions in connection with its motions to dismiss. For the reasons set forth below, the last motion is granted and the rest are denied.

I.  BACKGROUND

In 2005, Gail Corvello and certain other owners of property in Tiverton, Rhode Island ("Plaintiffs") sued New England Gas Company ("NEGC") claiming that their properties were contaminated by coal gasification waste and other hazardous substances generated by manufactured gas plants owned and operated by a predecessor of NEGC.  In September 2007, while Plaintiffs' action against NEGC was pending, NEGC obtained leave to file a third-party complaint against other entities that it claimed were responsible for the alleged contamination.  These entities included Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.; and Honeywell International, Inc. (collectively "Third-Party Defendants").  In August 2009, Plaintiffs' action against NEGC was dismissed with prejudice, pursuant to a settlement agreement under which NEGC paid Plaintiffs $11.5 million.[1]  As part of the settlement agreement, Plaintiffs assigned all their claims relating to the alleged contamination, including those against Third-Party Defendants, to NEGC.  About a year later, in September 2010, NEGC filed an amended third-party complaint against Third-Party Defendants, waiving the direct claims assigned to it by Plaintiffs but requesting contribution or indemnification for

---

[1] Strictly speaking, the party entering into the settlement with Plaintiffs was "Southern Union Company including its division New England Gas Company."  (Settlement Agreement at 1.)

2

the settlement amount (plus costs).  Third-Party Defendants moved to dismiss the third-party action, arguing that NEGC is an improper party and that it failed to state a claim upon which relief can be granted.

II. DISCUSSION

    A.   The Proper Party

        1.   Procedural Posture

First, a few words on the procedural posture of this matter are in order.  In their motions to dismiss, Third-Party Defendants argued that the third-party complaint should be dismissed because NEGC lacks capacity to sue and is not a proper party to this action.  NEGC countered that it is the proper party and, even if it were not, "dismissal with prejudice would be wholly inappropriate," and the Court should grant leave to amend.  However, it did not actually move to amend at that time.  Although, strictly speaking, no motion for leave to amend or substitute a party was pending before the Court on Third-Party Defendants' motions to dismiss, the issue of whether such leave should be granted, if sought, was extensively briefed and argued by both parties in connection with those motions.  Therefore, the Court issued an order construing NEGC's submissions in connection with the motions to dismiss as containing a motion to amend or substitute.  (Order, Mar. 21, 2011, ECF No. 964.)  The Court then offered Third-Party Defendants an opportunity to

3

oppose the (construed) motion to amend or substitute. (Id.)
They have done so, and the issue is now ripe for consideration.

2.  The Proper Party

In its third-party complaint and throughout this
litigation, NEGC has identified itself as "an unincorporated
division of the Southern Union Company."  Third-Party Defendants
urge dismissal of the third-party action because an
unincorporated entity lacks the capacity to sue under Rhode
Island law.[2]  See Corrente v. R.I. Dep't of Corrs., 759 F. Supp.
73, 80 (D.R.I. 1991) ("It is clear that an 'unincorporated party
is not a proper party in a law suit under the law of Rhode
Island.'") (quoting Walsh v. Israel Couture Post, No. 2274, 542
A.2d 1094, 1095 n.1 (R.I. 1988)).  Third-Party Defendants add
that, since it was Southern Union Company ("Southern Union"),
not NEGC, that entered into the settlement with Plaintiffs and
paid them the $11.5 million, NEGC has suffered no "injury in
fact" and therefore lacks standing to sue to recover the moneys
paid pursuant to the settlement.  See Friends of the Earth, Inc.
v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 180-81
(2000) (holding that, under Article III of the Constitution, a
party does not have standing to sue unless it can demonstrate
(1) an injury in fact, that (2) is fairly traceable to

_____
[2] The parties assume that the question of NEGC's capacity to
sue is governed by Rhode Island law, see Fed. R. Civ. P. 17(b)(3),
and the Court proceeds on that basis.

4

defendant's challenged conduct, that (3) is likely to be redressed by the requested relief).

NEGC counters that it is the proper party to this suit because "New England Gas Company" is the "fictitious business name" under which Southern Union has been authorized to transact business in Rhode Island, pursuant to R.I. Gen. Laws § 7-1.2-402. While the merit of NEGC's position is debatable, the Court need not address it. Even if NEGC lacks the capacity to sue, the use of this name is nothing more than a clerical misnomer which can be easily corrected by substituting "Southern Union Company" in place of "New England Gas Company." The Federal Rules of Civil Procedure explicitly provide for such corrections: Rule 15(a)(2) provides that a "court should freely give leave" to amend a pleading, and Rule 15(c)(1)(B) provides that an amendment "relates back" to the date of the original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." If an amendment changes a party's name, it should be allowed

> if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons
> and complaint, the party to be brought in by
> amendment:
>> (i)     received such notice of the action that it
>>     will not be prejudiced in defending on the
>>     merits; and
>> (ii)    knew or should have known that the action
>>     would have been brought against it, but for a
>>     mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).[3]  Likewise, Rule 17(a)(3) provides

that

> [t]he court may not dismiss an action for failure to
> prosecute in the name of the real party in interest
> until, after an objection, a reasonable time has been
> allowed for the real party in interest to ratify,
> join, or be substituted into the action.  After
> ratification, joinder, or substitution, the action
> proceeds as if it had been originally commenced by the
> real party in interest.

Fed. R. Civ. P. 17(a)(3).

Third-Party Defendants give no quarter in the face of this

simple solution; rather, they take their argument to a

metaphysical plane, claiming that, because NEGC lacks capacity

to sue, by the same token, it also lacks capacity to amend its

complaint.  They argue that, because standing is an irreducible

constitutional minimum under Article III, it cannot be altered,

nor can the Court's subject-matter jurisdiction be enlarged, by

the simple fiat of the Federal Rules of Civil Procedure.  Third-

Party Defendants insist that the only resolution that properly

respects these irrefutable principles is to dismiss this third-

party complaint and allow Southern Union to file another suit on

its own behalf.  Of course, while Third-Party Defendants clearly

care most about preserving the integrity of the time-honored

---

[3] Although the rule speaks to misnomer of defendants rather
than plaintiffs, "the attitude taken in revised Rule 15(c) toward
change of defendants extends by analogy to amendments changing
plaintiffs."  Fed. R. Civ. P. 15 advisory committee's note (citing
Fed. R. Civ. P. 17(a)).

principles of Article III standing, it just so happens that a newly filed, identical suit with a new caption likely would be time barred. (See Mem. Pursuant to Court Orders 9, ECF No. 971.)

The only problem with Third-Party Defendants' highly principled argument is that it runs counter to the letter of the Federal Rules, the spirit of notice pleading, and decades of federal jurisprudence. The relevant text of the Rules is quoted above; as for their spirit, the Advisory Committee Notes to Rule 15 clarify that relation-back under Rule 15(c) applies to "an amendment to correct a misnomer or misdescription" in naming a party. Fed. R. Civ. P. 15 advisory committee's note. Indeed, the relation-back rule "is intimately connected with the policy of the statute of limitations" and is designed to protect against a defendant's taking advantage of technical pleading errors to avoid the merits of an action of which it had ample notice--precisely what Third-Party Defendants attempt to do in this case. See id. When a defendant "was put on notice of the claim within the stated [limitations] period[,] . . . characterization of the amendment as a new proceeding is not responsive to the real[i]ty . . . and to deny relation back is to defeat unjustly the claimant's opportunity to prove his case." Id. Thus, a name-changing amendment arising out of conduct set out in the original pleading should be allowed to

relate back to the date of the original pleading, if the opposing party (a) had such notice of the claim within the applicable limitations period that it would not be prejudiced by defending the action and (b) knew or should have known who the proper party would be if there had been no mistake. Id. Both these conditions are clearly satisfied in this case: Third-Party Defendants have had notice of the third-party complaint for more than three years and will not be prejudiced by a simple change of name; and, but for the misnomer, Third-Party Defendants knew or should have known that Southern Union was the party bringing the claim against them.

Similarly, the spirit of Rule 17(a)(3) is to avoid the injustice of dismissal when the only pleading error is in naming the plaintiff. The provision was "added simply in the interests of justice" and "keeps pace" with "[m]odern decisions [that] are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed." Fed. R. Civ. P. 17 advisory committee's note. The misnomer in this case, if any, is nothing but an "honest mistake." As the Supreme Court has stated,

> [i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Foman v. Davis, 371 U.S. 178, 181-82 (1962) (internal citations and quotation marks omitted); accord Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2494 (2010).

There is a legion of cases in which federal courts have permitted amendment and relation-back of pleadings or substitution of parties without perceiving such technical fixes to offend the Constitution. See, e.g., Krupski, 130 S. Ct. at 2494 (permitting relation-back of amendment because the newly named defendant knew or should have known that it was the intended defendant of the original pleading, and holding that "[t]he reasonableness of the mistake is not itself at issue"); Interstate Litho Corp. v. Brown, 255 F.3d 19, 25-26 (1st Cir. 2001) (counseling leniency in permitting substitution, and allowing substitution of a party where the opposing party could demonstrate no prejudice resulting from it); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19-21 (2d Cir. 1997) (permitting substitution of plaintiffs and relation-back where the complaint would remain identical except for plaintiff's name, and holding that substitution "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants"). See generally 6A Charles Alan Wright et al., Federal Practice and Procedure § 1555 (collecting cases permitting substitution).

In response to this virtual gale of authority, Third-Party Defendants prop up an unreported decision from the Northern District of Ohio that held that the plaintiff's "lack of standing precludes him from amending the complaint to substitute new plaintiffs and join a new defendant [because] his lack of standing divests this Court of subject matter jurisdiction necessary to even consider such a motion." Zangara v. Travelers Indem. Co. of Am., No. 05CV731, 2006 Westlaw 825231, at *3 & n.7 (N.D. Ohio Mar. 30, 2006) (following Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528 (6th Cir. 2002)). But Zangara and Zurich are distinguishable because they involved attempts at party substitution that either would have dramatically altered the operative facts, Zangara, 2006 Westlaw 825231, at *3, or would have amounted to the substitution of "a totally separate entity, which was not vigilant in protecting its claims," intervening to "benefit from [the original plaintiff's] mistake so as to take advantage of the suspension of the limitations period." Zurich, 297 F.3d at 532. This case fits neither of those molds: the third-party action will remain identical except for the change in Third-Party Plaintiff's name,[4] and no

---

[4] Third-Party Defendants claim that "NEGC changed dramatically its theory of liability against third-party defendants . . . when it argued that third-party defendants are liable to it regardless of whether there was contamination on a particular property of a plaintiff or not." (Mot. Pursuant to Court Orders 8-9 (quotation marks and brackets omitted).) But this allegedly dramatic change occurred pursuant to a motion to amend filed on August 31, 2010--

bad faith or technical maneuvering by "a totally separate
entity" is involved.[5]  Rather, for all relevant purposes,
Southern Union and NEGC are one and the same.  In all ways but
in name, Southern Union has been a party to this suit from the
start, even undertaking to pay $11.5 million in settlement to
Plaintiffs.

Third-Party Plaintiff is granted leave to and shall file a
newly amended complaint adding Southern Union to the caption and
adding a sentence to the effect that all references to NEGC are
to NEGC and/or Southern Union.[6]  There shall be no other changes
in the amended complaint.[7]

---

to which Third-Party Defendants <u>assented</u> and which was accordingly
granted by text order.  (<u>See</u> ECF No. 939; Dkt. Entry for Sept. 10,
2010.)  It had nothing to do with the present motion to amend or
substitute.

[5] Third-Party Defendants have argued that "the decision to
name NEGC was a calculated, deliberate strategic choice" (Mem.
Pursuant to Court Orders 8); yet, they have offered no plausible
rationale for it, and, when the Court squarely posed the question
at oral argument, they had no response.  (<u>See</u> Hr'g Tr. on Mot. to
Dismiss 4-5, Jan. 28, 2011.)

[6] It makes no difference whether this change is effected
pursuant to Rule 15 or Rule 17 of the Federal Rules of Civil
Procedure.  Third-Party Defendants argue that "Rule 17 by its
terms does not provide that substitution of a party results in the
new third-party complaint relating back to the original pleading"
and state that "Rule 15 . . . is the only vehicle for a plaintiff
to amend the complaint [to name the proper party] after the
statute of limitations has run." (Mot. Pursuant to Court Orders 7
n.8 (citing 3 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶
15.19).)  But the very authority cited by Third-Party Defendants
proves this statement wrong:  "A real party in interest who has
been made a party to the action by joinder, ratification, or
substitution is deemed to have commenced the action.  For statutes
of limitations purposes, the presence of the real party relates

11

B.  Factual Allegations

Third-Party Defendants next argue that the third-party complaint must be dismissed because it does not allege sufficiently specific facts to establish a plausible entitlement to relief.  This argument can be easily dispatched.  On a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). This presumption applies only to factual allegations and not to legal conclusions, even if dressed up as facts.  Id.  The Supreme Court's most recent articulation of the pleading standard states:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007) (internal quotation marks omitted).

---

back to the date of the original pleading."  4 James Wm. Moore et al., Moore's Federal Practice ¶ 17.12 (discussing Rule 17).

[7] Of course, if Third-Party Plaintiff desires to make other changes to the complaint in the future, it shall proceed by the normal route of seeking leave to amend.

The third-party complaint, when stripped of legal conclusions and conclusory allegations, contains the following factual allegations against the Third-Party Defendants:

> 12. Upon information and belief, from 1937 until about 1971, third-party defendant Firestone operated a manufacturing plant in Fall River, Massachusetts (the "Fall River Facility") less than three miles from the Bay Street Area.
> 13. Upon information and belief, Firestone had a business relationship with John Simpson, Jr. and his sons, John K. Simpson and Alvin Simpson (collectively, the "Simpsons"), the owners and operators of one of the largest contracting, excavating and hauling businesses in the Tiverton/Fall River area during the relevant period.
> 14. Upon information and belief, wastes from the manufacturing processes at Firestone's Fall River Facility were deposited and/or distributed in the Bay Street Area by Firestone and/or the Simpsons, on Firestone's behalf.
> . . . .
> 16. Upon information and belief, Barrett, whose assets were acquired by third-party defendant Honeywell, manufactured a product called Tarvia.
> 17. Upon information and belief, Tarvia was made from coal tar and used to pave and maintain roadways at the turn of the 20th century and thereafter.
> 18. Upon information and belief, beginning in the 1930s, Tarvia was applied to one or more of the streets in the Bay Street Area, and thereafter leached, washed or was carried onto the plaintiffs' properties in the Bay Street Area.

(First Am. Third-Party Compl. ¶¶ 12-18, ECF No. 946.)

The question is whether the foregoing allegations suffice to demonstrate a plausible entitlement to relief. While it is true that the complaint is fairly barebones, especially considering that it was filed after NEGC "served some 30 subpoenas, reviewed thousands of pages of documents and engaged

in an independent investigation" (Mot. for Leave to File Third-Party Compls. 2-3, ECF No. 211), it is sufficient to satisfy the standard of notice pleading, even under _Twombly_ and _Iqbal_. _See Peabody v. Griggs_, C.A. No. 08-243-ML, 2009 WL 3200686, at *4 (D.R.I. Oct. 6, 2009) ("_Twombly_ did not supplant the basic notice-pleading standard.") (internal citations and quotation marks omitted); _see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc._, 525 F.3d 8, 15 (D.C. Cir. 2008) ("_Twombly_ leaves the long-standing fundamentals of notice pleading intact."); _Pruell v. Caritas Christi_, Civil Action No. 09-11466-GAO, 2010 WL 3789318, at *1 (D. Mass. Sep. 27, 2010) ("_Twombly_ and _Iqbal_ . . . left intact the long-standing fundamentals of notice pleading." (citing _SEC v. Tambone_, 597 F.3d 436, 442 (1st Cir. 2010))). As this Court recently remarked, "_Twombly_ and _Iqbal_ do not mark a radical change in federal pleadings standards, but rather a fine tuning of sorts." _Koch v. I-Flow Corp._, 715 F. Supp. 2d 297, 302 (D.R.I. 2010). Accordingly, the Court rejects Third-Party Defendants' contention that NEGC has failed to allege facts sufficiently particular to demonstrate a plausible entitlement to relief.

C. Contribution and Indemnity

Third-Party Defendants' remaining arguments for dismissal concern whether the elements of the causes of action for contribution and indemnity are adequately pleaded. Contribution

14

and indemnity are distinct but similar claims. Indemnity is based on the principle that a person exposed to liability (the indemnitee) solely as the result of the wrongful act of another (the indemnitor) should be able to recover from the wrongdoer. Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I. 1986). To prevail on a claim of indemnity, the prospective indemnitee must prove that (1) he is liable to a third party, (2) the prospective indemnitor is also liable to the third party, and (3) as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor. Id. Similarly, the "doctrine of contribution requires that persons under a common burden bear responsibility in equal proportion to fault so that one party shall not be burdened more than his just share to the advantage of his co-obligors." A & B Constr., Inc. v. Atlas Roofing & Skylight Co., 867 F. Supp. 100, 105 (D.R.I. 1994). Under the Rhode Island version of the Uniform Contribution Among Tortfeasors Act (the "Uniform Act"), the right of contribution exists among "joint tortfeasors." R.I. Gen. Laws § 10-6-3. "Joint tortfeasors" are "two (2) or more persons jointly or severally liable in tort for the same injury to person or property . . . ." R.I. Gen. Laws § 10-6-2. This means the parties were (1) liable in tort and (2) for the same injury. Wilson v. Krasnoff, 560 A.2d 335, 339 (R.I. 1989).

1.    The "Liability" Element

As the foregoing summary makes clear, the liability of the party requesting relief is an element of both contribution and indemnity. _Muldowney_, 509 A.2d at 443 (indemnity); _Wilson_, 560 A.2d at 339 (contribution). Third-Party Defendants argue that the third-party complaint fails to plead the element of liability because it expressly denies NEGC's liability for Plaintiffs' damages. (_See_ Compl. ¶ 10.)

This argument is meritless. "Liability" in the context of contribution and indemnity means no more than an obligation to pay; it does not mean being at fault for the underlying tort. _See_ _A & B Constr._, 867 F. Supp. at 113 ("Where one party has been _compelled by reason of some legal obligation to pay_ damages incurred, _without active fault on his part_, but in reality due to the active negligence of another, a quasi-contractual relationship is said to arise between the parties from which a right to indemnity can be implied to prevent unjust enrichment.") (emphases added); _see also_ Black's Law Dictionary (9th ed. 2009) (defining "liability" as "[t]he quality or state of being legally obligated or accountable"). Indeed, if the second meaning were intended, the cause of action for indemnification would be self-contradictory--requiring on the one hand a showing that one was at fault (as Third-Party Defendants contend it does) and on the other hand a showing that

16

one was not at fault.  See A & B Constr., 867 F. Supp. at 113;

Muldowney, 509 A.2d at 443.  Such absurdity is, of course, not

required by the law.

NEGC was plainly liable in the relevant sense of the term

because it paid Plaintiffs $11.5 million pursuant to a

settlement agreement.  See Hawkins v. Gadoury, 713 A.2d 799, 806

(R.I. 1998) (affirming that, in view of the policy to encourage

settlement instead of litigation, "[i]t would defy logic" to

hold that contribution is available only to tortfeasors whose

liability is established at trial and not to those who settle

the claims against them).  It is clear from the context that,

when the third-party complaint "denies any liability" on the

part of NEGC, all it is saying is that the fault lies with

Third-Party Defendants, not NEGC:  "NEGasCo denies that any of

the alleged contamination of plaintiffs' properties came from

[NEGC].  NEGasCo further denies any liability for the injuries

and damages . . . and asserts that the third-party defendants

are responsible for all or part of the alleged contamination and

the resulting damages."  (Compl. ¶ 10.)  Such an allegation is

obviously proper, as it would be meaningless to seek

indemnification or contribution without attributing the fault to

someone else.  The Court therefore rejects Third-Party

Defendants' argument that NEGC has failed to allege the

liability element.

2.    The "Extinguishment" Element

The Uniform Act provides in pertinent part:    "A joint
tortfeasor who enters into a settlement with the injured person
is not entitled to recover contribution from another joint
tortfeasor whose liability to the injured person is not
extinguished by the settlement."    R.I. Gen. Laws § 10-6-5
(emphasis added).    In this case, the settlement agreement
between Plaintiffs and NEGC provided for an assignment to NEGC
of all Plaintiffs' claims arising from the alleged
contamination, including claims against Third-Party Defendants.
(Settlement Agreement ¶ II.J.)    Then, in the third-party
complaint, NEGC waived all the claims assigned to it under the
settlement agreement.    (Compl. ¶ 9 ("NEGasCo has not asserted
and will not assert and hereby waives any of those direct claims
against the third-party plaintiffs [defendants]."). )    The
question is whether this two-step process satisfies the
extinguishment requirement of R.I. Gen. Laws § 10-6-5.

It might be argued that the Third-Party Defendants'
liability to Plaintiffs was not extinguished "by the settlement"
itself, as required under R.I. Gen. Laws § 10-6-5, because the
settlement agreement merely effected an assignment, and the
ultimate extinguishment occurred only pursuant to the waiver in
the third-party complaint.    However, all that § 10-6-5 requires
is that Third-Party Defendants' liability "to the injured

18

person" be extinguished by the settlement. The settlement agreement accomplished as much because, by assigning Plaintiffs' claims to NEGC, the settlement ensured that any liability potentially remaining for Third-Party Defendants would be to NEGC and not "to the injured person"--i.e., the original Plaintiffs.

Moreover, the purpose of the extinguishment requirement is to guard against the prospect of the non-settling tortfeasor being liable to both the settling tortfeasor and the original plaintiff, or being liable both under a direct claim and a contribution claim. See Restatement (Third) of Torts § 23 Reporter's Note cmt. b ("A person seeking contribution must extinguish the liability of the person against whom contribution is sought. Otherwise the person against whom contribution is sought would be subject to double liability.") (internal citation omitted). Here, there is no prospect of double liability: Plaintiffs are barred from bringing any claims against Third-Party Defendants by the settlement agreement (¶ II.J), and NEGC is barred from bringing any direct claims against Third-Party Defendants by reason of its own waiver in the third-party complaint (¶ 9), so the only remaining claims are NEGC's contribution and indemnity claims. In sum, neither the text nor the policy of R.I. Gen. Laws § 10-6-5 supports dismissal.

### 3. "Reasonableness" of the Settlement

Third-Party Defendants fault NEGC for failing to plead that its settlement with Plaintiffs was "reasonable." While the "reasonableness" of the settlement is required by some versions of the Uniform Act, see, e.g., Iowa Code § 668.5(2), it is not required by the Rhode Island version, and Third-Party Defendants have cited no decisions imposing such a requirement under Rhode Island law. Therefore, the absence of an explicit allegation that the settlement was reasonable is not fatal.

### 4. Election of Remedies

Finally, Third-Party Defendants argue that contribution and indemnity are mutually exclusive and a party cannot recover under both claims. See Restatement (Third) of Torts § 23(c). But NEGC pleads in the alternative, and does not seek double recovery, so it may plead both claims. See Fed. R. Civ. P. 8(d); In re Stone & Webster, Inc., Sec. Litig., 414 F.3d 187, 200 n.8 (1st Cir. 2005); Restatement (Third) of Torts § 23 cmt. d.

## III. CONCLUSION

For the foregoing reasons, Third-Party Defendants' motions to dismiss are DENIED in all respects, Third-Party Plaintiff's motion to amend is DENIED AS MOOT, and the motion for leave to amend the complaint or substitute a party, which the Court had construed as incorporated in Third-Party Plaintiff's prior

submissions, is GRANTED.   Third-Party Plaintiff shall file an

amended complaint as directed above on page 11.

IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
U.S. District Judge
Date:  August 23, 2011