UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al. | : |
| | : |
| v. | : |
| | : |
| NEW ENGLAND GAS | : |
| COMPANY | : |
| | : C.A. No. 05-221S |
| v. | : |
| | : |
| BRIDGESTONE FIRESTONE | : |
| NORTH AMERICAN TIRE, LLC, | : |
| BRIDGESTONE AMERICAS HOLD- | : |
| INGS, INC., and HONEYWELL | : |
| INTERNATIONAL, INC. | : |

**MEMORANDUM AND ORDER**

Before the Court is Third-Party Plaintiff New England Gas Company's ("NEGC") Motion for Protective Order in connection with Third-Party Defendant Bridgestone Americas Tire Operations, LLC's ("Bridgestone") Rule 30(b)(6) Deposition Notice. (Document No. 984). Bridgestone opposes the Motion. (Document No. 987). A hearing was held on January 4, 2012. For the reasons set forth below, NEGC's Motion for Protective Order is GRANTED in part and DENIED in part.

  1.  **Background**

In 2005, a group of property owners in Tiverton, Rhode Island ("Plaintiffs") sued NEGC claiming that their properties were contaminated by coal gasification waste and other hazardous substances generated by manufactured gas plants owned and operated by a predecessor of NEGC. In September 2007, while Plaintiffs' action against NEGC was pending, NEGC obtained leave to file a third-party complaint against other entities that it claimed were responsible for the alleged

contamination. These Third-Party Defendants included Bridgestone. In August 2009, Plaintiffs' action against NEGC was dismissed with prejudice, pursuant to a settlement agreement under which NEGC paid Plaintiffs $11.5 million.[1] As part of the settlement agreement, Plaintiffs assigned all their claims relating to the alleged contamination, including those against the Third-Party Defendants, to NEGC. About a year later, in September 2010, NEGC filed an Amended Third-Party Complaint against Third-Party Defendants, waiving the direct claims assigned to it by Plaintiffs but requesting contribution or indemnification for the settlement amount (plus fees and costs).

On or about August 23, 2011, Judge Smith denied the Third-Party Defendants' Motion to Dismiss NEGC's claims against them. (Document No. 977). He concluded that NEGC had adequately plead, in the alternative, claims of contribution and indemnity against the Third-Party Defendants. To prevail on its indemnity claim, Judge Smith indicated that NEGC must prove that (1) it is liable to a third party; (2) Bridgestone is also liable to the third party; and (3) as between them, the obligation ought to be discharged by Bridgestone and not NEGC. Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I. 1986). Similarly, as to NEGC's contribution claim, he indicated that the "doctrine of contribution requires that persons under a common burden bear responsibility in equal proportion to fault so that one party shall not be burdened more than his just share to the advantage of his co-obligors." A&B Constr., Inc. v. Atlas Roofing & Skylight Co., 867 F. Supp. 100, 105 (D.R.I. 1994). Finally, Judge Smith stated that: "It is clear from the context that, when the third-party complaint 'denies any liability' on the part of NEGC, all it is saying is that the fault lies with Third-Party Defendants, not NEGC: 'NEGasCo denies that any of the alleged contamination of plaintiffs' properties came from [NEGC]. NEGasCo further denies any liability

---

[1] The specific party entering into the settlement with Plaintiffs was Southern Union Company including its division New England Gas Company.

for the injuries and damages...and asserts that the third-party defendants are responsible for all or part of the alleged contamination and the resulting damages.'" (Document No. 977 at p. 17).  He concluded that such an allegation is obviously proper, as it would be meaningless to seek indemnification or contribution without attributing the fault to someone else.  Id.

**Discussion**

On or about July 25, 2011, Bridgestone served a Rule 30(b)(6) Deposition Notice on NEGC seeking a designee(s) to testify as to sixty discrete subject matter topics.  On August 30, 2011, NEGC objected generally as to the notice and specifically as to most of the individual topics.  After attempting to resolve the objections with Bridgestone, NEGC filed the instant Motion for Protective Order under Rule 26(c), Fed. R. Civ. P., seeking, inter alia, an Order precluding the Rule 30(b)(6) deposition as presently noticed and requiring Bridgestone to serve a revised, more focused Rule 30(b)(6) Notice.  Of the sixty topics, Bridgestone has voluntarily withdrawn Topics 15, 17, 21, 29, 46, 47 and 49 which leaves fifty-three topics remaining in dispute.

NEGC argues that the Notice is "remarkable" in both length and wide ranging scope, and would require it to produce a witness "able to speak authoritatively about literally thousands of pages of documents, and provide testimony regarding many unfocused, broadly worded topics, including some that look for information regarding the irrelevant litigation strategy pursued in the [settled first-party] action." (Document No. 984 at p. 6).[2]  Bridgestone defends the number and breadth of its Rule 30(b)(6) topics, in part, by asserting that NEGC's prior discovery responses were

---

[2] NEGC also objects to numerous topics on the grounds that they seek "expert testimony and/or legal conclusions or information protected by the attorney-client privilege and/or work product doctrine."  However, it does not sufficiently particularize those assertions of privilege in its memoranda, and NEGC retains other mechanisms under the Rules to assert claims of privilege.  See Fed. R. Civ. P. 26(b)(5)(A) and 30(c)(2).

effectively a "document dump" and provided no meaningful information to Bridgestone concerning NEGC's claim against it which exceeds $25 million.

I have been involved in this complex environmental case since 2007 and have presided over several discovery disputes over the years. These disputes have not generally been the result of improper or unreasonable attorney behavior. Rather, they have primarily arisen because of the factual complexity inherent in this type of case. This case started nearly a decade ago with concerns about the color of soil excavated in a sewer installation project in the Bay Street area of Tiverton. After action taken by the Town and the Rhode Island Department of Environmental Management, a group of Bay Street area property owners initiated this action against NEGC to recover damages allegedly caused by NEGC's disposal of coal gasification waste material in the area which contained hazardous substances, including cyanide. This alleged disposal dated back several decades making both document production and locating/deposing fact witnesses a significant challenge.[3]

The instant Third-Party claims present similar historical challenges. The claims against Bridgestone apparently arise out of a rubber plant operated by Firestone (Bridgestone's predecessor) in the area from 1937 to 1971 and allegations that a local excavation and hauling contractor transported waste from the plant to the Bay Street area. There is also an allegation regarding a pre-World War II fire at the plant and the alleged transport of waste and/or demolition materials from the plant to the Bay Street area. Similarly, NEGC's claim against Honeywell dates back to a coal

---

[3] For instance, there was a discovery dispute in 2007 regarding the timing of the deposition of an eighty-seven year old truck driver who purportedly transported coal gasification waste from Fall River Gas Company (NEGC's predecessor) to the Bay Street area in the 1940s. (See Document No. 289). Also, there were disputes regarding document production that centered on who bore the burden of sifting through boxes of old documents basically in an effort to find a needle in a haystack.

tar product applied to streets in the area "beginning in the 1930s" and manufactured by the Barrett Company, a Honeywell successor company.

A party moving for a protective order under Fed. R. Civ. P. 26(c) must set forth "particular" facts to establish "good cause" for the order. Anderson v. Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986). Rule 26(c) by its terms limits the issuance of a protective order to situations necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." "Prohibiting the taking of depositions is an extraordinary measure" requiring the moving party to meet a "heavy burden" of showing justifying circumstances. Prozina Shipping Co., Ltd. v. Thirty-Four Automo., 179 F.R.D. 41, 48 (D. Mass. 1998). Such requests are "rarely granted." Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 92 (N.D. Tex. 1994); see also Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001).

Here, NEGC does not move to prohibit the deposition but instead wants the Court to force Bridgestone to narrow and reduce its sixty topics.[4] As a matter of general policy, the Court is hesitant to get into the business of refereeing disputes regarding the scope and wording of Rule 30(b)(6) deposition topics. See Radian Asset Assurance, Inc. v. College of the Christian Bros. of New Mexico, 273 F.R.D. 689, 691-692 (D.N.M. 2011) (denying motion for protective order and observing that "the better rule is to allow parties to craft Rule 30(b)(6) inquiries similar to contention interrogatories, because this rule will ultimately lead to fewer disputes about what subject matter is permitted in Rule 30(b)(6) depositions and advances the policy underlying the rules favoring disclosure of information"). Unlike Rule 33 which limits the number of interrogatories that can be

---

[4] By way of comparison, NEGC's Rule 30(b)(6) Notices served on Bridgestone contained twenty-one topics and on Honeywell contained twenty-four topics, and Honeywell's Rule 30(b)(6) Notice served on NEGC contained twenty-one topics. (Document Nos. 992-8 to 992-12).

served without leave of court, Rule 30(b)(6) does not itself limit the number of topics or "matters for examination" which may be included in the notice of deposition. However, under Rule 30(d), the duration of a deposition is "limited to 1 day of 7 hours."

The party noticing a Rule 30(b)(6) deposition must describe "with reasonable particularity the matters on which examination is requested" and the noticed party must then designate "one or more witnesses knowledgeable about the subject matter of the noticed topics." Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 538 (D. Nev. 2008). The designee must be reasonably prepared to testify as to "information known or reasonably available to the organization." Id. at 539. Finally, there is nothing in Rule 30(b)(6) itself which permits a party served with a Rule 30(b)(6) notice "to elect to supply the answers in a written response to an interrogatory." Marker v. Union Fid. Life Ins., 125 F.R.D. 121, 126 (M.D. N.C. 1989). However, the Court recognizes that contention interrogatories under the authority of Rule 33(a)(2) may be more efficient and effective in certain cases for both sides than preparing and examining a Rule 30(b)(6) deponent. See, e.g., Alloc, Inc. v. Unilin Decor N.V., 2006 WL 2527656 at *1 (E.D. Wisc. Aug. 29, 2006) (recognizing that a court has authority under Rule 26(c) to determine that information sought through a Rule 30(b)(6) deposition is more properly sought through contention interrogatories); and United States v. Taylor, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996) (same).

After consideration of the parties' arguments, the unique circumstances of this complex case and the applicable legal principles, NEGC's Motion for Protective Order is GRANTED in part and DENIED in part as follows:

    A.    WITHDRAWN BY BRIDGESTONE – TOPICS 15, 17, 21, 29, 46, 47 and 49.

      B.      STRICKEN BUT LEAVE GRANTED TO BRIDGESTONE TO ADDRESS BY INTERROGATORY – TOPICS 18-20, 22-26, 31-33, 37-44, 48 and 54-56.

      C.      PERMITTED BUT BRIDGESTONE SHALL AMEND TO REASONABLY LIMIT AS TO TIME AND GEOGRAPHIC LOCATION – TOPICS 1-2, 6-9.

      D.      PERMITTED – TOPICS 3-5, 10-14, 16, 27-28, 30, 34-36, 45, 50-53 AND 57-60.

SO ORDERED


 /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 10, 2012