MKD:mes 7383/1 \pleading\73831ReplytoObj

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL ) | |
| KEVIN BURNS, ET AL ) | |
| COLLEEN BIGELOW, ET AL ) | |
| and SHEILA REIS, ET AL ) | |
| ) | |
| VS. ) | C.A. NOS. 05-221S, 05-422S |
| ) | 05-274S and 05-370S |
| NEW ENGLAND GAS COMPANY; ) | |
| SOUTHERN UNION COMPANY ) | |
| ) | |
| VS. ) | |
| ) | |
| BRIDGESTONE AMERICAS TIRE ) | |
| OPERATIONS, LLC and ) | |
| HONEYWELL INTERNATIONAL INC. ) | |

**REPLY OF NON-PARTY MOVANT, SIMPSON FAMILY TRUST, TO
NEW ENGLAND GAS COMPANY'S OBJECTION TO MOVANT'S
MOTION TO QUASH SUBPOENA**

The approximately eighty plaintiffs in the underlying case settled their claims against Southern Union Company ("SUC") almost three years ago. By paying the settlement, SUC paid for resolution and finality to what could have been much greater financial exposure. By accepting the settlement, the Simpson Trust and the dozens of other property owners agreed to accept financial responsibility for remediating their properties in accordance with the Memorandum of Understanding ("MOU").[1] At great expense of time and money, The Simpson Family Trust and many other owners have accomplished this.

It would be a gross miscarriage of justice to allow SUC, for its sole benefit, to now unilaterally impose on the Trust or any other owners potentially far greater financial responsibility than was

---

[1] The MOU was made a part of the settlement agreement between the plaintiffs and SUC, and memorialized the procedures and conditions required for remediation of the neighborhood.

bargained for in the settlement, particularly after The Trust has fulfilled its responsibilities in remediating its property. (*See* **Exhibit A**, Affidavit of Robert L. Hoffman.) Such a result would literally change the settlement agreement three years after its execution.

### A.  The Proposed Testing Presents an Undue Burden For the Simpson Family Trust

The undue burden presented by SUC's subpoena is a matter of common sense and falls squarely within the purpose and intent of Rule 45(c)(3)(A)(IV). Obviously, this case presents its own unique set of facts, which is precisely what Rule 45 contemplates in its broad language. The determination of what constitutes an "undue burden" depends on the facts and context of each case. *Northrop Corp. v McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). If the "time and expense" of responding to a subpoena were the only factors relevant to a determination of "undue burden" as SUC argues, the Civil Rules would say so. Instead, the Rules provide the court broad discretion to determine what constitutes an "undue burden" on a case-by-case basis. "[T]he issuers of subpoenas must be alert at every juncture to use the subpoena reasonably, with the court to determine what's reasonable on a case by case basis whenever the issue is brought to the court's attention." Siegel, David, *Practice Commentaries and Editor's Notes to Fed. R. Civ. P. 45* at Sec. 45-20, Westlaw (2012). Under the circumstances of the instant case, the burden SUC seeks to place on the Trust for its own benefit far outweighs the dubious relevance of the proposed discovery.

As stated above, the location of the proposed testing has been remediated in accordance with all of the procedures contained in the MOU, as required by the settlement agreement. Therefore, no further remediation efforts are required on this property. Though compliant with the MOU, a small portion of

the area has been left with an Environmental Land Usage Restriction ("ELUR")[2], as per the MOU guidelines. It is a matter of fact and common sense that the existence of an ELUR on residential property has a negative effect on its market value. Currently, the locations of the ELUR on this portion of the lot is only 10' by 10'.[3] If SUC is permitted to search for further contamination on the property, which is not required under the MOU, then there is a real possibility that the testing could result in an expansion of an existing ELUR and/or the placement of completely new ELURs on the property, further diminishing its value.

Therefore, contrary to SUC's contention, the owner's assumption of the very real financial risks posed by this testing constitutes an undue burden of the highest magnitude. Somehow, despite these obvious risks, SUC characterizes movant's burden as "minimal at best." SUC Opposition at 6. If they are truly minimal, then SUC should have no problem absorbing and indemnifying against them.

In addition to potential ELURs, new testing of the lot could result in the need for further remediation to be performed according to the MOU. Of course, SUC proposes neither to absorb the cost of any remediation that may be necessary either to avoid or compensate for an ELUR. SUC proposes only to reasonably "restore" the property to its original condition. Since the condition of the property is that it is currently compliant with all environmental regulations and the MOU and has a small and discrete ELUR, to "restore" the property, SUC should assume responsibility for truly leaving it in its current condition, which it refuses to do. Instead, SUC states, *"compliance with any remediation obligations that the Simpson Trust may have is solely the responsibility of the Simpson Trust."* id. at 3.

---

[2] An ELUR is a disclosure placed permanently on a deed that identifies a certain area or areas of a lot which is/are known to contain contamination above residential action levels, and therefore, restricts certain activities and uses in those areas.

[3] Generally speaking, contamination in certain concentrations below 4 feet require an ELUR for that particular area.

**This is exactly the point**.  If further contamination is discovered (as SUC hopes),  the Trust will once again be left with SUC's mess to clean up.

### B. SUC's Proposed Testing Lacks Sufficient evidentiary or probative value to overcome Movant's Burden

The underlying action was brought by over 75 residential property owners in the Bay Street neighborhood of Tiverton, Rhode Island, which comprises approximately 100 acres of land.  The plaintiffs in the underlying suit sued SUC as successor to the Fall River Gas Company for soil contamination caused by manufactured gas plant ("MGP") waste which had been dumped throughout the neighborhood during much of the 20th Century.

After having been notified of the discovery of the contamination as far back as 2002, SUC conducted testing throughout the neighborhood in conjunction with the Rhode Island Department of Environmental Management.  The residents of the neighborhood ultimately filed suit against SUC in 2005 for the cost of remediation as well as loss of use and diminution of value of their properties.

In addition to various investigations of the extent and nature of the contamination which took place during the course of discovery in the underlying case, SUC filed 30 subpoenas and reviewed thousands of pages of documents for the sole purpose of identifying third parties that may have been responsible for the contamination.  Ultimately in August 2007, SUC filed a motion for leave to file third-party complaints against Honeywell and Bridgestone, citing its third party discovery efforts as support for its good faith basis to bring the third-party claims.  (*See* **Exhibit B**, Motion for Leave to File Third-Party Complaint at p. 2.)  Based on the liberal pleading standard of Rule 15, the motion was granted.  However, SUC's sole allegation against third-party defendant Firestone states only:

> 14.   Upon information and belief, wastes from the manufacturing processes at Firestone's Fall River facility were deposited and/or

>distributed in the Bay Street area by Firestone and/or the Simpsons, on Firestone's behalf.

Though sufficient to meet the low standard of notice pleading, this is the barest of allegations as Judge William E. Smith acknowledged in his order denying Bridgestone's Motion to Dismiss for lack of specificity:

> While it is true that the complaint is fairly bare bones, especially considering that it was filed after NEGC "served some thirty subpoenas, reviewed thousands of pages of documents and engaged in an independent investigation" it is sufficient to satisfy the standard of notice pleading . . . (**Exhibit C**, Opinion and Order, August 23, 2011, denying third-party defendants' motion to dismiss, citing SUC Motion for Leave to File Third-Party Complaint.)

Over the last five years, SUC has admittedly subpoenaed and reviewed thousands of pages of documents in pursuing its third party claims. Requests for production to Bridgestone for documents relating to the Bay Street Neighborhood, John K. Simpson, dumping of waste or materials, or any other relevant information, have upon information and belief, returned essentially nothing. More recently, SUC conducted the 30(b)(6) deposition of Bridgestone which, upon information and belief, again revealed no evidence of any dumping activities whatsoever in the Bay Street area.

Now, in a desperate attempt to find anything of evidentiary value, SUC seeks to conduct testing on an approximately 3500 square foot area of movant's property that SUC alleges may contain burned debris from the old Firestone plant in Fall River, Massachusetts. Specifically, SUC alleges that the burned debris from the Firestone plant, which burned down in 1941, may have been dumped on this portion of movant's property.

Even assuming this is true, it is devoid of any relevance to the contamination strewn throughout the approximately 100 acre neighborhood. In other words, SUC is seeking to conduct testing on 1/1250th (3500 square feet out of approximately 42,000,000 sf) of the area which comprises the Bay

Street neighborhood in order to look for burned refuse believed to have come from a single discrete building fire in the 1940s, with no evidence of any other dumping activities anywhere.

How this singular event bears any relation whatsoever to the contamination of the approximately 100 acres that make up the Neighborhood goes completely unaddressed by SUC. Despite apparently exhaustive discovery efforts over the last five years, SUC has not presented one piece of evidence that Firestone waste was dumped anywhere in the neighborhood except allegedly from this single incident.

SUC has blatantly failed to meet its burden of showing that its need for this proposed testing can overcome the undue burden placed on the property owners. *Bio-Vita, Ltd. v. BioPure Corp.*, 138 F.R.D. 13, 17 (D.Mass.1991); *Lexalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (In the context of discovery requests made on a non-party, the burden is on the party seeking the discovery to establish that its need for discovery outweighs the nonparty's interest in non-disclosure.) When viewed in light of all of the information made available over the last seven years, it is clear that the testing proposed by SUC is almost literally nothing more than a fishing expedition.

Amazingly, SUC argues that "[t]he subpoena represents the only means available to uncover information on any soil contaminants." SUC Memorandum in Opposition, p. 2. This ignores the over 33,000 tons of contaminated soil that has been removed from the Bay Street neighborhood since 2009. Thousands of soil tests and lab results have been generated as part of the remediation, in addition to those generated during the seven years before the case was settled. There is simply no rational basis to contend that this 3500 square foot area presents the only means to uncover soil contaminants.

    **C.**    **At a Minimum, SUC should be required to Assume the Risk its Proposed Testing Presents**

     As part of its power under Rule 45(c)(3)(A), in response to a motion to quash, the Court may either quash or modify a subpoena to relieve the burden placed on the responding party.  As discussed above, the burden placed on the Simpson Family Trust is clear.  Assuming the Court is unwilling to quash the subpoena, the subpoena must be modified to provide for the property to be truly returned to its current condition as described above.  Any areas of contamination discovered outside of any existing ELURs must be remediated at SUC's expense so that no new or expanded ELURs are created and no further remediation is required.

                                          SIMPSON FAMILY TRUST,
                                          By its Attorney,

                                          /s/ Martin K. DeMagistris
                                          Martin K. DeMagistris, Esq. #6089
                                          OLENN & PENZA, LLP
                                          530 Greenwich Avenue
                                          Warwick, RI 02886
                                          PHONE: (401) 737-3700
                                          FAX: (401) 737-5499

## **CERTIFICATION**

     I hereby certify that I have filed the within with the United States District Court on this 18th  day of April, 2012, that a copy is available for viewing and downloading via the ECF system, and that I have caused a copy to be sent to:

Kimberly A. Simpson, Esq.
George Lieberman, Esq.
Benjamin V. White, Esq.
Timothy M. Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI  02903

William D. Wick, Esq.
Wactor & Wick LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

Gregory L. Benik, Esq.
Benik & Associates
128 Dorrance Street, Suite 450

Kerri L. Stelcen, Esq.
Arnold & Porter LLP
399 Park Avenue, 36th Floor
New York, NY 10022-4690

Robin Main, Esq.
Gerald Petros, Esq.
Hinckley Allen Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903                    /s/ Martin K. DeMagistris

8